```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
----------------------------:

UNITED STATES OF AMERICA,      :

                               : Docket #23-MJ-2638

              Plaintiff,       :

     v.                        :

CHARLIE JAVICE,                : New York, New York

              Defendant.       : April 4, 2023

----------------------------: Conference
```

TRANSCRIPT AND STATUS CONFERENCE PROCEEDINGS

BEFORE THE HONORABLE BARBARA C. MOSES

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                    SOUTHERN DISTRICT OF NEW YORK
                    BY:  Dina McLeod
                         Micah Fergenson
                    One St. Andrew's Plaza
                    New York, New York 10007


For Defendant:      QUINN EMANUEL URQUHART & SULLIVAN
                    BY:  Maaren Shah
                         JP Kernisan
                    51 Madison Avenue - 22nd Floor
                    New York, New York 10010
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION - 631.334.1445

```
 1            THE DEPUTY CLERK:  The court now calls the
 2    United States of America versus Charlie Javice; case
 3    number 23MJ2638.
 4            Counsel, please make your appearances for
 5    the record.
 6            MS. McLEOD:  Good afternoon, Your Honor.
 7    Dina McLeod and Micah Fergenson for the government.
 8            THE COURT:  Ms. McLeod, Mr. Fergenson.
 9    Good afternoon.
10            MS. SHAH:  Good afternoon, Your Honor.
11    Maaren Shah from Quinn Emmanuel for defendant,
12    Charlie Javice.  I'm here with my partner, JP
13    Kernisan.  And my partner, Alex Spiro couldn't be
14    here today, but will be appearing in the case also.
15            Nice to see you again, your Honor.
16            THE COURT:  Ms. Kernigan.  Ms. Shah, I
17    don't usually see you in this courtroom; good
18    afternoon.
19            MS. SHAH:  Good afternoon.
20            THE COURT:  And Ms. Javice, am I
21    pronouncing your last name correctly?
22            THE DEFENDANT:  Yes, ma'am.
23            THE COURT:  You don't have to stand up.
24    You can all be seated.  I am Magistrate Judge Moses.
25            For the record, not that I have any doubt
```

1    about this, please confirm that you speak and
2    understand English.
3              THE DEFENDANT:  I do.  Yes, ma'am.
4              THE COURT:  May I have the date and time of
5    the defendant's arrest, please?
6              MS. McLEOD:  Yes, Your Honor.  The
7    defendant was arrested at approximately 6:20 p.m.
8    yesterday at Newark Liberty.
9              THE COURT:  Thank you.
10             So, Ms. Javice, the purpose of our
11   proceeding this afternoon is to advise you of
12   certain rights that you have, to inform you of the
13   charges against you, to consider whether counsel
14   shall be appointed for you, and to decide under what
15   conditions, if any, you shall be released pending
16   trial.
17             I'm going to begin by explaining some of
18   your constitutional rights.  You have the right to
19   remain silent.  You are not required to make any
20   statements to law enforcement authorities, even if
21   you've already spoken to the authorities, you are
22   not required to make any further statements.
23   Anything that you do say can be used against you.
24   You have the right to be released, either
25   conditionally or unconditionally pending trial,

1    unless I determine that there are no conditions that

2    would reasonably assure your presence at future

3    court appearances and the safety of the community.

4         If you are a foreign national, you have the

5    right to request that a consular officer from your

6    country of origin be notified of your arrest.  In

7    some cases, a treaty or other agreement may require

8    the U.S. government to give that notification,

9    whether you request it or not.

10        I am informed that you are a dual citizen

11   of the United States and France.  I am further

12   informed that France is not a mandatory notification

13   nation.  So that notification will not be made

14   automatically, but you may request that that

15   notification be given.

16        You have the right to be represented by an

17   attorney during all court proceedings, including

18   this one, and during any questioning by the

19   authorities.  If you cannot afford an attorney, I

20   will appoint one today to represent you.

21        Ms. Shah, your presence here suggests to me

22   that there is not going to be an application for

23   appointed counsel; is that correct?

