

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 22, 2023

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: <u>United States v. Charlie Javice and Olivier Amar</u>, S1 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

  The Government respectfully submits this letter in response to the custodian list issue raised in the defendants' portion of yesterday's joint letter. (*See* Dkt. 48 at 1 n.1, 4-5). As explained further below, the defendants' attempt to commandeer the enforcement of federal grand jury subpoenas—particularly where, as here, the Government's grand jury investigation is ongoing—is contrary to fundamental tenets of federal criminal law and practice and should be flatly rejected.

**I. Background**

  In discussions between the parties, the defendants requested from the Government a list of the custodians whose records were subject to review by J.P. Morgan Chase ("JPMC") for responsiveness to the Government's grand jury subpoenas. The defendants indicated that such a list was necessary for the defense to evaluate whether there was additional evidence that the defense would seek to obtain from JPMC. The Government accommodated the defendants' request, and, on August 22, 2023, the Government produced to the defendants a list, prepared by JPMC, of the JPMC custodians. There are 149 different individuals or administrative inboxes who have been included as custodians for JPMC's grand jury subpoena response review.

  At the August 23, 2023 conference, the defendants complained to the Court that JPMC's custodian list—being utilized to comply with the *Government's* grand jury subpoenas—was narrower than what the defendants would like. To clarify the defendants' request and any disputes, the Court directed the defendants to provide a list of the additional custodians being sought by September 1. (Aug 23 Tr. 13, 18). Notably, in response to the Government pointing out that it had already provided the list of dozens and dozens of current custodians to the defendants, the Court explained:

> I understand. Maybe [the defendants' request] will not be in good faith. Maybe the list will be coincident with what you have given. We don't know until we are forcing them to disclose and I want to force them to disclose what they want. Then, if it is too much, we can decide.

(*Id.* at 15). The defendants also requested the text of the specific requests listed in the Government's grand jury subpoenas to JPMC, the Government agreed to accommodate that, and the Court directed the Government to provide the subpoena requests by August 30. (*Id.* at 13, 18).

On August 30, 2023, the Government sent a letter to the defendants with the text of each of the requests in each of its grand jury subpoenas to JPMC.

On September 1, the defendants provided a list of 69 additional names to the Government that the defendants requested be added as JPMC custodians for purposes of JPMC's response to the Government's grand jury subpoenas, and made other demands seeking justifications for and/or expansion of the Government's own grand jury subpoenas. The defendants even "reserve[d] the right to identify additional custodians for search and review."

In a subsequent meet and conferral on September 7, the defendants asked for our position on the additional custodians that the defendants had provided. Far from refusing to confer on the matter as the defendants wrongly claim (Dkt. 48, at 5), the Government told the defendants, expressly, to the extent the defendants are seeking to control the contours of a third-party's response to the Government's *grand jury* subpoenas, the Government rejects their request. The Government further told the defendants that they should file a motion with the Court if they sought such relief, and the Government would file a response.

The defendants did not raise the custodian list issue at any subsequent meet and conferrals, including those discussing what issues would be raised in the September 21 joint letter, and no motion was ever filed. At approximately 5 p.m. yesterday, the Government received for the first time the defendants' section of the September 21 joint letter, which raised the custodian list issue. (*See* Dkt. 48 at 4-5).

**II.   Discussion**

The Court should reject the defendants' attempt to commandeer the enforcement of the Government's grand jury subpoenas, particularly where, as here, the Government's grand jury investigation is ongoing. In the joint letter, the defendants cite no legal authority or precedent whatsoever to support their requests. That is because there is none. Permitting the defendants to control the response of a third party to a federal grand jury subpoena would be an unprecedented intrusion into the federal grand jury power and the Government's investigative and prosecutorial discretion.

**A.   Applicable Law**

The grand jury "belongs to no branch of the institutional government," *United States v. Williams*, 504 U.S. 36, 47 (1992), and is "free to pursue its investigations unhindered by external influence." *United States v. Dionisio*, 410 U.S. 1, 17–18 (1973). As effected by Department of Justice ("DOJ") attorneys, a federal grand jury exercises extraordinarily broad powers to subpoena records and compel testimony. *See United States v. Calandra*, 414 U.S. 338, 343–44 (1974). The "grand jury's authority to subpoena . . . is not only historic . . . but essential to its task." *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972). The grand jury "may compel the production of evidence or the testimony of witnesses as it considers appropriate," and, importantly, "its operation generally

is unrestrained by the technical, procedural and evidentiary rules governing the conduct of criminal trials." *Calandra*, 414 U.S. at 343.

