N9Q1JAVC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                        23 Cr. 251 (AKH)

CHARLIE JAVICE, OLIVIER AMAR,

            Defendants.         Conference
------------------------------x

                             New York, N.Y.
                             September 26, 2023
                             2:37 p.m.

Before:

                 HON. ALVIN K. HELLERSTEIN,

                             District Judge

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  DINA McLEOD, ESQ.
     MICAH F. FERGENSON, ESQ.
     Assistant United States Attorneys

QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Attorneys for Defendant Charlie Javice
BY:  ALEX SPIRO, ESQ.
     MAAREN A. SHAH, ESQ.
     SAMUEL P. NITZE, ESQ.

KOBRE & KIM LLP
     Attorneys for Defendant Olivier Amar
BY:  SEAN S. BUCKLEY, ESQ.
     STEVEN G. KOBRE, ESQ.
     ALEXANDRIA E. SWETTE, ESQ.

ALSO PRESENT:  KRISTY J. GREENBERG, ESQ., Hogan Lovells US LLP
     Attorney for nonparty JPMorgan Chase

ALSO PRESENT:  HARRY MORAN, Intern, USAO

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your

3  appearances for the record.

4          MS. McLEOD:  Good afternoon, your Honor.  Dina McLeod

5  and Micah Fergenson for the government, and with us at counsel

6  table is our intern, Harry Moran.

7          THE COURT:  Good afternoon, all.

8          MR. SPIRO:  Good afternoon, your Honor.  This is Alex

9  Spiro.  I'm joined by Maaren Shah and Sam Nitze on behalf of my

10  client.

11          MR. BUCKLEY:  Good afternoon, your Honor.  Sean

12  Buckley, Steve Kobre, and Alexandria Swette on behalf of

13  Mr. Amar, who is seated at counsel table to my right.

14          THE COURT:  How do you do, all.

15          First of all, I have a strict rule about repetitive

16  letters.  Requiring a joint letter is there for a purpose.

17  It's to get an agenda, what's agreed and what's not agreed.

18  It's not intended to carry on extensive debate, nor invite

19  rejoinders and replies and sur-replies and sur-rejoinders.  I'm

20  not able to deal with this.  It violates my orders, and it

21  should not be repeated.  I have not read all this barrage of

22  correspondence, the last of which came in last night, and I

23  cannot deal with it in that fashion.  So we'll deal with it

24  fresh.  No agreements, nothing.

25          First, I'll ask Ms. McLeod to tell me how close she is

1    to finishing her production.

2            MS. McLEOD:  Yes, your Honor.  So since the last

3    conference, the government——sorry.  Let me get out my

4    statistics.

5            The government has made a number of productions.  We

6    are on pace to meet the Court's deadline in October.  We have

7    been in contact with JPMorgan Chase about their production

8    schedule.  We understand that they understand the Court's

9    deadline as well.  They were given the transcript of the last

10   conference, and they are on pace to meet that production

11   schedule.  Their deadline for production is mid-October, and

12   that is also when they are expected to finish the privilege log

13   productions.  JPMorgan Chase has been complying with your

14   Honor's directive to produce privilege logs every two to three

15   weeks since the last conference.  They have produced four

16   privilege logs thus far, which total over 7,000 entries on the

17   four privilege logs combined.  So we expect that the deadline

18   set by the Court will be met.  We are proceeding apace.

19   Productions are proceeding on schedule.  On at least one of the

20   meet-and-confers with defense counsel for both defendants, we

21   updated them on this.  And so we've been trying to keep them in

22   the loop as much as possible on what we're expecting from

23   JPMorgan Chase both in terms of timing and volume,

24   understanding that that——

25           THE COURT:  Tell me about the process.  How does it

1   work?

2           MS. McLEOD:  The process from JPMorgan Chase's end?

3           THE COURT:  You get electronic document production

4   from JPMorgan Chase.

5           MS. McLEOD:  Yes.

6           THE COURT:  What do you do with it?

7           MS. McLEOD:  So they provide us with what's called a

8   load file, which means it's not a file that you can just click

9   open like a document.  It's meant to be loaded onto an

10  e-discovery platform.  And so once we get the load file, we

11  send it to a vendor, an e-discovery vendor, and then that

12  vendor loads it onto the platform and then Bates stamps the

13  production.  Usually once there's a critical mass of documents,

14  we finalize the production to go out to defense counsel,

15  defense counsel will send us drives that are large enough to

16  fit the productions, because these are hundreds of thousands of

17  documents sometimes, and so we then load the productions that

18  are Bates stamped and provide it to defense counsel and——

19          THE COURT:  So to understand it, you are turning over

20  everything you receive from JPMorgan Chase.

