# Exhibit A

NB2BJAVC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        23 Cr. 251 (AKH)

5   CHARLIE JAVICE and OLIVIER
    AMAR,
6
               Defendants.              Conference
7   ------------------------------x

8                                       New York, N.Y.
                                        November 2, 2023
9                                       2:30 p.m.

10

    Before:
11
                    HON. ALVIN K. HELLERSTEIN,
12
                                        District Judge
13

14                        APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  MICAH F. FERGENSON, ESQ.
17       DINA McLEOD, ESQ.
         Assistant United States Attorney
18
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
19       Attorneys for Defendant Charlie Javice
    BY:  ALEX SPIRO, ESQ.
20       MAAREN A. SHAH, ESQ.
         SAMUEL P. NITZE, ESQ.
21       JAN P. KERNISAN, ESQ.

22  KOBRE & KIM, LLP
         Attorneys for Defendant Olivier Amer
23  BY:  SEAN BUCKLEY, ESQ.
         STEVE KOBRE, ESQ.
24       ALEXANDRIA SWETTE, ESQ.

25

NB2BJAVC

1              (Case called; appearances noted)

2              THE COURT:  Mr. Spiro, it's your motion, why don't you

3     take the podium and deliver your remarks.

4              MR. SPIRO:  Thank you, your Honor.  It's a bit of a

5     history that brings us here today to this motion to compel.  It

6     has to do with what the government has represented that they

7     would do to this Court and to the defense, what they're

8     required to do, what they ought to do and they haven't done it.

9              THE COURT:  Why don't we cut to the chase.  Tell me

10    exactly what you want.  I'm having a little trouble finding out

11    exactly what you want.

12             MR. SPIRO:  What we want is what we've been saying,

13    and I think what the Court's been saying all along, which is

14    that we need to have the information necessary to have a fair

15    trial.

16             THE COURT:  What specifically?

17             MR. SPIRO:  The custodial mailboxes that they actually

18    have.  And I think that this is a point that your Honor should

19    know cause I don't want it to be lost in translation.

20             THE COURT:  I'd like to see what specifically you

21    want.

22             MR. SPIRO:  Sure.  Why don't I put some examples up on

23    the screen.

24             THE COURT:  You have in your brief a list.

25             MR. SPIRO:  So I think this will be actually helpful.

NB2BJAVC

1          THE COURT:  On page 11 of your memorandum you have

2     four categories of information.  Is that what you want?

3          MR. SPIRO:  Yes, we want all of those documents and

4     materials that are always kept frankly by a bank and secured by

5     a bank.

6          THE COURT:  Are these the four things you want?

7          MR. SPIRO:  Yes, so long as they are from all of the

8     custodians at issue, yes.

9          THE COURT:  So you want these four categories with all

10     the custodians.  Which specific custodians do you want to have?

11          MR. SPIRO:  We sent a list to the government.  We've

12     attached it to our memo.  We can provide it to the Court.  But

13     if I could put it up on the screen, I think it would be very

14     clear to the Court the basis for this.  To make a long story

15     short, they have already -- and this is the point that I want

16     to make sure is very clear to the Court.  They've already

17     secured all of this information.  This have this.  They're just

18     not giving it to us.  So the bank -- you can tell from the

19     metadata that we have --

20          THE COURT:  We can't deal with words like "this" and

21     "that."  If you want to make a motion for specific documents, I

22     want to know what specific categories.  I want a list of them.

23     Where do I find that list?

24          MR. SPIRO:  So I think the reason that I'm speaking in

25     those sorts of terms are because there was a breakdown earlier

NB2BJAVC

1    on in a way that happened --

2           THE COURT:  Mr. Spiro, you're a fantastic lawyer.  You

3    know what I mean.  Do you have a list?

4           MR. SPIRO:  Yes, we're going to go to the next slide.

5           THE COURT:  Tell me your list.

6           MR. SPIRO:  Okay.

7           THE COURT:  Is page 11 your list?

8           MR. SPIRO:  Well, these are the vast majority or the

9    essentially the list, your Honor.  The reason that we put -- if

10   I could get two more phrases out here.  The reason that I'm

11   caveating it is because, because the government has not

12   explained why they searched which custodians or what their

13   search terms are, yet they have all this information, I'm left

14   a bit to guess at all of the stuff they're not turning over.

15   What I want is --

16          THE COURT:  You're saying that the government has

17   materials in its possession and has not turned it over to you?

18          MR. SPIRO:  What I'm saying is that as you can tell

19   from the productions that they've given us, they have held

20   mailboxes of custodians in this case that the JPMorgan bank

21   maintained.  And then they would meet with the witness, if we

22   could go to the next slide, please.

23          THE COURT:  Why don't you answer my question before we

24   go to slides.  When I get a motion to compel, I usually have a

25   list of things they want compelled.

NB2BJAVC

1          MR. SPIRO:  I get that.  I filed such motions to

2     compels with various specific lists.

3          THE COURT:  Why don't I have it now?

4          MR. SPIRO:  The reason is -- and this is the chicken

5     and the egg problem, which is that they are not even giving us,

6     which you would normally have in a case, which is, This is what

7     we have.  This is what we're withholding.  This is why.  This

8     is the example that I think will prove the point.

9          This is ███████████  As you can see from the email on

10    the right, he met with the government.  JPMorgan hand-selected

11    documents that they wanted the government to see, the same

12    JPMorgan that sued my client.  JPMorgan then tells the

13    government, we don't want ███████████ meeting with Mr. Spiro

14    and his people.  We only want him meeting with you. Okay.  This

15    is an obvious witness of the government.  They didn't turn over

16    his email in-box, his custodian records, his emails, his

17    documents.  Nothing.  They intentionally did that.

18         THE COURT:  Stop.  Stop.  Stop.  What specifically did

19    they not do?

20         MR. SPIRO:  He is not a custodian.  They did not take

21    --

22         THE COURT:  They didn't search his records?

23         MR. SPIRO:  Correct.

24         THE COURT:  And you want them to search his records?

25         MR. SPIRO:  Like they've done in every other case I've

NB2BJAVC

1    ever handled in this courthouse.

2              THE COURT:  Just yes or no.

3              MR. SPIRO:  Yes.

4              THE COURT:  You want them to search his records?

5              MR. SPIRO:  Yes.

6              THE COURT:  Why?

7              MR. SPIRO:  Because you can't take a witness and just

8    cherrypick like this; and say, hand over which documents are --

9              THE COURT:  What do you mean cherrypick?  If he's a

10   witness, and there are *Giglio* documents to give, you generally

11   get them at the pretrial conference before the final pretrial

12   conference.

13             MR. SPIRO:  That's the point, your Honor, which is why

14   this case is so different.  That's not what happened here.

15   Instead, JPMorgan curated a list --

16             THE COURT:  I don't know what that means.  They

17   curated a list.

18             MR. SPIRO:  They gave the government a hand-selected

19   series of documents.  They did not take his email in-box and

20   search it.  They just got handed what JPMorgan said you should

21   have for this witness and asked no questions.  What I'm

22   suggesting --

23             THE COURT:  Why do they need to do more?

24             MR. SPIRO:  Why do they need to do more?

25             THE COURT:  Why do they need to do more?

NB2BJAVC

1          MR. SPIRO:  Because you can't allow a party to simply

2     cherrypick documents and say give us those --

3          THE COURT:  What does mean cherrypick documents?

4     Every time I've been involved in any discovery program criminal

5     or civil, you ask for specific documents.  You say I want

6     documents that conform to these and these criteria, and

7     documents are turned over.

8          MR. SPIRO:  Correct, and I agree with your Honor

9     exactly on that point, and that's exactly what did not happen

10    here.  So now this is where we're at the discovery phase --

11         THE COURT:  So you're saying the government did not

12    get all the documents that ███████████ has?

13         MR. SPIRO:  Correct, and they conceded as much.

14         THE COURT:  If they don't have it, they can't give it

15    to you.

16         MR. SPIRO:  They do have it, that's the point.  They

17    just decided not to list him as a custodian.  So they said,

18    hey, he's not a custodian.  He doesn't matter if he has

19    exculpatory information.

20         THE COURT:  Excuse me.  Are you saying the government

21    has this information in its possession?

22         MR. SPIRO:  In its control, absolutely.

23         THE COURT:  In its possession?

24         MR. SPIRO:  Again, your Honor, I have an email here --

25         THE COURT:  Just told me yes or no, Mr. Spiro.

NB2BJAVC

1          MR. SPIRO:  I'm not in their office, your Honor.

2          THE COURT:  You don't know if they have it.

3          MR. SPIRO:  I know that it's in their control.

4          THE COURT:  What you mean is, you know the government

5     can get it.

