# Exhibit B

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| United States of America | ) |
|---|---|
| v. | ) |
| Charlie Javice and Olivier Amar | ) Case No. 1:23-cr-00251-AKH |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To: JPMorgan Chase Bank, N.A.

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

See Appendix A, enclosed herein

| Place: Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010 | Date and Time: 12/01/2023 11:59 pm |
|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/09/2023

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Charlie Javice , who requests this subpoena, are:

Alex Spiro, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor
alexspiro@quinnemanuel.com, 212-849-7000

### Notice to those who use this form to request a subpoena

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case  (Page 2)

Case No. 1:23-cr-00251-AKH

# PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Page 3)

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

**(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

**(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

**(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

# APPENDIX A

## DEFINITIONS

1. "**Acquisition**" means the purchase of Frank by JPMC, pursuant to the terms of the Merger Agreement and any related diligence performed by Frank, JPMC, or third parties acting at the direction of Frank or JPMC.

2. "**Action**" shall mean the criminal proceeding pending in the United States District Court for the Southern District of New York under Case No. 1:23-cr-00251 (AKH).

3. "**Acxiom**" shall mean Acxiom LLC, the Third Party engaged with respect to a data project in JPMC's diligence of Frank, and its agents, officers, employees, representatives, or any Person acting on its behalf, and any corporate subsidiaries, parents, other affiliated corporations, or predecessors or successors in interest.

4. "**All/Any/Each**" have the meaning ascribed to those terms in S.D.N.Y. Local Rule 26.3 and shall each be construed as encompassing any and all.

5. "**Civil Action**" shall mean the civil action in the United States District Court for the District of Delaware under Case No. 1:22-cv-01621 (JDW).

6. "**Communication(s)**" has the meaning ascribed to that term in S.D.N.Y. Local Rule 26.3 and means "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)," including, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, or question by any medium, whether by written, oral, or other means, including, but not limited to, electronic communications, electronic mail, text messaging, and other letters, telephone conversations, telephonic notes in connection with same, face-to-face meetings, and notes in connection with same.

7. "**Concerning**" and "**Concern(s)**" has the meaning ascribed to that term in S.D.N.Y. Local Rule 26.3 and means "relating to, referring to, describing, evidencing or constituting."

8. "**Criminal Complaint**" shall mean the complaint filed in this Criminal Action (ECF 1).

9. "**Data**" shall mean any statistics, analytics, or facts that Frank, JPMC, or any Third Party collected and maintained for purposes of analysis, measurement, or growth of any aspect of the Frank business, including, but not limited to, any marketing lists, contact lists, demographic statistics of Frank users, or measurements of website activity.

10. "**Date**" or "**Dates**" shall mean the exact day, month, and year, if ascertainable. If not ascertainable, the term means the closest approximation that can be made by means of relationship to other events, locations or matters.

11. "**Defendants**" means Charlie Javice and Olivier Amar.

12. "**Document(s)**" has the meaning ascribed to that term in S.D.N.Y. Local Rule 26.3 and Federal Rule of Civil Procedure 34(a)(1)(A) and means any "writings, drawings, graphs,

1

charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly, or, if necessary, after translation by the responding party into a reasonably usable form."

13. "**Entity**" or "**Entities**" shall mean any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include, without limitation, the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

14. "**Frank**" means TAPD, Inc. d/b/a Frank, also referred to as "Finland," "Frontier," and "Greece," is the financial education platform launched by Ms. Javice in April 2017, and any of its successors in interest (including TAPD LLC), agents, officers, employees, representatives, or any Person acting on its behalf. Frank was also known as "Finland" or "Frontier" at relevant times in this Action.

15. "**Government**" means the United States Attorney's Office for the Southern District of New York or the United States Securities and Exchange Commission, and/or any affiliated entity, as well as any agents, attorneys, employee(s), representative(s), or any other Person(s) acting or purporting to act on the United States of America's behalf.

16. "**Government Subpoenas**" shall mean the grand jury subpoenas dated October 13, 2022, January 9, 2023, January 31, 2023, February 3, 2023, February 22, 2023, February 28, 2023, May 4, 2023, issued by the grand jury to JPMC in connection with *United States v. Javice*, 23 Cr. 251 (AKH).

17. "**Including**" shall not be construed to limit any request to the items enumerated after such term but instead shall be construed to mean "including but not limited to" or "including without limitation."

