# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-01621-JDW |
| | ) | |
| CHARLIE JAVICE, OLIVIER AMAR, | ) | |
| CHARLIE JAVICE, in her capacity as Trustee | ) | |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) | |
| TRUST #1, CHARLIE JAVICE, in her capacity as | ) | |
| Trustee of CHARLIE JAVICE 2021 | ) | |
| IRREVOCABLE TRUST #2, and CHARLIE | ) | |
| JAVICE in her capacity as Trustee of CHARLIE | ) | |
| JAVICE 2021 IRREVOCABLE TRUST #3, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CHARLIE JAVICE'S FIRST SET OF REQUESTS TO JPMORGAN
CHASE BANK, N.A. FOR PRODUCTION OF DOCUMENTS (NOS. 1-48)**

      Pursuant to Federal Rules of Civil Procedure 26 and 34 and the applicable Local Civil

Rules for the United States District Court for the District of Delaware, Defendant Charlie Javice

("Ms. Javice"), by and through undersigned counsel, hereby requests that Plaintiff JPMorgan

Chase Bank, N.A. ("JPMC") produce the following articles, documents, or things (the "Requests")

for inspection or copying within thirty (30) days of service of these Requests, at the offices of

Abrams & Bayliss LLP, 20 Montchanin Road, Suite 200, Wilmington, Delaware 19807 and/or via

email at barlow@abramsbayliss.com and qe-charlie@quinnemanuel.com.  The documents and

electronic information requested are to be produced according to the definitions and instructions

below.  These Requests are continuing in nature and require supplemental production in

accordance with the Federal Rules of Civil Procedure.

## DEFINITIONS

The following definitions apply to each Request for Production:

1.      "Action" shall mean the above-captioned civil action in the United States District Court for the District of Delaware.

2.      "Acxiom" shall mean Acxiom LLC, the third-party engaged with respect to a data project in JPMC's diligence of Frank, and its agents, officers, employees, representatives, or any Person acting on its behalf, and any corporate subsidiaries, parents, other affiliated corporations, or predecessors or successors in interest.

3.      "ASL Marketing" shall mean ASL Marketing, Inc., a provider of student marketing data, and its agents, officers, employees, representatives, or any Person acting on its behalf, and any corporate subsidiaries, parents, other affiliated corporations, or predecessors or successors in interest.

4.      "Complaint" shall mean the complaint that JPMC filed in this Action and dated December 22, 2022, including any amendments thereto.

5.      "Date" or "Dates" shall mean the exact day, month, and year, if ascertainable.  If not ascertainable, the term means the closest approximation that can be made by means of relationship to other events, locations or matters.

6.      "Enformion" shall mean Enformion, LLC, the data and identity verification service provider, and its agents, officers, employees, representatives, or any Person acting on its behalf, and any corporate subsidiaries, parents, other affiliated corporations, or predecessors or successors in interest.

7.      "Frank" shall mean TAPD, Inc. d/b/a Frank, the financial education platform launched by Ms. Javice in April 2017, and any of its successors in interest (including TAPD LLC),

2

agents, officers, employees, representatives, or any Person acting on its behalf. Frank was also known as "Finland" or "Frontier" at relevant times in this Action.

8.      "Google Analytics" shall mean Google's web analytics service located at https://analytics.google.com.

9.      "JPMC" or "Plaintiff" (as well as "You," "Your," and "Yours") shall mean JPMorgan Chase Bank, N.A. and its agents, officers, employees, representatives, or any Person acting on its behalf, and also any corporate subsidiaries, parents (including JPMorgan Chase & Company), other affiliated corporations, or predecessors or successors in interest.

10.     "LionTree" shall mean LionTree Advisors, LLC, the investment bank that advised Frank on the Merger and related transactions, and its agents, officers, employees, representatives, or any Person acting on its behalf, and any corporate subsidiaries, parents, other affiliated corporations, or predecessors or successors in interest.

11.     "Merger" shall mean the merger of Finland Merger Sub, Inc., with and into Frank, which occurred on September 14, 2021, when Frank became a subsidiary of JPMC.

12.     "Merger Agreement" shall mean that certain Agreement and Plan of Merger, by and among JPMorgan Chase Bank, N.A., Finland Merger Sub, Inc., TAPD, Inc., and Shareholder Representative Services LLC, dated as of August 8, 2021.

13.     "Merger Consideration" shall have the meaning ascribed to it in the Merger Agreement.

