# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

CHARLIE JAVICE and OLIVIER AMAR,

       Defendants.

23-cr-00251-AKH

# MEMORANDUM OF LAW IN OPPOSITION TO
# <u>JPMORGAN CHASE BANK N.A.'S MOTION TO QUASH</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................3

I.     THE GRAND JURY SUBPOENAS TO JPMC ..............................................3

II.    THE CHARGES..........................................................................................4

III.   DISCOVERY AND RELATED COURT PROCEEDINGS............................5

IV.  THE RULE 17 SUBPOENA ........................................................................7

ARGUMENT........................................................................................................................8

I.     LEGAL STANDARD ...................................................................................9

II.    THE COURT SHOULD DENY THE MOTION TO QUASH .......................11

     A.    JPMC's Compliance with the Subpoena Would be Neither Unreasonable nor Oppressive ..............................................................11

     B.    JPMC's Arguments in Support of the Motion to Quash Are Meritless .............12

          1.    JPMC's Categorical Arguments Misstate the Nature and Scope of the Subpoena ....................................................12

               (a)    The Subpoena Requests Are Sufficiently Specific ......................13

               (b)    The Requested Materials Are Relevant.........................................14

               (c)    The Requested Materials Are Admissible......................................17

          2.    JPMC Objections to Particular Requests Are Meritless ..........................18

               (a)    Request 1 (Privilege Logs) .........................................................19

               (b)    Requests 2, 3, 9 (Merger-Related Documents)............................20

               (c)    Requests 15, 17, 18, 22, 33 (Business Metrics, Budgets, Partnerships) .....................................................................24

               (d)    Request 16 (Internal Investigation)..............................................25

               (e)    Request 19 (Public Relations Communications) ..........................26

               (f)    Requests 20, 26 (DOE and FAFSA Documents) .........................26

               (g)    Request 21 (Early Diligence) ......................................................27

               (h)    Request 25 (Potential Acquisition of Frank by JPMC)................28

               (i)    Request 27 (Acxiom) ..................................................................28

               (j)    Request 30 (Listserv Members)...................................................28

               (k)    Request 34 (July 7, 2021 Meeting with Jamie Dimon)................28

               (l)    Requests 4, 7, 8 (Text Messages) ...............................................29

               (m)   Requests for Clarification............................................................30

(n)     Requests Withdrawn by Ms. Javice ...............................................31

C.     The Subpoena Definitions and Instructions are Typical for Rule 17
       Discovery and Provide No Basis to Quash the Subpoena in its Entirety ..............31

CONCLUSION ....................................................................................................................33

## **TABLE OF AUTHORITIES**

### **Cases**

*Bowman Dairy Co. v. United States*,
  341 U.S. 214 (1951) ............................................................................................9

*JPMorgan Chase Bank, N.A. v. Charlie Javice*,
  No. 22-CV-01621 (D. Del. Dec. 22, 2022) .........................................................4

*United States v. Akhavan*,
  No. 20-CR-188-2 (JSR), 2021 WL 1251893 (S.D.N.Y. Apr. 2, 2021)................11

*United States v. Bergstein*,
  788 F. App'x 742 (2d Cir. 2019) ......................................................................11

*United States v. Bergstein*,
  No. 16-CR-746 (PKC), 2018 WL 9539846 (S.D.N.Y. Jan. 24, 2018)............ 15, 17

*United States v. Cole*,
  No. 19-CR-869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021)....................14

*United States v. Donziger*,
  No. 11-CV-691 (LAK), 2021 WL 1865376 (S.D.N.Y. May 10, 2021)................13

*United States v. Goldstein*,
  No. 21-CR-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) ..................26

*United States v. Nachamie*,
  91 F. Supp. 2d 552 (S.D.N.Y. 2000) ................................................................10

*United States v. Nixon*,
  418 U.S. 683 (1974) ..................................................................................*passim*

*United States v. Pena*,
  No. 15-CR-551 (AJN), 2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016) ........... 32, 33

*United States v. Rajaratnam*,
  753 F. Supp. 2d 317 (S.D.N.Y. 2011)..........................................................*passim*

*United States v. RW Professional Leasing Services Corp.*,
  228 F.R.D. 158 (E.D.N.Y. Apr. 20, 2005) ........................................... 13, 14, 30

*United States v. Smith*,
  No. 19-CR-00669, 2020 WL 4934990 (N.D. Ill. Aug. 23, 2020)......................17

*United States v. Tagliaferro*,
  No. 19-CR-472 (PAC), 2021 WL 980004 (S.D.N.Y. Mar. 16, 2021) ..................32

*United States v. Tucker*,
  249 F.R.D. 58 (S.D.N.Y. 2008) ..................................................................*passim*

*United States v W.R. Grace*,
  439 F Supp 2d 1125 (D Mont 2006) ..................................................................19

*United States v. Weigand*,
  50 F. Supp. 33 609 (S.D.N.Y. Feb. 20, 2021) .............................................................. *passim*

*United States v. Weisberg*,
  No. 08-CR-347 NGG RML, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011)
  ........................................................................................................................................ *passim*

*United States v. Yudong Zhu*,
  No. 13-CR-761, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) ...................................... *passim*

## Statutes

15 U.S.C. § 78ff ........................................................................................................................ 15

15 U.S.C. § 78j(b) .................................................................................................................... 15

18 U.S.C. § 1343 ...................................................................................................................... 15

18 U.S.C. § 1344 ...................................................................................................................... 15

17 C.F.R. § 240.10b-5 ............................................................................................................. 15

## Other Authorities

Fed. R. Civ. P. 34 .................................................................................................................... 31

Fed. R. Crim. P. 16 ............................................................................................................... 2, 5

Fed. R. Crim. P. 17 ........................................................................................................... *passim*

Fed. R. Evid. 401 .................................................................................................................... 15

Fed. R. Evid. 803 .................................................................................................................... 18

S.D.N.Y. R. 26.3 ..................................................................................................................... 31

Defendant Charlie Javice respectfully submits this memorandum of law in opposition to third party JPMorgan Chase Bank, N.A.'s ("JPMC")'s motion to quash the Rule 17(c) subpoena Ms. Javice served on JPMC on December 9, 2023 (the "Subpoena").

## PRELIMINARY STATEMENT

The Court should deny JPMC's motion to quash, which understates the scope of the pending charges and related defenses and overstates the requirements of Rule 17, seeking to impose a novel, heightened standard that would render Rule 17 a nullity.  JPMC all but ignores persuasive authority in this district and elsewhere holding that the stringent standard articulated in *United States v. Nixon*, 418 U.S. 683 (1974), should not be extended to subpoenas issued to a non-party by a defendant in a criminal case.  In any event, even the *Nixon* standard, properly applied, is satisfied here.

More than 14 months after the Government served its first grand jury subpoena on JPMC and well over 8 months after her arrest, Ms. Javice continues her struggle to obtain documents in JPMC's possession that are material to the preparation of her defense.  Over a period of months, Ms. Javice sought in vain to obtain the necessary materials from the Government, assuming (incorrectly) that the Government would conduct an independent investigation, require meaningful compliance with the grand jury subpoenas served on JPMC, and, at a minimum, ensure the production by JPMC of materials necessary to a fair adjudication of this case.  Month after month, the Government refused to require JPMC to search for and produce documents requested by the defense and responsive to the Government's grand jury subpoenas, notwithstanding this Court's repeated efforts to fashion procedures designed to promote consensus on the scope of materials to be produced.  The Government argued that Ms. Javice and the Court were in no position to tell the Government how to conduct its investigation and repeatedly urged Ms. Javice to seek relief

1

through issuance of subpoenas pursuant to Rule 17.  *See, e.g.*, ECF 50 ("The defendants can avail themselves of their own subpoena power should they satisfy the requirements of Rule 17") (internal parenthesis omitted); September 26, 2023 Hr'g Tr. ("Sept. 26 Tr.") at 9:14-17 (McLEOD: "What we said was, to the extent that you are telling us what to do with our grand jury subpoena, telling us that we have to add custodians to a grand jury subpoena to which you are not a party, that request is denied.").

Now that Ms. Javice has served her Subpoena on JPMC, requesting documents easily obtained and produced by the bank, JPMC argues that Ms. Javice is not entitled to the requested materials under Rule 17.  JPMC argues that Ms. Javice may obtain relevant discovery from the Government, under standards set by Rule 16.  Thus, the Government directs Ms. Javice to JPMC and Rule 17; the bank directs Ms. Javice to the Government and Rule 16; together, the Government and the bank, working in concert, seek to deny Ms. Javice her right to a fair trial.

JPMC argues that the Subpoena should be quashed because it seeks materials that (1) have already been produced, (2) are not defined with sufficient specificity, (3) are irrelevant to the pending charges, and (4) are inadmissible, including because they are privileged.  JPMC is wrong. The Subpoena seeks targeted, highly relevant, likely admissible documents concerning the allegations at the heart of the Government's case against Ms. Javice, including documents relevant to the nature of the alleged representations made to JPMC; JPMC's understanding of those purported misrepresentations; Ms. Javice's intent; and the materiality of the statements at issue, among other disputed issues of fact.

The Subpoena is neither unreasonable nor oppressive in scope, particularly as narrowed through conferral and herein.[1]  Indeed, JPMC, a highly sophisticated party that regularly produces documents in litigation in federal and state court, has already gathered or has ready access to the data sources from which the requested documents would be produced (to the extent it has not destroyed the data).  The touchstone of the Rule 17 inquiry is undue burden, and, at bottom, no undue burden would be imposed on JPMC here.

Accordingly, and for the reasons discussed further below, the Court should deny JPMC's motion and direct the bank to comply with the Subpoena forthwith.