24        MS. SHAH:  Correct, Your Honor.

25        THE COURT:  So we will then move on.  I

1   have been given a copy of the sealed complaint in

2   this matter, which I'm sure you've seen.  I will

3   review it for you briefly.  This is the document

4   that contains the criminal charges against you.

5         You are charged in Count 1 with conspiracy

6   to commit wire and bank fraud, in violation of 18

7   United States Code § 1349.

8         You are charged in Count 2 with wire fraud,

9   in violation of 18 United States Code §§ 1343 and 2.

10         You are charged in Count 3 with bank fraud,

11   in violation of 18 United States Code §§ 1344 and 2.

12         And you are charged in Count 4 with

13   securities fraud, in violation of Title 15, United

14   States Code, §§ 78j(b) and 78f(f), and also Title 17

15   of the Code of Federal Regulations, § 240.10(b)(5)

16   and Title 18, United States Code § 2.

17         Counsel, have you received a copy of the

18   complaint and had an opportunity to review it with

19   your client?

20         MS. SHAH:  Yes, Your Honor.

21         THE COURT:  And do you waive its detailed

22   public reading?

23         MS. SHAH:  Yes, Your Honor.

24         THE COURT:  Okay.  Because you have been

25   charged by Complaint, Ms. Javice, you are entitled

1    to a preliminary hearing.  At the preliminary

2    hearing, the government will have the burden of

3    establishing that there is probable cause to believe

4    that the crimes for which you are being charged were

5    committed and that you are the person who committed

6    them.

7            If you are in custody, you have a right to

8    that hearing within 14 days.  If you're out of

9    custody, you have a right to that hearing within 21

10   days.

11           However, no preliminary hearing will be

12   held if before the date on which it is scheduled you

13   are indicted by a Grand Jury or an Information is

14   filed against you by the government.  I'll set a

15   preliminary hearing date before we conclude our

16   proceedings this afternoon.  But what I now wish to

17   turn to is the issue of bail, or to be more formal,

18   conditions of release.

19           Have counsel discussed this?

20           MS. McLEOD:  Yes, Your Honor.  And we have

21   a joint proposed bail package.

22           THE COURT:  Excellent.  Who would like to

23   present that to me?

24           MS. McLEOD:  I will, Your Honor.

25           THE COURT:  Go ahead.

AMM TRANSCRIPTION - 631.334.1445

1            MS. McLEOD:  The parties propose a $2

2   million personal recognizance bond to be signed by

3   two financially responsible persons, to be secured

4   by the defendant's property.  And I can give you the

5   address.  It's the residence on the --

6            THE COURT:  This is real estate?

7            MS. McLEOD:  It's real estate.  It's a home

8   in Miami.

9            THE COURT:  Do you want to put that on the

10  record or not?

11           MS. SHAH:  I think we'd prefer not, if

12  that's all right, but I think Your Honor has it in

13  front of you in the Pretrial report.

14           THE COURT:  Is it the same address which is

15  listed in the Pretrial report?

16           MS. McLEOD:  Yes, it's the one on the first

17  page of the Pretrial report.

18           THE COURT:  Fine.  And that's the

19  defendant's personal residence?

20           MS. McLEOD:  Correct.

21           THE COURT:  All right.  So there will be

22  then what type of security?

23           MS. McLEOD:  It will be secured by that

24  property.

25           THE COURT:  All right.  And is there a

1   mortgage on that property?

2          MS. McLEOD:  There is.

3          THE COURT:  And you're satisfied that

4   there's enough equity in the property to give the

5   government adequate security?

6          MS. McLEOD:  Yes.

7          THE COURT:  Okay.  Are you trying to say

8   something or you're just standing up to stretch your

9   legs?

10          MS. SHAH:  I'm just standing up to show

11   respect to Your Honor.  I wasn't sure if you'd need

12   me again.

13          THE COURT:  No, you're fine.

14          MS. SHAH:  Thank you.

15          THE COURT:  You can be seated.  Go ahead.

16          MS. McLEOD:  Regular pretrial supervision.

17          THE COURT:  As directed?

18          MS. McLEOD:  As directed.

19          THE COURT:  Okay.  Any travel restrictions?

20          MS. McLEOD:  Southern -- SDNY, EDNY and the

21   Southern District of Florida.  And all points in

22   between for travel for court appearances.