Only an attorney in the DOJ or an attorney specially appointed by the Attorney General may conduct federal grand jury proceedings. *See* 28 U.S.C. § 515(a). It has been said that the grand jury is "an accusatory body under the (almost) complete control of the prosecutor." *In re Grand Jury Proceedings*, 219 F.3d 175, 189 (2d Cir. 2000). Functionally, federal grand jury subpoenas for records and/or testimony are issued and enforced by DOJ attorneys in charge of federal criminal investigations. *See, e.g.*, *In re Various Grand Jury Subpoenas*, 924 F. Supp. 2d 549, 553 (S.D.N.Y. 2013) (granting Government's motion to compel compliance with grand jury subpoenas), *aff'd*, 579 F. App'x 37 (2d Cir. 2014); *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 88 (2d Cir. 1993) (reversing district court's denial of Government's motion to compel compliance with grand jury subpoenas).

Criminal defendants lack broad powers to compel records or testimony and, critically, exercise no control over the grand jury and its subpoenas. Criminal defendants may not conduct federal grand jury proceedings. 28 U.S.C. § 515(a). They can neither issue grand jury subpoenas, nor compel compliance with grand subpoenas (whether for documents or testimony). They hold no sway over the scope of a grand jury subpoena's requests, or the scope of a subpoena recipient's response to such requests. Indeed, a criminal defendant like Javice or Amar has no more say over the breadth of a grand jury subpoena and its response than he or she does over the breadth of the allegations in a federal grand jury's indictment. Simply put, criminal defendants have no standing to enforce, compel, negotiate, narrow, or expand a subpoena recipient's production of documents to the Government pursuant to a federal grand jury subpoena. *See, e.g.*, *United States v. Skeddle*, 176 F.R.D. 258, 259 (N.D. Ohio 1997) ("With regard to any materials that LOF did not deliver to the grand jury, I remain of the view that the defendants are without standing to complain about any noncompliance by LOF with regard to the grand jury's subpoena.").

Instead, criminal defendants may seek to obtain evidence admissible for their defense at trial under Rule 17(c) of the Federal Rules of Criminal Procedure. Unlike a grand jury subpoena or a subpoena in civil litigation, a Rule 17(c) subpoena may "be used only as a mechanism for obtaining specific admissible evidence." *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (citations omitted). That is, "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." *Id.* at *2. It is also "well established . . . that Rule 17(c) does not provide a basis for pre-trial 'production of materials whose evidentiary use is limited to impeachment.'" *United States v. Kaufman*, No. 13 Cr. 411 (JMF), 2014 WL 2048198, at *10 (S.D.N.Y. May 19, 2014) (quoting *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995)). In short, a Rule 17 subpoena must be targeted at obtaining specific, admissible evidence rather than serve as a "general 'fishing expedition.'" *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)).

### B. Defendants' Request is Baseless

Straightforward application of these bedrock principles of federal criminal law compels the denial of the defendants' requests. In the same way that defendants do not have the power to issue federal grand jury subpoenas, they do not have the power to dictate or challenge the contours of

the response of a third party to the Government's federal grand jury subpoenas. To allow otherwise would upend basic tenets of criminal law that date back to the founding of this country.

As a matter of law, the defendants lack standing to challenge JPMC's response to the *Government's* grand jury subpoenas. *See Skeddle*, 176 F.R.D. 258, 259. The defendants do not argue otherwise or, for that matter, cite any legal authority in support of their position. There is none. Instead, the defendants misconstrue the Court's statements at a prior conference, and misrepresent the Government's position at a subsequent meet and confer (where the Government rejected the defendants' request and made clear to the defendants that they should file a motion with the court). That the defendants have not filed an actual motion is telling. There has been no motion because there is *no* law or precedent that supports the defendants' request. The defendants' attempted usurpation of broad grand jury subpoena power is simply an effort to circumvent the more stringent requirements of Rule 17.[1]

Indeed, at the July 13, 2023 status conference before this Court, Your Honor asked defense counsel: "Let me ask this: Can you, **under the Rules,** issue a trial subpoena to JPMorgan to produce, well, the things you say you want to have?" (July 13, 2023 Tr. at 10-11 (emphasis added)). Counsel for Javice responded, "We can prepare one immediately for your Honor, yes." (*Id.* at 11). Over two months have passed since that conference and, to the Government's knowledge, neither defendant has applied to the court for an issuance of a Rule 17 subpoena. Instead, the defendants are transparently avoiding even an attempt to meet the requirements of Rule 17 by dictating to the Government how a third party must comply with its own federal grand jury subpoena. The defendants can avail themselves of their own subpoena power (should they satisfy the requirements of Rule 17); they have simply chosen not to even attempt to do so as a matter of tactics.