21          MS. McLEOD:  Correct, your Honor.

22          THE COURT:  You're not holding anything back.

23          MS. McLEOD:  That's correct.

24          THE COURT:  So there are two issues I think that arise

25  with respect to the production.  One is the issue of the number

1    of custodians whose files must be searched, and the second is

2    the issue of privilege.  We'll take those up.  Not this moment.

3         So you're going to be finished by October 13?  You'll

4    be finished by October 13.

5         MS. McLEOD:  JPMorgan Chase is finishing their

6    production by that date.  We anticipate that our production

7    will be complete by the date of the conference, which is

8    October 24th, I believe.  So that's what we're shooting for.

9         THE COURT:  You told me two to three weeks after they

10   finish.  If they finish by October 13, you need another two to

11   three weeks, and it may be that we have to push back that

12   conference so it doesn't coincide too closely with your

13   delivery of the production.

14        MS. McLEOD:  That's possible, your Honor.

15        THE COURT:  On your side, you want to have a

16   declaration by them with regard to an advice of counsel

17   defense, and they resisted on the grounds that they don't have

18   to do it until certainly after they finish reading your

19   discovery.

20        MS. McLEOD:  Yes, your Honor.  We would like—along

21   with the privilege issues being resolved, we would like the

22   Court at some point to set a date for the notice of advice of

23   counsel and also the documents and bases for the advice of

24   counsel, because as your Honor knows, if there is an advice of

25   counsel claim, that will require its own discovery on the

1  government's end, and so sort of all in the interest of

2  efficiency and wrapping this all up into one, I think the

3  government's view is it makes sense to have some sort of

4  orderly date by which they have to provide the advice of

5  counsel and then we can engage on——we may be able to engage on

6  that directly.  If not, you know, there may be discovery issues

7  to bring to the Court, but we would ask the Court——

8          THE COURT:  Per Rule 16(b)(1)(A)?

9          MS. McLEOD:  I believe that's right, your Honor.

10         THE COURT:  Just read the book.

11         MS. McLEOD:  Cocounsel is pulling the book for me.

12  But yes, we sent them a written letter outlining our request,

13  and then as laid out in the joint letter, defense counsel

14  stated that they were aware of certain authorities indicating

15  that pretrial notice may be required but declined to set a

16  date, and so long story short, we would just ask for a date on

17  that.

18         THE COURT:  So three issues that are open is the issue

19  of custodians, that more have to be nominated than have been;

20  the issue of privilege, where the defendants have the right to

21  require rulings on what documents have been withheld from the

22  government; and the issue of the date for notice of an advice

23  of counsel defense.  And those are the three things before us.

24         MS. McLEOD:  That's right, your Honor.

25         THE COURT:  Are there any others, Mr. Spiro?

1      MR. SPIRO:  As I indicated this morning, I do need to

2  briefly respond to some——

3      THE COURT:  No.  I didn't ask that question.

4      Are there any other issues we need to talk about?

5      MR. SPIRO:  Discovery generally and those issues is

6  sufficient, yes.

7      THE COURT:  What do you mean by discovery generally?

8      MR. SPIRO:  Well, I just don't want to leave the

9  government's assertion what they've been doing discoverywise——

10      THE COURT:  We have time to discuss it, but I want to

11  know what issues there are to be ruled on.

12      MR. SPIRO:  Those three issues.  I don't think the

13  final one they raised regarding reciprocal discovery is right,

14  given they haven't turned over a single document since the last

15  court appearance.

16      THE COURT:  So no further issues.

17      Do you have any further issues, Mr. Buckley?

18      MR. BUCKLEY:  No, your Honor.

19      THE COURT:  I'll hear you, Mr. Buckley, or Mr. Spiro,

20  on the issue of additional custodians.