6          MR. SPIRO:  I don't want to --

7          THE COURT:  That's what control means.  They can get

8     it.

9          MR. SPIRO:  They can get it and he was sitting in this

10    office and they're emailing about it and they have some of his

11    documents and I know that his custodian account is secured.

12         THE COURT:  What do you mean secured?

13         MR. SPIRO:  Meaning you can tell in this matter from

14    the metadata which in-boxes are maintained so that they're easy

15    to search.  So just like your Honor just said what would happen

16    in normal cases, I would say, obviously this is a relevant

17    custodian.  You're meeting with him.  You're interviewing him.

18    He's providing information to the government.

19         THE COURT:  When you prepare a case, you meet with a

20    lot of people, and then you decide who's relevant and who's

21    not.

22         MR. SPIRO:  Well, if we go to the next slide, we will

23    see --

24         THE COURT:  The government doesn't have to turn over

25    all of its investigatory material.

NB2BJAVC

1          MR. SPIRO:  Well, they have to turn over all --

2          THE COURT:  Stay with ████████

3          MR. SPIRO:  Okay.  These custodians that I'm talking

4    about -- so I get your Honor's point.  What if you met with a

5    witness in this hypothetical that did not have relevant

6    information for the case.  But here's what's difference again

7    about this case that is also different from every other case I

8    would imagine in 25 years that's appeared before your Honor.

9    They actually quote from these people in their criminal

10   complaint in the indictment.  The custodians we're asking for

11   are in the indictment.  And they're telling us, Oh, well, we

12   can quote from one email in the indictment, but we don't have

13   to look at the rest of their emails.  I never heard of that

14   happening.

15         THE COURT:  I have the superseding indictment.  Tell

16   me where.

17         MR. SPIRO:  I put it up on the screen, your Honor,

18   just so it's easy to find.

19         THE COURT:  I'm looking at the superseding indictment

20   complaint.

21         MR. SPIRO:  The complaint.  This is the complaint,

22   your Honor.

23         THE COURT:  The complaint.

24         MR. SPIRO:  And I put it up on the screen.

25         THE COURT:  See if you can get the complaint.  I see

NB2BJAVC

1    it. Are you saying that ██████████ is the marketing executive?

2    MR. SPIRO:  No, just to show the complaint.  This is

3    ██████████.

4    THE COURT:  We were talking about ██████████

5    MR. SPIRO:  Correct, the Court did ask a question.

6    The question was in essence --

7    THE COURT:  Where in the indictment -- you're

8    referring to the complaint.  Where in the complaint is there

9    mention of ██████████

10    MR. SPIRO:  I don't see him mentioned by name in the

11    complaint, but there are certain people that are mentioned

12    specifically by name.

13    THE COURT:  We were talking about ██████████  Do you

14    want to drop ██████████

15    MR. SPIRO:  No, but I think that this proves the point

16    frankly.

17    THE COURT:  Mr. Spiro, I have your motion.  I want to

18    decide your motion one way or the other.  Don't slip from point

19    to point.  Take it one point at a time.  Back to ██████████  Why

20    should the government ask ██████████ or JPMorgan for more

21    documents?

22    MR. SPIRO:  For the very reason that, again, they have

23    served a subpoena, a broad subpoena.  JPMorgan is under a DPA.

24    THE COURT:  That DPA has nothing to do with this case.

25    MR. SPIRO:  That is correct, and that's why at first

NB2BJAVC

1    blush you feel that the DPA shouldn't have anything to do with

2    this case.  But actually on a closer read, it has anything to

3    do with this case.  Because the DPA is written in a way that

4    the United States government, the department of justice and all

5    of its arms and branches on any matter, not just on the matter

6    regarding the original misconduct of JPMorgan, on any matter

7    must comply with any request of the U.S. Attorney's office at

8    issue.  So that DPA is just as strong as the DPA in *Stein*.

9               THE COURT:  Let's look at the DPA.

10              MR. SPIRO:  Sure.  I believe it's paragraph six.

11              THE COURT:  I'm looking at it in your affidavit.

12              MR. SPIRO:  Paragraph five.  I misspoke.

13              THE COURT:  It's a long document, and there's a lot of

14   paragraph fives.

15              MR. SPIRO:  Paragraph five, page nine is written

16   specifically as the department of justice does when an entity

17   is required to cooperate in all investigations, not just one

18   specific U.S. Attorney's office, and not just on one specific

19   subject matter.

20              THE COURT:  I'm having trouble finding it.

21              MR. SPIRO:  I can pass up a copy.

22              THE COURT:  I have it.  I read it this morning. Just

23   give me one moment.  It's exhibit E to your papers?

24              MR. SPIRO:  Correct.  If you look at the second half

25   of paragraph five, Shall also cooperate fully with other

NB2BJAVC

1    domestic or foreign law enforcement and regulatory authorities.

2            THE COURT:  I'm having some difficulties.  Just a

3    minute.

4            MR. BUCKLEY:  Page nine of the DPA, your Honor.

5            THE COURT:  Okay.  I'm with you.  Go ahead.  All

6    matters relating to the conduct described in this agreement,

7    any attach statement of facts.

8            MR. SPIRO:  And other conduct.

9            THE COURT:  By the fraud section and the office until

10   the later of the date upon which all investigations and

11   prosecutions arising out of such conduct.  This has nothing to

12   do with what we're here for.

13           MR. SPIRO:  I agree with the Court.

14           THE COURT:  In another court, in another matter,

15   having to do with commodities trading, and not what we're here

16   for.

17           MR. SPIRO:  I agree with your Honor, other than in so

18   far as any U.S. Attorney's office can request documents from

19   them and they must comply.

20           THE COURT:  Let's forget about the DPA.  I hold that

21   the DPA has nothing to do with this case.  Unlike the DPA in

22   Judge Kaplan's case, *United States v. Stein*, which is directly

23   related between an employer and an employee in a litigation, a

24   criminal litigation against the employee.

25           MR. SPIRO:  So back to the ████████ question.  So

NB2BJAVC

1   again, just so that the facts are clear before the Court and

2   I've articulated them hopefully well.  He's meeting with the

3   U.S. Attorney's office.  They are providing a select set.  They

4   meaning the bank, the bank that has control over his in-box

5   that is sharing with the U.S. Attorney's office whatever it

6   chooses.  The same bank that has the motivation that has

7   civilly sued my client and has reputational and other

8   incentives here, not just some everyday victim, not just some

9   run of the mill case.  They cherrypick, hand-select, whatever

10  word you want to use.  They do not tell us what search terms

11  they used, want they provided.  Did they provide inculpatory

12  and exculpatory.  No.  They just hand over whatever they choose

13  from the email in-box.

14          All we're saying is, do what you do in every other

15  case I've ever heard of in this district.  Which is, take the

16  email in-box, tell us what search terms you used, take our

17  search terms and turn over anything relevant and material like

18  you're required to under Rule 16.  What is so controversial or

19  unusual about that?  That's what's done in every case.  And

20  the reason that I pivoted, your Honor, to the fact that they

21  didn't even search custodians that are referenced in the

22  accusatory instruments is because I never heard of that before.

23  I cannot imagine there's a case that's been in front of your

24  Honor in 25 years like that, where they're quoting emails

25  inside of the accusatory instrument, and they didn't search the

NB2BJAVC

1    email in-box; or don't have to turn over anything from the

2    email in-box to us in the ordinary course in criminal

3    discovery.  That's not how it works.

4          THE COURT:  I can't deal with these generalities.

5    Mr. McLeod, you want to respond to ████████

6          MS. McLEOD:  Yes, your Honor.  So I think first of all

7    I want to make clear that there is a difference between

8    evidence that the government has in its possession and the

9    question of what a custodian is or an in-box.  To the extent

10   that we have emails related to ████████ in our possession,

11   those have been turned over.  Mr. Spiro is using the word

12   "they" very liberally.  He keep saying "they" searched for

13   this.  "They" know that.

14         THE COURT:  I know.

15         MS. McLEOD:  And they --

16         THE COURT:  So I'll put the question that Mr. Spiro

17   doesn't clear up.  What obligation does the government have to

18   ask ████████ or his employer for more documents?