18. "**Integration**" shall mean the process by which JPMC absorbed Frank, including any and all changes in Frank operations, personnel, organizational hierarchy, performance metrics (including the setting of the same), reporting, back-office support, engineering, marketing plans, data use or restrictions.

19. "**Internal Investigation**" shall mean any investigation, inquiry, or other internal action taken by JPMC in connection with Frank or the Defendants.

20. "**JPMC**" means JPMorgan Chase Bank, N.A. and/or any affiliated entity, as well as any agents, attorneys, employee(s), representative(s), or any other Person(s) acting or purporting to act on JPMC's behalf, along with affiliated corporations, or predecessors or successors in interest.

21. "**Merger**" shall mean the merger of Finland Merger Sub, Inc., with and into Frank, which occurred on September 14, 2021, when Frank became a subsidiary of JPMC.

22. **"Merger Agreement"** shall mean that certain Agreement and Plan of Merger, by and among JPMorgan Chase Bank, N.A., Finland Merger Sub, Inc., TAPD, Inc., and Shareholder Representative Services LLC, dated as of August 8, 2021.

23. **"Mr. Amar"** shall mean Defendant Olivier Amar.

24. **"Ms. Javice"** shall mean Defendant Charlie Javice.

25. **"Person(s)"** has the meaning ascribed to that term in S.D.N.Y. Local Rule 26.3 and means "any natural person or any legal entity, including, without limitation, any business or governmental entity or association."

26. **"Pertain(s)"** and **"Pertaining"** mean Concerning and Concern(s) and Concerning, and when referring to any given subject matter, mean, without limitation, any Document, Communication, or Thing that in whole or in part and directly or indirectly concerns, regards, relates to, refers to, reflects, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, alludes to, identifies, states, mentions, deals with, or is in any way relevant to the particular subject matter identified.

27. **"Relevant Time Period"** means the time period from January 1, 2021 through the present, unless otherwise specified.

28. **"Text Message(s)"** means any Communication transmitted by mms, SMS, texting or messaging application.

29. **"Thing(s)"** has the broadest meaning allowable under Federal Rule of Civil Procedure 34. This meaning encompasses, without limitation, any tangible object of any kind and nature other than a Document, including without limitation prototypes, models, and physical specimens thereof.

30. **"Third Party,"** **"Third-Party,"** and **"Third Parties"** shall mean any person not explicitly named in this Action.

31. **"You"**, **"Your,"** and **"Yours"** have the same meaning as "JPMC," defined above.

46. The words **"or"** and **"and"** shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests.

47. Use of the singular also includes the plural and vice-versa.

48. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

49. Any capitalized term specifically defined above shall be deemed capitalized whenever the term appears in these Requests.

3

50. Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as is most appropriate in each case.

## INSTRUCTIONS

1. In addition to the requirements set forth in the S.D.N.Y. Local Rules, which are incorporated herein by reference, the following instructions apply to each Request.

2. These definitions and instructions shall apply in interpreting the scope of the definitions and instructions as well as the individuals Responses below, and are incorporated by reference in future discovery served by Defendant in connection with this Action.

3. You are required to produce every Document requested in Your possession, custody, or control, **except that You are not required to produce non-privileged Documents that You have previously produced to the Government as part of Your bates-numbered formal responses to the Government Subpoenas**.

4. Unless otherwise stated, the time period covered in the Requests is January 1, 2021 to present.

5. Unless otherwise specified, the requests below apply for the entirety of the Relevant Time Period.

6. Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages or similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals.

7. Computer files and similar electronic records should be produced in a readable and text-searchable form. Any password-protected Documents shall be produced with applicable passwords. Any Documents that contain color shall be produced in color.

8. Each page of all Documents produced must be marked with a unique identifier or "Bates Number."

9. This subpoena covers all Documents in or subject to Your possession, custody or control, including all Documents that are not in Your immediate possession but that You have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below, such as, for example, Documents maintained by Your counsel.

10. To the extent there are no responsive Documents to a particular Request, please indicate that in Your response. If a Document once existed and has been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the Document and the details concerning its non-existence.

11. To the extent that a Document otherwise responsive to any of the Requests is withheld on the ground(s) that it is subject to the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, please provide a log that identifies each such Document and the specific reason for which it is being withheld in sufficient detail to allow assessment of the validity of the withholding.