14.     "Ms. Javice" or "Defendant" shall mean Defendant Charlie Javice.

15.     "Related Documents" shall have the meaning ascribed to it in the Merger Agreement, wherein it means "the Escrow Agreement and any other document, agreement, certificate or instrument entered into in connection with" the Merger Agreement.

16.    "Communication" (including its plural form) means, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, or question by any medium, whether by written, oral, or other means, including, but not limited to, electronic communications, electronic mail, text messaging, and other letters, telephone conversations, telephonic notes in connection with same, face-to-face meetings, and notes in connection with same.

17.    "Document" or "Documents" has its broadest meaning under Rule 34(a) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and includes any written, typed, printed, graphic, or recorded matter of any kind or character, however produced or reproduced; any electronically or magnetically recorded matter of any kind or character, however produced or reproduced; and any other matter of any kind or character constituting a recording upon any medium by any means of communication or representation. The foregoing includes, without limitation, all originals, including drafts, masters, duplicates, or copies of: papers, conversations, letters, correspondence, memoranda, summaries, messages, voice mail messages, e-mail messages, text messages, communications, data, databases, minutes, notes, transcripts, statements, circulars, manuals, treatises, books, notebooks, catalogs, pamphlets, flyers, advertisements of any kind, books of account, ledgers, balance sheets, bank deposit slips, bank checks, canceled checks, wire transfers, financial Documents of any kind, files, diaries, diary entries, telephone logs, appointment books, desk or other calendars and similar records of any kind, calendar notes, sound or visual recordings on film, tape, disc, drum, wire or other medium, transcriptions of the foregoing, photographs, sketches, diagrams, drawings, microfilm or microfiche, agreements, contracts, teletype, telegrams, cables, memorials or oral communications, whether by telephone or face-to-face, notices, bulletins, polls, surveys, findings of fact, observations of facts or circumstances, reports, studies, tables, statistics, pleadings, objects, any

4

data, information or statistics contained within any data storage modules, tapes, discs, or other memory device or other information retrievable from storage systems, including without limitation computer generated reports and print-outs. The term "Document" also includes data compilations or databases, including metadata, from which information can be obtained, and translated, if necessary, through detection devices in a reasonably usable form. If any Document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or non-identical copy is a separate "Document."

18.    "Entity" or "Entities" shall mean any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include, without limitation, the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

19.    "Person(s)" shall mean any individual, corporation, limited liability company, limited partnership, limited liability partnership, joint venture, trust, proprietorship, partnership, association, or any other business, legal, or governmental entity or association.

20.    "Thing(s)" has the broadest meaning allowable under Federal Rule of Civil Procedure 34.  This meaning encompasses, without limitation, any tangible object of any kind and nature other than a document, including without limitation prototypes, models, and physical specimens thereof.

21.    "Third Party" or "Third Parties" shall mean any person not explicitly named in this Action.

22.     The terms "all" and "any" mean, each, every, all, and/or "any and all," and should be interpreted broadly to bring within the scope of these requests Documents and Things that might otherwise be construed to be outside their scope.

23.     The terms "concerning" and "regarding" shall mean, without limitation, relating to, referring to, bearing on, reflecting, pertaining to, evidencing, involving, describing, discussing, comprising, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

24.     The term "each" should be understood to include "every," and the term "every" should be understood to include "each."

25.     The terms "include" and "including" shall be deemed to be followed by the words "without limitation."

26.     "Identify," when used with reference to:

a.     A natural person, means to state his/her full name, present or last known employer, job title, present or last known residence, address and telephone number, and present or last known business addresses and telephone number, and any other information which would establish his/her relationship to Defendant;

b.     A business entity, means to state: (i) the full name and address of the entity, (ii) the identity of all individual(s) in connection with the entity who have knowledge of the information requested, and (iii) the positions held by such individual(s) in relation to the entity;

c.     A document, means to state: (i) the type of document (*e.g.*, letter, memorandum, *etc.*), (ii) the date the document was prepared or created, (iii) the identity of the

preparer of the document, (iv) the identity of all recipients of the document, (v)
the title or heading and the number of pages of the document, (vi) the identity
of the custodian or other person last known to have possession of the document,
and (vii) the present or last known location of the document;

d. A communication, means to state: (i) the date of the communication, (ii) the
form of the communication (*e.g.*, in person meeting or presentation, telephonic
communication, *etc.*), (iii) the place where the communications was made, (iv)
the identity of each person who was a party to or was present at the time of the
communication, and (v) a summary of the communication.