## BACKGROUND

### I.   THE GRAND JURY SUBPOENAS TO JPMC

The Government served the first of several grand jury subpoenas on JPMC on October 13, 2022 (the "October 13 Grand Jury Subpoena") and served at least nine additional subpoenas over the course of the following months (together, the "Grand Jury Subpoenas").  *See* ECF 59, Ex. A. The October 13 Grand Jury Subpoena required production of, among other things, ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ of Frank by JPMC, the deal at the heart of this case.[2]  *Id.*  The Government subsequently requested a number of additional categories of information, including, on January 9, 2023, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1]    As discussed further below, Counsel for Ms. Javice has proposed narrowing, consolidating, or withdrawing 24 of the original 34 Subpoena requests.

[2]    The limited redactions in this filing correspond to materials the Government has designated under the protective order in this case and to the names of certain non-party JPMC personnel that were redacted from JPMC's motion.  Defendants have no objection to the publication of any of this information and are available to confer with the Government and JPMC regarding the confidentiality of this information.  In an abundance of caution, this information is currently redacted from this public filing.

████████████████████████████████ and, on February 28, 2023, ███████████████

████████████████████████████ .

## II.    THE CHARGES

On March 31, 2023, long before JPMC had completed its productions of documents to the Government in response to the Grand Jury Subpoenas, the Government filed a sealed complaint charging Ms. Javice with one count of conspiracy to commit wire and bank fraud and one count each of substantive bank, wire, and securities fraud. ECF 1 (the "Complaint"). The conspiracy count alleged an unlawful agreement that began in June 2021 and continued at least through November 2022. *Id.* ¶ 1–6. The Government alleged, in essence, that Ms. Javice lied to JPMC about the number of users of Frank's web platform, that JPMC was induced to buy Frank based on those misrepresentations, and that Ms. Javice continued her fraudulent conduct after the acquisition. *Id.* With respect to the latter alleged conduct, the Complaint includes a section titled "The Fraud Continues Post-Acquisition." *Id.* ¶ 32–33.

The allegations in the Complaint largely mirrored those set forth in a civil lawsuit filed by JPMC against Ms. Javice and co-defendant Mr. Amar in December 2022 and selectively quoted many of the same documents. *Compare, e.g.*, Compl., *JPMorgan Chase Bank, N.A. v. Charlie Javice*, No. 22-cv-01621, ¶ 8 (D. Del. Dec. 22, 2022), ECF 1 ("JPMC Compl.") ("Not comfortable, the engineer asked Javice and Amar whether the request was legal."), *with* Complaint ("Engineer-1 was uncomfortable with the request and stated, in sum and substance, 'I don't want to do anything illegal.'"). JPMC's civil complaint also included a set of allegations relating to post-acquisition conduct, including that Ms. Javice provided JPMC with additional fake data to conceal her alleged fraudulent misconduct and engaged in "a continuous course of conduct to fraudulently create and/or conceal material information." JPMC Compl. ¶ 191 (D. Del. Dec, 2022).

4

On May 18, 2023, a grand jury sitting in the Southern District of New York returned an indictment charging Ms. Javice with the same counts set forth in the Complaint. ECF 18.  On July 12, 2023, the grand jury returned a superseding indictment adding Amar as a defendant.  ECF 27 (the "Indictment").

## I.   DISCOVERY AND RELATED COURT PROCEEDINGS

The Government made its first production of Rule 16 discovery to Defendants on the morning of June 6, 2023, the date of Ms. Javice's first appearance before this Court.  Over the course of the following months, the Government made a series of additional Rule 16 productions, including productions of all documents received by the Government from JPMC in response to the Grand Jury Subpoenas.  The materials, though voluminous, were often duplicative and were missing documents essential to the preparation of Ms. Javice's defense.  Review of the produced materials and conferral with the Government revealed that the Government had neglected to require JPMC to search for, among other things, (1) responsive documents in the data of key custodians who were intimately involved in the acquisition underlying this case and even referenced in the Government's Complaint, and (2) messaging and other non-email communications among key JPMC personnel during the acquisition and subsequent integration of Frank.  In addition, the Government declined to challenge a single one of JPMC's assertions of privilege over more than 20,000 documents that, but for the assertion of privilege, would have been responsive to the Grand Jury Subpoenas and, presumably, produced.

At status conferences held on July 13, 2023 and August 23, 2023 (the "August 23 Status Conference")—the second and third since the return of the first indictment—counsel for Ms. Javice alerted the Court to the absence of important materials in the Rule 16 discovery received to

date.[3]  During the August 23 Status Conference, the Court acknowledged the substantial delays in discovery and sought to fashion a procedure through which the Government, defense, and JPMC might work together to ensure the Defendants' access to relevant materials.[4]  Thereafter, the Defendants provided a list of additional custodians to the Government, consistent with the Court's direction, and obtained the Government's consent to a process through which the Defendants could raise privilege challenges directly with JPMC.  *See* Sept. 26 Tr.; ECF 51, Ex. B.

In an abrupt about-face, however, both the Government and JPMC refused to augment the list of custodians or to participate in the process directed by the Court for efficient adjudication of privilege challenges.  Instead, the Government argued that the Defendants were avoiding seeking documents through Rule 17 subpoenas.  *See* ECF 50 ("The defendants' attempted usurpation of broad grand jury subpoena power is simply an effort to circumvent the more stringent requirements of Rule 17").  JPMC took the same position, stating at the September 26, 2023 status conference that the "proper procedure" to seek additional data or to challenge the privilege log would be for Defendants to issue a Rule 17 Subpoena to JPMC.  *See* Sept. 26 Tr. at 23:25; 24:1–4 (GREENBERG: "[W]e do think that process of going through Rule 17, for [Defendants] to make their showing, for us to be able to have the opportunity as a nonparty victim to respond, and then

---

[3]    *See, e.g.*, July 13, 2023 Hr'g Tr. at 9:9–10 (SPIRO: "We don't have any of JP Morgan's….internal communications amongst themselves about the accusation….[or] the internal communications of the JPMorgan side of this [deal] yet…And we believe they will be exculpatory."); *See* August 23, 2023 Hr'g Tr. ("Aug. 23 Tr.") at 9:23–25 (SPIRO: "What we need is the executive team that did the due diligence and had the initial mandate for this transaction to go forward.").

[4] *See* Aug. 23 Tr. at 7:9–10, (THE COURT: "I'm not very pleased with the slow procedures being used by JP Morgan."); *Id.* at 12:19–23 (THE COURT: "So we are talking about the item being material to preparing the defense.  If I get a contention, Ms. McLeod, that certain categories, certain custodians are important for their defense, it is very difficult to say no."); *Id.* at 6:24–25; 7:1–2 (THE COURT: "And I would like to set up a conference earlier.  I would like [AUSA McLeod] and Mr. Spiro to discuss that privilege log because both of you may have interests in challenging privilege.").

to have those [purportedly privileged] documents before your Honor to review *in camera* is the proper procedure.").

In light of JPMC's and the Government's positions, the Court noted in its Order Regulating Proceedings from November 7, 2023, that Defendants would not have to wait "until the eve of trial" to issue a subpoena under Rule 17(c) of the Federal Rules of Criminal Procedure.  ECF 61 ("Defendants gave notice that they may seek production, by Rule 17(c) subpoena, of particular documents withheld by JPMC and identified in its privilege log… In light of the complexity of this case, Defendants do not have to wait until the eve of trial to issue such a subpoena").  Having authorized the Defendants to issue the Subpoena, the Court set a schedule for any motions to quash—specifically, motions would be due on December 1, 2023 (also the Subpoena return date), and would be heard at the next status hearing on January 17, 2024.  *Id.*

## IV.     THE RULE 17 SUBPOENA

Ms. Javice served the Subpoena on JPMC on December 9, 2023.  The Subpoena includes 34 requests for documents, although the number of requests has since been reduced through consolidation and, in some instances, withdrawal.  The Subpoena seeks materials relevant to the claims against Javice and essential to the preparation of her defense.  The requests explicitly *exclude* materials produced by JPMC to the Government in response to the Grand Jury Subpoenas and identify specific categories of documents missing from those productions.  The Subpoena seeks primarily to have JPMC produce documents to be located through application of search terms selected by JPMC to the data of a set of custodians expanded to include JPMC employees who were integrally involved in—and who communicated about—the conduct at issue in this case. For example, the Subpoena requests production of communications by and among JPMC personnel who attended meetings held during the diligence process, and thus had relevant perspective on Ms. Javice's statements about her platform, and personnel involved in integrating

Frank into JPMC, and thus communicated their understanding of the platform the bank had purchased and the bank's goals for the acquisition.

On December 1, 2023, JPMC filed its motion to quash. On December 4, counsel for Javice and counsel for JPMC met and conferred.[5] During that meeting, JPMC confirmed that, as suggested in the Motion, a substantial part of its search for responsive materials involved running a set of search terms against the data of, as stated in the Motion, "the nine custodians most intimately involved in the Merger." Mot. at. 17. JPMC identified the custodians as ███████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ and indicated that the search terms it used to find relevant data were ████████████████████████████████████████████████ ██████████████████████

Counsel for Ms. Javice and for JPMC continued their conferral via written correspondence,[6] resulting in the proposed narrowing of the Subpoena reflected in Appendix A.

## ARGUMENT

JPMC seeks to quash the Rule 17 subpoena on the grounds that it is overbroad and seeks materials that (1) have already been produced, (2) are not defined with sufficient specificity, (3) are irrelevant to the pending charges, and (4) are inadmissible at trial. Each of these arguments is wrong. In adjudicating this Motion, the Court should apply the standard articulated in *United*

---

[5] JPMC did not request to confer until it emailed counsel for Javice and Amar on November 30, requesting to confer on December 1, the date that its Motion was due. Given the short notice, counsel for Javice and Amar were not available on December 1, and so the meeting took place on December 4, after JPMC filed its Motion.