23          THE COURT:  And she'll be supervised out of

24   Florida?

25          MS. McLEOD:  That's our expectation.


                AMM TRANSCRIPTION - 631.334.1445

```
 1              THE COURT:  Okay.
 2              MS. McLEOD:  Surrender all travel documents
 3   and no new applications.
 4              THE COURT:  It's my understanding that both
 5   the U.S. and the French passport are in law
 6   enforcement custody; is that right?
 7              MS. McLEOD:  That's correct, Your Honor.
 8              MS. SHAH:  That's correct, Your Honor.
 9              THE COURT:  Got it.
10              MS. McLEOD:  A curfew to be enforced by
11   location monitoring.
12              THE COURT:  Curfew?  Okay.  Tell me why.
13              MS. McLEOD:  The curfew, Your Honor --
14              THE COURT:  I mean, usually it's a
15   different kinds of crime that calls for curfew.
16              MS. McLEOD:  Yes.  So that was to
17   mitigate --
18              THE COURT:  I see you, Ms. Shah.  I'll call
19   on you in a moment.
20              MS. SHAH:  Thank you.
21              MS. McLEOD:  Parkinson was to mitigate the
22   risk of flight here based on the defendant's dual
23   nationality.
24              THE COURT:  What, airplanes only run at
25   night?
```

1          MS. McLEOD:  Well, the curfew is to set
2    some parameters around the location monitoring.
3          THE COURT:  It's not a time curfew.
4          MS. McLEOD:  Well, it is a time curfew.
5    The curfew is to set a particular time in which she
6    must be in the home, but it provides a framework for
7    Pretrial to check in and make sure that she's there.
8    It's a way to -- the location monitoring enforces
9    the curfew.
10          THE COURT:  I'm not entirely sure I follow.
11    If it's, let's say, an hour from her home to the
12    nearest international airport, if she were going to
13    make a run for it, which we all trust and hope she's
14    not, couldn't she do it at nine in the morning just
15    as easily as at one in the morning?
16          MS. McLEOD:  I mean, I think that's right,
17    Your Honor.  I think typically Pretrial likes not to
18    have standalone monitoring, which is one of the
19    reasons we asked for it.  And in addition to set a
20    framework for the location monitoring.  If the Court
21    wants to place standalone location monitoring, it
22    can.  It is recommended by Pretrial as one of the
23    conditions.
24          THE COURT:  Well, I've jumped on your words
25    a couple of times already.  Why don't you give me

1    your pitch.

2          MS. McLEOD:  And this is agreed upon.  So

3    curfew to be enforced by location monitoring.

4          THE COURT:  With the hours to be set by

5    Pretrial?

6          MS. McLEOD:  Hours to be set in conjunction

7    with Pretrial, likely in the Southern District of

8    Florida.

9          THE COURT:  All right.  And the form of

10    location monitoring would also be up to Pretrial, so

11    not necessarily an ankle bracelet?

12          MS. McLEOD:  I think that's right, Your

13    Honor.

14          THE COURT:  Okay.  Got it.

15          MS. SHAH:  Your Honor, if I may be heard on

16    that point.

17          THE COURT:  Sure.

18          MS. SHAH:  Thank you.  And as Ms. McLeod

19    noted, this was agreed, but although, as Your Honor

20    knows, I don't appear very often in this courtroom

21    before you, we are also under the understanding that

22    that condition was imposed because it is, I gather,

23    a standard framework.  We have had discussions with

24    opposing counsel about thinking it's not necessary.

25    We would certainly prefer to proceed without a

 1    curfew.  We don't think it's justified by the

 2    circumstances here.  So if Your Honor is so

 3    inclined --

 4             THE COURT:  Well, let me lay out what your

 5    realistic choices may be, now that I understand the

 6    lay of the land, so to speak.  Pretrial services is

 7    interested in not having the defendant be out of

 8    electronic contact with them for long enough to make

 9    a run for it.  Not to put too fine a point on it.