The defendants' current effort to obtain broader subpoena powers than they are entitled to under federal criminal procedure—this time, by interjecting themselves into responses to the Government's grand jury subpoenas—is lawless and virtually unprecedented. If accepted, it will be utilized by savvy defense counsel in this District to try to upset the carefully considered limits on criminal defendants' ability to issue compulsory process to victims and witnesses. In this case,

---

[1] These tactics are of a piece with prior efforts by the defense to use—by way of two related civil proceedings—the broader rules of civil discovery to gain an advantage in the criminal case and as an end-run around Rule 17. As background, the Securities and Exchange Commission ("SEC") filed a parallel civil action against the defendants in this district, *see SEC v. Javice*, No. 23 Civ. 2795 (S.D.N.Y.) (the "SEC Case"), and JPMC had previously filed its own civil lawsuit against the defendants in the District of Delaware, *see JPMC v. Javice*, No. 22 Civ. 1621 (JDW) (D. Del.). The Government filed motions to stay discovery in both proceedings, to avoid the defendants abusing the broader discovery available in civil cases, and both motions were granted. In the SEC Case, for example, Judge Liman concluded that "the only effect of the Court allowing Javice to proceed in this case with document discovery"—and granting her access to broad civil subpoena power—"would be to circumvent the limits of discovery in the criminal case before Judge Hellerstein." 2023 WL 4073797, at *8 (S.D.N.Y. June 20, 2023). The defendants are now attempting to obtain a similarly broad subpoena power by taking control of the grand jury subpoena power in this criminal case—all to avoid the stringent requirements of Rule 17. That effort must be rejected, just as comparable efforts have already been rejected by two federal judges in the related civil cases.

Page 5

more particularly, the defendants are seeking to interject themselves into the Government's grand jury subpoenas to the *victim* of their crime, whom the defendants have already defrauded of over $175 million. While the victim in this instance is a global bank with substantial resources and sophisticated counsel, JPMC nonetheless remains the victim of a massive fraud. It would set a dangerous precedent—ripe for abuse, harassment, and delay—to allow criminal defendants to dictate the parameters of their victim's response, or the response of other witnesses, to the Government's grand jury subpoenas.

For all of these reasons, the defendants' requests to control and expand the scope of JPMC's response to the Government's own grand jury subpoenas should be rejected out of hand.

### C. The Same Logic Applies to Defendants' Attempts to Challenge JPMC's Claims of Privilege In Response to the Government's Grand Jury Subpoenas

Because the defendants lack standing to expand the scope of a grand jury subpoena recipient's response, it follows that the defendants also lack standing to challenge a subpoena recipient's invocation of privilege in response to a grand jury subpoena. The Government today received a letter from JPMC—attached hereto as Exhibit A—that, in part, responds to the defendants' attempts to do the latter.[2] For the reasons discussed above, the Government agrees that the Defendants cannot object to a third-party's compliance with a federal grand jury subpoena issued by the Government. To the extent Javice or Amar seek to obtain further records from a third party via subpoena, the only avenue available to them is to move for the issuance of a Rule 17(c) subpoena.

## III.   Conclusion

The defendants are free to apply to the Court for a Rule 17(c) subpoena, but their attempts to co-opt the broad subpoena powers of the grand jury, whether to expand a responsiveness review or challenge invocations of privilege, is barred by federal law and procedure. The defendants'

---

[2] In the joint letter, the defendants state that they sent their privilege objections to JPMC with the Government's consent. (Dkt. 48, at 4). That is true insofar as the Government did not object to the defendants' proposed mechanism for conveying their objections to JPMC. Specifically, the defendants proposed emailing their objections to JPMC's counsel, and copying the Government. The Government indicated that process was fine. The Government did not, however, somehow authorize the defendants to make objections on the Government's behalf to JPMC's response to the Government's grand jury subpoenas. As noted in the joint letter, the Government has no challenges to JPMC's invocation of privilege at this time. (Dkt. 48, at 2).

Page 6

requests should be denied.

>                    Respectfully submitted,
>
>                    DAMIAN WILLIAMS
>                    United States Attorney
>
> By:             /s/
>                    Micah F. Fergenson
>                    Dina McLeod
>                    Assistant United States Attorneys
>                    (212) 637-2190 / -1040

cc: Counsel of Record (by ECF)