21      MR. SPIRO:  Your Honor, just to take a step back

22  regarding the discovery, because I need to——

23      THE COURT:  No, don't take a step back.

24      MR. SPIRO:  I'll take a step forward then, your Honor.

25      When we last were before the Court, the Court issued a

1   directive that we send a list of custodians to the government

2   and that they meet and confer and respond.  The government

3   failed to do that.  They didn't respond to our request for

4   custodians.  And that's where that stands.  Because JPMorgan

5   Chase has been driving this entire process, they are sitting

6   with a subpoena now for almost a year.  They have not turned

7   over a single meaningful internal correspondence; they haven't

8   turned over one single document since we were last in court,

9   not one document, when you, your Honor, told them many times,

10  in many different ways, that you were disappointed at the

11  speed, that you wanted JPMorgan advised of that.

12          THE COURT:  Does this have anything to do with

13  custodians?

14          MR. SPIRO:  It does, because they didn't respond to

15  that either.

16          THE COURT:  I understand from the government's

17  representation that JPMorgan Chase's production will be

18  finished by October 13.  I take the representation as it's

19  stated.  It's been insufficient to now, and they'll have to

20  hurry up.

21          MR. SPIRO:  So amongst the custodians listed by

22  JPMorgan, which, again, was just handed to the government, not

23  procured in any meaningful way.  They have a support staff

24  email exchange, a recruiting email exchange, monitoring; none

25  of the important people that we would need the email inboxes

| | |
|---|---|
| 1 | of, virtually none, are searched or provided to the government. |
| 2 | So just as— |
| 3 | THE COURT:  You gave them a list of people. |
| 4 | MR. SPIRO:  We did, and the government did not even |
| 5 | respond to that list. |
| 6 | THE COURT:  What is the government response, |
| 7 | Ms. McLeod? |
| 8 | MS. McLEOD:  That's not accurate. |
| 9 | THE COURT:  I'll assume that nothing anybody says is |
| 10 | accurate until I verify it.  What's your response? |
| 11 | MS. McLEOD:  We had a phone call on September 7th with |
| 12 | the parties, with defense counsel.  On that phone call, the |
| 13 | question of the custodian list was raised, and we did not |
| 14 | refuse to engage.  What we said was, to the extent that you are |
| 15 | telling us what to do with our grand jury subpoena, telling us |
| 16 | that we have to add custodians to a grand jury subpoena to |
| 17 | which you are not a party, that request is denied, and you |
| 18 | may -- |
| 19 | THE COURT:  You're saying you're not doing anything |
| 20 | more with custodians. |
| 21 | MS. McLEOD:  We are not agreeing to their request that |
| 22 | we have to do anything related to the custodian list. |
| 23 | THE COURT:  Can I see the list, Mr. Spiro. |
| 24 | MR. SPIRO:  We will pass up a copy to the Court. |
| 25 | THE COURT:  I'll mark this Exhibit 1 to the session. |

1          How many people are on Exhibit A?

2          MS. McLEOD:  Approximately 69, your Honor.

3          THE COURT:  And the government says it's not going to

4     ask JPMorgan to do any research with regard to these

5     custodians, right?

6          MS. McLEOD:  What we told them is, to the extent they

7     are telling us how to deal with the subpoena——so the answer is

8     no, correct, that's correct, your Honor.

9          THE COURT:  Okay.  So we're finished with custodians.

10    If I rule in your favor, you're finished with custodians.

11         MS. McLEOD:  That's right, your Honor.

12         THE COURT:  So the question to you, Mr. Spiro, is:

13    What is the government's obligation to investigate information

14    at the request of a defendant?

15         MR. SPIRO:  Yes, your Honor.  Beyond the U.S.

16    Attorney's manual and their ethical obligations, the Court,

17    from our perspective, instructed that, a directive just as any

18    other order.

19         THE COURT:  I'm just trying to resolve disputes, so I

20    want to know what the law is.  I'm speaking without any

21    research, without any briefing.  Now that the issue has been

22    put to me, I have to look at the law.  What does the law

23    require?

24         MR. SPIRO:  The law requires——

25         THE COURT:  Do you want an opportunity to brief this

1    issue?  I've never come across this issue before, whether or

2    not the government has an obligation to investigate certain

3    names given to them by the defendant.

4              MR. SPIRO:  Yes, your Honor.  I mean, just so that the

5    Court is aware, okay, because I understand 69 names and they're

6    answering in sort of high-level responses, I think it's

7    incumbent upon me to just point out, the names on this list

8    include the people that were Ms. Javice's direct supervisor,

9    the person who negotiated the deal, the person who was the

10   strategist that defined and depicted the business case for

11   JPMorgan.  These are not loose ends.  They worked with JPMorgan

12   to bring this case.