19   Ms. McLeod, the question is to you.

20         MS. McLEOD:  Oh, I'm sorry.  I thought that was for

21   Mr. Spiro.  The government does not have such an obligation.

22   The government has deemed and believes JPMorgan Chase to have

23   responded appropriately to the grand jury subpoena.  And the

24   attempt by the defendants to seek essentially everything they

25   want through the grand jury subpoena power runs contrary to

NB2BJAVC

1   law, to practice, and to the federal rules; which in this case

2   provide a specific means by which defendants can seek

3   information that they need.  And that's Rule 17, which is

4   something --

5           THE COURT:  I'm not sure Rule 17 helps them neither.

6           MS. McLEOD:  I think it may not.

7           THE COURT:  That's a different issue.  I'm only asking

8   what you are required to do.  And you're saying that you have

9   no requirement to get anymore documents than you have already?

10          MS. McLEOD:  Correct.

11          THE COURT:  So I'll ask you this question, Do you have

12  a best efforts kind of obligation as Judge Kaplan seem to

13  suggest in *Stein*?

14          MS. McLEOD:  Certainly not under the facts of this

15  case.  I think as your Honor noted, *Stein* was a very specific

16  case where there was a very clear connection between the

17  government and the party with the DPA.  And there was a very

18  broadly worded DPA that required the entity to cooperate with

19  that specific prosecution of that specific criminal defendant

20  which I think --

21          THE COURT:  I agree with that reading.

22          MS. McLEOD:  So, no.  The answer is no.

23          THE COURT:  I'll put to you this, Mr. Spiro.  Is there

24  anything specifically that you would like the government to get

25  from ████████

NB2BJAVC

1           MR. SPIRO:  Yes.  I would like them to take his

2     custodial mailbox which JPMorgan has indicated --

3           THE COURT:  What's a custodial mailbox?

4           MR. SPIRO:  His email account, his Outlook account and

5     his folders.  And I would like them to run a few targeted

6     search terms in the time period in question that they already

7     have documents from so that we make sure that we run a fair

8     trial and a fair process and that we have anything that's

9     exculpatory from his mailbox.  Again, it doesn't seem like a

10    particularly controversial request to me, and one that I know

11    has been granted because I've asked many government lawyers

12    before and they've done it every time.  So that's the request.

13    It's a simple one.  The U.S. Attorney's office and JPMorgan

14    have near limitless resources.  It would take one day.  That's

15    all I'm asking for.

16          THE COURT:  Finish?

17          MR. SPIRO:  Yes.

18          THE COURT:  Your request is denied.  Rule 16 requires

19    in subparagraph (A)(E) an obligation to produce documents if

20    the item is within the government's possession, custody or

21    control; and the item is material to preparing the defense; or

22    the government intends to use the item in its case in chief at

23    trial; or the item was obtained from or belongs to the

24    defendant.

25          Well, the item doesn't belong to the defendant.  The

NB2BJAVC

1    government, I understand from Ms. McLeod, does not intend to

2    use what you're looking for in its case in chief at trial.  And

3    the broad outline of what you want is not an item that can be

4    said to be material to preparing the defense, rather it's a

5    broad discovery issue suitable for a civil case and not a

6    criminal case.  Next point.

7         MR. SPIRO:  After your Honor makes sort of categorical

8    rulings, I will move on to other topics.

9         THE COURT:  Of course.  That's what you should do.

10        MR. SPIRO:  So I'm going to go to a different category

11   which is the ████████████ of the world that are actually in the

12   complaint that are used as the basis by which the government

13   claim --

14        THE COURT:  There's no ████████████ in the world.

15   There are specific individuals in the world, which might or

16   might not be relevant here.  Which specific individual are you

17   interested in?

18        MR. SPIRO:  Marketing Executive

19        THE COURT:  All right.  He was a director of

20   acquisition marketing strategy at JPMorgan Chase.

21        MR. SPIRO:  And he was used amongst these other roles

22   that clearly have relevant material to this case.

23        THE COURT:  And he is the marketing executive that is

24   mentioned in the complaint.  I don't know what paragraph

25   number.

NB2BJAVC

        1            MR. SPIRO:  And not only that, but they're referencing

        2  his emails in the complaint by which they claim to have

        3  probable cause in this matter.  And all I'm simply saying is,

        4  once you do that, you have an obligation -- it's not just Rule

        5  16.  It's not just the Court's inherent authority.  It's not

        6  their good faith best efforts and their *Brady* and ethical

        7  obligations.  They have an actual obligation to not just

        8  cherrypick certain emails and have an obligation to do a good

        9  faith production.

     10             THE COURT:  What paragraph number is it in the

     11  complaint?

     12             MR. SPIRO:  I'm checking that, your Honor.

     13             THE COURT:  Is it 32?

     14             MR. SPIRO:  Yes, your Honor.

     15             THE COURT:  Is ▮▮▮▮▮▮▮ the marketing executive?

     16  Is that a reference for a marketing executive?  There's no

     17  reference to Marketing Executive

     18             MR. SPIRO:  Yes, your Honor.  You're asking me?  Yes,

     19  it is.

     20             THE COURT:  What is it that you didn't get?  Did you

     21  get something from Marketing Executive  ?

     22             MR. SPIRO:  We don't believe we've gotten anything.

     23  He's told to us by the government to not be a custodian,

     24  meaning they did not search his records, his file, his

     25  anything.

NB2BJAVC

1          THE COURT:  So, Ms. McLeod, isn't this something that

2     you're going to prove?

3          MS. McLEOD:  Yes, your Honor.  And just to clarify,

4     this email has been produced to the defendants.  Mr. Spiro is

5     talking about email in-boxes that JPMorgan Chase has that the

6     government does not have in its possession.  This is an email

7     that is with Mr. Amar.  The entirety of Amar's in-box for the

8     relevant time period has been produced, so they have this

9     email.  Any emails that we have with  Marketing Executive  have been

10    produced.

11         THE COURT:  So I gather that your request, Mr. Spiro,

12    is the same as for the previous one, that is to do a search of

13    the mailbox?

14         MR. SPIRO:  I don't want that request to seem as broad

15    as the Court in its framing.  It's just a very narrow time

16    period with very narrow to and from and a few search terms.

17         THE COURT:  What is it you want?

18         MR. SPIRO:  I'm asking for an order of this Court that

19    the government meet in food faith to take terms and time

20    periods, and we can come back to the Court within a week with

21    an agreement as to what we can agree on.

22         THE COURT:  You're not telling me what you want.

23         MR. SPIRO:  I want the same.  They have listed

24    custodians.  I'm asking for this custodian to be added to the

25    custodian list that they're dealing with everybody else's in

NB2BJAVC

1    this case.  That's all I'm asking for.

2            THE COURT:  The government willing to do that,

3    Ms. McLeod?

4            MS. McLEOD:  Your Honor, we've already attempted to

5    confer on this.  I don't think it would be productive.

6            THE COURT:  The answer is yes or no.

7            MS. McLEOD:  No, your Honor.

8            THE COURT:  Why should they do it, Mr. Spiro?

9            MR. SPIRO:  Well, you know, I could keep going through

10    Rule 16, the Court's plenary power, *Brady*, ethics, the right

11    way to do this; but it's really ultimately don't we want this

12    to happen the right way, don't we want the truth to come out in

13    this courtroom.

14            THE COURT:  Why should they do it?  Why are they

15    required to do it?

16            MR. SPIRO:  Because once they decide to take a piece

17    of evidence and put it forward, then the other emails around

18    that time period, around that subject matter are clearly

19    material, relevant information under Rule 16.  They are in

20    their possession.

21            THE COURT:  The date is January 10, 2022.

22            MR. SPIRO:  It starts January 6, but goes to January

23    10.

24            THE COURT:  So January 6 to 10, and in reference to a

25    January 18 and then a January 21.  I think, Ms. McLeod, you

NB2BJAVC

should ask JPMorgan Chase to give you something more than is

identified here.  I would have trouble articulating how much

more, but enough to give all the circumstances and the email

interchanges on the subject.

MS. McLEOD:  Your Honor, I know that your Honor is

trying not to get -- is trying to move this case forward and is

attempting to do that expeditiously.  I think the government

wants to do the same, but these emails, if we have them, they

have them.  And the concern that the government has is that --

THE COURT:  I miss that.  If you have them --

MS. McLEOD:  If we have them, they have them.

THE COURT:  I'm asking for something a little broader

than that.