12. If You redact any portion of a Document, please stamp the word "REDACTED" on each portion of the Document that contains redactions and provide the reason for the redactions in sufficient detail to allow assessment of the validity of the claim for redaction.

13. These Requests are continuing; You are required to produce responsive information in accordance with the requirements of Federal Rule of Criminal Procedure 17(c).

14. These Requests require the production of original tangible things in the same form and in the same order as they are kept in the usual course of business. The titles or other descriptions on the boxes, file holders, bindings, or other container in which tangible things are kept are to be left intact. Alternatively, all Documents are to be produced, organized, and labeled to correspond with the categories in this Request.

15. If any information requested in a Request is claimed to be privileged or otherwise immune from discovery, or if any Document is withheld from production based on a claim of privilege, immunity, or other ground, You must furnish a list (*i.e.*, a "privilege log") specifying: (a) the nature of the privilege, immunity, or other ground claimed; (b) the authors of the Document; (c) all persons who received copies of the Document, including the Document's indicated and blind copy recipients; (d) the date of the Document; (e) the type of Document withheld *(e.g.,* memorandum, letter, report, email, *etc.*); and (f) the general subject matter of the Document sufficient to enable Ms. Javice to assess the applicability of the claimed privilege, immunity, or other ground for refusal to produce. For each item of information or Document You withhold based on a claim of privilege, immunity, or other ground, identify such information or Document with sufficient particularity for purposes of a motion to compel. Notwithstanding any claim of privilege or immunity, any information or Documents falling within the scope of the Request which are not privileged or immune from production should be produced.

16. If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions in the preceding paragraph and the rest shall be produced.

17. If any Document requested herein was formerly in Your possession, custody, or control and has been transferred, lost, or destroyed, You shall submit in lieu of each Document a written statement indicating whether the Document: (a) was lost or is missing; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) otherwise has been disposed of. In each instance explain the circumstance of such disposition and state the approximate date thereof.

18. If there are no Documents responsive to any particular Request, Your response shall state so in writing.

19. Documents not otherwise responsive to these Requests shall be produced if such Documents concern, pertain to, relate to, mention, discuss, refer to, describe, or explain the Documents which are called for by these Requests.

20. If You object to any part of any Request, You shall state fully in writing the nature of the objection. Notwithstanding any objections, You shall respond to the Request as narrowed in a way that renders it not overbroad in Your opinion and state the extent to which You have narrowed that Request for purposes of Your response. You shall also comply fully with the other parts of the Request to which You are not objecting.

21. A Document with handwritten, typewritten, or other recorded notes, editing marks, *etc.*, is not and shall not be deemed identical to one without such modifications, additions, or deletions. The term "original" includes the file copy and copies of any Document if there is no actual original or ribbon copy.

# DOCUMENT REQUESTS

1. Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas.

2. Communications and Documents in Your care, custody, or control, sent, received, drafted, created, or revised by any of the individuals listed in Exhibit 2 that pertain to the Merger, Acquisition, Integration, or Internal Investigation, including Communications and Documents pertaining to the following topics:

   a. Data held by Frank prior to the Acquisition;

   b. The use or potential use of such Data by JPMC, including in connection with potential lead generation;

   c. Traffic on or to the Frank website and any of its digital tools, including, but not limited to as such traffic is measured by clicks, engagement, active users, visits, sessions, sign ups, registered users, impressions, FAFSA users, accounts, students, digital profiles, leads, starters, prospects, and customers;

   d. The terms "user," "user sign-up," "registered user," "authenticated user," "customer," "account," "impression," "household," "student," "starter," or "sign-up," "FAFSA," "CAC," "CPC," "CTR," or "SEO";

   e. The valuation of Frank, including any methodology used by JPMC in assessing such valuation prior to or after the Acquisition;

   f. Ms. Javice; or

   g. Mr. Amar.

3. For the period of June 26, 2021 through November 4, 2022, Communications and Documents pertaining to JPMC's use, definition, or interpretation of the term "user."

4. For the period of June 26, 2021 through September 14, 2021, internal email, Text Messages, WhatsApp messages, or other messaging or chat-based communications among JPMC personnel pertaining to Data held or potentially held by Frank.

5. Documents and Communications pertaining to or reflected in the allegations in the Complaint sent, received, drafted, or revised by individuals referenced in the Complaint, including ███ Marketing Executive ███, ███, ███, ███ Engineer-2, ███, ███ Executive-2, ███ Engineer-1 ███, Executive-1 ███, or ███.