27.    The terms "reflect," "reflecting," "relate to," "refer to," "relating to," and "referring
to," when referring to any given subject matter, mean, without limitation, any document or thing
that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes,
depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes,
bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies,
reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to
the particular subject matter identified.

28.    The words "or" and "and" shall be read in the conjunctive and in the disjunctive
wherever they appear, and neither of these words shall be interpreted to limit the scope of these
Requests.

29.    Use of the singular also includes the plural and vice-versa.

30.    The use of a verb in any tense shall be construed as the use of the verb in all other
tenses.

31.     Any capitalized term specifically defined above shall be deemed capitalized whenever the term appears in these Requests.

32.     Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as is most appropriate in each case.

## INSTRUCTIONS

The following instructions apply to each Request for Production:

1.     These definitions and instructions shall apply in interpreting the scope of the definitions and instructions as well as the individual Requests below, and they may be incorporated by reference in future discovery served by Defendant in connection with this Action.

2.     You are required to produce every document requested in your possession, custody, or control.

3.     Unless otherwise stated, the time period covered in the Requests is January 1, 2021, to present.

4.     These Requests are continuing; you are required to produce responsive information in accordance with the requirements of Federal Rule of Civil Procedure 26(e).  Therefore, you promptly shall produce to Defendant, as supplemental responses to these Requests, any additional information, documents, or things that you identify, acquire, or become aware of up to and including the time of the close of discovery in this Action.

5.     These Requests require the production of original tangible things in the same form and in the same order as they are kept in the usual course of business.  The titles or other descriptions on the boxes, file holders, bindings, or other container in which tangible things are kept are to be left intact.  Alternatively, all documents are to be produced, organized, and labeled to correspond with the categories in this Request.

6.    If any information requested in a Request is claimed to be privileged or otherwise immune from discovery, or if any document is withheld from production based on a claim of privilege, immunity, or other ground, You must furnish a list (*i.e.*, a "privilege log") specifying: (a) the nature of the privilege, immunity, or other ground claimed; (b) the authors of the document; (c) all persons who received copies of the document, including the document's indicated and blind copy recipients; (d) the date of the document; (e) the type of document withheld *(e.g.,* memorandum, letter, report, email, *etc*.); and (f) the general subject matter of the document sufficient to enable Ms. Javice to assess the applicability of the claimed privilege, immunity, or other ground for refusal to produce.  For each item of information or document You withhold based on a claim of privilege, immunity, or other ground, identify such information or document with sufficient particularity for purposes of a motion to compel.  Notwithstanding any claim of privilege or immunity, any information or documents falling within the scope of the Request which are not privileged or immune from production should be produced.

7.    If a portion of an otherwise responsive document contains information subject to a claim of privilege, only that portion of the document subject to the claim of privilege shall be deleted or redacted from the document following the instructions in the preceding paragraph and the rest shall be produced.

8.    If any document requested herein was formerly in your possession, custody, or control and has been transferred, lost, or destroyed, you shall submit in lieu of each document a written statement indicating whether the document: (a) was lost or is missing; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) otherwise has been disposed of.  In each instance explain the circumstance of such disposition, and state the approximate date thereof.

9.      If there are no documents responsive to any particular Request, your response shall state so in writing.

10.     Documents not otherwise responsive to these Requests shall be produced if such documents concern, relate to, mention, discuss, refer to, describe, or explain the documents which are called for by these Requests.

11.     If You object to any part of any Request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall respond to the Request as narrowed in a way that renders it not overbroad in your opinion, and state the extent to which You have narrowed that Request for purposes of your response.  You shall also comply fully with the other parts of the Request to which you are not objecting.

12.     A document with handwritten, typewritten, or other recorded notes, editing marks, *etc*., is not and shall not be deemed identical to one without such modifications, additions, or deletions.  The term "original" includes the file copy and copies of any document if there is no actual original or ribbon copy.

13.     You shall produce documents in the following manner and form:

        *E-mails.*  E-mails shall be produced as single-page or multi-page TIFF images with accompanying full text and load file (DAT).  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced upon request.

        *Electronic Documents.*  Word and other electronic documents shall be produced as single-page or multi-page TIFF images with accompanying full text and load file (DAT).  For

Excel or other spreadsheet files, the native file shall be produced. Native files for all other electronic documents shall be maintained, and such files shall be produced upon request.