[6] As part of this process, counsel for Ms. Javice requested further clarification of how, exactly, JPMC went about locating relevant documents, including which search terms were run against which sources of data. In correspondence sent late on December 14, JPMC declined to provide much of the requested information.

*States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), which recognized that if the "the government could prevent defendants from obtaining material by choosing not to obtain it for itself," this would lead to a "perverse result [that] cannot be intended by the Federal Rules of Criminal Procedure." *Id.* at 65.  Regardless of which standard this Court applies, Ms. Javice's requests to JPMC are well within the bounds of Rule 17, and enforcing her Subpoena would not be unreasonable or oppressive to JPMC, among the largest financial institutions in the world and the architect of the accusations against Ms. Javice in this case.

## I.    Legal Standard

Federal Rule of Criminal Procedure 17(c) permits Ms. Javice to serve a subpoena ordering JPMC "to produce any books, papers, documents, data, or other objects the subpoena designates" prior to trial.  Fed. R. Crim. P. 17(c)(1).[7]  Under Rule 17, the court may quash or modify Ms. Javice's subpoena only if "compliance would be unreasonable or oppressive" for JPMC.  Fed. R. Crim. P. 17(c)(2); *United States v. Nixon*, 418 U.S. 683, 698 ("A subpoena for documents may be quashed if their production would be unreasonable or oppressive, but not otherwise." (internal quotation marks omitted)).

Traditionally, courts applied the standard for assessing burden set forth *Nixon*, under which the party requesting information must demonstrate "(1) relevancy; (2) admissibility; and (3) specificity."  *Id.* at 700.  More recently, however, Courts in this District and elsewhere have

---

[7]    This Court permitted Ms. Javice to serve her Rule 17(c) Subpoena now, even though trial is still some months away, in recognition of the fact that this case is complex and involves extensive documentary evidence.  *See* Nov. 2, 2023 Hrg. Tr. at 23:16–19 ("[B]ecause of the complexities of this case, I would be sympathetic to the service of a subpoena and my resolution of the issues at this time in discovery rather than at the eve of trial.").  Indeed, and contrary to the Government's and JPMC's persistent delays in providing Ms. Javice the information to which she is entitled, Rule 17 is designed "to expedite the trial" by enabling Ms. Javice to analyze before trial evidence that she may want to use to defend against the Government's (and JPMC's) misguided accusations.  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 & n.5 (1951).

questioned "whether it makes sense" to require a ***defendant*** in a criminal case seeking evidence from a non-party to meet the *Nixon* standard, given that a criminal defendant, unlike the Government, "has not had an earlier opportunity to obtain material by means of a grand jury subpoena" and, more generally, lacks the information-gathering tools at the Government's disposal. *See United States v. Nachamie*, 91 F. Supp. 2d 552, 562–63 (S.D.N.Y. 2000). In *Tucker*, Judge Scheindlin observed that "the government has far more opportunity to obtain evidence than does a criminal defendant," including through the "virtually limitless resources of government investigators" and the ability to issue grand jury subpoenas, which need not comply with *Nixon's* restrictions. 249 F.R.D. at 60, 63–64; *see also Nachamie*, 91 F. Supp. 2d at 562–63. Moreover, the Government's ability to gather the evidence it deems useful may be even easier where, as here, the party possessing relevant evidence "has a close working relationship with the government." *Tucker*, 249 F.R.D. at 63. By contrast, a defendant's ability to obtain evidence is "severely constrained," notwithstanding that the defendant's liberty is typically at stake. *Id.* at 64; *see also United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) (endorsing application of *Tucker* standard and noting inherent irony in a civil defendant's ability to pursue nearly boundless discovery while a criminal defendant fighting for life or liberty is severely restricted).

In order to protect a defendant's Constitutional right to "put before a jury evidence that might influence the determination of guilt," it is necessary to relax the *Nixon* standard when the defendant seeks evidence from a third party, and where the defendant has an "articulable suspicion that the documents may be material to [her] defense." *Tucker*, 249 F.R.D. at 66; *see also Weigand*, 520 F. Supp. 3d at 613 (finding that the *Tucker* standard is "more consistent with the text of Rule 17(c) itself"); *United States v. Akhavan*, 20-CR-188-2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. Apr. 2, 2021) (applying *Tucker* and granting defendant's request for issuance of Rule 17(c)

10

subpoena with slight modifications);[8] *Rajaratnam*, 753 F. Supp. 2d at 321 n.1 (moving away from "mindless application" of *Nixon* would result in "great benefit to the rights of defendants to compulsory process [with] little cost to the enforcement of the criminal law").

The standard articulated in *Tucker* should be applied here, particularly given the structural concerns that animated its formulation in the first place. This case involves a young, individual defendant accused by two departments of the Federal Government and one of the most powerful financial institutions in the world, JPMC, of fooling JPMC into buying her company. The Government and JPMC have worked together to structure the case against Ms. Javice and have worked to block her access to key materials throughout. Under *Tucker*, and as explained below, Ms. Javice's requests are "reasonable"—meaning they seek information "material to the defense"—and it would not be "unduly oppressive for [JPMC] to respond." *Tucker*, 249 F.R.D. at 66; *see also* Fed R. Evid. 17(c) (subpoena may be quashed only if "unreasonable or oppressive").

## II.  THE COURT SHOULD DENY THE MOTION TO QUASH

### A.  JPMC's Compliance with the Subpoena Would be Neither Unreasonable nor Oppressive

The question at the heart of a motion to quash a Rule 17 subpoena is, as set forth in the text of the rule itself, whether "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) ("[A] district court may quash a Rule 17(c) subpoena 'if compliance would be unreasonable or oppressive.'" (quoting Fed. R. Crim. P. 17(c)(2)). Here, it would not. The subpoena satisfies the various judge-made standards developed to answer this question, but a few points bear emphasis at the outset.

---

[8]  The cited opinions in *Weigand* and *Akhavan* are from the same S.D.N.Y. case.

First, JPMC has enormous resources, well beyond that of the typical Rule 17 subpoena recipient.  Second, JPMC has filed a civil lawsuit based on the same series of events that form the basis of the pending criminal charges and thus presumably gathered documents, communications, and related materials relevant to the conduct at issue.  Third, to the extent it had not already gathered the relevant sets of data in connection with civil proceedings, JPMC must have done so in order to respond to the Grand Jury Subpoenas, which, as noted, required production ███.  ████████████████████████████.  Notably, JPMC represents that in connection with productions in response to the Grand Jury Subpoenas it "searched the files of 193 custodians." Mot. at 5.  Although JPMC has yet to explain to Ms. Javice what that phrase means—i.e., which data sources were searched, and using what terms—the bank clearly has already assembled large sets of pertinent data and presumably has stored those documents on a searchable document review platform, or easily could.  Indeed, JPMC continues to produce documents in this case, including as recently as last week, in response to Court order.

Ms. Javice respectfully submits that JPMC's vast resources, its easy access to the relevant pools of data, and the nature of the documents and related materials sought by the Subpoena all should factor heavily in the Court's assessment of any claim of burdensomeness.  The truth is that locating and producing the materials sought by the Subpoena, especially as narrowed herein by custodian, search term, and date range, would be a minimally burdensome task for the bank that would substantially advance the interests of justice and the fair adjudication of this case.

## B.    JPMC's Arguments in Support of the Motion to Quash Are Meritless

### 1.    JPMC's Categorical Arguments Misstate the Nature and Scope of the Subpoena

JPMC argues, at a categorical level, that the Subpoena requests are overbroad and seek information that is, by turns, ill-defined, irrelevant, and inadmissible.  Mot. at 2–3.  In so arguing,

JPMC relies heavily on language from *Nixon*, urging this Court to apply an overly stringent standard that, in any event, is satisfied by the challenged requests.

**(a)    The Subpoena Requests Are Sufficiently Specific**

The requests in the Subpoena are sufficiently specific and have been made still more precise through conferral.  "A request is generally sufficiently specific where it limits documents to a reasonable period of time and states with reasonable particularity the subjects to which the documents relate." *United States v. RW Professional Leasing Services Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. Apr. 20, 2005); *United States v. Weisberg*, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *6–7 (E.D.N.Y. Apr. 5, 2011) (finding specificity requirement under *Nixon* met where Defendant requested for "[a]ll billing records, time entries and invoices" of several individuals in connection with an escrow account over a four-year period); *Rajaratnam*, 753 F.Supp.2d at 322– 323 (finding a Request for "[a]ll documents or other communications" between a group of people to satisfy *Nixon* test given its "potential evidentiary uses").  Even under JPMC's proposed rubric, "a defendant need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c)."  *Weisberg*, 2011 WL 1327689, at *7.  Moreover, requests for "all documents" related to specific categories of information are not incompatible with Rule 17, as the authorities cited by JPMC recognize.  *See, e.g.*, *United States v. Donziger*, 11-cv-691 (LAK), 2021 WL 1865376, at *8 (S.D.N.Y. May 10, 2021) (finding request for "all bills and underlying timesheets" to meet specificity requirement and noting that defendants' "use of the words 'any' and 'all' do[es] not automatically render a document request so broad that it must be quashed") (internal citations omitted); *United States v. Cole*, 19-CR-869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021) ("the words 'any' and 'all' do not automatically render a document request so broad that it must be quashed"); *RW Pro. Leasing Servs.*, 228 F.R.D. at 165 (finding

13

multiple requests for "all documents relating or referring to" a broad category of information sufficiently specific under *Nixon*).