10             One way of doing that is to have location

11    monitoring in the home that records when she's home

12    and when she's not, but doesn't tell Pretrial

13    services where she is when she's not there because

14    she's not wearing an ankle bracelet.

15             You kind of need a curfew, as Ms. McLeod

16    explained, to put a framework on that because if she

17    isn't required to be in the home at a certain hour

18    every evening, then what does Pretrial services do

19    with the fact that she's not in the home at any

20    given moment?

21             The other way to keep tabs on her would be

22    to put her in an ankle bracelet without a curfew.

23    But now she's wearing a hunk of ankle around -- a

24    hunk of metal around her ankle wherever she goes.

25             Now, neither of these is ideal from the

              AMM TRANSCRIPTION - 631.334.1445

1    defendant's perspective, but it may well be that the

2    curfew with no ankle bracelet is considered the

3    lesser of two evils.  Do you want to have a moment

4    to discuss that?

5            MS. SHAH:  I believe, Your Honor, that we

6    would agree that the curfew and no ankle bracelet is

7    the lesser of the two evils here.  And I don't want

8    to speak for my colleague on the other side of the

9    table.  My understanding is that what was being

10   proposed was an ankle bracelet and a curfew.  If

11   that's not the case, then the curfew is fine.

12           THE COURT:  Let me get clarification.

13           MS. SHAH:  Thank you.

14           THE COURT:  Ms. McLeod.

15           MS. McLEOD:  I think we would be fine with

16   the curfew to be enforced by -- at the discretion of

17   Pretrial.  Often they would choose not to do GPS at

18   that point, but that's something that I think is

19   within their province.

20           THE COURT:  All right.  So what I could

21   order, and what the Assistant U.S. Attorney is

22   suggesting is that I put the curfew in place and

23   leave it up to Pretrial services as to the exact

24   form of electronic monitoring.  This does not

25   guarantee no ankle bracelet, but it gives you a

```
 1    decent chance of no ankle bracelet.

 2              Are both sides reasonably accepting of that

 3    compromise?

 4              MS. McLEOD:  Yes, Your Honor.

 5              MS. SHAH:  That's fine, Your Honor.

 6              THE COURT:  All right.  Let's go on.

 7              MS. McLEOD:  No contact -- this is going to

 8    be a long one.  No contact with -- and I'm going to

 9    give a number of categories of people.

10              THE COURT:  You're saying I should get

11    another piece of paper out here.

12              MS. McLEOD:  I don't know how far you've

13    gotten, but probably yes, Your Honor.

14              And as a caveat for this, this is sort of a

15    no contact with witnesses rule, and I just want to

16    preface this with saying that we have confirmed with

17    counsel ahead of time that they are aware of the

18    identities of these people.

19              THE COURT:  Because you knew I was going to

20    ask that question.

21              MS. McLEOD:  I did.  I was here for your

22    prior proceeding.

23              THE COURT:  Okay.

24              MS. McLEOD:  So the condition as agreed

25    would be no contact with the following categories of
```

```
1    people; former employees of Frank, which is the
2    company name, Frank.
3              THE COURT:  Right.
4              MS. McLEOD:  Current employees of JPMorgan
5    Chase.
6              THE COURT:  That's a big company, JPMorgan
7    Chase.
8              MS. McLEOD:  Yes.  We've discussed this
9    with defense counsel.  And I have one more caveat at
10   the end of that as well.
11             The person identified in the complaint as
12   CC1.
13             THE COURT:  All right.  CC1.
14             MS. McLEOD:  The person identified in the
15   complaint as Data Scientist 1.
16             THE COURT:  And, Ms. Shah, you know who
17   that is?
18             MS. SHAH:  Yes, we do, Your Honor.
19             THE COURT:  Okay.
20             MS. McLEOD:  And the final caveat on that
21   is there should be no communications.  There should
22   be no communications about -- my understanding is
23   some people in these categories, there may be a
24   prior personal relationship.  And so the agreement
25   with the parties is that if there's a communication
```

```
 1   in the personal capacity, it should not be about --
 2   there should be no discussion of the substance of
 3   the case outside the presence of counsel.  Oh, I'm
 4   sorry, I missed one category.  My colleague is
 5   reminding me there's one other category, which is
 6   former investors in Frank and former members of the
 7   board of Frank.
 8            THE COURT:  Former investors and board
 9   members of Frank.
10            MS. McLEOD:  Yes, Your Honor.
11            THE COURT:  All right.  Now to which of
12   these -- I have five categories here.  One, former
13   employees of Frank; two, former investors and/or
14   board members of Frank; three, current employees of
15   JPMorgan Chase.  I have to renumber my list here.
16   Four, CC1; Five, Data Scientist 1.
17            To which categories does your carve out
18   apply?  When I say "your carve out," I mean your
19   explanation that social or personal contact is
20   acceptable so long as there's no discussion of
21   matters relevant to this case?
22            MS. McLEOD:  Let me discuss for one second.
23            (Pause in proceedings)
24            MS. McLEOD:  Okay.  Your Honor, we are
25   ready to answer your question.
```