13             THE COURT:  So one suggestion that I have is to state

14   the purpose for each of these names or the rationale for each

15   of these names.

16             MR. SPIRO:  Then perhaps, given the Court's comments,

17   we could provide a letter to the Court indicating the reason

18   why we need these custodian inboxes searched.

19             THE COURT:  I don't want to have letters.  So I'm

20   asking you to develop procedure with me and with Ms. McLeod.

21   As long as I can get consent, it's much better than making

22   rulings.  You've given a list of 69 names.  Do you know,

23   Ms. McLeod, the purpose of each name?

24             MS. McLEOD:  I don't know the purpose of each name.  I

25   will say, your Honor, that to——

1          THE COURT:  So the answer is that Mr. Spiro should

2     give you the rationale for each of these names, and then we'll

3     have a better basis and a better record.

4          MS. McLEOD:  Your Honor, I think the issue is that

5     from the government's perspective, the defendants are

6     attempting to control the grand jury power.

7          THE COURT:  I recognize.  But let's say, for sake of

8     argument, that one name, Mark D. Goldstein, let us say, has

9     information that is important for the defendants' defense,

10    either by way of denial or affirmative defense.  Would the

11    government have an obligation to look into that?

12         MS. McLEOD:  The government's obligation is to turn

13    over the Rule 16 in our possession.  That's what we're entitled

14    to do.  Just to put a finer point on this, the defendants have

15    a means under the rules if they want to seek this information.

16    That is a Rule 17 subpoena.  So if——

17         THE COURT:  And they can say everybody——

18         MS. McLEOD:  So Mr. Spiro, to the extent that

19    Mr. Spiro is going to be writing something down about his

20    rationale for why all of the names are important, that sounds

21    like an application for a Rule 17 subpoena, and then he can

22    engage directly with JPMorgan Chase through that subpoena.  The

23    government really——

24         THE COURT:  All right.  So you're telling me, no,

25    we're not looking anymore, notwithstanding any rationale that

1   Mr. Spiro gives.

2          MS. McLEOD:  What we're saying is JPMorgan Chase is in

3   compliance with the subpoena as far as we are concerned.

4          THE COURT:  I put the question to you.  You're saying

5   you're finished, you're not looking for more custodians, and

6   you're not looking for more rationale from Mr. Spiro.

7          MS. McLEOD:  At this point, yes.  But just to note the

8   timing issue——because I think that's relevant to the conference

9   in October——they essentially added 69 custodians.  There's no

10  way JPMorgan Chase is going to meet that October deadline.  So

11  among other things——

12         THE COURT:  But that's a different issue.

13         MS. McLEOD:  It is a different issue.  I just want to

14  add that context.  But yes, to answer your Honor's point,

15  that's correct.  The rationale——

16         THE COURT:  So I think I need briefing on this issue.

17         MS. McLEOD:  So, your Honor, the government and

18  Mr. Spiro and counsel for Amar, Mr. Buckley and Mr. Kobre, did

19  brief this issue.  It's in the letters.

20         THE COURT:  I'm not——

21         MS. McLEOD:  We can put the memos into a letter format

22  for your Honor, of course.  But the substance is the same.  The

23  letter from Javice was 10 pages long.  So they've put in their

24  argument, and their argument does not have any law for your

25  Honor because there is no precedent for this.

1          THE COURT:  So what motion would you make to get this

2     information, Mr. Spiro?

3          MR. SPIRO:  JPMorgan is serving as an arm of the

4     prosecution.  They're working together.

5          THE COURT:  What's your motion?

6          MR. SPIRO:  It's a motion to compel them to comply

7     with the Rule 16 and other discovery obligations.

8          THE COURT:  So why don't you make that motion.

9          MR. SPIRO:  Sure.

10          THE COURT:  And we will fix dates.  Let me finish

11     today's session.

12          MS. McLEOD:  Yes, your Honor.

13          THE COURT:  That would put the issue to me to have a

14     ruling.

15          MR. BUCKLEY:  Judge, Sean Buckley on behalf of

16     Mr. Amar.  The only other thing I would add to this dialogue is

17     it would be a motion to find that JPMorgan is serving as the

18     arm of the prosecution and, in the alternative, that the

19     government is unwilling to go out and collect additional

20     custodians, the issuance of Rule 17 subpoenas.