MS. McLEOD:  I know that.  And what I'm saying is

that, there has never been a time in this case when the

defendants have not moved the goalpost again.  It would set,

frankly, an extraordinary precedent for us to be required to

enforce a grand jury subpoena in a way that the defendants are

requesting.  Because in that case, the defendants could do that

in any case for any grand jury subpoena simply because it's

useful to them.

But being useful or something that they want is not

how the grand jury power works, and they should not be allowed

to use the grand jury power, which is very different, to avoid

having to comply with Rule 17 which is the method that they

NB2BJAVC

1    have in their possession.  And if in fact they have all of

2    these specific things that they can set forth to your Honor as

3    to why they think these are relevant material and specific, it

4    seems like that would be a basis for a Rule 17 subpoena

5    application, which they have not made.

6            So I think what's inexplicable here is that they are

7    trying to go through the government to use the very broad

8    powers of the government's investigative subpoenas to get

9    something which by their own proffer they claim could meet the

10   requirements of Rule 17.  That is the proper way to do that.  I

11   know that, your Honor, Rule 17 subpoenas are applied for

12   everyday in this district and before your Honor.  This

13   particular ask to enforce the grand jury subpoena in a way the

14   defendants want is something that has never been granted.

15           MR. SPIRO:  Your Honor, may I respond?

16           THE COURT:  Give me a moment.  You're saying that the

17   January 10 email has been produced, right, Ms. McLeod?

18           MS. McLEOD:  Yes.

19           THE COURT:  And the January 18 email has been

20   produced?

21           MS. McLEOD:  Yes.

22           THE COURT:  And the January 21 has been produced?

23           MS. McLEOD:  That's right, your Honor.

24           THE COURT:  And the January 24th has been produced?

25           MS. McLEOD:  Yes, your Honor.

NB2BJAVC

1      THE COURT:  Three emails have been produced in

2   isolation, or has the entire chain, if there was a chain, of

3   emails was produced in each date?

4      MS. McLEOD:  Usually they're produced as a chain, but

5   I would have to look specifically as to this one.  But the

6   reference to the chain here indicates to me that it was likely

7   produced as part of an email chain.

8      MR. SPIRO:  I would like to correct that.  These

9   emails reference other emails and other related emails that

10   have not been turned over.

11      THE COURT:  I will rule that all documents referenced

12   in these emails or other parts of a chain of emails of which

13   these are parts should be requested from JPMorgan Chase and

14   then turned over.  And if JPMorgan Chase declines to do so,

15   Mr. Spiro can then proceed and I'll consider any motions to

16   squash a Rule 17 subpoena.  I think because of the complexities

17   of this case, I would be sympathetic to the service of a

18   subpoena and my resolution of the issues at this time in

19   discovery rather than at the eve of trial.

20      MR. SPIRO:  Thank you, your Honor.

21      MS. McLEOD:  Your Honor, if I could just -- sort of

22   the issue with that is that JPMorgan Chase does not have the

23   ability to decline because they are compelled by the

24   government's grand jury power.  So it's not possible --

25      THE COURT:  I don't know if it has to under those

NB2BJAVC

grand jury subpoenas.

MS. McLEOD:  I think based on what you're saying here, it could be covered under the subpoenas, and so they are not able to decline.  It wouldn't be a voluntary request.

THE COURT:  I guess the request ought to be to review your files and make sure that there has been a full production with regard to these particular emails, and in particular all parts of the chain of which they may be a part and of all documents to which references have been made.

MR. SPIRO:  Your Honor, may I briefly add --

THE COURT:  One minute, Mr. Spiro.

MS. McLEOD:  Your Honor, we can check with JPMorgan Chase to make sure that there is nothing missing from those chains and that it was a complete production of those emails.

THE COURT:  Fine.  That resolves that issue.

MR. SPIRO:  Your Honor, can I just be heard briefly on that issue cause as I understood it, your Honor was about to give directive to the U.S. Attorney's Office.  I heard a directive to the U.S. Attorney's office that was a bit broader than the way it's just been said again.  And Ms. McLeod sometimes argues --

THE COURT:  What is it that you want, Mr. Spiro?

MR. SPIRO:  The same thing that your Honor already said.  And I think this whole grand jury subpoena red herring is throwing this all off.

NB2BJAVC

1          THE COURT:  I'll do this again.  The government is to

2   request JPMorgan Chase to review its files and to assure that

3   all parts of the chain of which these emails were a part, I'm

4   referring to the specific emails I mentioned, have been

5   produced; and that all the documents to which references have

6   been made in these emails, and in the emails in the chain, are

7   also produced.  That's as far as I'm going, Mr. Spiro.

8          MR. SPIRO:  And just to be clear about that -- and

9   that sounds closer than what I understood your Honor's

10  directive to be.

11         THE COURT:  Mr. Spiro, that's as far as I'm going.

12         MR. SPIRO:  Since we're doing this in buckets, your

13  Honor, that that is the ruling as to other individuals who are

14  referenced in the complaint?

15         THE COURT:  No.

16         MR. SPIRO:  You want to go one by one through those?

17         THE COURT:  Yes.

18         MR. SPIRO:  Okay.  Before we do that just then, I

19  won't keep regurgitating argument, but I do want to say a

20  couple of things, because I think Ms. McLeod is speaking

21  perhaps unintentionally.  This has nothing to do with, frankly,

22  the way your Honor is analyzing it with this grand jury

23  subpoena.  Your Honor could have said, Listen, they're under an

24  omnibus grand jury subpoena.  You requested it.  You have, as

25  your Honor once put it in this very case, control compulsion

NB2BJAVC

1    over them.  They're compelled to do it.  You control it.

2    Produce all of it.  Your Honor could have ruled that way.  You

3    didn't.  You were off that grand jury subpoena issue.  That's

4    the way I would have urged your Honor to rule, but here we are.

5            At this point, Rule 16 contemplates your Honor's

6    ability to order anything that's just under the circumstances.

7    Your plenary authority gives you the ability to order anything

8    just under the circumstances.  So Ms. McLeod constantly saying

9    that this is new law in the grand jury context is nonsensical.

10   The other thing is that the reason that we haven't turn to 17C

11   at various points, one being they haven't even finished

12   production yet.  The other being every time that issue has come

13   up before the Court, the Court has urged the government to do

14   the right thing in essence.  And the government has each and

15   every time said basically don't worry.  17C is not necessary.

16   We're going to do it.  And if you look at the transcripts in

17   front of your Honor that are on the screen, they've said that

18   every time.

19           THE COURT:  I think we should go ahead the way I want

20   to go ahead. I don't have plenary power.  District judges don't

21   have plenary power.  We're guided by Rule 16, and in some cases

22   where there is an outstanding subpoena, Rule 17.  Let's proceed

23   to the next person.

24           MR. SPIRO:  Here's another missing custodian, another

25   person referenced in the complaint.  This time an executive of

NB2BJAVC

1     JPMorgan.

2          THE COURT:  What paragraph number is this?

3          MR. SPIRO:  Paragraph 19A.  Your Honor, I would make

4     the same application based on many of the same arguments that

5     I've made already.  The application again is for the custodian

6     in-box to be searched the way every other custodian was

7     searched in this case.  An in-box that is maintained and just

8     sitting there, your Honor, that is in their control.  And if

9     your Honor is not inclined to do that, which we think the Court

10    should under these circumstances, 16(d)(2)(A) allows a Court to

11    enter an order that is just under the circumstances.  We're

12    asking for an order of all communications in and around the

13    communications that they think are important enough to quote in

14    their accusatory instrument be turned over to the offense.

15    They're obviously relevant material and in their control.

16         THE COURT:  15A has to do with depositions.

17         MR. SPIRO:  Under Rule 16.

18         THE COURT:  You quoted Rule 15.  I heard you say Rule

19    15.  Was I mistaken?

20         MR. SPIRO:  No, Rule 16, your Honor.

21         THE COURT:  16 has to do with -- the cite is 16(a)(2)?

22         MR. SPIRO:  I'm pulling it up.  I'm going to try to

23    put it on the screen.

24         THE COURT:  No, I have a book.

25         MR. BUCKLEY:  16(d)(2)(A), your Honor.

NB2BJAVC

1          THE COURT:  We're not dealing with this.  The parties

2     fails to comply with this rule, This is Rule 16, the Court may

3     order the party to permit the discovery or inspection specified

4     time, place and manner and prescribe other just terms and

5     conditions or grant the continuance or prohibit the parties

6     from introducing the undisclosed evidence, or enter any other

7     order that is just under the circumstances.  We're not there

8     yet.  Why are we dealing with that?