6. For the period of July 10, 2022 through the present, Communications and Documents exchanged between JPMC and the Government in connection with this matter, including with respect to compliance with the Government Subpoenas, witness interviews, meetings,

conferrals, and presentations, excluding any Documents produced by JPMC as part of its bates-numbered, formal responses to the Government Subpoenas.

7. Text Messages by and among JPMC personnel involved in the Acquisition, Merger, Integration, or Internal Investigation pertaining to the Acquisition, Merger, Integration, or Internal Investigation.

8. Text Messages, WhatsApp messages, instant messenger communications, or chats, pertaining to or referencing Frank or Ms. Javice sent or received by ████████, ████████, ████████, ████████, ████████, ████████, ████████ Marketing Executive ████████, ████████, ████████, ████████, ████████, Executive-2, ████████, ████████ Executive-1, Executive-1, ████████, or ████████.

9. Internal drafts of diligence trackers pertaining to the Acquisition or Merger.

10. Documents sufficient to show the date and scope of any hold notices issued by JPMC in connection with the Action, Civil Action, Acquisition, or Internal Investigation.

11. Documents sufficient to show all policies pertaining to the use of personal devices and/or messaging applications in connection with business activities in effect from July 1, 2021 to October 13, 2022 applicable to any individual involved in the Acquisition, Merger, or Integration.

12. Documents and Communications sufficient to show JPMC's document retention policies since January 1, 2021 to the extent such policies were applicable to any individual listed on Exhibits 1 and 2 who departed from JPMC's employ since January 1, 2021, including but not limited to, ████████, ████████, Marketing Executive ████████, ████████, ████████, ████████, and ████████.

13. Documents sufficient to show the date on which JPMC deleted or otherwise ceased to have access to data for the following individuals: ████████, ████████, ████████, Marketing Executive ████████, ████████, ████████, ████████, and ████████.

14. Documents and Communications pertaining to Integration, sent, received, drafted, or revised by ████████, ████████, ████████, or ████████.

15. Documents and Communications pertaining to the Frank business unit reviews ("BURs"), quarterly business reviews ("QBRs"), monthly business reviews ("MBRs"), or the Frank "business case," sent, received, drafted, or revised by ████████, ████████, ████████, ████████, ████████, ████████, or ████████.

9

16. Documents and Communications pertaining to the Internal Investigation sent, received, drafted, or revised by ███████, ███████, ███████, ███████, ███████, ███████, or ███████.

17. For the period of August 8, 2021 through January 31, 2023, Documents and Communications pertaining to any actual or potential key performance indicators ("KPIs"), "objectives and key results" ("OKRs"), revenue targets, or "student solutions" for Frank or Ms. Javice.

18. Documents and Communications pertaining to any "marketing assumptions" for Frank by JPMC, including Documents and Communications pertaining to the "max addressable market" for Frank or JPMC, sent, received, drafted, or revised by ███████, ███████ [Marketing Exec], ███████, ███████, ███████, ███████, ███████, ███████, ███████, ███████, ███████, ███████, or ███████.

19. Documents and Communications pertaining to a) the Acquisition and Frank, or b) Ms. Javice, sent, received, drafted, or revised by ███████, ███████ or ███████, including talking points, press strategy, communications strategy, and press releases.

20. Documents and Communications pertaining to Frank and the United States Department of Education sent, received, drafted, or revised by ███████, ███████, ███████, ███████, ███████, or ███████.

21. Documents and Communications pertaining to the Acquisition and related to diligence, sent, received, drafted, or revised by ███████, ███████, ███████, ███████, ███████, ███████, ███████, or ███████.

22. For the period of July 1, 2021 through the present, Documents and Communications pertaining to the marketing budget for Frank post-Merger, sent, received, drafted, or revised by ███████, ███████, ███████, ███████, ███████, or ███████.

23. Documents and Communications sufficient to show JPMC's internal approval process for the Acquisition.

24. Documents and Communications sufficient to show any Third-Party approval process for the Merger or Acquisition, including any governmental or regulatory approval.

25. For the period of March 1, 2021 through July 1, 2021, Communications and Documents pertaining to a potential commercial partnership between JPMC and Frank, the potential purchase or acquisition of Frank by JPMC, or any other contemplated business relationship between JPMC and Frank.