*Hard-Copy Documents.* Hard-copy documents shall be produced as single-page or multi-page TIFF images with accompanying full OCR text and load file (DAT). All hard-copy documents should be unitized to the smallest physical boundary.

*TIFF Images Generally.* Any TIFF images produced shall consist of (a) single-page or multi-page, black and white, 300dpi group IV TIFF images with extension ".tif" and (b) text files, named after the bates number of the document, with extension ".txt". TIFF images may not be compressed using JPEG compression. Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

14. The following metadata should be supplied, where available:

| Field | Description |
|---|---|
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached document in family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| Email_Subject | Subject of the e-mail message. |
| Author | Author field value extracted from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. |

| Field | Description |
|-------|-------------|
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |
| TimeLastMod | Time the native file was last modified. |
| PgCount | Number of pages in a document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |

15.     Whenever necessary to bring within the scope of these Requests any information that otherwise might be construed to be outside the scope, (a) "including" shall be read as "including, without limitation" and (b) the present tense shall include the past tense and future tense, the past tense shall include the present tense and future tense, and the future tense shall include the past tense and present tense.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning the Merger Agreement and any Related Documents, including, without limitation, Documents concerning negotiations relating to and the drafting of the Merger Agreement and Related Documents, and drafts of the Merger Agreement and Related Documents.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications concerning JPMC's decision to acquire Frank, including, without limitation, all Documents and Communications sufficient to identify all of the Persons who participated in any way in the decision to acquire Frank.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications, including any text messages or chats, concerning or mentioning Frank or Ms. Javice sent to or received by ▮▮▮▮▮▮, ▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮,



or any of these individuals' representatives or agents.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents You produced, made available, or showed to any Third Party concerning or relevant to the Action, including, without limitation, all Documents and Communications You produced, made available, or showed to the United States Attorney's Office for the Southern District of New York; the United States Department of Justice; the Securities and Exchange Commission; the Federal Deposit Insurance Corporation; the Office for the Comptroller of the Currency; the Department of Education; any other federal, state, or local government agency or body, including any agency involved in the oversight or supervision of Frank or JPMC. Documents relevant to the Action include any Documents concerning *United States v. Javice*, No. 1:23-cr-00251-AKH (S.D.N.Y.) or *Securities and Exchange Commission v. Javice, et al.*, No. 1:23-cv-02795, LJL (S.D.N.Y.), or the allegations made in those actions.

**REQUEST FOR PRODUCTION NO. 5:**

All agreements concerning or relating to Frank or Ms. Javice, including without limitation, agreements requiring cooperation, between You and any federal, state, or local agency.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents reflecting Communications, including, without limitation, emails, phone calls, or meetings, or notes reflecting such Communications, between You and any federal, state, or local government agency or body, to the extent such Communications concerned this Action or Ms. Javice. Government agencies and bodies include the United States Attorney's Office for the Southern District of New York; the United States Department of Justice; the Securities and Exchange Commission; the Federal Deposit Insurance Corporation; the Office for the Comptroller of the Currency; the Department of Education; any federal, state, or local agency involved in the oversight or supervision of Frank; or any federal, state, or local agency involved in the oversight or supervision of JPMC.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications concerning Your interactions with the Department of Education in relation to Frank, financial aid, FAFSA, or the Higher Education Act, including, without limitation, to any notes or minutes regarding restrictions on JPMC's use of student data, changes to the FAFSA form or submission process or submission technology, or any aspect of the Frank business.

**REQUEST FOR PRODUCTION NO. 8:**

All notes of any conversation between any person and Mr. Olivier Amar or Ms. Javice, including, without limitation, all emails and summaries of conversations, all handwritten notes,