Here, the Subpoena Requests are limited in substantive scope, date range, and data source (primarily through specification of custodians) to capture documents that (1) are relevant and material to the preparation of a defense, (2) Ms. Javice has reason to believe exist, and (3) have yet to be produced by JPMC.  The requests thus readily satisfy the applicable standards.  *See, e.g., United States v. Yudong Zhu*, No. 13 CR. 761, 2014 WL 5366107, at *6 (S.D.N.Y. Oct. 14, 2014) (finding that document request for communications over a period from December 2011 to October 2014 is "sufficiently specific"); *RW Pro. Leasing Servs.*, 228 F.R.D. at 165 (holding, in a fraud case where criminal defendant was charged with defrauding the corporate subpoena recipient, requests for "all documents relating or referring to" the corporation's knowledge of information related to customers and payments were "sufficiently tailored").

### (b)   The Requested Materials Are Relevant

JPMC argues at some length that the materials sought are irrelevant.  In so arguing, the bank takes a myopic view of relevance that is at odds with the bank's own filings in the related civil case and ignores the scope and elements of the pending charges.  Throughout its Motion, JPMC suggests that the only relevant materials are those that relate directly to whether Ms. Javice provided a fake customer list to JPMC before the bank's acquired Frank.  JPMC cites no authority, nor is Ms. Javice aware of any, that supports such a narrow view of relevance, particularly in the context of charges that allege criminal conduct extending from June 2021 to November 2022.  *See* Superseding Indictment, ¶¶ 1, 4–6.  In any event, the materials sought by the Subpoena from before, during, and after the acquisition are relevant to the element of falsity—that is, whether the list was "fake."  It is not for JPMC to decide what sort of defenses Ms. Javice may raise to challenge the sweeping allegations against her, spanning 18 months and including significant periods of time

both before and after JPMC's acquisition of Frank.  For obvious reasons, Ms. Javice does not here offer a comprehensive or detailed account of her defense theories, but even a basic reference to potential avenues of defense is sufficient to show why the materials requested by the Subpoena are relevant and material.

To satisfy the relevancy prong of the *Nixon* test, the proponent of the subpoena need only demonstrate a "'sufficient likelihood' that its requests [will] reach materials 'relevant to the offenses charged in the indictment.'"  *Bergstein*, No. 16 Cr. 746, 2018 WL 9539846, at *2 (quoting *Nixon*, 418 U.S. at 700); *see also* Fed. R. Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").  The Subpoena thus plainly seeks relevant materials. Here, the Indictment charges Ms. Javice with fraud offenses that require proof that, among other things, Ms. Javice intended to defraud JPMC and, to that end, intentionally made material misrepresentations to JPMC.  *See, e.g.*, S1 Modern Federal Jury Instructions-Criminal (2023) 4.18.1343 ("intent to defraud" is a necessary element under 18 U.S.C. § 1343), 4.18.1344 (elements for 18 U.S.C. § 1344); S2 Modern Federal Jury Instructions-Criminal 6.15.77q(a) and 78j(b) (2023) (elements for 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5); S3 Modern Federal Jury Instructions-Criminal 15.47 (2023) (elements for 15 U.S.C. § 78ff).

In connection with the elements of falsity and materiality, the Complaint alleges, among other things, that Ms. Javice misrepresented the number of users of her platform and fabricated a data set pertaining to these users, and that JPMC relied upon the alleged misrepresentations in its decision to purchase Frank.  Complaint ¶ 10–12, 20 ("Javice repeatedly represented . . . that Frank had 4.25 million customers or 'users' . . . In fact, Frank had less than 300,000 users . . . In reliance on Javice's fraudulent representations about Frank's users, JPMC agreed to purchase Frank").  The

Government has reiterated versions of these allegations orally in connection with status conferences held in the case. *See, e.g.* June 6, 2023 Hr'g Tr. at 3:17–19 (FERGENSON: Your Honor, it was central to the sale of the company, and in fact, these misrepresentations were made to two banks."). The materials sought through the Subpoena thus are relevant to defenses that (1) Ms. Javice did not intend to defraud JPMC, (2) Ms. Javice did not intentionally make any misrepresentations, and (3) the alleged misrepresentations, even if made, were immaterial to JPMC's decision to acquire Frank.

As discussed further below, communications among JPMC personnel before, during, and after the bank's acquisition of Frank that are responsive to the Subpoena are relevant to each of these defenses. Based on a review of JPMC's productions to the Government and information available to the defense, Ms. Javice anticipates that the requested documents and communications will reveal, among other things, JPMC's understanding of Frank's assets and user-base, including as that information was relayed by Ms. Javice, and the information JPMC did (and did not) rely on in its decision to acquire Frank. The requested documents therefore easily satisfy the "relevancy" requirement articulated in *Nixon* and *Tucker. See Tucker*, 249 F.R.D. at 66–67 (declining to quash Tucker's subpoena for certain recordings in part because Tucker had "shown that the recordings *may* be material to his defense" and reveal "*potentially* material evidence") (emphasis added). *Nixon*, 418 U.S. at 700 (finding the relevancy requirement met given a showing that "permit[s] *a rational inference that at least part of* the conversations [sought by subpoena] relate to the offenses charged in the indictment").

**(c)    The Requested Materials Are Admissible**

The information sought by the Subpoena satisfies the "admissibility" prong of the *Nixon* test.[9]  Importantly, a presumption of admissibility may apply in such cases where the defendant has shown the potential relevance of documents.  *Rajaratnam*, 753 F. Supp. 2d at 320 n.1 (noting that Rule 17 may be a "way for a defendant to examine documents he believes to exist that would be *relevant to, and therefore presumptively admissible in*, his defense") (emphasis added).  This determination can be preliminary, since the trial itself will involve separate rulings on admissibility.  *See United States v. Bergstein*, No. 16-CR-746 (PKC), 2018 WL 9539846, at *2 (S.D.N.Y. Jan. 24, 2018) (finding *Nixon*'s admissibility prong met for requests given that defendant's showing "permits a rational inference as to the relevance of these materials, and *sufficiently preliminarily demonstrates admissibility*") (emphasis added).   In this sense, admissibility is derivative of relevance, at least at this stage.  Here, as argued above, the evidence requested by the Subpoena bears on, among other things, JPMC's understanding of Ms. Javice's representations, Ms. Javice's intent in making the representations, and the materiality of any alleged misrepresentations, thus establishing relevance and "preliminarily demonstrate[ing] admissibility." *Id.*; *see also*, *Weigand*, 520 F.Supp.3d at 614 (finding, in a bank fraud prosecution, that a Rule 17(c) subpoena seeks relevant materials in part because "a juror might find that the alleged misstatements did not have a natural tendency to influence or a reasonable likelihood of influencing a bank's decision").

---

[9]    Under the *Tucker* standard, admissibility is not one of the elements that must be proven to satisfy Rule 17. Notably, the *Tucker* approach is faithful to the text of Rule 17. *See Weigand*, 520 F.Supp.3d 609 at 615 ("While admissibility is the second *Nixon* factor, *Rule 17(c) does not by its terms* require that a subpoena seek only admissible evidence") (emphasis added); see also, *United States v. Smith*, No. 19-CR-00669, 2020 WL 4934990, at *3 (N.D. Ill. Aug. 23, 2020) ("[T]he Court rejects a bright-line admissibility requirement for the subpoena issued to the [third party]. Indeed, even *Nixon* did not require absolute certainty on admissibility").

To the extent that JPMC may object to admissibility on hearsay grounds, any number of exceptions would apply to permit admission of the requested materials, including that many of the communications and documents at issue are sure to be business records. *See, e.g.*, *Zhu*, 2014 WL 5366107, at *3 (denying motion to quash and noting that "documents would likely qualify as business records under Federal Rules of Evidence 803(6), if they were created in the course of a business's regularly-conducted activities"); *Weisberg*, 2011 WL 1327689, at *7 (finding that "requested material is also likely admissible as business records").[10]

### 2.     JPMC Objections to Particular Requests Are Meritless

In addition to the categorical arguments addressed above, JPMC challenges each of the individual requests set forth in the Subpoena.  These arguments are similarly flawed, in that they seek to apply overly restrictive standards of specificity, relevance, and admissibility.  In response to its conferrals with JPMC, and in an effort to streamline adjudication of JPMC's motion to quash, Ms. Javice has further tailored the requests set forth in the Subpoena.  Specifically, Ms. Javice has withdrawn 7 requests and proposes narrowing or consolidating 17 additional requests.  In effect, Ms. Javice has reduced much of the Subpoena to a list of custodians, search terms, and date ranges, all in the interest of reducing any burden to JPMC and ensuring a specific and targeted search for responsive materials.  For ease of reference, appended hereto are (1) a table reflecting the grouping of remaining requests and the related custodians, search terms, and dates (App'x A), and (2) an index of the custodians with their titles and ties (and thus relevance) to the charged conduct (App'x B).

---

[10]   To the extent JPMC argues that certain of the requested documents are inadmissible solely because they are privileged, that argument ripens the challenges Ms. Javice previously sought to raise to overbroad assertions of privileged.  Ms. Javice respectfully submits that adjudication of privilege challenges should be handled on a separate track, once a final privilege log has been produced by JPMC.  *See infra* Section II.C.2.(a).

At bottom, and collectively, compliance with these requests requires little more than running search terms against readily identifiable sets of data.

### (a)      Request 1 (Privilege Logs)

Request 1 calls for the documents identified on the privilege logs previously produced by JPMC in response to the Grand Jury Subpoenas.  As a practical matter, Ms. Javice is asking for something she has already received from the Government, by way of JPMC, but has not received directly from JPMC.  The bank argues that documents listed on the privilege logs are *per se* inadmissible and thus not subject to production through Rule 17(c).  But Ms. Javice contests the assertion of privilege as to some of the documents on the log.[11]   At the August 23 Status Conference, the Court acknowledged that the Defendants "may have interests in challenging privilege."  Aug. 23 Tr. at 7:1.  At the September 26 conference, JPMC stated that the "proper procedure" for Ms. Javice to challenge documents on the privilege log was for the bank to produce the log to Ms. Javice in response to a Rule 17 subpoena and for the Court to review any challenges *in camera*.  Sept. 26 Tr. at 24:1–4.