                    AMM TRANSCRIPTION - 631.334.1445

```
1              So the carve out as to communications
2     limited to substance of the case, only in the
3     presence of counsel.  That applies to the following
4     categories, board members and investors and former
5     employees of Frank.
6              THE COURT:  All right.
7              MS. McLEOD:  And I'm sorry, we have one
8     additional caveat, which is that technically the
9     defendant's mother and her mother's boyfriend fall
10    in the investor category.  But the parties have
11    agreed that those two individuals, the defendant's
12    mother and her mother's boyfriend, can be excluded
13    from the condition altogether in order that she can
14    speak to her mother about the case, for example.
15             THE COURT:  So let me say it back to you.
16    With respect to former employees of Frank, the
17    condition is that the defendant is to have no
18    communication with them related to this case except
19    in the presence of counsel.  With respect to current
20    employees of JPMorgan Chase, the condition is the
21    defendant is to have no contact with them except in
22    the presence of counsel.  With respect to former
23    investors and/or board members of Frank, but not
24    counting mom or mom's boyfriend, the condition is
25    that the defendant is to have no substantive
```

1   communication with them concerning this case except

2   in the presence of counsel.  Mom and Mom's boyfriend

3   are unrestricted.  And with respect to the two

4   remaining individuals identified as CC1 and Data

5   Scientist 1, the defendant is to have no

6   communication with them on any topic other than in

7   the presence of counsel.

8           MS. McLEOD:  That's correct, Your Honor.

9           THE COURT:  Okay.  Let's move on.

10          MS. McLEOD:  Almost done.  And the final

11  condition is what's listed as number six on the

12  Pretrial services report, which is the defendant is

13  not to open any new bank accounts or lines of credit

14  without the approval of pretrial.  And then the

15  final note is that the defendant can be released on

16  her own signature, all other conditions to be met

17  within two weeks.

18          THE COURT:  All right.  So let me recite

19  for the record what I understand the agreed upon

20  conditions of release to be.  And then I will ask

21  the defendant if I've gotten them correct insofar as

22  she has agreed to these.

23          The defendant will be released on a bond in

24  the amount of $2 million, which will be cosigned by

25  two financially responsible persons acceptable to

1    the U.S. Attorney's Office in the Southern District

2    of New York, and will be secured by the defendant's

3    residence in Florida.

4            The defendant's travel will be restricted

5    to the Southern and Eastern Districts of New York,

6    the Southern District of Florida, and points in

7    between for purposes of travel only.

8            The defendant will surrender her passports,

9    which she's already done, as I understand it, and

10    will make no new application for passports or

11    similar travel documents.

12            The defendant will be supervised as

13    directed by Pretrial services.  The defendant will

14    be subject to a curfew at her residence, the exact

15    parameters of which will be set by Pretrial

16    services, and the curfew will be enforced by

17    location monitoring at the discretion of Pretrial

18    services.

19            The defendant will open no new -- wait one

20    second -- will not open any new bank accounts or

21    lines of credit without the approval of Pretrial

22    services.  And the defendant will be subject to the

23    following restrictions on contact with other

24    individuals potentially relevant to this case.