21          THE COURT:  Well, if you want to issue a Rule 17

22     subpoena, I can do that too.

23          MR. SPIRO:  Well, your Honor, if I may just——

24          THE COURT:  I suspect it's premature.

25          MR. SPIRO:  That's exactly what I was about to say,

N9Q1JAVC

1    your Honor.  It's not only premature, but on multiple occasions

2    in front of your Honor——in fact, at both meaningful discovery

3    conferences, at one I said we can prepare one immediately for

4    your Honor, and government and the Court had a colloquy, and it

5    was deemed not to be necessary because at least there would be

6    a good-faith meeting of their obligations to provide this

7    stuff.  At the last court appearance, your Honor said don't

8    invite them to do their own subpoena because it's going to take

9    more time.  Ms. McLeod said that's fair.

10             THE COURT:  We're where we are right now, so we have

11    to focus on what needs to be done.  If you want something, you

12    have to make a motion.  I'm not going to be making rulings that

13    anybody is an arm of anybody else.  But if you have a motion to

14    compel production, that's a legitimate motion and I'll hear it.

15             MR. SPIRO:  Thank you, Judge.

16             THE COURT:  That takes care of the custodians issue

17    right now.

18             Let's do the issue of privilege.  Defendants contend

19    that JPMorgan production is not finished until it produces the

20    documents it's withholding on the basis of privilege or unless

21    I sustain privilege.  The government is arguing, as it has

22    argued with custodians, that it does not have to do the work of

23    defendants, doesn't have to investigate for defendants, and

24    when the government is satisfied with the privilege logs,

25    that's the end of it.

|   | |
|---|---|
| 1 | So this too has to be briefed, and it's in the form of |
| 2 | a motion to compel production.  So one branch of the motion |
| 3 | would be to set up court dates and procedures to enable rulings |
| 4 | on the attorney-client privilege issues.  Do I have it right, |
| 5 | Mr. Spiro? |
| 6 | MR. SPIRO:  I think that that is a way to proceed. |
| 7 | When I review the transcript from the last court appearance, |
| 8 | the way I read the transcript is that the government did not |
| 9 | object to what your Honor had set the date for. |
| 10 | THE COURT:  They're objecting now.  So whether they |
| 11 | objected before or not is not interesting to me.  I was working |
| 12 | on a consensual basis. |
| 13 | MR. SPIRO:  And I very much appreciated your Honor's |
| 14 | sentiment during that hearing.  The transcript, to my mind, |
| 15 | speaks for itself. |
| 16 | THE COURT:  Probably so, as all transcripts do.  But |
| 17 | right now we have objections, and we have to rule on the |
| 18 | objections.  So one branch would be a motion to compel |
| 19 | production, it would be to require the coming forward of |
| 20 | JPMorgan Chase with all documents without a ruling by the |
| 21 | Court.  And the procedure I would use, which I don't think you |
| 22 | need to comment on, is to have a sample.  I've done this |
| 23 | before.  So the proponent seeking the document will call out |
| 24 | various numbers—five, ten, whatever we agree to—and I would |
| 25 | look at those documents and make rulings, and then that would |

1  probably be the basis for substantial agreements and maybe

2  resolve all the issues, or maybe not. So if I rule in favor of

3  defendants, that will be the procedure. If I rule in favor of

4  the government, the production will be when the government says

5  it's over.

6  Okay. So next one is the date for advice of counsel.

7  My observation on this particular point is that that defense is

8  not dependent on anything the government produces. One says it

9  was advice of counsel, that defendant relied on his lawyer to

10 advise him about his conduct, so all the information is

11 controlled by the defendant and it does not depend on

12 information learned from the government. That's an initial

13 observation. I haven't read any briefs on this. If you'd like

14 to brief this, I'd be very happy to read it.

15 MR. SPIRO: We don't believe this issue is ripe, so if

16 the government makes a motion, we will of course respond, and

17 if the Court allows that at this stage, then we'll of course

18 respond to the motion, but——

19 THE COURT: I think you have a different issue because

20 the government is entitled to discovery if you say that, and I

21 don't mind waiting until the completion of the government's

22 discovery until we push forward on defenses.

23 MR. SPIRO: That would be our request, and as we

24 think——

25 THE COURT: I think the next status conference, we'll

1   need to set a date.