9          MR. SPIRO:  It's just circular, your Honor.  If your

10    Honor thinks there's something that they should turn over,

11    that's the provision that a district court can use, to say you

12    should turn over additional documents.

13         THE COURT:  No.  We're dealing with it in the first

14    instance that the government have an obligation to produce

15    anymore than it has produced.  So complaint paragraph 19 deals

16    with oral statements.

17         MR. SPIRO:  If you look at B, your Honor, it's email,

18    JPMorgan Chase executives's email, and there are a series of

19    emails.

20         THE COURT:  The management presentation accompanied by

21    a 60-page power point deck.  Is that what we're talking about?

22         MR. SPIRO:  Yes, your Honor, and it's clear from the

23    context --

24         THE COURT:  Did the government produce that power

25    point deck?

NB2BJAVC

1          MR. SPIRO:  The power point we have.  What we don't

2     have is the emails from the executes of JPMorgan around the

3     same time, which you can tell from the circumstances in other

4     families of related emails, talking about discussing and

5     putting into context what they cherrypicked into their

6     complaint.  And so all we're saying is, they should produce

7     these.  They have them.

8          THE COURT:  You want me to ask the government, to

9     order the government to what?  Order them to do what?

10         MR. SPIRO:  The original request -- and the request

11    that I'm not obviously withdrawing in any way, shape or form,

12    is that they take this custodian who obviously is relevant

13    enough --

14         THE COURT:  What custodian?

15         MR. SPIRO:  ███████████ the JPMorgan executive

16    that's on this email chain.  They have his in-box.  They have

17    it preserved.

18         THE COURT:  I don't see his name here.

19         MR. SPIRO:  At the top of the screen.

20         THE COURT:  I'm talking about the complaint.

21         MR. SPIRO:  They are just sanitizing the complaint to

22    not include his name. We have the email.

23         THE COURT:  Where is it referred to?

24         MR. SPIRO:  It just says on or about July 2, 2021,

25    Javice email to JPMorgan Chase executives.  We have the email.

NB2BJAVC

          THE COURT:  On or about July 7, 2021, Javice presented

to JPMorgan Chase, is that the paragraph?

          MR. SPIRO:  I'm talking about 19B.

          THE COURT:  B as in boy?

          MR. SPIRO:  B as in boy, yes, your Honor.

          THE COURT:  On or about July 2, 2021, is that the

paragraph?

          MR. SPIRO:  Yes, your Honor.

          THE COURT:  It doesn't talk about ████████████

          MR. SPIRO:  No, your Honor.  The complaint in many

places is sanitized by not including their actual names.  But

if you cross-reference it to the email --

          THE COURT:  The name is there, Javice.

          MR. SPIRO:  Javice is the defendant, so they're not

sanitizing Javice.  But when it says Javice email, JPM, the

person that she is emailing is the person I'm identifying.

They just sanitized it.

          THE COURT:  He's the recipient?

          MR. SPIRO:  Correct.

          THE COURT:  The answer is no.  There's nothing about

this that has anything to do with anything that would be

required by Rule 16.  You're looking for discovery.

          MR. BUCKLEY:  Your Honor, this is Sean Buckley on

behalf of Mr. Amar.  May I just interject?

          THE COURT:  You may.

NB2BJAVC

1          MR. BUCKLEY:  Thank you, Judge.  I think the issue

2    here at least from our perspective is that it is broader than

3    these individual email accounts.  What has occurred here is the

4    government issued a very broad grand jury subpoena that

5    captured any communication imaginable related to the

6    transaction, related to my client, related to Ms. Javice.  What

7    happened subsequent to the issuance of that subpoena is that,

8    the government in coordination with JPMorgan narrowed the scope

9    of that request.  Our position is that they improperly

10   narrowed.

11         THE COURT:  Do you know how it narrowed?

12         MR. BUCKLEY:  We do not, your Honor.  We have asked

13   for that and have not been provided that information.

14         THE COURT:  Shouldn't they have that information,

15   Ms. McLeod?  Shouldn't they know if the subpoena has been

16   narrowed?

17         MS. McLEOD:  Your Honor, we produced to them our grand

18   jury subpoena request.  The answer is no.  I think that's

19   essentially what they're asking for in their Rule 17

20   application for the communications.

21         THE COURT:  No, I don't mean the communications.  At

22   some point the government says, I'll be satisfied if you

23   produce this and this.  It's usually a document that clarifies

24   what was requested in the first instance.

25         MS. McLEOD:  I don't think we ever had a conversation

NB2BJAVC

1    where we said, if you produce X.  That's it.  I think we, as is

2    common in any sort of major large scale white collar cases --

3             THE COURT:  You negotiate the practical application.

4             MS. McLEOD:  Right.  We set priorities for what we

5    would like first.

6             THE COURT:  I don't believe the government is required

7    to produce that, Mr. Buckley.

8             MR. BUCKLEY:  Your Honor, the reason that I raise that

9    is because what we are seeking here and what we believe that

10   the government is obligated to seek goes beyond just complying

11   with its *Giglio* obligations.  And this is something that your

12   Honor noted at Mr. Amar's initial appearance about the fact

13   that other communications that are not relied upon in the

14   complaint, nevertheless may be material to the presentation of

15   the defense and the preparation of the defense.  Specifically

16   here communications between and among JPMorgan personnel

17   discussing the acquisition and the post-acquisition behavior,

18   their reliance upon statements made by the defendants here --

19            THE COURT:  That's one of the four paragraphs on page

20   11.

21            MR. BUCKLEY:  That's correct, your Honor.

22            THE COURT:  That's the internal JPMorgan Chase

23   communications.

24            MR. BUCKLEY:  Correct, your Honor.  And what has

25   occurred here at least from what we are able to tell from

NB2BJAVC

discovery is that they have been selected, but a full

comprehensive search has not been done.  For example, going

back to the email referencing Mr. Amar, CC-1, that you and

Mr. Spiro were discussing a moment ago, that's an email that

contains only a portion of the relevant communications.

There's nothing in there about what that executive then went on

and said to others about what Mr. Amar represented; what he

replied upon, whether any of the representations, either

pre-acquisition or post-acquisition were material.  And that's

the type of information as your Honor noted in July is directly

relevant.  And similarly --

            THE COURT:  In a civil case you get it, but in a

criminal case it's beyond Rule 16.

            MR. BUCKLEY:  Well, the point, Judge, is that we don't

believe it is beyond Rule 16 because of the initial subpoena

that was issued.  Those materials are in the control of the

government, maybe not the government's physical custody, but

they are in the control of the government.  And permitting it

to proceed in this way where it is essentially farming out its

investigative obligations to determine both the good and the

bad to a private entity is permitting it to duck its ethical

obligations here.  And it will leave us no choice -- and this

is something I believe Mr. Spiro was also alluding to -- it has

been raised at each conference to date the possibility or the

specter of a Rule 17C subpoena.

NB2BJAVC

1          And the government's opposition here now takes that on

2    directly, and we're going to be left with no resort except to

3    seek Rule 17C subpoenas for this information that is --

4          THE COURT:  Mr. Buckley, I never interfere with how a

5    defendant wants to try to prove its case or prepare its case.

6    You do what you think you want to do, and I'll rule on it.  The

7    government says it has produced all its documents required to

8    be produced in response to each of these four categories.

9          MR. BUCKLEY:  They have produced all of the documents

10   in their physical possession.

11         THE COURT:  Now the question is, therefore, whether

12   they should ask for JPMorgan Chase for more.  That point is

13   your point, and it's Mr. Spiros's point.  And the only case

14   that you cite is *United States v. Stein*.  That's Judge Kaplan's

15   case, 488 F. Supp 2d, 350.  Judge Kaplan ruled in a particular

16   relationship where there was criminal suit brought against one

17   of the former employees of an accounting firm.  And the

18   accounting firm had entered into a deferred prosecution

19   agreement where it was obligated to produce all documents that

20   the government required to be produced or asked to be produced.

21   But there was a relationship involved in that case where it

22   doesn't -- where there's not in this case.

23         What you're asking for, Mr. Buckley, is discovery.

24   It's not documents that are admissible.  It's not in the terms

25   of Rule 16, documents that the government is required to

NB2BJAVC

1   produce.  It's not material in preparing your defense because

2   you don't know what's going to come out of it.  You don't know

3   what the government has or could get.  You know what the

4   government has because they produced it, but you don't know

5   what JPMorgan Chase has or doesn't have.  Presumably JPMorgan

6   Chase has produced in good faith in response to the

7   government's subpoena.  You have no reason to quarrel with

8   that.  You're wanting more, and I don't think you're entitled

9   to more.  Specific instances, you may affect my decision, but

10  in general that's my ruling.