26. For the period of March 1, 2021 through November 4, 2022, Communications and Documents pertaining to Frank and the "FAFSA Simplification Act," FAFSA

10

27. simplification, or the amendment, streamlining, or simplifying of the FAFSA or the FAFSA process, including Documents and Communications pertaining to two-factor authentication, 2-factor authentication, multi-factor authentication, 2FA, or MFA.

27. For the period of January 1, 2018 through the present, Documents and Communications relating to JPMC's course of dealings with Acxiom prior to the August 2021 Frank diligence request, including Documents and Communications pertaining to JPMC's business and financial relationship with Acxiom, JPMC's prior assignments to Acxiom related to diligence, data validation, or customer overlap analysis, and all Communications between JPMC and Acxiom subsequent to the Merger pertaining to Frank or any Frank diligence.

28. For the period of December 1, 2021 through July 31, 2022, Documents and Communications pertaining to the process of shutting down the Frank FAFSA submitter tool, sent, received, drafted, or revised by ▓▓▓▓▓▓, ▓▓▓▓▓▓, Marketing Executive ▓▓▓▓▓▓, ▓▓▓▓▓▓.

29. For the period of September 13, 2022 through January 14, 2023, Documents and Communications pertaining to the decision and process for shutting down the Frank website.

30. Documents sufficient to show the members of the listserv Corpdev_ma@jpmchase.com from the period of June 26, 2021 through September 14, 2021.

31. Documents sufficient to show the individuals who accessed JPMC's internal data room for Project Finland.

32. Documents sufficient to show JPMC attendees of the diligence meetings with Frank representatives, whether via Zoom or in person, including the meetings held on July 7, July 12, July 13, and July 20.

33. For the period of July 1, 2021 through October 31, 2022, Documents and Communications pertaining to Frank's business relationship with Sallie Mae and ACT, sent, received, drafted, or revised by ▓▓▓▓▓▓, ▓▓▓▓▓▓, ▓▓▓▓▓▓, ▓▓▓▓▓▓, ▓▓▓▓▓▓, or Executive-1.

34. For the period of June 1, 2021 through July 31, 2021, Documents and Communications sent, received, drafted, or revised by ▓▓▓▓▓▓ or JPMC personnel, including ▓▓▓▓▓▓'s office staff, pertaining to the July 7, 2021 meeting between Frank representatives and ▓▓▓▓▓▓.

11

# EXHIBIT 1

## Production of ESI

**Image Production Standard.** Except as provided herein, the parties shall produce all non-database ESI and hard copy documents in TIFF format. All TIFF formatted documents will be single-page, black & white, TIFF files. All TIFF images shall be produced in a folder named "**IMAGES**," which shall contain sub-folders named "0001," "0002," etc. Images from a single document shall not span multiple sub-folders.

**Production of Native Files.** For documents and ESI whose native format is MS Excel, MS PowerPoint, MS Access, QuickBooks, other database formats, multi-media files (audio or video), and any other file type that cannot be converted to TIFF, the original native files shall be produced in addition to a single-page TIFF placeholder. Native files shall be produced in a folder named "**NATIVES**."

**Extracted Text or OCR Text for TIFF Images and Native Files.** To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file. Extracted text or OCR files shall be produced in a folder named "**TEXT**."

**Load Files.** The parties' document productions shall include Relativity compatible Load Files, including a DAT file and an Opticon delimited file, that indicate document breaks of the TIFF images and additional fields as identified below. All Load and Cross-reference files shall be produced in a folder named "**DATA**."

**File Name.** Each document image file shall be named with the unique production number of the first page of the document in question followed by the file extension "TIF."

**Document Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or notes shall be maintained as they existed in the original document.

**Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata.

**Production of Metadata.** The following metadata fields associated with each electronic document, to the extent they are available, will be produced.

| Custodian | From | DateSent | File Path |
|---|---|---|---|
| BegBates | Author | DateRcvd | Native Link - (if natives are exchanged) |
| EndBates | To | DateCreated | Text Link - (if text is exchanged) |
| BegAttach | Cc | Date Last Modified | Confidentiality Designation - (for natively produced documents only, if required) |
| EndAttach | Bcc | Importance | Redacted |
| AttachCount | E-mail Subject | Conversation | Exceptions |
| AttachName | Filename | TimeSent | Hash Value |
| ParentBates | Title | TimeRcvd | File Extension |

12

**EXHIBIT 2**