all hard copies of notes, and all notes stored in any note-taking software or program, such as Evernote, One Note, or any similar program.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning or containing the word "users" as it relates to persons' use of and/or engagement with a tech platform or website including, without limitation, Documents and Communications regarding the definition of "users," whether in relation to the Frank website and platform or other media sites or fintech businesses, including those businesses that JPMC acquired in 2021.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications concerning the word "accounts" as it relates to persons' use of and/or engagement with Frank, including, without limitation, documents and communications regarding the definition of "account," in relation to the Frank website and platform.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications concerning any instance in which JPMC directly contacted or attempted to contact directly all or any portion of Frank's users, user signups, or visitors, or what it believed to be Frank's users, user signups, or visitors, including without limitation, any instance in which, following the Merger, JPMC emailed Frank's users new terms and conditions, any instance in which JPMC conducted a "marketing test campaign" or "test marketing campaign" such as that described in paragraphs 18–19, and 178–179 of the Complaint, and any evidence of the results of such contact.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications, including, without limitation, presentations, slide decks, notes, or memoranda concerning Frank's customer acquisition, including, without limitation, presentations relating to search engine optimization, a/k/a "SEO," customer acquisition costs, marketing spend, user "channels," and student strategy deck.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications from January 1, 2017, to the present concerning the number of individuals who commenced, submitted, or signed FAFSA forms on the Frank website.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications that mention or concern the term or concept of "synthetic data" in relation to or in the context of JPMC's diligence of Frank, Frank, or anything relating to Frank.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications concerning Your allegation that Frank and/or its representatives, including, without limitation, Ms. Javice, employed "synthetic data" techniques "to create fake customer details," as You allege in paragraph 8 of the Complaint.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications that mention or concern the concept or term (or variation of such term) of "data validation" in relation to or in the context of JPMC's diligence of Frank, Frank, or anything relating to Frank.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications that mention or concern the concept or terms of (or variations of such terms) "customer overlap" or "customer match," in relation to or in the context of JPMC's diligence of Frank, Frank, or anything relating to Frank.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications concerning JPMC's August 1 diligence request for data validation and activities in response to the request, including, without limitation, the data file referenced in paragraphs 71–72 of the Complaint, the "data validation report" referenced in paragraph 110 of the Complaint, the "numerous internal conversations" leading to JPMC's use of Acxiom as alleged in paragraph 69 of the Complaint, Documents concerning the rationale and purpose of the request, all drafts of the Acxiom contract with Frank, all Communications concerning regulatory or data privacy constraints surrounding the sharing of PII, and all Communications with Acxiom.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications from January 1, 2017, to the present concerning Google or Google Analytics or referencing or utilizing Google Analytics numbers in relation to Frank, including, without limitation, Documents and Communications concerning Frank's use of Google Analytics (whether before or after the Merger) for user and site data, and any copies or recordings of any Frank "dashboard" from Google Analytics or Google search console.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications from January 1, 2017, to the present concerning measures or tracking of Frank's website or so called "microsite" activity, including, without limitation, all data concerning Frank's users, visitors, unique IDs, website or "microsite" traffic,

visits, sessions, sign ups, registered users, impressions, FAFSA users, accounts, students, digital profiles, leads, prospects, and customers.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications concerning valuations of the Frank business, including projections and analysis of current worth at time of valuation, whether performed by JPMC, any of JPMC's advisors or consultants, Frank, any of Frank's advisors or consultants, or any third parties.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications concerning the offer to purchase Frank for $175 million, the Frank purchase price, or the Merger Consideration, including, without limitation, any internal discussions at any time (pre or post-Merger) relating to purchase price, any discussions at any time regarding the rationale for or risks associated with the offer and purchase price, and any Documents concerning or evidencing negotiations regarding price.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications that refer to or concern JPMC's rationale(s) for acquiring Frank and its investment thesis as it related to Frank.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications concerning the "business case" or business plans for Frank, at any time, whether pre- or post-Merger.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications from January 1, 2017, to the present concerning Frank's purchases of data and uses of purchased data, whether during the time of JPMC's diligence of Frank or at any other time during Frank operations, including, without limitation, any mentions

of the use of purchased data for augmentation, appending data, fuzzy matching, or identity resolution.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications concerning the "due diligence" meetings that JPMC conducted, attended, or participated in regarding Frank and/or Ms. Javice, including, without limitation, notes from the diligence meetings held on July 12, 13, 19, and 20, 2021, any recorded impressions of the meetings, any commentary on the meetings, any recordings of the meetings, any agendas for the meetings, and any Documents transmitted or discussed in the course of the meetings.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents and Communications concerning JPMC's diligence "workstreams," including, without limitation, all discussions at JPMC concerning staffing of diligence teams, the priority of diligence items, and the updating and engagement with the diligence "tracker" used to track the status of diligence questions.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications that state or indicate that "users" means "sign ups," or that "users" means registered accounts that provided a first name, last name, birthdate, telephone number and email address, in relation to Frank's business.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications concerning Ms. Javice's employment with JPMC, including, without limitation, her employment agreement; personnel file; any formal or informal performance evaluations; any Documents regarding her compensation or bonus payments; all Documents and Communications concerning any complaints or allegations (formal or otherwise)