To be clear, Ms. Javice does not contend that every document listed on the log should be produced; rather, the Subpoena seeks all non-privileged documents listed on the logs as a means of positioning herself, with standing, to challenge any overbroad assertions of privilege.  *See* Subpoena, Instructions Paras 11, 15 (requesting log for any otherwise responsive documents

---

[11]    Moreover, privilege is not a bar to admissibility in a criminal trial; certain documents on the log may be "so important to the defense that [their] disclosure is constitutionally required" notwithstanding privilege.  *Weisberg*, 2011 WL 1327689, at *5; *see also United States v W.R. Grace*, 439 F Supp 2d 1125, 1142 (D Mont 2006) ("The nature and content of the privileged evidence must be weighed against the purposes served by the attorney-client privilege to determine whether any of the documents are of such value as to require [a Defendant's] rights under the attorney-client privilege to yield to the individual Defendants' Sixth Amendment right to present evidence.").

withheld on the basis of privilege).  It imposes no burden on JPMC to require production of a privilege log, as JPMC has already reviewed the underlying documents to determine their relevance and purportedly privileged status.  Ms. Javice understands that JPMC continues to evaluate questions of privilege and ultimately intends to produce a consolidated, comprehensive privilege log.  Ms. Javice therefore proposes that, following receipt of that log and after a reasonable period to evaluate the claims of privilege, her counsel and counsel for Mr. Amar confer with JPMC regarding any proposed challenges to privilege and, to the extent disputes remain, propose a schedule for adjudication of those challenges by the Court.  *See* Sept. 26 Tr. at 25:10–16 (THE COURT: "If I rule that the government has an additional burden to deal with the documents withheld from Rule 16 discovery on the basis of privilege, then I will require JPMorgan Chase to bring documents to the courthouse, ready for ruling.  A showing will have to be made— a showing first as to whether there is privilege, and second, that there is a right to the document under Rule 17"); *Weisberg*, 2011 WL 1327689, at *5 ("In order to determine whether a particular item of evidence is privileged . . . it is appropriate for the district court to review, in camera, each item in question.").

### (b)    Requests 2, 3, 9 (Merger-Related Documents)

Subpoena requests 2, 3, and 9 seek documents—communications, mostly—related to the central factual issues in this case, namely, JPMC's evaluation, acquisition, and integration of Frank and JPMC's understanding of Ms. Javice's statements about her company in the context of the acquisition.  Request 2 seeks documents and communications relating to the merger by, with, or among a set of custodians whose data has yet to be searched.  Requests 3 and 9 are, in a sense, subsets of that broader request, in that they focus on JPMC's use, definition, and interpretation of the term "user" (Request 3) and drafts of diligence tracking documents used by the bank as it conducted diligence in advance of the Frank acquisition (Request 9).

JPMC offers the conclusory assertion that because it searched emails and messages of nine custodians "intimately involved in the Merger" and produced relevant materials that resulted from those searches, Ms. Javice has what she needs.  Mot. at 17.  JPMC suggests that because certain of the documents already produced are responsive to Ms. Javice's requests, she has no need for anything more.  JPMC further argues that Ms. Javice's requests for additional documents somehow reflect a failure to review discovery.  All of this is wrong.  That JPMC has produced some documents on a subject does nothing to rebut the argument that additional documents material to Ms. Javice's defense have yet to be produced.  To state the obvious, far more than nine people were "intimately" involved in the transaction at issue, and many people beyond the nine hand-picked by JPMC—including the 16 custodians referenced in connection with Requests 2, 3, and 9—were in frequent communication with each other and with others at JPMC in connection with the evaluation, acquisition, and integration of Frank.

These Requests, particularly as narrowed by search term, custodian, and date range herein, more than satisfy Rule 17.  See App'x A.  Based on Ms. Javice's direct, personal experience with the acquisition and integration, and as demonstrated by documents already produced by JPMC, the 16 custodians listed for these requests (and the others listed in the Subpoena) occupied important roles in the context of the charged conduct and communicated with each other and others about the acquisition and related matters involving Ms. Javice and her company.  For example, ▆▆ ▆▆▆▆▆▆▆ participated in the diligence process and then in multiple weekly meetings post-merger, working closely with ▆▆▆▆▆▆ and others to integrate Frank into JPMC.  ▆▆▆▆▆▆▆ was Ms. Javice's direct supervisor at JPMC and was involved in multiple meetings with Ms. Javice, including in connection with facilitation of business strategy.  Documents already produced indicate the importance of these custodians, and the fact that they were in communication with one

another about statements made by Ms. Javice and their understanding of key metrics that are at issue in the pending charges. An email chain dated February 15, 2022, for example (USAO_Rel_001845653), includes communications involving , each of them a custodian referenced in the Subpoena, with a number of comments that bolster aspects of Ms. Javice's defense,

*see also* USAO_Rel_001727107 (on February 14, 2022,

Thus, the data files of these custodians contain communications and documents material to Ms. Javice's defense.

JPMC argues that the requests are overbroad because they fail to specify particular documents and cover a "three-year period"—a timeframe JPMC presents in bold, underlined text as though requesting documents covering the period of time during which Ms. Javice is alleged to have been involved in a criminal conspiracy is somehow inappropriate or surprising. The sweep of the conspiracy charge is inappropriate and surprising because the allegations are wrong, but Ms. Javice's effort to mount a vigorous defense informed by material documents covering the period of alleged criminal conduct is not. In sum, these requests seek documents from a defined timeframe, from a discrete set of custodians, pursuant to search terms to be run against already

22

available data, thus satisfying the *Nixon* standard for specificity.[12]  *See Zhu*, No. 13 CR. 761, 2014 WL 5366107, at \*6 (specificity requirement under *Nixon* established for a nearly-three-year time period from December 2011 to October 2014).

Finally, JMPC argues that the requested materials are irrelevant.  This argument verges on frivolity.  For avoidance of doubt, Ms. Javice rejects the allegations that she lied to or intended to defraud JPMC or its personnel in connection with the acquisition, and she rejects the allegation that JPMC bought or valued Frank based on Ms. Javice's purported misrepresentations.  Put another way, Ms. Javice did not intend any misrepresentations, and, in any event, the alleged misrepresentations were immaterial.  JPMC's integration of Frank into the banks' business included meetings, communications, and exchanges of documents that help to show what JPMC understood about Frank and its data and what JPMC considered important about Frank and its data, all of which goes to the elements of intent, falsity, and materiality.  In addition, discussions among bank personnel about their failure to understand Frank's business, and their recognition of errors in their own process, are relevant to which aspects of Frank's business were material to the acquisition and which were not.  JPMC argues that these post-acquisition communications are irrelevant but the post-acquisition timeframe has been identified in the Complaint and Indictment as the relevant timeframe of the criminal conduct alleged that Ms. Javice intends to refute.  She cannot do so without the evidence to which she is entitled under law.

---

[12]   The new custodians and specified search terms listed in Appendix A are designed to hit on relevant communications and other documents that to date have not been produced.  With respect to the search terms, "CJ" is a common abbreviation for Ms. Javice's name, and the term FAFSA, coupled with at least one other deal-related term, is meant to capture documents in which no explicit reference is made to Frank, its code names, or its principals but which discuss Frank and the business case for its acquisition.  The "JPMC Terms" are the search terms that JPMC has represented it already ran against the "nine key JPMC custodians" referenced in its Motion to Quash discussion regarding Ms. Javice's Subpoena Request 2.

       **(c)**      **Requests 15, 17, 18, 22, 33 (Business Metrics, Budgets, Partnerships)**

These Requests seek documents related to business metrics, marketing budgets, and partnerships related to Frank that are relevant for the same reasons articulated above with respect to Requests 2, 3, and 9. That is, these records bear on elements of materiality, intent, and JPMC's understanding of any alleged misrepresentations by Ms. Javice. For example, Requests 15 pertaining to the integration and Frank's business unit reviews, are limited to custodians who were closely involved with integration and tracking of Frank and will directly show JPMC's understanding of any representations that Ms. Javice made in the context of the acquisition. Request 18 relates to performance indicators, objectives, and other targets for JPMC and Frank, which bear on the materiality of any representations that Javice made about Frank's users. Requests 22 and 33—pertaining to the marketing budget of Frank and Frank's business relationships with Sallie Mae and ACT, respectively—are directly relevant to JPMC's understanding of any representations made by Javice on the size and scalability of Frank's "user" base. Thus, each of these Requests is critical to the preparation of Javice's defense, which is likely to include arguments relating to on the materiality of any alleged misrepresentations made about Frank's user base and JPMC's understanding of such representations.

These Requests are sufficiently specific and narrowly tailored to particular custodians. The Requests have been narrowed to a brief date range, from June 2021 to November 2022 and to ten custodians most integrally involved with these events. *See* App'x A. Courts have found "sufficiently specific" under the *Nixon* test Requests that are for significantly longer periods of time. *See, e.g., Zhu*, No. 13 CR. 761, 2014 WL 5366107, at *6 (finding that a Defendant's Request over a period from December 2011 to October 2014 to meet specificity requirement under *Nixon*

test); *Weisberg*, 2011 WL 1327689, at *7 (finding that a Request for a four year time period satisfies the specificity prong under *Nixon* test).