25            As to CC1, Data Scientist 1, and current

1     employees of JPMorgan Chase, the defendant will have

2     no contact with individuals in those categories

3     outside the presence of counsel.

4          With respect to former employees of Frank

5     and former investors and/or board members of Frank

6     who are not mom or mom's boyfriend, the defendant

7     will have no communication with these individuals

8     concerning this case or facts relevant to this case

9     outside the presence of counsel.

10          There are no communication restrictions

11    with regard to the defendant's mother or the

12    mother's boyfriend.  The defendant will be released

13    today upon her own signature.  All remaining

14    conditions must be met within two weeks.

15          Let me ask the government first, is there

16    anything you want to add or clarify there?

17          MS. McLEOD:  I'm sorry, Your Honor.

18          THE COURT:  You weren't listening.

19          MS. McLEOD:  I just wasn't sure if I missed

20    the PRB being secured by the Miami address.

21          THE COURT:  That was in there.  All right.

22          Ms. Shah, anything to add or clarify?

23          MS. SHAH:  Yes, Your Honor, we're good.

24          THE COURT:  All right.

25          Ms. Javice, do you understand the terms of

1   your release as I have just summarized them for you?

2          MS. McLEOD:  Yes, ma'am.

3          THE COURT:  You may be seated.  Let me warn

4   you, Ms. Javice, that if you fail to appear in court

5   when due or if you violate any of the conditions of

6   your release, whether you consider these conditions

7   important or unimportant, I can assure you that the

8   government tends to consider all of them important,

9   so if you were to violate them, a new warrant would

10  be issued for your arrest.

11         You and those who cosign the bond could be

12  liable each for up to the full amount of the bond,

13  in this case, $2 million.  Not a trivial sum.  And

14  you could be charged with a separate crime known as

15  bail jumping.

16         In addition, if you were to commit a new

17  offense while you are on release in this case, then

18  in addition to whatever sentence you would

19  ordinarily get for the new offense, you can be

20  sentenced to an additional term of imprisonment

21  because you were out on bail when you committed it.

22  And that additional term of imprisonment could be up

23  to ten years if the new offense is a felony.  Up to

24  one year, if the new offense is a misdemeanor.  And

25  that additional term would be imposed and executed

```
 1    after and on top of any other sentence of
 2    imprisonment is completed.
 3              Do you understand what I have told you?
 4              THE DEFENDANT:  Yes, ma'am.
 5              THE COURT:  Ms. Shah, when shall I set the
 6    preliminary hearing?
 7              MS. SHAH:  I think 21 days works for us,
 8    Your Honor.
 9              THE COURT:  21 days.  That takes us to
10    April the 25th.  You sure you don't want to waive to
11    the 30th day?
12              MS. SHAH:  I'm sorry?
13              THE COURT:  I expected you to say you
14    wanted to waive to the 30th day.  I assume you have
15    a lot to talk about with the government.  Up to you.
16              MS. SHAH:  I think we're good with the 21.
17              THE COURT:  You're good with the 21.  All
18    right.  So I'll set the preliminary hearing for
19    April the 25th.  April the 25th, 2023.
20              Anything further from the government?
21              MS. McLEOD:  No, Your Honor.  Thank you.
22              THE COURT:  Anything from the defense?
23              MS. SHAH:  No, thank you, Your Honor.
24              THE COURT:  Thank you.  We will be
25    adjourned.
```

1                    C E R T I F I C A T E

2

3        I, Adrienne M. Mignano, certify that the

4   foregoing transcript of proceedings in the case of

5   United States of America v. Charlie Javice;

6   Docket #23MJ2638 was prepared using digital

7   transcription software and is a true and accurate

8   record of the proceedings.

9

10

11   Signature   *Adrienne M. Mignano*
                 _____

12                  ADRIENNE M. MIGNANO, RPR

13

14   Date:      April 5, 2023

15

16

17

18

19

20

21

22

23

24

25

                AMM TRANSCRIPTION - 631.334.1445