2           Okay.  So we have the motion to compel.

3           MR. BUCKLEY:  Your Honor, understanding that we have a

4   status conference in October, the expectation is we are going

5   to receive a large document dump shortly before that

6   conference, so for us to be in a position to assess what is

7   contained in those documents and make a decision under

8   Rule 16(b) as to whether we want to affirmatively take the step

9   of asserting an advice of counsel defense, I just think the

10  window is going to be too narrow there, particularly given the

11  volume that we're expecting.

12          MS. McLEOD:  Your Honor, I was just going to reiterate

13  that we agree with your Honor's point that whether an advice of

14  counsel claim is to be pursued is within the control of the

15  defendants.  They are the ones who know whether they believe

16  they relied on advice of counsel, and we have raised that with

17  defense counsel, and so we do appreciate that the Court is

18  focused on the issue.

19          THE COURT:  Mr. Spiro, when would you like to make

20  your motion?  Do you want to talk to Mr. Buckley about that?

21  I'd like to have one motion from both of you.

22          MR. SPIRO:  Understood, your Honor.  I think that sort

23  of at inception, we understand the Court's position.  When we

24  get additional rolling productions and rolling privilege logs,

25  we'll be able to make subsequent motions.  We would like——we

```
1    thought this issue was being addressed today.  We would like to

2    move with all deliberate speed.  As the Court knows, I didn't

3    want to waive speedy trial in this case.  I was told we'd

4    receive everything by July.  The reality is, we'd like to move

5    on this issue as soon as possible, but we would have to do so

6    with the understanding that when production is finished,

7    whenever that may be, that we would have the ability to reraise

8    certain issues.  That's the conundrum I face now, having come

9    here to I thought address this issue today.

10             THE COURT:  I don't really know what issues you're

11   talking about, but in my court you can raise issues any time

12   you want to.  You don't need permission.  How much time do you

13   need?

14             MR. SPIRO:  Just a moment, your Honor, if that's okay?

15             THE COURT:  Yes.  I suggest the partners ought to

16   confer with the associates who will be doing the work.

17             MR. SPIRO:  Two weeks, your Honor?

18             THE COURT:  Can your associates comply with it?

19             MR. SPIRO:  I hope so, your Honor.

20             MS. McLEOD:  And your Honor, could we have two weeks?

21             THE COURT:  Yes.

22             MS. McLEOD:  Thank you.

23             THE COURT:  But don't ask me for adjournments.

24             MS. McLEOD:  Understood.

25             THE COURT:  Two weeks from today comes out to
```

1    October 10.  Take till October 13 for defendants.  The

2    government will have until October 27.

3            When was the next status conference?

4            MS. McLEOD:  It's October 24th, I believe.

5            THE COURT:  So we should push that off.

6            MS. McLEOD:  One just procedural point on the briefing

7    is that the government is to respond, but we're not the ones

8    who were asserting the privilege, and so we wouldn't be able to

9    really respond substantively to the privilege claims, so—

10            THE COURT:  Your point is that the government doesn't

11    have any further obligation.  That's the point.

12            MS. McLEOD:  Yes.  And we can certainly brief that.  I

13    just want to make clear that JPMorgan Chase is not involved in

14    this briefing schedule and they're the holders of the

15    privilege.  And so that sort of like reraises the question

16    about how to get them into the case.

17            MR. SPIRO:  Well, your Honor, JPMorgan Chase was

18    provided a copy of the transcript at the last appearance

19    ordering them to be here today.  Surely they're here.  They can

20    move to intervene if they need to if there's some issue that

21    they wish to raise.

22            THE COURT:  As I see it, with this schedule, I'm not

23    going to make rulings on privilege.  And just answering the

24    question that the government has a duty, if the government has

25    a duty, the next step will be to require JPMorgan Chase to

1    bring documents to the courthouse.  So if they want to object

2    and move to quash, there is no subpoena.  They can't move to

3    quash.  If they wish to object, they can.  And if they would

4    like to have a 17(c) now asking for all documents withheld on

5    the basis of privilege, I'm sure the defendants could

6    accommodate them.