11          MR. SPIRO:  Yes, your Honor.  Some of this I think --

12  and it's well treaded in the history of this case.  This

13  deference to JPMorgan both on the part of the government and

14  here, it can only concern us because the reality is as the

15  Court might remember, JPMorgan Chase sued our clients.

16          THE COURT:  I know there's an SEC lawsuit against your

17  client, and there is a JPMorgan Chase case against your client,

18  and there's a criminal case against your client.  I know all

19  about that.

20          MR. SPIRO:  And there's no reason to think that

21  JPMorgan is some calling balls and strikes recipient of this

22  subpoena.  In fact, there's reason to think the opposite when

23  the privilege log, just as another example, the way to test

24  this.

25          THE COURT:  I don't want to go all over the place. You

NB2BJAVC

1    want to challenge the privilege log, I'll hear you on it.  But

2    let's get off the generalities.  We've finished with ████

3    ████    Who's next?

4        MR. SPIRO:  Let me ask this question given evolving

5    with the Court's remarks and maintaining our position.  My

6    colleague read a quote of your Honor's, and your Honor

7    remembers it and sees it in the writing.  Judge Liman had a

8    similar quote in the SEC matter.  The government themselves has

9    their subpoena.  If we give the Court a 17C subpoena for all of

10   this information that we've been discussing, is that the

11   simplest way for us to proceed at this point?

12       THE COURT:  I don't give advice anymore. I gave that

13   up 25 years ago.  Now I just make mistakes.

14       MR. SPIRO:  I don't think so, your Honor.  Is a way

15   to -- and again, this has come up.  I'm not treading new ground

16   here either.  This has come up at every court appearance.

17       THE COURT:  I'm not telling you what I will rule on a

18   Rule 17C subpoena.  If you issue a subpoena, do I have to sign

19   one or do you just issue it?

20       MR. SPIRO:  I think you have to sign it.

21       THE COURT:  I have to sign it.  So if you give me a

22   subpoena, maybe the government won't object.  If they object, I

23   have to rule.  If they don't object, Chase could object by a

24   motion to quash.  I'm not making any advance rulings.

25       MR. SPIRO:  I was going to literally hand up.  I've

NB2BJAVC

1    been trying to get this information I've got in every other

2    criminal case I've ever handled.

3              THE COURT:  I doubt it.

4              MR. SPIRO:  I was going to hand up a 17C subpoena and

5    ask you to sign it, your Honor.

6              THE COURT:  I doubt it.  You ever do it by motion,

7    don't you?

8              MR. SPIRO:  No.  In fact, I don't know that the

9    government has any basis to object.  I guess some other person

10   could move to quash.

11             THE COURT:  What's the rule, Ms. McLeod?

12             MS. McLEOD:  So I myself have seen it perceived

13   differently.  Typically the defendants try to attempt to make

14   some sort of a showing under *Nixon* to satisfy the Court who's

15   the ultimate sort of gatekeeper on Rule 17.

16             THE COURT:  You briefed the issue.

17             MR. BUCKLEY:  Yes, your Honor.  We've briefed the

18   issue.

19             THE COURT:  Both of you briefed the issue. Let me read

20   the rule.

21             MR. BUCKLEY:  It's Rule 17C, your Honor.  But the

22   defense -- the rule itself does not provide a mechanism.  It

23   does not state that it need be done pursuant to a motion.  The

24   rule only states that a motion to quash for unreasonable or

25   unduly burdensomeness could be granted.

NB2BJAVC

1          Now in practice many courts have required a formal

2     motion from the defendants.  We disagree with Ms. McLeod's

3     representation that we must comply with the *Nixon* standard.

4          THE COURT:  Let's read the Rule 17A.

5          MR. BUCKLEY:  17C.

6          THE COURT:  17A, a subpoena must state etc., etc.,

7     etc, The second sentence, The clerk must issue a blank

8     subpoena, sign and sealed to the party requesting it, and that

9     party must fill in the blanks before the subpoena is served. It

10    doesn't say anything about the Court.

11         MR. BUCKLEY:  We're happy to proceed that way, your

12    Honor.

13         THE COURT:  I never looked into this.  I don't know,

14    but I think the clerk signs it, you can serve it.  And it's up

15    to JPMorgan Chase to react I guess.

16         MR. BUCKLEY:  Understood, your Honor.

17         THE COURT:  If the government objects to that, they

18    should let me know.

19         MS. McLEOD:  I agree with Mr. Buckley.  I think some

20    courts in this district do prefer to have a motion, but I also

21    agree that the rule does not specify as to how it must proceed.

22    I think it's out of an abundance of caution sometimes that

23    defendants go through the Court first --

24         THE COURT:  Because it saves time.

25         MS. McLEOD:  -- rather than brief it on the back end.

NB2BJAVC

 1             THE COURT:  It saves time.

 2             MS. McLEOD:  It's really up to the defendants.

 3             THE COURT:  It saves time.  In *Stein* Judge Kaplan took

 4    it up in the context as is here, Rule 16 and Rule 17 motion.

 5    And then he had the subpoena served or he just asked the

 6    respondent if it would move to quash.  And when they moved to

 7    quash, he decided all aspects together.  It's probably the

 8    better procedure.  But Mr. Spiro, Mr. Buckley, you want to

 9    serve a subpoena, follow Rule 17A and 17C, they should do what

10    they want.  I follow the rules best I can.

11             MR. SPIRO:  Thank you, Judge.

12             MR. BUCKLEY:  Thank you, Judge.

13             MR. SPIRO:  Your Honor, I would like to discuss one

14    other custodian.  And before I do it as we pull it up, the

15    issue of the privilege log came up previously, your Honor.

16    Just so the Court is aware, we made the point that the

17    privilege log that was produced by JPMorgan had some -- this is

18    it.  I don't know you can see it on my table, but it's

19    thousands and thousands of rows.

20             And the main point we were making was, one, to

21    elucidate to your Honor that what's going on here is not

22    everyday.  And that the government did not object to a single

23    designation or redaction within all of these documents.  Again,

24    never seen it before.  Your Honor had suggested that there

25    would be some sampling that your Honor could look at, which is

NB2BJAVC

1   how most cases proceed, or at least there's some objection.

2   And the point that I wanted to make regarding the privilege

3   logs is, it shows the closest coordination.  It shows what's

4   really going on here.  So now that I've put that on the record,

5   if we could go back to the missing custodians.  This is

6   ███████████, who is discussed in the complaint, who's referenced

7   as again --

8           THE COURT:  What paragraph number?

9           MR. SPIRO:  It's criminal complaint 19E.  So again

10  important and materially enough to put in the complaint to form

11  the basis of probable cause, the JPMorgan employee wrote in an

12  email -- so we know that this person has emails obviously.

13  They're talking about the deal.  They're talking about what's

14  relevant.  The government concedes as much.  It's in their

15  complaint.  We don't have the rest of the underlying

16  communications regarding this even precise fact.

17          So again, all that they're doing, this all exists,

18  right, in a computer system.  JPMorgan has the person's email

19  custodian mailbox, and it just takes one click of a button and

20  it moves from this word "possession," which has taken on

21  extreme meaning here today.  That's what we're taking about.

22  It's just that simple.  So they say to JPMorgan in essence,

23  whether they say it directly or it's JPMorgan doing the

24  cherrypicking or whatever is going on behind closed doors, the

25  reality is they're basically saying, no, no, no, just give us

NB2BJAVC

1    the one really bad email and don't give us anything else. And

2    That's not the way this Court should proceed and that's not the

3    way this case should proceed.

4        MS. McLEOD:  Your Honor, I think I have a fairly

5    simple answer to this one.

6        THE COURT:  Go ahead.

7        MS. McLEOD:  Again, to the extent that there are

8    emails quoted in the complaint, the defendants have those.

9    Those have been produced.  ██████████  we were told by JPMorgan

10   Chase left JPMorgan Chase before the litigation hold went into

11   place.  So they do not actually have his in-box because he left

12   prior to the hold, prior to the preservation of all the

13   in-boxes to the extent it was done.  So it's not even in

14   JPMorgan Chase's possession.

15       MR. BUCKLEY:  The bank is a regulated entity, your

16   Honor.  I'm not sure even if the absence of a litigation hold

17   how emails of the bank --

18       THE COURT:  If you're using company emails, he has no

19   right to -- the emails still exist.