that anyone made to JPMC regarding Ms. Javice; all investigative reports, witness notes, and memoranda, concerning JPMC's internal investigations of Ms. Javice; all Documents and Communications concerning JPMC's decision to place Ms. Javice on administrative leave on September 13, 2022; all Documents and Communications concerning JPMC's decision to terminate Ms. Javice's employment on November 4, 2022; and, any information or data collected via JPMC's Workplace Activity Data Utility ("WADU") or its equivalent.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications regarding JPMC's investigation into the Frank acquisition or Ms. Javice's conduct as it relates to the Frank acquisition, including, without limitation, all notes of any interviews with any person regarding Ms. Javice or the subject matter of the Action.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications concerning the allegation in paragraph 1 of the Complaint that Ms. "Javice represented in documents placed in the acquisition data room, in pitch materials, and through verbal presentations that more than 4.25 million students had created Frank accounts to begin applying for federal student aid using Frank's application tool."

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications concerning any "list of Frank's customer accounts" that JPMC received, including the "user list," as that term is used in the Complaint.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Communications from January 1, 2017, to present concerning the employment, employment performance, or conduct of "Frank's Director of Engineering," as that term is used in the Complaint, including, without limitation, any records of internal complaints

against said person relating to his conduct toward coworkers, including, without limitation, Ms. Javice.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents and Communications concerning the "Data Science Professor," as that term is used in the Complaint, including, without limitation, the purported "list of 293,192 individuals who had started or submitted a FAFSA application through Frank" referenced in paragraph 9 of the Complaint.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications concerning ASL Marketing, including, without limitation, all Documents and Communications concerning the "ASL List," as that term is used in the Complaint.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications concerning Enformion.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents and Communications from all time between You and Acxiom, including as they concern JPMC's course of dealings with Acxiom prior to the August 2021 Frank diligence request, Documents and Communications concerning JPMC's business and financial relationship with Acxiom, JPMC's prior assignments to Acxiom in diligence, data validation, or customer overlap projects, and all Communications between JPMC and Acxiom subsequent to the Merger concerning Frank or any Frank diligence.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents and Communications concerning LionTree related to this Action, including, without limitation, any Documents concerning the diligence process referenced in paragraphs 55–57 of the Complaint.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents and Communications concerning Frank "Business Unit Reviews," or "BURs," including any "Quarterly Business Reviews" or "QBRs," "Monthly Business Reviews or "MBRs."

**REQUEST FOR PRODUCTION NO. 40:**

All board of director agendas, meeting minutes, board books, notes and presentations concerning, relating to or otherwise discussing Frank or Ms. Javice.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents or Communications produced to JPMC by any Person in response to a subpoena or other formal or informal request for Documents or things in connection with this Action.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents and Communications from January 1, 2017, to July 7, 2021, concerning Frank or Ms. Javice, including, without limitation, all Documents and Communications concerning the March 2021 "investor's email" referenced in paragraphs 37–38 of the Complaint.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents and Communications between You and any media outlet concerning Ms. Javice or Frank.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications containing, reflecting, or concerning any insults, disparagements, or mockery of Ms. Javice.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents and Communications concerning Ms. Javice's objections to the JPMC business plans for Frank.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents and Communications concerning the claim for insurance You filed under the buyer-side representations and warranties insurance policy purchased and maintained pursuant to Section 6.5 of the Merger Agreement, whether such Communications were with Euclid Transactional, LLC, under master policy number ET111-002-900, any other insurer, broker Marsh USA Inc., any media representative or press, or any other Person.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, Communications, and things You intend to rely on to support any claim or defense in this Action, or that You intend to use at trial or in any hearing in this Action.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications concerning the claims or defenses at issue in this Action, including, without limitation, any Document or Communication that the Complaint explicitly or implicitly references or relies on.

OF COUNSEL:

Alex Spiro (admission *pro hac vice*)
Maaren A. Shah (admission *pro hac vice*)
JP Kernisan (admission *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

Dated:  August 8, 2023

  /s/ Michael A. Barlow
Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

*Attorneys for Defendant / Counterclaim Plaintiff Charlie Javice*