### (d)    Request 16 (Internal Investigation)

This Request seeks documents relating to JPMC's internal investigation of Frank and Ms. Javice, which bear on JPMC's understanding of any representations that Ms. Javice made and the materiality of any alleged misrepresentations by Ms. Javice. JPMC's argument that documents in the post-merger period are irrelevant is not persuasive, given that the Indictment charges Ms. Javice for conduct through November 2022, which encompasses the period of this Request. Thus, documents pertaining to the Internal Investigation from the specified custodians will be relevant and material to Ms. Javice's defense, given that they will reveal JPMC's understanding of Ms. Javice's representations to Frank.

As narrowed, this Request easily satisfies the specificity prong of *Nixon*, given that it will target four custodians, include a range of search terms, and be limited to the range from April to November of 2022, a relatively short time period compared to other time periods of requests that have been found to meet the specificity requirement. *See* App'x A; *see also*, *Zhu*, No. 13 CR. 761, 2014 WL 5366107, at *5–6 (finding that a Request for a period of thirty-four months satisfies specificity requirement); *Weisberg*, 2011 WL 1327689, *7 (finding that a Request for four years satisfies specificity requirement). Thus, this Request seeks information that is not unduly burdensome or oppressive for JPMC to produce, in part given that there are a range of proposed search terms, a small number of custodians, and a short time range.

Finally, this Request satisfies the admissibility prong of *Nixon.* JPMC's arguments that the requested communications are protected by attorney-client privilege and work product privilege will likely not apply to communications involving the requested custodians. This Court can adopt *in camera* review to determine if JPMC's claims of privilege are persuasive. Additionally, even

if some of the statements are inadmissible, they may separately be material for impeachment purposes. *See United States v. Goldstein*, No. 21-CR-550 (DC), 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023) (denying a motion to quash subpoenas to investigators and noting that "while the conclusions of SCI's investigations are inadmissible, evidence from and about the investigations may be admissible for purposes such as impeaching witnesses with prior inconsistent statement").

### (e)    Request 19 (Public Relations Communications)

Subpoena Request 19 seeks documents and communications from two custodians who worked in public relations at JPMC on the Frank account and developed press talking points and communications strategies, which by definition would have focused on JPMC's understanding of the Frank platform and the aspects of the deal and business case that JPMC viewed as material. As narrowed, the request pertains to only two custodians and a narrowed set of search terms aimed to capture a specific and responsive set of documents. *See* App'x A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ responsibilities included dissemination of JPMC's public and investor-facing messaging related to the acquisition of Frank, and post-integration, to the Frank product.

JPMC argues that the request is too broad because it does not identify particular pubic statements at issue. However, the Request is not concerned with any specific public statement; rather, it seeks the internal communications surrounding the public statements from public relations professional likely to have been involved in such communications.

### (f)    Requests 20, 26 (DOE and FAFSA Documents)

Subpoena Requests 20 and 26 seek documents and communications pertaining to the Department of Education and the evolving legal and regulatory landscape relating to the FAFSA process. JPMC communications regarding these subjects are relevant to establishing that in valuing Frank, JPMC could not have placed significant weight on Frank's existing customer data

for bank-related marketing campaigns because of restrictions on—or at least complexity relating to— such data use.  In addition, Ms. Javice's representations and JPMC's understanding of those statements can only be understood properly in the context of the changing regulatory environment. Ms. Javice has proposed narrowing both of these requests to 7 custodians, specifically tailored search terms, and a brief six-month time period that is within the bounds of the period charged in the Indictment.  *See* App'x A.  This narrowing alone should overcome JPMC's arguments that these requests lack the specificity required by Rule 17(c) or *Nixon*.

### (g)      Request 21 (Early Diligence)

Request 21 seeks communications from a set of seven custodians who were involved in diligence prior to the acquisition of Frank and whose understanding of statements made by Ms. Javice about Frank and of the business case for acquiring Frank will help to bolster Ms. Javice's defense that she had no intent to defraud and that the statements charged as misrepresentations were not material to JPMC.  Request 21 could hardly be less burdensome, as it proposes application of a JPMC's own search terms, plus the term "CJ," to the data of seven custodians over a time range of a mere five weeks.  *See Weisberg*, 2011 WL 1327689, \*7 (finding that a Request for a four year time period from January 2004 to 2008 satisfies the specificity prong under *Nixon* test).

Additionally, this Request seeks documents that satisfy the admissibility requirement of *Nixon.*  Contrary to JPMC's argument that this Request seeks "communications protected by attorney-client and/or work product privilege," this Request seeks documents pertaining to the acquisition.  To the extent JPMC wishes to assert privilege over any responsive materials, the bank is free to withhold such materials and present them on a privilege log such that Ms. Javice will have an opportunity to challenge the withholding.  *Cf. Weisberg*, 2011 WL 1327689, at \*7 (noting that if responding parties "believe that any responsive records are in fact privileged, they should

27

submit such records for the court to review *in camera*, along with a detailed explanation as to why they believe the records are privileged.").

### (h)     Request 25 (Potential Acquisition of Frank by JPMC)

Request 25 seeks internal JPMC documents and communications from the early stages of the contemplated business relationship between JPMC and Frank, as such communications will include statements of understanding about Frank's business and about the aspects of the business, and its founder, that were material in the bank's assessment of the potential acquisition.  Ms. Javice has narrowed this request to two custodians, a four-month time period, and terms that JPMC developed toto identify relevant materials.

### (i)     Request 27 (Acxiom)

Subpoena Request 27 seeks materials that will establish JPMC's close, longtime relationship with Acxiom and the uses JPMC typically made of Acxiom's services during the course of diligence.  The relationship between JPMC and Acxiom is relevant because the closer that relationship was the less plausible the idea that Ms. Javice would use Acxiom to "validate" aspects of her purported fraud—that is, the less likely that she would provide fake data, masked or otherwise, to a longtime vendor of Chase in hopes of misleading the bank.

### (j)     Request 30 (Listserv Members)

Ms. Javice requests that the Court refrain from quashing this Subpoena Request, to the extent JPMC has requested that the Court quash the Subpoena in its entirety, as JPMC has agreed to produce documents responsive to this request.  Ms. Javice requests that JPMC provide a date for such production.

### (k)     Request 34 (July 7, 2021 Meeting with Jamie Dimon)

Subpoena Request 34, as drafted, is narrowly tailored to elicit information directly relevant to the Government's claims and Ms. Javice's defenses. It requests documents pertaining to a

28

specific meeting (between Frank representatives and Mr. Dimon), on a specific date (July 7 2021), on a topic directly relevant to the charges (the acquisition of Frank by JPMC). The request proposes a narrow two-month date range, June 1, 2021 through July 31, 2021, to capture communications and documents prepared in contemplation of the meeting for use by Mr. Dimon and reflecting impressions of the meeting by Mr. Dimon.

JPMC acknowledges throughout its motion that documents pertaining to JPMC's decision to acquire Frank are relevant to the indictment, so this meeting of JPMC's CEO, which documents produced by JPMC reveal ████████████████████████████ is necessarily relevant. JPMC argues that this request is redundant of Request 2. Although this request is sufficiently narrow to satisfy even the most stringent requirements of *Nixon*, Ms. Javice is amenable to including Mr. Dimon in its proposal to narrow Request 2, if the proposal is acceptable to the Court, or, alternatively, proposing search terms that JPMC may run across Mr. Dimon's custodial materials.

### (l)    Requests 4, 7, 8 (Text Messages)

Requests 4, 7, and 8—now consolidated and narrowed to just 23 custodians—seek communications conducted over text and other such messaging applications that hit on the search terms JPMC used for its own review of documents, with the additional term "CJ," designed to capture a common shorthand for Ms. Javice. JPMC's raises a number of objections to these requests, each of them meritless.

First, JPMC argues that it has already produced responsive materials, but Ms. Javice challenges the scope of these searches, which were run "over the files of the JPMC personnel most involved in the Merger"—presumably the nine custodians identified by the bank—and, further, were limited to "instant messages on authorized JPMC channels." Mot. at 20. In addition, JPMC states that 145 other JPMC personnel "certified" that they did not use text messaging or other

texting applications for business purposes.  But the scope of the certifications remains unclear, given that several of the people who so certified apparently did use text messaging applications for business purposes.  *See*, *e.g.*, JPMC_01158433, JPMC_01157981, USA_Rel_001727768.  Ms. Javice requested clarification from JPMC regarding the nature and content of the certifications referenced in the Motion, but has JPMC has declined to provide that information.

JPMC further argues that the materials sought fail the *Nixon* standard because they are not identified with sufficient specificity.  This objection has been mooted by the narrowing of the request to particular custodians, messaging applications, and dates, as set forth in Appendix A. *See RW Pro. Leasing Servs*., 228 FRD at 164 ("A request is considered sufficiently specific under *Nixon* where it states with reasonable particularity the subjects to which the documents relate and limits documents to a reasonable period of time."); *Zhu*, No. 13 CR. 761, 2014 WL 5366107, at *6 (request with "limited time frame and subject of the inquiry" is sufficiently specific) (emphasis added).

### (m)     Requests for Clarification

In an effort to reach a reasonable compromise with respect to Requests 5, 10, 11, 12, 13, 23, and 24 Ms. Javice has sought clarification from JPMC regarding their arguments to quash these Requests.  Specifically, Ms. Javice has asked that JPMC provide specific information, including identifying Bates numbers related to JPMC's representations that they have already produced documents sufficient to satisfy these Requests.  Such information may allow Ms. Javice to narrow certain requests or withdraw them on the basis that they have been satisfied.  JPMC provided clarifying responses regarding Requests 12 and 32 that allowed Ms. Javice to withdraw those requests.  JPMC did not respond with respect to Requests 5, 10, 11, 13, 23, or 24.  Notwithstanding her requests for clarification, these Requests satisfy the requirements of a Rule 17(c) subpoena in

that they are reasonable and not oppressive, as demonstrated by the fact that JPMC is of the opinion that they have already produced documents to satisfy these Requests.