7                Is there a representative from Chase here?

8                MS. GREENBERG:  Yes, your Honor.

9                THE COURT:  Step forward.

10               What's your name?

11               MS. GREENBERG:  Kristy Greenberg.

12               THE COURT:  Take off your mask, please, Ms. Greenberg.

13               MS. GREENBERG:  Kristy Greenberg from Hogan Lovells on

14   behalf of JPMorgan Chase.

15               THE COURT:  If I rule in favor of the defense——namely,

16   that we have to inquire into the bases of privilege and make

17   rulings on the docket——what procedural steps should be

18   followed?

19               MS. GREENBERG:  Your Honor, first and foremost, we

20   would want the opportunity to be heard.  In particular, we have

21   certain——

22               THE COURT:  I'm listening.

23               MS. GREENBERG:  Yes.  We have certain categories that

24   have been identified so far, a week ago from defense counsel,

25   and really it seems like the main issue that's been identified

1    on privilege so far is with respect to one individual——Matt

2    Glaser.  He was the chief legal officer and the chief

3    operational officer, so he had a dual role.  Now JPMorgan Chase

4    has produced roughly 5,200 communications from Mr. Glaser

5    already, okay?  We recognize that he was in this dual role,

6    wearing two hats, and so when he was not providing legal

7    advice, we agreed that those communications should be produced,

8    and we have done so.  Where we've held back is where, in our

9    estimation, in review of these materials, he has been acting in

10   a legal capacity.  So we would request the opportunity to be

11   heard to be able to explain how those distinctions had been

12   made to draw your Honor's attention to the relevant case law on

13   dual role in an attorney-client privilege context.

14          THE COURT:  I understand when a lawyer acts as a

15   lawyer and gives legal advice in response to a question, that's

16   privilege; when the lawyer acts as a businessman, it's not

17   privilege.  It's a hard issue.

18          MS. GREENBERG:  Yes, your Honor.  I think just in the

19   context it was provided, here we would want to provide more

20   information to your Honor about how we're drawing those

21   distinctions.

22          THE COURT:  It means reviewing materials and hearing

23   argument *in camera*.

24          MS. GREENBERG:  Yes, your Honor.  That was my next

25   point.  We would ask that your Honor review any such materials

1  *in camera* so that those issues are not being raised in open

2  court.

3          THE COURT:  Well, what I've done before is to require

4  all the documents brought to the courthouse and then we do a

5  sample, and the sampling would be papers on which Mr. Glaser's

6  name is present and the privilege is claimed.  And I would read

7  in the document, or identify it.  The privilege log, who wrote

8  it, who received it, the subject matter, and so forth, in a

9  manner disclosing privilege.  And then I make a ruling.  And

10  this provides me enough context already to see that.  My ruling

11  would not disclose the contents of a document that is being

12  withheld.  Now I understand that a party in your position would

13  have a right of appeal on these issues, so it would be

14  necessary to make a record, but the record is a document

15  itself, sealed.  I don't see any difficulty in this.  Now do

16  you need a Rule 17(c) subpoena that would in effect call for

17  the production of all documents withheld before doing this or

18  can we just do it?

19          MS. GREENBERG:  Well, your Honor, under the procedures

20  in Rule 17, defense is entitled to information that is

21  relevant, specific, and admissible, and courts in this district

22  have clearly held that information that is privileged is not

23  admissible.  So they can certainly seek specific information

24  that they deem to be admissible, but where we have privilege

25  calls, it would tee up this issue for your Honor.  So we do

1   think that process of going through Rule 17, for them to make

2   their showing, for us to be able to have the opportunity as a

3   nonparty victim to respond, and then to have those documents

4   before your Honor to review *in camera* is the proper procedure.

5         THE COURT:  Why don't defendants issue a Rule 17(c)

6   subpoena that would describe all the documents that you wish to

7   have, as they've been described on a privilege log.  You don't

8   have to repeat it.  And I don't think you want necessarily,

9   Ms. Greenberg, reasoning in the public record why something is

10  relevant or not.  You'll inquire and we'll inquire.

11        MS. GREENBERG:  Rule 17 requires that there be some

12  showing, whether it's on the record or under seal before your

13  Honor, to identify if it's, again——

14        THE COURT:  Ms. Greenberg, the first task in

15  regulating discovery is to see how much consensus I can get

16  without having to make rulings.  So I'm asking you.  If you

17  want to accept the technicalities, you'll have technicalities,

18  but you'll come out to the same thing.  I can see why you want

19  a Rule 17 subpoena.  That will give you the basis of appeal.