20       MS. McLEOD:  We were informed by JPMorgan Chase that

21   they did not have his in-box.  We can confirm.

22       THE COURT:  If this is part of a chain or refers to

23   other documents, those documents in that chain have to be

24   produced.

25       MS. McLEOD:  Yes, your Honor.

NB2BJAVC

1        MR. SPIRO:  May I have moment to confer with my

2   colleagues, your Honor?

3        THE COURT:  Yes.

4        (Counsel conferred)

5        THE COURT:  You want to use the jury room?

6        MR. SPIRO:  No, your Honor.  We're quick talkers.

7   Your Honor, given the Court's comments today, but I'm given

8   comfort by the Court's earlier comments on internal JPMorgan

9   communications.  I'm given comfort by Judge Liman's comments.

10  I'm given comfort by the breadth of the government's own

11  subpoena, we're going to issue a Rule 17C subpoena today for

12  everything that we ought to get, and hopefully we get it and we

13  can have a fair process and a fair trial here.

14       MR. BUCKLEY:  Just one amendment to that.  It may not

15  be today just so that we can confer with one another.

16       THE COURT:  I thought it was a rhetorical today.

17       MR. BUCKLEY:  Understood.

18       THE COURT:  Anything else you want me to do either

19  side?

20       MS. McLEOD:  Yes, your Honor.

21       THE COURT:  I should mention this on the record.

22  Mr. Spiro's and Mr. Buckley's time to reply was tomorrow or

23  Monday, and we called to see if they wanted us to postpone

24  today's conference until after they had a chance to reply, or

25  they preferred us to make the rulings today, and they would

NB2BJAVC

1    raise any points that they wanted to make in the reply briefs

2    into the oral discussion.  So I've held today's conference as

3    scheduled, and I made my rulings.  But if there's something I

4    missed or you miss saying, Mr. Spiro, I don't want to cut you

5    off.

6          MR. SPIRO:  No, your Honor.  And I very much

7    appreciate those remarks.  I don't feel that I have anything

8    further to add now, again, given the Court's comments.  I stand

9    by what I said and what we wrote.  And I think that --

10         THE COURT:  I'm not giving you all that you want.  You

11   have the record.  You did what you did, and I made my rulings.

12         MR. SPIRO:  Yes, your Honor.  Only thing the defense

13   would ask --

14         THE COURT:  You're not giving in to me.  You're

15   standing your position.

16         MR. SPIRO:  Correct. The only thing I would ask is

17   that your Honor issue the order.  And perhaps when the Court

18   sees what falls and shakes out of the trees after this order,

19   your Honor might see what I'm talking about.

20         THE COURT:  Provides it's a fruit I enjoy eating.  Is

21   there anything else?  You started to say something Ms. McLeod.

22         MS. McLEOD:  Yes, your Honor.  Your Honor had

23   indicated at the August conference that at this conference we

24   would set a motion schedule and a trial date, and that we would

25   also set a date by which the defendants should provide notice

NB2BJAVC

1    of any advice of counsel defense.  And so we're prepared to do

2    that.  I know your Honor has a busy calendar.

3            THE COURT:  Let's talk about one thing at a time.

4            MR. BUCKLEY:  Your Honor, on behalf of Mr. Amar, we

5    would submit that it's premature to set any of those dates,

6    particularly in view of the fact that you've now authorized us

7    to issue a 17C subpoena.

8            THE COURT:  I didn't authorize you to do anything.

9    You do anything you want.  I think it's appropriate.  What are

10   the three things?  Advice of counsel.  What was the second

11   thing you said?

12           MS. McLEOD:  Trial date.

13           THE COURT:  Yeah.

14           MS. McLEOD:  And motion schedule.

15           THE COURT:  Have you finished production except the

16   two things you have to do.

17           MS. McLEOD:  Everything in our possession has gone

18   out.

19           MR. SPIRO:  If it's gone out, we don't have it yet,

20   your Honor.  We don't have it ingested yet, so we're not in a

21   position to answer.

22           THE COURT:  When will you be ready for a motion

23   schedule, Mr. Spiro?

24           MR. SPIRO:  The moment that the ingestion period is

25   done and we have all the documents that we actually have --

NB2BJAVC

```
 1              THE COURT:  A date?  Don't assume that the 17C is out.
 2              MR. BUCKLEY:  I'm sorry, Judge.
 3              THE COURT:  I said don't assume that you're getting
 4    the 17C subpoena.  I don't want to wait.
 5              MR. SPIRO:  No, your Honor.  I'm just talking about
 6    getting --
 7              THE COURT:  How about scheduling a conference first
 8    half of January.
 9              MR. SPIRO:  That's fine, your Honor.
10              THE COURT:  And then we'll set dates at that time.
11              MR. SPIRO:  That sounds like an appropriate schedule,
12    your Honor.
13              MR. BUCKLEY:  I agree, your Honor.
14              MS. McLEOD:  As long as there's a firm commitment from
15    the parties that we are ready to set a trial date.
16              THE COURT:  They're not going to give you any
17    commitment.  The only commitment you're interested in is me.
18              MS. McLEOD:  I'm certainly interested in that.  I
19    think, from the government's perspective, there's a concern
20    that the dates are going to start filling up in everyone's
21    calendar.  There's a lot of trial counsel sitting in this room.
22              THE COURT:  Let's do this.  It seems to me at our next
23    meeting defendants should be required to state if they're going
24    to rely on an advice of counsel defense.  What else is required
25    in relationship to that, Ms. McLeod, just the notice?
```

NB2BJAVC

1          MS. McLEOD:  As well as the bases and any documents.

2          THE COURT:  What's the rule?

3          MS. McLEOD:  There's no rule in the rule of criminal

4    procedure as to advice of counsel.

5          THE COURT:  But in defense there is a rule that

6    defenses have to be identified.

7          MR. SPIRO:  I don't believe that there is, your Honor.

8    And again, we would ask to set that after we have the discovery

9    we've been trying to get for the entire year that the

10   government has constantly either been wrong about or

11   misrepresented to this Court.  So we still don't have it, and

12   all I'm asking for is one court appearance where the defendant

13   gets a chance to actually look at the minimal discovery we're

14   getting about the relevant issues as far as I'm concerned, and

15   then give the Court --

16         THE COURT:  I think I can expect it in first half of

17   January.  You would know by then whether you're going to have

18   it or not.

19         MR. BUCKLEY:  Your Honor, if I could just clarify

20   too --

21         THE COURT:  If you have it, you notice it and you

22   withdraw it.  You could do that.

23         MR. BUCKLEY:  Part of the issues, Judge, as Mr. Spiro

24   indicated before, the privilege logs occupying those three

25   enormous binders on his desk, that is going to be a subject of

NB2BJAVC

litigation between the defense and JPMorgan.  And until we have

visibility into those documents, because JPMorgan maintained

all of the Frank correspondence between and among the

defendants, but also between and among their attorneys.  It is

impossible for the defense to assess at this juncture -- and I

don't believe it will be possible to do so in the first half of

January -- whether to take the drastic step of asserting an

advice of counsel defense that has broad implications as far as

privilege waiver, and can even constitute subject matter

waiver.

          With respect to whether it is an affirmative defense

that is required to be disclosed under the Rule 16, it is not,

your Honor.  It is not one of the enumerated affirmative

defenses that Rule 16 requires advance notice of.  Now, of

course, we recognize that as a matter of efficiency we should

give advance disclosure, such that if there is going to be

litigation over the scope and nature of the waiver, were we to

assert it, it should be noticed in advance of trial.  But

respectfully, Judge, I think it would be premature to require

us to give that notice.

          THE COURT:  At what point would it be reasonable?

          MR. SPIRO:  The moment that we are done with the

reviewing of the privilege information or the information that

JPMorgan purports to be privilege, that they're already walking

back on mind you, and the Rule 16 disclosure is complete, we

NB2BJAVC

1  will then have a chance to assess, like we do in every case,

2  the state of affairs, and we will promptly give notice.

3           MS. McLEOD:  Your Honor, if I could just be heard on

4  this briefly.  I think as your Honor pointed out correctly at

5  the last conference, advice of counsel is a subjective defense

6  about what the defendants believed at the time.  That

7  information is already within the defendant's possession.

8  There is no need to await the indefinite end of possibly

9  protracted privilege litigation in order to provide notice to

10  the government, and then potentially kickoff another round of

11  discovery about privilege.  The concern I think the government

12  has is that the defendants have frankly been dragging their

13  feet on setting any sort of deadline of any type in this case.