### (n)      Requests Withdrawn by Ms. Javice

Ms. Javice hereby voluntarily withdraws Subpoena requests 6, 12, 14, 28–29, and 31–32. but reserves her right to renew such requests as circumstances warrant.

### C.      The Subpoena Definitions and Instructions are Typical for Rule 17 Discovery and Provide No Basis to Quash the Subpoena in its Entirety

The definitions and instructions provided in the Subpoena are typical for Rule 17 discovery and provide no basis to quash the Subpoena.  JPMC characterizes the Subpoena's definition of the term "document(s)" as inconsistent with Rule 17.  JPMC even takes issue with the Subpoena's definitions of the terms "all," "any," and "each" to "be construed as encompassing any and all." JPMC further challenges the Subpoena's reference to Local Rule 26.3, which also states, "the terms "all," "any," and "each" shall each be construed as encompassing any and all."  S.D.N.Y. R. 26.3(d)(1).  A comparison between the definitions and instructions included in Ms. Javice's Subpoena and those included in other subpoenas that this Court has upheld demonstrates that the language used in Ms. Javice's Subpoena is appropriate.

The defendant in *Weigand* served a subpoena on a non-party with instructions that "the terms "all," "any," and "each" shall each be construed as encompassing any and all."  *Weigand*, 1:20-cr-00188, Docket No. 137 Mot. at Ex. A attach. A ¶ 2(a).  In its definition of the term "document," the defendant in *Weigand* similarly refenced Federal Rules of Civil Procedure, defining the term "to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A)."  *Id.*  This Court denied, in part, the non-party's motion to quash in *Weigand*, and upheld requests including the

terms "all," "any," "each," and "documents" as defined by the defendant. *Weigand*, 520 F. Supp. 3d at 615.

In *Rajaratnam*, a non-party recipient of the defendant's Rule 17(c) subpoena objected to a request for documents reflecting the non-party's communications with the defendant or "any agent or employee" of a hedge fund. The non-party recipient challenged that request, arguing that the phrase "any agent or employee" of a hedge fund "is overbroad, vague, and ambiguous" and "takes it out of the realm of what is relevant and into the ambit of an improper fishing expedition for discovery purposes." *Rajaratnam*, 1:09-cr-01184, Docket No. 190 Obj. to Rule 17(c) Subpoena at 2. This Court rejected that argument outright and upheld the subpoena request containing the phrase "any agent or employee," finding that there were "potential evidentiary uses" to such documents. *Rajaratnam*, 753 F. Supp. 2d at 323. As in *Rajaratnam*, in the present case, Ms. Javice seeks evidentiary documents that are potentially exculpatory and material to her defense.

JPMC relies on and *Tagliaferro* and *Pena* to support its argument that Ms. Javice's definitions and instructions are overbroad. In *Tagliaferro*, the defendant's Rule 17(c) subpoena requested "*any* and *all* documents and records, in *whatever* form kept[.]" *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021) (emphasis in original). The phrase "*whatever* form kept" lacks the requisite specificity to satisfy Rule 17, but Ms. Javice's Subpoena specifically requests data "stored in any medium from which information can be obtained directly." The undefined request in *Tagliaferro* is not comparable to the more tailored definition prefacing Ms. Javice's request, that "document(s)" means data "from which information can be obtained directly."

JPMC also cites to *Pena*. In that case, the defendant requested "any and all" records associated with the Government's cooperating witnesses "for an indefinite length of time." *United*

*States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *3 (S.D.N.Y. Feb. 12, 2016).  That

case is easily distinguishable from the present case, where Ms. Javice requests documents over

discrete, specified date ranges.  Because of the typical nature of the definitions and instructions

prefacing Ms. Javice's Subpoena and the potential evidentiary uses of the documents requested,

JPMC's Motion to Quash the Subpoena should be denied.

## CONCLUSION

For the foregoing reasons, JPMC's motion to quash should be denied and the Subpoena

enforced.

Dated:  December 15, 2023                              Respectfully submitted,


                                                      /s/ Alex Spiro

                                                      Alex Spiro
                                                      Maaren A. Shah
                                                      Samuel Nitze
                                                      JP Kernisan
                                                      QUINN EMANUEL URQUHART &
                                                      SULLIVAN LLP
                                                      51 Madison Avenue, 22nd Floor
                                                      New York, New York 10038
                                                      Tel: 202-538-8122
                                                      Fax: 202-538-8100
                                                      alexspiro@quinnemanuel.com
                                                      maarenshah@quinnemanuel.com
                                                      samuelnitze@quinnemanuel.com
                                                      jpkernisan@quinnemanuel.com


                                                      *Attorneys for Defendant Charlie Javice*

**Appendix A**

**Appendix A**

**Revisions to Javice Rule 17(c) Subpoena Requests**

**Narrowed Requests**

Requests 2, 3, and 9

- **Request 2:**
  Communications and Documents in Your care, custody, or control, sent, received, drafted, created, or revised by any of the individuals listed in Exhibit 2 that pertain to the Merger, Acquisition, Integration, or Internal Investigation, including Communications and Documents pertaining to the following topics:
    (a) Data held by Frank prior to the Acquisition;
    (b) The use or potential use of such Data by JPMC, including in connection with potential lead generation;
    (c) Traffic on or to the Frank website and any of its digital tools, including, but not limited to as such traffic is measured by clicks, engagement, active users, visits, sessions, signups, registered users, impressions, FAFSA users, accounts, students, digital profiles, leads, starters, prospects, and customers;
    (d) The terms "user," "user sign-up," "registered user," "authenticated user," "customer," "account," "impression," "household," "student," "starter," or "sign-up," "FAFSA," "CAC," "CPC," "CTR," or "SEO";
    (e) The valuation of Frank, including any methodology used by JPMC in assessing such valuation prior to or after the Acquisition;
    (f) Ms. Javice; or
    (g) Mr. Amar.

- **Request 3:**
  For the period of June 26, 2021 through November 4, 2022, Communications and Documents pertaining to JPMC's use, definition, or interpretation of the term "user."

- **Request 9:**
  Internal drafts of diligence trackers pertaining to the Acquisition or Merger.

| Requests | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 2, 3, 9 | ██████████ ████████████ ███████████ ██████████████ ████████████ | JPMC Terms[13] OR CJ OR (FAFSA AND (user OR customer OR account OR impression OR household OR starter OR sign-up OR valuation OR lead OR CPC OR CTA)) | June 1, 2021 through November 30, 2022 |

---

[13] "JPMC Terms" are: Frank OR Finland OR Frontier OR Charlie OR Javice OR Olivier OR Amar OR iterations of TAPD.

| Requests | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| | ███████ | | |
| | ██████████ | | |
| | ████████ | | |
| | ████████ | | |
| | ██████████ | | |
| | ██████████ | | |
| | ██████ | | |

Requests 15, 17, 18, 22, and 33

- **Request 15:**
  Documents and Communications pertaining to the Frank business unit reviews
  ("BURs"),quarterly business reviews ("QBRs"), monthly business reviews ("MBRs"), or the
  Frank "business case," sent, received, drafted, or revised by █████████████
  ████████████████████████████████████████████████
  ███████████████████████████████████████████.

- **Request 17:**
  For the period of August 8, 2021 through January 31, 2023, Documents and Communications
  pertaining to any actual or potential key performance indicators ("KPIs"), "objectives and
  key results" ("OKRs"), revenue targets, or "student solutions" for Frank or Ms. Javice.

- **Request 18:**
  Documents and Communications pertaining to any "marketing assumptions" for Frank by
  JPMC, including Documents and Communications pertaining to the "max addressable
  market" for Frank or JPMC, sent, received, drafted, or revised by ████████████
  ████████████████████████████████████████████████
  ██████████████████████████████.

- **Request 22:**
  For the period of July 1, 2021 through the present, Documents and Communications
  pertaining to the marketing budget for Frank post-Merger, sent, received, drafted, or revised
  by ██████████████████████████████████████████
  █████████████.

- **Request 33:**
  For the period of July 1, 2021 through October 31, 2022, Documents and Communications
  pertaining to Frank's business relationship with Sallie Mae and ACT, sent, received, drafted,
  or revised by ███████████████████████████████████████
  ███████████████████.

36

| Requests | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 15, 17, 18, 22, 33 | ████████<br>████████<br>████████<br>███████████<br>██████████<br>████████<br>█████████<br>██████████<br>████████ | (Frank OR Finland) AND (BUR* OR "business unit review*" OR MBR* OR "monthly business review*" OR "business case" OR "max addressable market" OR KPI* OR "key performance indicator*" OR OKR* OR "objectives and key results" OR "revenue target*" OR "student solution*" OR (student /5 segment) OR (student /5 starter) OR SEO OR submitter OR ops OR "market* /5 assum*") OR (partnership* AND (Sallie Mae OR SLM OR ACT))) | June 1, 2021 through November 30, 2022 |

Request 16

- **Request 16:**
  Documents and Communications pertaining to the Internal Investigation sent, received, drafted, or revised by ███████████████████ ███████████████████████ .

| Request | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 16 | ████████<br>████████<br>████████<br>████████ | (Frank OR Finland OR Greece OR Javice OR Charlie OR CJ) AND (investigation OR fraud OR conflict OR report! OR access OR GSI OR violat! OR conduct) | April 1, 2022 through November 30, 2022 |

Request 19

- **Request 19:**
  Documents and Communications pertaining to a) the Acquisition and Frank, or b) Ms. Javice, sent, received, drafted, or revised by ████████████████ , including talking points, press strategy, communications strategy, and press releases.

| Request | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 19 | ████████<br>████████ | (JPMC Terms OR CJ) AND (press OR media OR release OR statement OR public* OR TP OR "talking points" OR announc*) | September 1, 2021 through September 1, 2022 |

Requests 20 and 26

- **Request 20:**

Documents and Communications pertaining to Frank and the United States Department of Education sent, received, drafted, or revised by ████████████████████████ ██████████████████████████████████ .