20  But I don't think you need something in writing because the

21  reasoning for that could be done document by document in the

22  way that I mentioned.  If you think I'm wrong, tell me.

23        MS. GREENBERG:  Your Honor, again, I think we would

24  just want to have an understanding of what showing the defense

25  is making in order to be able to meet the stringent

1  requirements of Rule 17 so we can evaluate how to respond,

2  whether or not we would agree, as your Honor said, and there

3  can be——whether there can be areas for agreement or whether

4  there would be areas that we would oppose.  So I think we would

5  ask that they follow the rule and make the proper showing.

6          THE COURT:  This is my ruling.  In view of the

7  complications of this case, of the extraordinary number of

8  documents that are potentially relevant, that are necessary for

9  a speedy adjudication of the issue of guilt or innocence, the

10 procedure will be this:  If I rule that the government has an

11 additional burden to deal with the documents withheld from

12 Rule 16 discovery on the basis of privilege, then I will

13 require JPMorgan Chase to bring documents to the courthouse,

14 ready for ruling.  A showing will have to be made——a showing

15 first as to whether or not there is privilege, and second, that

16 there is a right to the document under Rule 17.  If the

17 question becomes too hard to deal with orally, we'll develop

18 another procedure for it.  But the procedure you suggest,

19 Ms. Greenberg, would so complicate this proceeding and so

20 interfere with defendants' right to a speedy trial that I will

21 not adopt it.

22          What's the next issue?

23          MR. SPIRO:  Nothing further I believe from the

24 defense.  I think you've covered the issues today, your Honor.

25          MR. BUCKLEY:  Yes.  Thank you, Judge.

1      THE COURT:  Ms. McLeod.

2      MS. McLEOD:  No further issues from the government.  I

3  believe at the last conference we moved to exclude time until

4  the October 24th date, so there's no application on that point

5  today.

6      THE COURT:  Right.  You make it now till——oh, did I

7  set a date for a hearing?  No, I didn't set it.  November 2 at

8  2:30.

9      MS. McLEOD:  November 2?  Your Honor, would it be at

10  all possible to have a different day that week?

11      THE COURT:  The only different date——it's a pretty

12  short time after I get the papers, and have argument.  The only

13  other date that's possible is Friday, but I have other things

14  to do on Friday.  I can do it the following week, but that's

15  not a good idea either.  So unless there's an extraordinary

16  difficulty with November 2, we'll do it November 2 at 2:30.

17      MS. McLEOD:  Okay.  Understood, your Honor.

18      THE COURT:  Is there a motion to exclude time?

19      MS. McLEOD:  Yes, your Honor.  The government would

20  move to exclude time from today until November 2nd in order for

21  the government to continue producing discovery, the defendants

22  to continue reviewing discovery, and for the parties to prepare

23  any relevant motions for your Honor.

24      THE COURT:  Is there objection, Mr. Spiro?

25      MR. SPIRO:  Your Honor, I'm not consenting to the

N9Q1JAVC

1    application, but I understand that I'm between a rock and a

2    hard place, based on the way discovery has proceeded here, so—

3              THE COURT:  The question is:  Do you object?

4              MR. SPIRO:  I do.

5              THE COURT:  You do object.

6              How about you, Mr. Buckley?

7              MR. BUCKLEY:  No objection, your Honor.

8              THE COURT:  On the basis of Section 3161(h)(1)(B) and

9    in the interests of justice that will allow for an orderly

10   trial without surprise or without prejudice to the public, the

11   time between now and November 2, 2023, is excluded.

12             MS. McLEOD:  Your Honor, one question:  Is the

13   October 24th date still on the—

14             THE COURT:  That's off.

15             MS. McLEOD:  That's off.

16             THE COURT:  Right.

17             MS. McLEOD:  Okay.  I got it.

18             THE COURT:  That will give more time for the

19   defendants to process the production that will be made, and

20   we'll have both rulings on the issues that will be posed by the

21   motion and a status conference to decide how we go forward.

22   Among the issues that will be discussed will be the necessity

23   and timing of the defense of advice of counsel, or any other

24   defense, and whether or not there has to be any rulings on the

25   specificity of privilege.

1          MS. McLEOD:  Understood, your Honor.

2          THE COURT:  Thank you, all.

3          ALL COUNSEL:  Thank you.

4                         o0o

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25