14  And at this rate, this case will never be tried.

15           THE COURT:  When would you think you want to try it?

16           MS. McLEOD:  When would we like to try the case, your

17  Honor?

18           THE COURT:  Yes.

19           MS. McLEOD:  First I'll give you a quick estimate of

20  the case in chief.

21           THE COURT:  Just tell me when.

22           MS. McLEOD:  I think the best option is fall of 2024,

23  given your Honor's schedule and what we understand at least

24  Mr. Buckley's trial schedule to be.

25           THE COURT:  We'll set a trial date say November 4,

NB2BJAVC

1    2024.  We can certainly finish everything before then, and that

2    will give us an opportunity to get a schedule in.

3            MS. McLEOD:  Approximately four weeks for the

4    government's case in chief, your Honor.

5            THE COURT:  Off the record.

6            (Discussion held off the record)

7            THE COURT:  On the record.  We'll set an October 28,

8    2024 trial date.

9            MR. BUCKLEY:  Your Honor, could I request that we

10   still have a conference in earlier or mid-January as the Court

11   originally suggested.

12           THE COURT:  Yes, I want to work backwards.

13           MR. BUCKLEY:  Just because, while I understand

14   Ms. McLeod said that we've been dragging our feet, the simple

15   fact is --

16           THE COURT:  Nobody's been dragging their feet.

17   Everybody works hard.  Final pretrial conference will be on

18   October 15, at 11:00.  Look at the rules of what we need at

19   that time.  But briefly, it's jury instructions, post-jury

20   instructions, your briefs.  I'll be dealing with all motions *in*

21   *limine* at that time.  Everything that we need to do to prepare

22   for trial, joint pretrial order, that sort of thing. And you

23   schedule what's appropriate leading up to that, as long as you

24   give me three or more days to be able to digest the materials,

25   probably a week.  What do we want to accomplish at the next

NB2BJAVC

1    conference?

2          MR. BUCKLEY:  Two things, your Honor.  One, assuming

3    we're able to digest the discovery produced to date, set

4    pretrial motions that are separate and apart from *in limine*

5    motions.  I expect that those are likely to be substantial from

6    what we've seen thus far.

7          THE COURT:  What's the nature of them?

8          MR. BUCKLEY:  We're still assessing the discovery,

9    your Honor.

10          THE COURT:  Generally speaking, you're not going to be

11    bound by this.

12          MR. BUCKLEY:  Motions challenging the face of the

13    indictment, motions potentially to suppress.  There were search

14    warrants at issue here.  There are issues with regard to

15    questions surrounding statements made by the defendants.  So

16    are just a general flavor.  I expect we'll be in a position to

17    provide more detail and set a schedule in January.

18          The other reason that we would request the January

19    date though is, while we appreciate your Honor's consideration

20    in setting it in the Fall of 2024, depending on the volume of

21    discovery and where things stand, we may have to ask the Court

22    to adjust that date.

23          THE COURT:  Which date?

24          MR. BUCKLEY:  The October 28, trial date.

25          THE COURT:  I don't like to set dates that are

NB2BJAVC

1     changeable.

2              MR. SPIRO:  Same, here, your Honor.  I would just

3     simply say until we get the Rule 16 discovery, which I can tell

4     the Court we certainly have not been dragging our feet on.

5     It's impossible for the defense to know.

6              THE COURT:  How much time do you need to respond to my

7     order, Ms. McLeod, for discovery.

8              MS. McLEOD:  As to the following up on the email

9     chains?

10             THE COURT:  A week?

11             MS. McLEOD:  Two weeks.

12             THE COURT:  Two weeks.  Can you respond to my order of

13    production by November 17, 2023.  Are you folks planning to

14    issue a Rule 17C subpoena?

15             MR. SPIRO:  We are, your Honor.

16             THE COURT:  If you are doing it, do it quickly because

17    I'm now going to set a date for resolving any issues brought on

18    by motion to quash.  How long does a party have to bring a

19    motion to quash?

20             MR. BUCKLEY:  It's not specified by the rules, your

21    Honor.  But I think typically it's within a reasonable period

22    of time which is what the rule says which is construed as 14

23    days.

24             THE COURT:  Why don't you order production by December

25    1.

NB2BJAVC

1          MR. SPIRO:  Yes, your Honor.

2

3          THE COURT:  Why don't you put into the Rule 17C

4  subpoena -- I don't know if it's appropriate or not, but

5  something to the effect that any motion to quash should be made

6  by December 1.

7          MR. SPIRO:  Yes, Judge.

8          THE COURT:  That means I can hold a status conference,

9  let's say January 17.

10          MR. SPIRO:  Yes, your Honor, at 11.

11          THE COURT:  At 11.  And I'll rule on the Rule 17

12  subpoena, unless I do it before then.  We will set a motion

13  schedule at that time, and I'll require on that date any

14  defenses that will be expected, any affirmative defenses to be

15  noticed.  Okay.  You look quizzical, Mr. Spiro.

16          MR. SPIRO:  I'm --

17          MR. BUCKLEY:  I apologize.  I missed that last

18  statement.

19          THE COURT:  Any notices of affirmative defenses should

20  be stated, the notice should be stated by that status

21  conference of January 17.

22          MR. BUCKLEY:  Just to be clear, that does not include

23  advice of counsel?

24          THE COURT:  Yes, it does.  It's an affirmative

25  defense.

NB2BJAVC

1      MR. SPIRO:  Your Honor, respectfully I will --

2      THE COURT:  Give me a date.

3      MR. SPIRO:  On January 17, once we've reviewed the

4  discovery and the privilege logs that have been overly redacted

5  which we were supposed to address a month ago, I will be able

6  to give a date.  But until I do that, it's impossible.

7      THE COURT:  Can I not rule on something that's open?

8      MR. SPIRO:  Well, no.  I don't know.  If your Honor

9  would recall, we were here to challenge the privileged logs a

10  month ago, and the same thing happened that has happened a few

11  times --

12      THE COURT:  Why don't you ask in your Rule 17 subpoena

13  to produce the documents claimed to be privileged, or go

14  over -- if you could tell from a privilege log some documents

15  that you believe clearly are not privileged, call for those

16  documents.

17      MR. SPIRO:  Understood, your Honor.  We will and then

18  we will --

19      THE COURT:  And that way there'll be a motion to

20  quash, and that will set up a ruling.

21      MR. SPIRO:  Yes, your Honor.  And by doing that and by

22  litigating that issue and getting the actual discovery, we'll

23  be in a position then immediately, again upon ruling those

24  things, to give the Court an answer to its question.

25      But I can't just pick a date in a vacuum that's nearly

NB2BJAVC

1   a year before the actual trial date to just say, for sure on

2   such a date I'll be in a position because I'm relying on other

3   individuals.  I'm ruling on the Rule 16 production.

4          THE COURT:  Look forward to my requirement in the

5   first half of February.

6          MR. SPIRO:  Thank you, your Honor.

7          THE COURT:  We'll set a motion schedule in January at

8   the conference.  What am I missing, Ms. McLeod?

9          MS. McLEOD:  Your Honor, the government would move to

10  exclude time between today and October 28, 2024, so that the

11  parties can file any pretrial motions, the defendants can

12  continue to review discovery and the parties can prepare for

13  trial.

14         THE COURT:  Mr. Spiro.

15         MR. SPIRO:  Yes.  As I have said previously and

16  because of the delay tactics of the prosecutors in producing

17  documents, I'm not going to consent to that.  And your Honor

18  every time has found good cause to grant such a request.

19         THE COURT:  Suppose we grant a request until January

20  17.  Defense, you consent?

21         MR. SPIRO:  No, your Honor.  As I said a moment ago,

22  we haven't consented because of the same sorts of arguments and

23  comments I've made throughout this process, but I understand

24  that the Court has each and every time found good cause.

25         THE COURT:  No, I'm going to do something else.  The

NB2BJAVC

1    trial will begin January 16.

2           MR. SPIRO:  Then, your Honor, we will consent.  If the

3    Court is going to force me to go to trial before I have the

4    discovery, then we will consent.

5           THE COURT:  Mr. Buckley?

6           MR. BUCKLEY:  No objection, your Honor.

7           THE COURT:  Without objection, time is excluded until

8    January 17, 2024.  Anything else, folks?

9           MS. McLEOD:  No.  Thank you, your Honor.

10          THE COURT:  Whatever holidays come up before then,

11   happy holidays.

12           (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25