- **Request 26:**
  For the period of March 1, 2021 through November 4, 2022, Communications and Documents pertaining to Frank and the "FAFSA Simplification Act," FAFSA simplification, or the amendment, streamlining, or simplifying of the FAFSA or the FAFSA process, including Documents and Communications pertaining to two-factor authentication, 2-factor authentication, multi-factor authentication, 2FA, or MFA.

| Requests | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 20, 26 | ████████ | DOE OR ((Dep! /3 Ed!) AND (FAFSA OR HEA OR submit! OR MFA OR 2FA OR data OR privacy OR student)) OR (FAFSA AND ((Simpl! AND Act) OR "STOP ACT")) | December 1, 2021 through July 31, 2022 |

Request 21

- **Request 21:**
  Documents and Communications pertaining to the Acquisition and related to diligence, sent, received, drafted, or revised by ████████████████████████████ ████████████████████████████████████████ ███████████ .

| Request | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 21 | ████████ | JPMC Terms OR CJ | July 1, 2021 – August 8, 2021 |

Request 25

- **Request 25:**
  For period of March 1, 2021 through July 1, 2021, Communications and Documents pertaining to a potential commercial partnership between JPMC and Frank, the potential purchase or acquisition of Frank by JPMC, or any other contemplated business relationship between JPMC and Frank.

| Request | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 25 | ████████ | JPMC Terms OR CJ | March 1, 2021 – July 1, 2021 |

<u>Requests 4, 7, and 8</u>

- **Request 4:**
  For the period of June 26, 2021 through September 14, 2021, internal email, Text Messages, WhatsApp messages, or other messaging or chat-based communications among JPMC personnel pertaining to Data held or potentially held by Frank.

- **Request 7:**
  Text Messages by and among JPMC personnel involved in the Acquisition, Merger, Integration, or Internal Investigation pertaining to the Acquisition, Merger, Integration, or Internal Investigation.

- **Request 8:**
  Text Messages, WhatsApp messages, instant messenger communications, or chats, pertaining to or referencing Frank or Ms. Javice sent or received by ▮▮▮▮▮▮



| Requests | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| 4, 7, 8 | ▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮<br>▮▮▮▮▮▮▮<br>▮▮▮▮▮<br>▮▮▮▮▮▮<br>▮▮▮▮▮<br>▮▮▮▮▮▮▮▮ | JPMC Terms OR CJ<br><br><u>Data Sources</u><br><br>Text messages, iMessages, SMS messages, WhatsApp messages, and other similar messages sent or received using personal or JPMC-issued mobile phones or tablets. | June 1, 2021 through November 30, 2022 |

| Requests | Narrowed Custodians | Proposed Search Terms | Date Range |
|---|---|---|---|
| | ▮▮▮▮▮▮ | | |

### Requests Unchanged from Subpoena

- **Request 1:**
  Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas.

- **Request 27:**
  For the period of January 1, 2018 through the present, Documents and Communications relating to JPMC's course of dealings with Acxiom prior to the August 2021 Frank diligence request, including Documents and Communications pertaining to JPMC's business and financial relationship with Acxiom, JPMC's prior assignments to Acxiom related to diligence, data validation, or customer overlap analysis, and all Communications between JPMC and Acxiom subsequent to the Merger pertaining to Frank or any Frank diligence.

- **Request 30:**
  Documents sufficient to show the members of the listserv Corpdev_ma@jpmchase.com from the period of June 26, 2021 through September 14, 2021.

- **Request 34:**
  For the period of June 1, 2021 through July 31, 2021, Documents and Communications sent, received, drafted, or revised by Jamie Dimon or JPMC personnel, including ▮▮▮▮▮ ▮▮▮▮ office staff, pertaining to the July 7, 2021 meeting between Frank representatives and Jamie Dimon.

### Withdrawn Requests

- Requests 6, 12, 14, 28, 29, 31, and 32

### Requests Pending Clarification

- Requests 5, 10, 11, 13, 23, and 24

**Appendix B**

**Appendix B**

**Description of Custodians At Issue**

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| ███████ | ███████ ███████ | ██████████████████████ ██████████████████████ ██████████████████████ ████████ ██ ███ ██ ██ ███ █ ███████████████ ████████████████ █████ █ ██ █ ██ █ ███ █ ████ █ ██████████████████████ ██████████████████████ █████████████ |
| ███████ | ███████ ████████████ ██████ ██████████ ███████ ██████ ██████ ██ | ██████████████████████ ██████████████████████ ██████████████████ █ ██ ██████████████████████ ████████ █ ██████ ██████████████████████ ██████████████████████ ████████ ██████████████████████ ██████████████████████ █████████ |
| ███████ | ██████ ████████ ██████ ████ | ██████████████████████ ████████████████████ █████████████████ █████████ ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ ███████ █ ██ █ ██ █ ████ █ █ ██████████████ |

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| ███████ | █████████ ████████ █████ ████ ████ ████ ████ ██ | ██████████████████ █████████████ █ ██████████████ ████████████ ██████████████ ██████ |
| █████████ | █████████ ██████ | ██████ █ ████ █ ████ ██ ██ █ ████ █ ████████████ █████████████ ██████████████ ████████ |
| ███████ | █████ ████ | ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ██████ |
| ████████ | ████ █████████ █████████ | ████████████ ████████████ ████████████ |
| ████ ████ | █████ █████ ████ | ████████████ ████████████ ████████████ ████ █ ████ ████████ |
| █████████ | ████████ ████ | ████████████ ████████████ ████████████ ████████████ ████████ |
| ████████ | ████████ █████ █████████ | ████████████ ████████ |

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| ██████ | ████████ | |
| ████████████ ██ | ████████ ████ ██████ ██████ ██ | ████████████████████ ████████████████████ ████████████████████ ████████████████████ ██ |
| ██████████ | ████████ █████ ██████ ██ | ████████████████████ ████████ |
| ██████████ | ████████ ██████ ████ | ██████ ██ █████ ██ ██████ ██ █████ ████ ████ ██████ ██ ██████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ██████████ |
| ██████████ | ██████ ██████ | ████████████ ████████████ ████ ██ █████ ████████████ ████████ |
| ██████████ | █████ ██████ ██████ ████████ | █████ ██ █████ ██ ██ █████ ████████████ ████████████ ██████████ |
| ██████████ | ██████ ██████ ██████ ████ ██████ | ████████ █ ████ ████████████ ██████ █ ████████ █ ██ ██ █ ████████████ ████████████ ████████████ ██ |

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| ▉▉▉▉▉▉ | ▉▉▉▉▉ | ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ |

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| ███████ | ██████████ ██████ | ████████ ████ █████ ███████ ███ ██ ████████████ ████ ██████████████ █████████████████████ ████████████████████████ ██ |
| ███████████ | ██████████ ████ ███ ██████████ ████ ███████ | ████████████████████████ ████████████████████████ ████ ██ █ ██ ███ █ ██ ████ ████ ██ █ ██ ████ █ ██ █ ██ ██ ███████████ |
| ███████ ███████ | ██████████ ██████████ ██████ | ██████████████████ ██ ████████████████████████ ████████████████████████ █████████████████ |
| ████████████ | ██████████ ██████ ██████ ██████ | ██████████████████████ ██████ █ ██ ██████ █ ███ ██ █████████████ |
| ███████████ | ██████ ██████ ██████ █████████ | ██████████████████████ ████ █ ███ █████ █ ██ ██████ ████ █ ██ █ █ ██ ██ ████████████████████ ████████████████████████ ████████████████████████ ██ █ ████ █ ████ ███ ███ ████████████ |
| ████████ | ██████████ ██████ ██████ | ████ █ ██████████ ████ █ ██ ████ █ ██ ████████ ██ █ ████ █ ███ ██ ███ ████████████████████████ ████████████████████████ ████████████████████████ ████████████ |

| Name | Title | Brief Description of Role |
|---|---|---|
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |

| Name | Title | Brief Description of Role |
|---|---|---|
| | | ███████████████████████ ██████████████████████ █████████████ |
| █████████ ██████ | ██████ ███████████ ██████████ ███████████ ███████ | ██████████████████████ ███████████████████████ ██████████████████████ ███████████████ |
| █████████ | ███████████ ███████████ ██████████ ██████ | ███████████████████████ ████████████████████ ██████████████████████ ██████████████████████ ████████████████ |
| █████████ | ███████████ ███████████ ██████ | ██████████████████████ ████████████████████████ ██████████████████████ ██████████ |
| ██████████ | ███████████ ██████████████ ██████ | █████████████████████ ██████████████████████ ████████████████████████ ███████████████ |
| ██████████ | █████████████ ███████████ ███████████ ███████████ | ███████████████████ █████████████████████ ████████████████████████ ████ |
| ████████ | ██████ ████████ ████████████ | █████████████████████ █████████████████████ █████████████████████ █████████████████████ █████████████████████ █████████████████████ ████████████ |
| █████ ███████ | ███████████ ██████████ ████████████ | █████████████████████ █████████████████████ ████████████████████████ |

| Name | Title | Brief Description of Role |
|------|-------|---------------------------|
| | ██████ ██████ | ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████ ████ ██ ██████ ████████████████████████████████ ████████████████████████████████ ████████ |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2023, I electronically served a copy of the foregoing to all counsel of record.

*/s/ Alex Spiro*