**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

CHARLIE JAVICE AND OLIVIER AMAR,

Defendants.

Case No. 1:23-cr-00251-AKH

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**NON-PARTY JPMORGAN CHASE BANK, N.A.'S**
**MOTION TO QUASH DEFENDANTS' RULE 17(C) SUBPOENAS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.  THIS COURT SHOULD APPLY THE *NIXON* STANDARD TO THE DEFENDANTS' RULE 17(C) SUBPOENAS. ................................................... 2

II.  DEFENDANTS HAVE NOT SHOWN BY A PREPONDERANCE THAT THE SUBPOENAS SATISFY THE REQUIREMENTS OF RULE 17. ............... 4

A.  Defendants Still Have Not Articulated the Information Sought with Specificity. ............................................................................................ 4

B.  Defendants Continue To Seek Irrelevant Documents................................ 8

C.  Defendants Continue to Seek Inadmissible Documents ........................... 9

D.  Defendants Have Already Obtained Much of The Information They Purport to Seek ...................................................................................... 10

1.  Request 4, 7, 8 (JPMC review of email, instant messages, text messages, WhatsApp messages, or other messaging or chat-based communications among JPMC personnel pertaining to Frank or Javice) ............................................................................................. 11

2.  Appendix B (Description of Custodians at Issue) ......................... 12

III.  Defendants' Oppositions Do Not Show that the Broad Definitions and Instructions in the Subpoena Pass Muster under *Nixon*. ....................................... 13

A.  The Javice Instructions ........................................................................... 14

B.  The Amar Instructions ............................................................................ 15

IV.  Javice's Requests Still Fail to Satisfy Rule 17(c)'s Requirements. ...................... 19

A.  Initial Requests ....................................................................................... 19

1.  Request 1 Should Be Quashed ....................................................... 19

2.  Requests No. 2, 3, and 9 ................................................................. 19

3.  Requests No. 15, 17, 18, 22, and 33 Should Be Quashed ............. 21

4.      Request 16 Should Be Quashed....................................................22

5.      Request 19 Should Be Quashed....................................................24

6.      Requests No. 20 and 26 Should Be Quashed................................24

7.      Request No. 21 Should Be Quashed..............................................25

8.      Request 25 Should Be Quashed....................................................25

9.      Request 27 Should Be Quashed....................................................26

10.     Request 30 Should Be Quashed....................................................27

11.     Request No. 34 Should Be Quashed..............................................27

12.     Requests No 4, 7, 8 Should Be Quashed......................................27

B.      Requests for Clarification ........................................................ 28

V.      Amar's Requests Still Fail to Satisfy Rule 17(c)'s Requirements. ...................... 30

1.      Requests 1 and 2 Should Be Quashed. ...........................................30

2.      Requests 3, 8, 9, and 10 Should Be Quashed................................31

3.      Requests 4, 6, and 7 Should be Quashed. ....................................34

4.      Requests 11 and 12 Should Be Quashed.......................................35

5.      Requests 13 and 14 Should Be Quashed.......................................37

6.      Request 15 Should Be Quashed....................................................38

7.      Request 16 Should Be Quashed....................................................39

8.      Request 17 Should Be Quashed....................................................40

9.      JPMC Agrees to Search for and Produce any Responsive and Non-privileged documents in Response to Requests 18, 19 and 20. .....41

10.     Request 21 Should Be Quashed....................................................42

11.     Requests 22 and 24 Should Be Quashed.......................................42

12.     Request 23 Should Be Quashed....................................................43

13.     Request 25 Should Be Quashed....................................................44

14.     Request 28 Should Be Quashed....................................................45

15.     Requests 29 and 30 Should Be Quashed.......................................45

16.     Request 31 Should Be Quashed....................................................46

CONCLUSION....................................................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Badr v. Liberty Mutual Grp., Inc.*,
   No. 06–CV–1208, 2007 WL 2904210 (D. Conn. Sept. 28, 2007)...........................................18

*Gropper v. David Ellis Real Estate, L.P.*,
   No. 13–cv–2068 (ALC)(JCF), 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014) ..........................18

*Henry v. Morgan's Hotel Grp.*,
   No. 15-cv-1789 (ER) (JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ..............................18

*Lewin v. Nackard Bottling Co.*,
   No. 10–CV–8041 (PCT)(FJM), 2010 WL 4607402 (D. Ariz. Nov. 4, 2010) ..........................18

*Markus v. Rozhkov*,
   615 B.R. 679 (Bankr. S.D.N.Y. 2020)....................................................................................19

*Neder v. United States*,
   527 U.S. 1 (1999)....................................................................................................................41

*Rice v. Reliastar Life Ins. Co.*,
   No. 11–CV–44 (BAJ)(CN), 2011 WL 5513181 (M.D. La. Nov. 10, 2011)...........................18

*United States v. Avenatti*,
   No. (S1) 19 Cr. 373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) .....................5, 6, 17

*United States v. Barnes*,
   560 F. App'x 36 (2d Cir. 2014) ..............................................................................................12

*United States v. Barnes*,
   No. S9 04 CR 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008)..................................8

*United States v. Bergstein*,
   No. 16-CR-746 (PKC), 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) ...............10, 11, 12, 22

*United States v. Bergstein*,
   788 F. App'x 742 (2d Cir. 2019) .....................................................................................10, 11

*United States v. Boyle*,
   No. 08 CR 523 (CM), 2009 WL 484436 (S.D.N.Y. Feb. 24, 2009).......................................12

*United States v. Brown*,
   No. 95 CR. 168 (AGS), 1995 WL 387698 (S.D.N.Y. June 30, 1995)................................8, 46

*United States v. Carroll*,
   No. 19 CR 545 (CM), 2020 WL 104813 (S.D.N.Y. Jan. 9, 2020) .........................................17

*United States v. Cherry*,
   876 F. Supp. 547 (S.D.N.Y. 1995) .......................................................................................20

*United States v. CITGO Petroleum Corp.*,
   908 F. Supp. 2d 812 (S.D. Tex. 2012) ..................................................................................17

*United States v. Cole*,
   19-CR-869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) .........................................3, 8

*United States v. Donziger*,
   No. 11-cv-691 (LAK), 2021 WL 1865376 (S.D.N.Y. May 10, 2021) ..................................7, 9

*United States v. Frenkel*,
   682 F. App'x 20 (2d Cir. 2017) .............................................................................................41

*United States v. Johnson*,
   No. S5 10 CR 431 CM, 2013 WL 3948454 (S.D.N.Y. July 24, 2013) ....................................6

*United States v. Lewis*,
   432 F. Supp. 3d 1237 (D.N.M. 2020) ...................................................................................18

*United States v. Libby*,
   432 F. Supp. 2d 26 (D.D.C. 2006) .........................................................................................4

*United States v. Louis*,
   No. 04 CR, 203 (LTS), 2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) .....................................5

*United States v. Nixon*,
   418 U.S. 683 (1974)........................................................................................... *passim*

*United States v. Pena*,
   No. 15-cr-551 (AJN), 2016 WL 8735699, (S.D.N.Y Feb. 2, 2016) ......................................16

*United States v. Rajaratnam*,
   753 F. Supp. 2d 317. (S.D.N.Y. 2011).......................................................................10, 15, 16

*United States v. Reed*,
   726 F.2d 570 (9th Cir. 1984) ..................................................................................................5

*United States v. Rivera*,
   No. 13-CR-149 KAM, 2015 WL 1540517 (E.D.N.Y. Apr. 7, 2015) .....................................12

*United States v. RW Professional Leasing Services Corp.*,
   228 F.R.D. 158 (E.D.N.Y. Apr. 20, 2005)...............................................................................8

*United States v. Shea*,
   No. 20 Cr. 412-4 (AT), 2022 WL 13847351 (Oct. 24, 2022)...............................................3, 5

*United States v. Skelos*,
   No. 15-CR-317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018)..................................3

*United States v. Tagliaferro*,
   19-CR-472 (PAC) (S.D.N.Y. Mar. 16, 2021), 2021 WL 980004..............................15, 16, 17

*United States v. Tucker*,
   249 F.R.D. 58 (S.D.N.Y. 2008) ............................................................................................2, 16

*United States v. Warren*,
   782 F. App'x 466 (6th Cir. 2019) .................................................................................................4

*United States v. Weaver*,
   860 F.3d 90 (2d Cir. 2017)...........................................................................................................41

*United States v. Weisberg*,
   No. 08-CR-347 NGG RML, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) ....................8, 9, 10

*United States v. Williams*,
   951 F.2d 1287 (D.C. Cir. 1991) ...................................................................................................17

*United States v. Xiaoquing Zheng*,
   No. 1:19-CR-156, 2020 WL 6287481 (N.D.N.Y. Oct. 27, 2020) ................................... *passim*

**Rule**

Fed. R. Crim. P. 17 ......................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendants Charlie Javice and Olivier Amar (the "Defendants") each served Rule 17(c) subpoenas on JPMC for documents and communications containing an astonishing 65 requests for as many as 84 custodians (the "Subpoenas"). Defendants argue that because JPMC is a sophisticated financial institution, their sprawling requests are not unduly burdensome and therefore should be allowed. Javice Opp'n at 3; Amar Opp'n at 9-10. That is not the law; JPMC need not show that Defendants' requests are unduly burdensome. Rather, it is <u>Defendants'</u> burden to make a preponderance showing that the evidence they seek is relevant, admissible, and specific. Defendants have not come close to meeting their burden. Rather, Defendants' requests – even as "narrowed" – are blatant and transparent attempts to seek broad discovery from JPMC to which they are not entitled under Rule 17. The extraordinary breadth of the requests reveal Defendants' goal to embark on a fishing expedition to search JPMC's files for whatever they want, far beyond the relevant issues in this case. Defendants' requests reveal a through-line which centers on gathering as many of JPMC's internal communications as possible in an obvious attempt to shift the focus of the trial from Defendants' crimes to non-party victim JPMC's conduct.

Indeed, Defendants' strategy to vilify JPMC at every turn has been readily apparent throughout this case. Defendants have repeatedly made baseless accusations that JPMC is directing the SDNY's investigation in this case. Wuertz Decl., Ex. A (11/2/23 Tr.) at 6:9-22.[1] Defendants have continually complained that JPMC is causing unnecessary delays in producing documents in response to SDNY's grand jury subpoenas, despite the fact that JPMC diligently

---

[1]    Citations preceded by "Wuertz Decl." are to the Declaration of Allison M. Wuertz, dated December 1, 2023 and submitted in connection with JPMC's Memorandum of Law in Support of its Motion to Quash, dated December 1, 2023 (the "Motion" or "Mov. Br.").

produced over one million pages of documents from 146 custodians within the production deadline set by this Court.  Defendants highlight that JPMC did not meet and confer with the Defendants before JPMC filed its motion, (Amar Opp'n at 6; Javice Opp'n at 8 n.5), while omitting that Defendants rejected JPMC's good faith request for an extension of <u>one</u> business day to file its motion so that JPMC could meet and confer before JPMC's motion was filed. Defendants ignore that JPMC responded to numerous requests for information following the meet and confer, provided a requested index of production materials, and produced 614 pages of documents in response to Amar's Rule 17(c) Subpoena.  Defendants' relentless attacks accusing non-party victim JPMC of acting in bad faith are wholly unfounded and should be rejected by this Court.

Ultimately, it is Defendants' burden to show their requests satisfy the strict standard set forth by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 700 (1974).  They have not done so.  Accordingly, JPMC's motion to quash should be granted.

## <u>ARGUMENT</u>

### I.    THIS COURT SHOULD APPLY THE *NIXON* STANDARD TO THE DEFENDANTS' RULE 17(C) SUBPOENAS.

Under Rule 17(c), Defendants bear the burden to show by a preponderance of the evidence that the Subpoenas are not "unreasonable or oppressive."  Fed. R. Crim. Pro. 17(c); *see also Nixon*, at  698.  The Supreme Court interpreted this standard in *Nixon*, and held that the party requesting a Rule 17(c) subpoena must show that the requested documents are: (1) relevant, (2) specifically identified, (3) admissible, and (4) not otherwise procurable by the exercise of due diligence.  *See id.* at 699-700.  The Court should apply the *Nixon* standard in considering Defendants' requests in the Subpoenas.

Defendants argue that the *Nixon* standard does not apply to cases involving Rule 17(c) subpoenas issued to third parties by criminal defendants, and urge the Court to adopt the less stringent standard set forth in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), which requires a defendant to demonstrate only "an articulable suspicion" that the request for documents is "(1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." Amar Opp'n at 7-8; Javice Opp'n at 9-11. "However, the Second Circuit and district courts in this Circuit have almost unanimously 'applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant . . . .'" *United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (quoting *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (summary order). In addition, "[d]istrict courts in the Second Circuit apply the standard identified in *Nixon* to third-party subpoenas issued by the defense." *United States v. Shea*, No. 20 Cr. 412-4 (AT), 2022 WL 13847351, at *2 (Oct. 24, 2022) (citations omitted); *see e.g.*, *United States v. Pierre*, (S2) 22 Cr. 19 (PGG), 2023 WL 7004460, at *15 n. 10 (Oct 24, 2023 S.D.N.Y) (denying issuance of third party subpoena and stating "[t]his Court has consistently applied the *Nixon* standard to Rule 17(c) subpoenas issued to third parties and will do so here") (internal quotations omitted); *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) ("[C]ourts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties."). Indeed, when recently considering whether criminal defendants could issue Rule 17(c) subpoenas to eleven financial institutions for documents, data, and communications responsive to more than twenty requests, this Court recognized that "U.S. v. Nixon provides the

3

boundary."  Wuertz Reply Decl., Ex. E (*US v. Hwang* Tr.) at 42:22-23.[2]  The Court further

emphasized that Rule 17(c) "is really a trial subpoena.  It's not a discovery subpoena, it is a trial

subpoena."  *Id.* at 6:10-12.  This Court, therefore, should apply the prevailing *Nixon* standard to

the Subpoenas served on non-party JPMC.

## II.    DEFENDANTS HAVE NOT MADE A PREPONDERANCE SHOWING THAT THE SUBPOENAS SATISFY THE REQUIREMENTS OF RULE 17.

### A.    Defendants Still Have Not Articulated with Specificity the Information They Seek.

Despite the Defendants' attempts to "narrow" certain requests in the Subpoenas, most of

the requests still  fail to meet *Nixon's* specificity requirement.[3]  The requirement is simple—Rule

17(c) requires that Defendants must "reasonably specify the information contained or believed to

be contained in the document sought."  *Pierre*, 2022 WL 13847351, at *3.  Rather than address

the straight-forward *Nixon* factors for their subpoena requests, Defendants argue in opposition

that they are not required to identify specific documents they want produced, and that their

proposed search terms and list of custodians are sufficiently specific because they have

suggested search terms and date ranges.  *See* Amar Opp'n at 14; Javice Opp'n at 13.

Defendants' argument misses entirely the point of the specificity requirement set forth in

*Nixon*.[4]  "While 'exquisite specificity' is not required . . . courts will not approve a subpoena for

documents based upon requests for disclosure from broad categories of documents."  *United*

*States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting *United States v. Poindexter*, 727

---

[2]      Exhibits A – D are attached to the Declaration of Allison M. Wuertz, dated December 1, 2023.
Exhibit E – F  are  attached to the Reply Declaration of Allison M. Wuertz, dated December 22, 2023.

[3]      As indicated in its Motion and this Reply, JPMC agrees to produce non-privileged documents
responsive to certain Requests that meet the requirements of Rule 17(c).

[4]      Defendants argue that JPMC is applying a "proposed rubric" to assess the specificity of the
Subpoenas.  Javice Opp'n at 13.  To the contrary, JPMC is following widely accepted case law in this
Circuit.

F. Supp. 1501, 1510 (D.D.C.1989)).  Courts around the country regularly quash Rule 17(c)

subpoenas where those subpoenas seek "all" documents rather than specific documents.  *See,*

*e.g.*, *United States v. Warren*, 782 F. App'x 466, 472-73 (6th Cir. 2019) (affirming quashing of

Rule 17(c) subpoena for "'a copy of all of [a specific individual's] emails' to the Clarks, even

while acknowledging these emails were sent 'each month  . . . for many years'" because "this is

hardly a narrow request and strikes us as a fishing expedition in the hope of finding exculpatory

information"); *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (upholding quashing of

Rule 17(c) subpoena because "Appellants did not request specific documents, but sought entire

arson investigation files.  Rule 17(c) was not intended as a discovery device, or to 'allow a blind

fishing expedition seeking unknown evidence'"); *United States v. Louis*, No. 04 CR, 203 (LTS),

2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (quashing subpoena for lack of specificity

when "[t]he subpoena seeks 'any and all' documents relating to several categories of subject

matter (some of them quite large), rather than specific evidentiary items, thus clearly indicating

that Defendant seeks to obtain information helpful to the defense by examining large quantities

of documents, rather than to use Rule 17 for its intended purpose-to secure the production for a

court proceeding of specific admissible evidence"); *United States v. Xiaoqing Zheng*, No. 1:19-

CR-156, 2020 WL 6287481 (N.D.N.Y. Oct. 27, 2020) (quashing request for "[a]ll documents

and CAD models on GE's Schenectady Warehouse server or any other computer accessible to

Dr. Zheng during his employment at GE" because "Defendant's attempt to frame" the request as

a "highly specific category" was "belied by the language of the request").

      Javice argues that "a defendant need not have prior knowledge of specific documents to

meet the specificity requirement of Rule 17(c)."  Javice Opp'n at 13 (quoting *Weisberg*, 2011

WL 1327689, at *7).  To meet this element of *Nixon*, defendants must do more than "speculate

about what **might be** in communications." *United States v. Avenatti*, No. (S1) 19 Cr. 373 (PGG), 2020 WL 508682, at *6 (S.D.N.Y. Jan. 31, 2020) (emphasis added). For example, this Court observed that the defendant's request in *Hwang* for documents reflecting the transaction history and disposition of certain swap transactions mentioned in the indictment did not "ask[] for precise documents. . . . [It] seems to me it is a program for discovery of a huge amount of data." Wuertz Reply Decl., Ex. E (*Hwang* Tr.) at 14:9-16:9.

Defendants have not met their burden here because they offer only speculation through a broad custodial search across a time period with the hope that their requests may turn up exculpatory information. This approach does not meet the specificity requirement under *Nixon*. *See United States v. Johnson*, No. S5 10 CR 431 CM, 2013 WL 3948454, at *1 (S.D.N.Y. July 24, 2013) ("A general assertion that certain material 'might contain exculpatory information' is insufficient to prevail against a motion to quash under Rule 17(c).").

United States v. Avenatti is instructive. 2020 WL 508682, at *5. In *Avenatti*, the defendant made a broad request for all communications that mentioned him. The request specified two custodians and a nine-month period. 2020 WL 508682, at *5. The defendant argued that the "request is sufficiently specific in that it is limited to communications between two government witnesses about a specific subject matter." *Id.* The Court disagreed for several reasons. First, the Court found that the defendant had "offered only speculation as to what [the two custodians] might have said about Avenatti in text messages and emails." Second, the court explained that the "request has the earmarks of a 'fishing expedition' premised on a 'mere[] hop[e] that something useful will turn up,'" even though the defendant specified custodians and a date range. *See id.* (quoting *Mendinueta-Ibarro*, 956 F. Supp. 2d at 512-13).

Here, Defendants seek an even broader set of documents with nothing more (and perhaps less) than the speculation in *Avenatti*. Defendants' 65 requests are extremely broad and seek documents from over 80 custodians and across several years. Defendants have proposed some limitation to certain date ranges, custodians, and search terms, but that does not save the requests from resembling civil discovery requests. The requests themselves do not identify the specific documents that Defendants know to exist – the Defendants simply seek to fish in a slightly smaller pond. Moreover, even assuming that limitations of the kind Defendants offered were proper, the searches they set forth are still broader than Avenatti's request for documents on a single topic from two custodians over a nine month period, rejected by the *Avenatti* court as "not sufficiently specific." *Id.* Even Defendants' purportedly narrow requests seek "all" documents on dozens of topics from numerous custodians. Neither Defendant has done more than speculate that additional documents, beyond the productions JPMC has already provided, may exist and may contain exculpatory information.[5] This lack of specificity is fatal under *Nixon*.

The cases Javice cites support JPMC's position, not Defendants'. *See United States v. Donziger*, No. 11-cv-691 (LAK), 2021 WL 1865376, at *8 (S.D.N.Y. May 10, 2021) (quashing numerous requests because "[s]ubpoenas seeking 'any and all' materials, without mention of

---

[5]    Javice, in a passing parenthetical, states that JPMC has "destroyed the data," implying that JPMC has engaged in spoliation. Javice Opp'n at 3. Any suggestion that JPMC has engaged in spoliation, even an oblique parenthetical reference, is spurious. JPMC has taken consistent measures to preserve data custodial related to this proceeding. As JPMC has disclosed on numerous occasions, and as detailed in its moving papers, at the time JPMC was obligated to preserve custodial data in connection with this matter, the data of three unregulated JPMC custodians (Ashley Ferrell, Adam Shpiro, and Sindhu Subramaniam) was already deleted after those employees' departures.

Although not required, to replicate the three custodians' data, JPMC searched the email metadata for the emails that it had collected to date (i.e., the "to," "from," "cc," and "bcc" fields) for the three custodians' first and last names. Mov. Br. at 16 n.3. Furthermore, JPMC has gone above and beyond its discovery obligations here by providing the retention policies governing the information of the employees noted, the dates the employees departed JPMC's employment, and the approximate dates the employees' respective JPMC accounts were purged in accordance with stated policies, as requested by the Government in compliance with this Court's order.

'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon"); *Cole*, 2021 WL 912425, at *4-6 (quashing subpoena in its entirety and, while acknowledging that the words "any" and "all" do not automatically defeat specificity, still finding requests for a single personnel file and all records related to misconduct allegations against a single individual insufficiently specific); *United States v. RW Professional Leasing Services Corp.*, 228 F.R.D. 158, 162-65 (E.D.N.Y. Apr. 20, 2005) (quashing eighteen of twenty-one requests because, while three narrowly tailored requests were sufficient under *Nixon*, most requests, including requests such as ones for "all documents relating or referring to [defendant] reserve accounts," and "documents relating and referring to any customer related problems for [defendant]," failed *Nixon's* standards); *United States v. Weisberg*, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *6–7 (E.D.N.Y. Apr. 5, 2011) (quashing request for "[a]ll documents, electronically stored information including metadata, and objects (hereinafter 'documents') concerning and relating to the creation, maintenance, terms, conditions and termination' of the Escrow Account" because it essentially "demands all documents and material in any way relating to the Escrow Account").

### B.    Defendants Continue to Seek Irrelevant Documents

"A party seeking documents through subpoenas issued pursuant to Rule 17(c), has the burden of showing [] that the documents are evidentiary and relevant." *United States v. Brown*, No. 95 CR. 168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995) (citations omitted).  A defendant's unsupported assertion that the subpoenaed materials are relevant is insufficient under Rule 17.  The crux of the inquiry is whether the evidence sought would be relevant evidence at trial.  *See United States v. Barnes*, No. S9 04 CR 186(SCR), 2008 WL 9359654, at* 3-4. (S.D.N.Y. Apr. 2, 2008).  Many of Defendants' requests still seek irrelevant documents that do

not relate to the elements of the charged crimes, as described more fully below. See *infra* at
Sections IV and V.

### C.    Defendants Continue to Seek Inadmissible Documents

Many of the requests in the Subpoenas either expressly or implicitly seek privileged
documents. Privileged documents are not the appropriate target of Rule 17 subpoenas. *See*
*United States v. Donziger*, Nos. 19-CR-561 (LAP), No. 11-CV-691 (LAK), 2021 WL 1865376,
at *7, *9 (S.D.N.Y. May 10, 2021) (quoting *United States v. Skelos*, 15-CR-317 (KMW), 2018
WL 2254538, at *2 (S.D.N.Y. May 17, 2018)) (quotation marks omitted); *see also United States*
*v. Weisberg*, No. 08-CR-347 (NGG)(RML), 2011 WL 1327689, at *8 (E.D.N.Y. Apr. 5, 2011)
(finding that a non-party's assertion of privilege of the documents sought by a Rule 17(c)
subpoena "weighs against ordering their disclosure" because "documents containing privileged
material generally are inadmissible."). In opposition, Defendants argue that the attorney-client
and work product privileges can be overcome where a criminal defendant has a *constitutional*
need for such documents in order to properly defend himself. Javice Opp'n at 19; Amar Opp'n
at 19, 57. Defendants, however, gloss over the extremely high standard needed to invade the
attorney-client privilege, which requires that a defendant show "substantial need" for documents
and that he cannot, without undue hardship, obtain their substantial equivalent by other means."
*Weisberg*, 2011 WL 1327689,  at *5 (declining to overcome privilege protection).

*Weisberg*, despite Amar's argument to the contrary, does not support his position. Amar
cherry-picks several quotes that sound favorable to him in isolation, but those remarks were
directed at the defendant's request for documents that reflected attorneys' meetings with
individuals **but did not reveal the content of attorney advice**. *Weisberg*, 2011 WL 1327689,
at *6. Those types of documents may not even be privileged in the first place. Here, however,
Defendants seek **all** of JPMC's privileged documents, and like their subpoena Requests overall,

they cast a broad net with the hopes something may stick, making no attempt to cabin that request in any manner.  The more applicable portion of *Weisberg* is the court's **_denial_** of requests seeking documents on the third party's privilege log.  *Weisberg*, 2011 WL 1327689,  at *8.

Finally, Defendants' invention of a new presumption of admissibility misstates applicable case law in an attempt to improperly gain access to privileged materials.  Defendants both cite language in *Rajaratnam* for this contention.  *See* Amar Opp'n at 18; Javice Opp'n at 19.  Neither opposition, however, acknowledges that the cited language was **non-binding dicta** and that the issue was a narrow one: whether tax returns were categorically privileged.  *United States v. Rajaratnam*, 753 F. Supp. 2d 317,  323. (S.D.N.Y. 2011)  The facts in *Rajaratnam* bear no resemblance to the matter at hand, rendering *Rajaratnam* inapposite.

Nor is *Bergstein* of any help to Defendants.  The court there set forth a fundamental tenet of admissibility:  documents that may be relevant to the claims in the proceeding can be considered preliminarily admissible, **until a party asserts a reason they are not**.  *United States v. Bergstein*, No. 16-CR-746 (PKC), 2017 WL 6887596, at *2 (S.D.N.Y. Dec. 28, 2017) ("The Court will address the issues of relevance and admissibility further if and when a party moves to admit materials subpoenaed under these requests.").  Indeed, *Bergstein* did not even consider an assertion of privilege—the word privilege does not appear anywhere in the opinion.  Privileged documents are inadmissible, and any request seeking privileged documents fails under *Nixon* and should be quashed.

## C.    Defendants Have Already Obtained Much of the Information They Seek

Defendants have not shown by a preponderance of the evidence that they cannot obtain the material they seek through an exercise of due diligence – namely, reviewing the materials they already have received from JPMC and the Government.  Mov. Br. at 14-68.  In opposition, Javice selectively acknowledges JPMC's substantial prior productions only when it benefits her.

10

*See, e.g.*, Javice Opp'n at 20-23 (discussing Request Nos. 2, 3, and 9). For other requests, such as Request Nos.15, 17, 18, 22, and 23, she disregards that JPMC has already produced responsive documents. Mov. Br. at 30, 32-34, 39-40, 47-48 (listing documents responsive to Request Nos. 15, 17, 18, 22, and 23).

While JPMC will not repeat its previous arguments concerning its prior production of documents in this proceeding, certain of Defendants' contentions require further response and are addressed below.

       **1.**       **Request Nos. 4, 7, 8 (JPMC review of email, instant messages, text messages, WhatsApp messages, or other messaging or chat-based communications among JPMC personnel pertaining to Frank or Javice)**

In its moving papers, JPMC provided information about the scope of its review in response to the Grand Jury Subpoenas. Mov. Br. at 16, 20, 39, 41. In opposition, Javice argues that JPMC's search was too limited. Javice Opp'n at 29-30. Contrary to Javice's allegations, JPMC's review of text messages and instant messages went beyond nine custodians. JPMC's search of instant messages included not only to nine custodians identified as being key to the merger, but also extended to fourteen other JPMC personnel identified for their involvement in the Frank due diligence process. Furthermore, JPMC has collected and produced text messages not only for JPMC key custodians, but other individuals who were identified as having relevant text messages.

To justify her request for text messages under the *Nixon* standard, Javice must meet her burden of showing that such text messages exist. As it currently stands, Javice's request for text messages for these 23 custodians is based on mere speculation that these individuals sent or received text messages about Frank. For example, Javice could have, but did not, provide

examples of text messages she exchanged with the individuals for whom she requests additional production.

### 2.    Appendix B (Description of Custodians at Issue)

Javice's Subpoena originally requests documents from 82 custodians.  Even under her proposed narrower requests, Javice still requests that JPMC review data from **51 custodians**. Even for this slightly smaller universe, Javice fails to carry her burden under *Nixon* to show what documents from these custodians she needs to review prior to trial.  JPMC has already produced many documents that involve these 51 individuals.

Furthermore, in its moving papers, JPMC identified Requests that sought documents from custodians without relevant knowledge.  Defendants argue in opposition that these custodians had more documents that were "material" to Javice's defense.  Javice Opp'n at 21. That argument, however, fails to articulate why such custodians—all of whom were **less** involved than the custodians whose documents JPMC already has produced—would have relevant evidence those key individuals did not have.  Moreover, the oversimplified argument that an individual is not a custodian is premised on form over function.  It ignores entirely the fact that JPMC has produced thousands of documents in the possession of individuals who are not "custodians" and that adding those individuals as "custodians" would be unnecessarily duplicative.

Javice also provides no basis for why JPMC's productions with respect to these custodians are inadequate.  In Javice's descriptions for some of these desired custodians, she states that JPMC had determined that these individuals were "relevant enough to be a custodian" or "relevant and material enough to be a key custodian," but JPMC had "not searched" these custodians' files "fully."  Javice does not explain what "fully searching" these custodians' files

means.  But any reasonable interpretation violates *Nixon*'s admonition that Rule 17(c) requests must be specific.

Moreover, Javice's characterizations ignores the broad approach that JPMC took to respond to the Grand Jury Subpoenas, including, but not limited to, producing nine key custodians' documents that hit on broad Frank-related terms.  Mov. Br. at 15-21, 25, 28-31, 32, 34, 37-45.  JPMC's approach resulted in the documents for **146 custodians** being produced to the SDNY (and therefore to Defendants), including many documents associated with the 51 custodians in Javice's Appendix B.  Javice fails to articulate what is insufficient about JPMC's productions with respect to the "custodians" or "key custodians," and therefore fails to meet the *Nixon* standard.

### III.    Defendants' Oppositions Do Not Show That the Broad Definitions and Instructions in the Subpoenas Pass Muster Under *Nixon*.

JPMC's moving brief cited numerous issues with the definitions and instructions in the Subpoenas.  In opposition, Defendants attempt to argue that the definitions and instructions are appropriate based on case law, citing *Weigand* and *Rajaratnam* in particular.  Defendants' arguments are unsuccessful because Defendants: (1) fail to address the objections raised by JPMC; (2) ignore the plain language of the definitions and instructions objected to; (3) rely on case law and procedural rules inapplicable here; and (4) misstate the findings of the courts of this jurisdiction that reject Defendants' attempts to use Rule 17 subpoenas like discovery requests.  "At bottom, the Subpoena[s] read[] like [] discovery request[s], which is not permitted under Rule 17(c)."  *United States v. Tagliaferro*, 19-CR-472 (PAC) (S.D.N.Y. Mar. 16, 2021), 2021 WL 980004, at *3 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).

## A.    The Javice Instructions

Javice's main argument is that the instructions in the Javice Subpoena are acceptable because courts have purportedly endorsed similar sets of instructions.  Javice Opp'n at 31-33.  Javice relies on *Weigand* and *Rajaratnam*, *id.*at 31-32, but neither is applicable here.

First, the *Weigand* court **did not consider a challenge to the relevant subpoena's instructions or definitions**, nor did it consider a challenge to the subpoena's purported use of the terms "all" or "any."  *Weigand* is entirely inapposite for this reason alone.  Furthermore, *Weigand* supports JPMC, not Javice:  the *Weigand* court rejected that defendant's attempts to obtain "broad categories of documents" and actually granted the motion to quash in part on this basis.  *Weigand*, 520 F. Supp. 3d at 615.[6]

Second, *Rajaratnam* is similarly inapplicable as that court also did not consider a challenge to the relevant subpoena's instructions or definitions.  Furthermore, the requests challenged for overbreadth in *Rajaratnam* (an insider trading case) sought that defendant's communications with a third-party company.  Here, Javice is in possession of over **320,000 documents** (totaling over **1.18 million pages**) produced by JPMC, including each and every non-privileged communication of both Javice and Amar in JPMC's possession.  Put simply, *Weigand* and *Rajaratnam* bear no resemblance to this case on either the facts or the law, and neither helps Javice carry her burden under *Nixon*.

Furthermore, Javice's attempts to distinguish *Pena* and *Tagliaferro* fail.  In attempting to distinguish *Pena*, Javice misstates the court's holding.  Javice argues that the court in *Pena* rejected the defendant's request for "any and all" records based on the associated timeframe.

---

[6]    Additionally, and as discussed above, *Weigand* is an outlier, applying *Tucker* instead of *Nixon*, and as such is inapposite on that basis as well.

Not so.  The *Pena* court found that the "broad swath of items" requested was improperly

"intended as a discovery device" and that courts in the Second Circuit "routinely reject pretrial

subpoenas seeking all recordings, documents, and/or records" for want of specificity—without

mention to relevant timeframe.  *United States v. Pena*, No. 15-cr-551 (AJN), 2016 WL 8735699,

at *3. (S.D.N.Y Feb. 2, 2016).

      Javice's attempts to distinguish the facts of *Tagliaferro* strain credulity.  The *Tagliaferro*

court found that a Rule 17 subpoena's definition of "documents" as including "any and all

documents and records, in whatever form kept" was "breathtakingly broad" and failed to provide

the requisite specificity.  *Tagliaferro*, 2021 WL 980004, at *3.  Javice relies entirely on the

suggestion that because the Javice definition demands documents "stored in any medium from

which information can be obtained directly" as opposed to *Tagliaferros'* "in whatever form kept"

formulation, the Javice Subpoena is somehow different.  It is not.  Javice points to no other case

law to support her semantic distinction.  "At bottom, the Subpoena reads like a discovery

request, which is not permitted under Rule 17(c)."  *Id.* at *3; *accord United States v. Carroll*, No.

19 CR 545 (CM), 2020 WL 104813, at *2 (S.D.N.Y. Jan. 9, 2020) (finding subpoena asking for

"every email" to be "wildly overbroad"); *Avenatti*, 2020 WL 508682, at *5 ("In seeking all

communications that reference Avenatti over a nine-month period following Avenatti's March

25, 2019 arrest, the Defendant sweeps too broadly.").

      **B.**    **The Amar Instructions**

      As an initial matter, Amar's attempt to justify the Subpoenas' reliance on the discovery

rules in the Federal Rules of **Civil** Procedure is both legally wrong and lays bare Defendants'

attempts to obtain civil-style discovery through Rule 17 subpoenas.  First, the silence of a court's

**local rules** on a procedural issue does not permit a defendant to ignore both the federal rules and

established case law—and Amar cites no cases that stand for this proposition.  Indeed, it is

15

telling Amar cannot cite to a single case from this Circuit to support this general proposition, instead reaching back 30 years to cite a D.C. Circuit case alongside cases from the District of New Mexico and the Southern District of Texas. But even if those cases were binding on this Court, which they are not, they do not support the specific proposition that principles of civil discovery can be applied to a Rule 17 subpoena. *United States v. Williams*, 951 F.2d 1287, 1289 (D.C. Cir. 1991) has nothing to do with subpoenas or discovery, and merely mentions in passing that the D.C. Circuit reviews factual findings of a district court *de novo*. *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012), and *United States v. Lewis*, 432 F. Supp. 3d 1237, 1269 (D.N.M. 2020), both discuss the standards by which a court should consider a motion for reconsideration in a criminal case. None of these cases addresses Rule 17(c) subpoenas, and thus they should be ignored.

Furthermore, even if the Federal Rules of Civil Procedure did apply (they do not), the Subpoena's instructions and definitions are still overbroad and warrant quashing on this basis alone. *See, e.g., Henry v. Morgan's Hotel Grp.*, No. 15-cv-1789 (ER) (JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (holding a Rule 45 subpoena requesting "all documents and communications" as "plainly overbroad and impermissible" and finding this as an independent basis to quash); *Gropper v. David Ellis Real Estate, L.P.*, No. 13–cv–2068 (ALC)(JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding that a "request for 'any and all' documents ... is inherently overbroad"); *Rice v. Reliastar Life Ins. Co.*, No. 11–CV–44 (BAJ)(CN), 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011) (finding that "a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition"); *Badr v. Liberty Mutual Grp., Inc.*, No. 06–CV–1208, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad"); *Lewin v.*

16

*Nackard Bottling Co.*, No. 10–CV–8041 (PCT)(FJM), 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) (holding requests for an employee's personnel files as "on its face, overbroad" finding the defendant was "merely trying to engage in a fishing expedition.").

With regard to Instruction No. 9, Amar fails entirely to address the objection raised by JPMC that the instruction seeks documents for which he "has made no showing . . . [they] even exist, let alone explained what they might reasonably be expected to contain."  Mov. Br. at 13 (quoting *Donziger*, 2021 WL 1865376, at *7).  Instead, Amar relies on a single bankruptcy case applying the Federal Rules of Civil Procedure—*Markus v. Rozhkov*, 615 B.R. 679, 705–06 (Bankr. S.D.N.Y. 2020)—that considered the enforcement of a **civil subpoena** served on a **party** to a bankruptcy proceeding.  The facts alone render *Markus* inapplicable to the present case. Furthermore, the *Markus* court—reviewing the Bankruptcy Court's discovery decisions under the "clearly erroneous" standard—merely found that the Bankruptcy Court's "fact specific" inquiry compelling the production of documents from third-parties with agency relationships was not clearly erroneous.  *Markus*, 615 B.R. 707.  But even if *Markus* was applicable here, that is not what Instruction No. 9 demands.  Instruction No. 9 demands "all Documents that are not in your immediate possession but that you have the effective ability to obtain."  This Instruction is objectionable because it seeks documents outside of JPMC's control as well as inadmissible documents protected by attorney client privilege and the work product doctrine.

With regard to Instruction No. 14, Amar simply ignores the text of Defendants' own subpoenas.  Amar accuses JPMC of "exaggerating," but JPMC quotes verbatim the language of Instruction 14.  Mov. Br. at 13.  Amar provides no defense explaining why it is appropriate for a criminal defendant to dictate to a third party and victim an onerous and arbitrarily specific methodology for producing documents in response to the Amar Subpoena.  Put simply, nothing

in Rule 17(c) imposes such a requirement, and Defendants' attempts to impose such strictures is baseless and unsupported by law. *See Xiaoqing Zheng*, 2020 WL 6287481, at *13 ("If Defendant and his counsel are unwilling to search for this information that is likely already in their possession, it would be patently unfair to force [the non-party] to do their work for them.").

Finally, with regard to Instruction No. 19, Amar fails to address JPMC's objection that the instruction, on its face, calls for the production of documents "not otherwise responsive to these Requests." Amar again ignores the plain language of the instruction and merely dismisses the objection as an "overblown [and] exaggerated reading of this instruction." Amar Opp'n at 22. But there is simply no other viable interpretation of the purported requirement to produce documents "not otherwise responsive to these Requests," nor does Amar offer one. Amar also fails to provide any law that stands for the proposition that Rule 17 permits a defendant to demand non-responsive documents, because, of course, there is none.

Ultimately, Amar reveals the fundamental flaw inherent in the Defendants' Subpoenas by stating that their "definitions and instructions often include default guidance and directions that should be applied only where a specific request does not contain **specific instructions or context** for that request," openly acknowledging the Requests in the Subpoenas lack the specificity *Nixon* requires. Amar Opp'n at 22 (emphasis added). Defendants' Subpoenas should be quashed because Javice and Amar use the broad definitions and instructions to try to "turn[ Rule 17] into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16," in direct contravention of prior decision of this Court. *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995).

**IV.**    **Javice's Requests Still Fail to Satisfy Rule 17(c)'s Requirements.**

    **A.**    **Initial Requests**

        **1.**    **Request No. 1 Should Be Quashed**

***Request No. 1****: Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas.[7]*

JPMC is willing to provide privilege logs for its prior production to SDNY.  As noted above, Javice has not remedied the issues with this Request for all of JPMC's privileged material, and therefore it still fails under *Nixon*.  *See* Section II(C), *supra*, at 9-10.  JPMC is willing to meet and confer with Defendants regarding any specific challenges to specific documents as well as the appropriate method for submitting to the Court any dispute the parties cannot resolve.

        **2.**    **Requests Nos. 2, 3, and 9**

***Request No. 2****: Communications and Documents in Your care, custody, or control, sent, received, drafted, created, or revised by any of the individuals listed in Exhibit 2 that pertain to the Merger, Acquisition, Integration, or Internal Investigation, including Communications and Documents pertaining to the following topics:*

    *a)  Data held by Frank prior to the Acquisition;*

    *b)  The use or potential use of such Data by JPMC, including in connection with potential lead generation;*

    *c)  Traffic on or to the Frank website and any of its digital tools, including, but not limited to as such traffic is measured by clicks, engagement, active users, visits, sessions, signups, registered users, impressions,*

---

[7]    The Requests quoted in Sections IV and V reflect the language of the Javice and Amar Subpoenas, and do not reflect subsequent proposals to narrow the Requests.

*FAFSA users, accounts, students, digital profiles, leads, starters, prospects, and customers;*

d) *The terms "user," "user sign-up," "registered user," "authenticated user," "customer," "account," "impression," "household," "student," "starter," or "sign-up," "FAFSA," "CAC," "CPC," "CTR," or "SEO";*

e) *The valuation of Frank, including any methodology used by JPMC in assessing such valuation prior to or after the Acquisition;*

f) *Ms. Javice; or*

g) *Mr. Amar.*

<u>*Request No. 3*</u>*: For the period of June 26, 2021 through November 4, 2022, Communications and Documents pertaining to JPMC's use, definition, or interpretation of the term "user."*

<u>*Request No. 9*</u>*: Internal drafts of diligence trackers pertaining to the Acquisition or Merger.*

Javice's opposition does not remediate the failure of Request Nos. 2, 3, and 9 for merger-related communications to meet the *Nixon* standard. Javice has not offered any basis for more documents beyond the millions of pages already produced, other than pure speculation that JPMC's productions to date must be inadequate. Javice Opp'n at 20-21. As JPMC explained in its moving papers, JPMC conducted broad searches over the custodial files of nine key merger custodians (**and** another fourteen custodians involved in due diligence, which Javice does not discuss). As a result, JPMC has already produced documents and communications involving the sixteen custodians requested by Javice. Contrary to Javice's baseless assertion, Javice Opp'n at 21, JPMC produced responsive communications from those custodians, not merely responsive communications **among** those twenty-three custodians.

Additionally, as JPMC indicated in its moving papers, Requests seeking evidence regarding JPMC's integration of Frank, post-Merger, must be quashed, because Frank's integration has no bearing on whether Defendants defrauded JPMC during pre-Merger diligence.

Mov. Br. at 17-18.  Javice contends that such evidence is relevant because it would supposedly show "what JPMC understood about Frank and its data and what JPMC considered important about Frank and its data, all of which goes to the elements of intent, falsity, and materiality." Javice Opp'n at 23.  But Javice does not explain how post-Merger data, including about mundane topics like personnel decisions or proper maintenance of books and records, has any bearing on whether Javice defrauded JPMC during the pre-Merger time period months earlier. How JPMC chose to run Frank following its acquisition of the company cannot negate the fact that Defendants provided a fake customer list to JPMC so that JPMC would buy Frank for $175 million dollars—and Defendants have offered no explanations indicating otherwise.

Furthermore, Javice has not explained why purportedly "limiting" the Requests to documents ranging from June 1, 2021 through November 30, 2022 makes those Requests appropriate under *Nixon*.  Irrespective of the time period in the indictment, the *Nixon* standard requires that defendants specifically identify materials, and not just request documents in the hopes of acquiring favorable evidence.  *Bergstein*, 2017 WL 6887596, at *5.  In addition, the criteria for a reasonable time range is not simply how long the time period is, but how relevant the time period is to the criminal conduct.  *Xiaoqing Zheng*, 2020 WL 6287481, at *11 (quashing request for documents spanning over five years because of defendant's failure to tie timespan to relevant conduct).  Javice's proposed date range does not add the requisite specificity to these Requests and they still fail under *Nixon*.

### 3.    Requests No. 15, 17, 18, 22, and 33 Should Be Quashed

***Request No. 15****: **Documents and Communications pertaining to the Frank business unit reviews ("BURs"), quarterly business reviews ("QBRs"), monthly business reviews ("MBRs"), or the Frank "business case," sent, received, drafted, or revised by* ███████████████████

█████████████████████████████████████████████████████████████████.

***Request No. 17**: For the period of August 8, 2021 through January 31, 2023, Documents and Communications pertaining to any actual or potential key performance indicators ("KPIs"), "objectives and key results" ("OKRs"), revenue targets, or "student solutions" for Frank or Ms. Javice.*

***Request No. 18**: Documents and Communications pertaining to any "marketing assumptions" for Frank by JPMC, including Documents and Communications pertaining to the "max addressable market" for Frank or JPMC, sent, received, drafted, or revised by* ███████████████████████████████ *JPMC marketing executive,* ███████████ ███████████████████, *or* ███████████*

***Request No. 22**: For the period of July 1, 2021 through the present, Documents and Communications pertaining to the marketing budget for Frank post-Merger, sent, received, drafted, or revised by* ████████████████████████████ ████████████████████*

***Request No. 33**: For the period of July 1, 2021 through October 31, 2022, Documents and Communications pertaining to Frank's business relationship with Sallie Mae and ACT, sent, received, drafted, or revised by* ██████████████ ████████████████████████*, or Executive-1.*

As previously stated in its moving papers, JPMC has produced documents responsive to these Requests. Mov. Br. at 30, 32-35, 39-40, 47-48. In opposition, Javice did not identify any new custodians, only those from whom JPMC already has produced documents. Javice Opp'n at 24. In addition, Javice's opposition failed to provide any basis for her purported belief that there are other documents responsive to these Requests. In light of what has been previously produced and Javice's failure to offer the specificity *Nixon* demands, this Request should be quashed.

### 4.    Request No. 16 Should Be Quashed

***Request No. 16**: Documents and Communications pertaining to the Internal Investigation sent, received, drafted, or revised by* ████████████████████

22

**█████████████████████████████** **I.**

Javice's request for "documents relating to JPMC's internal investigation of Frank and Ms. Javice" ignores that, as stated in JPMC's moving papers, JPMC has already provided the non-privileged investigation file from JPMC's Global Security investigation.[8] Mov. Br. at 31. Javice has not specified any additional documents relating to the Internal Investigation that she does not currently possess. Therefore, her broad and vague request for other communications and documents remains an attempt to acquire privileged documents to which she is not entitled.

Javice cites to a decision from the Eastern District of New York, to support her argument that she is entitled to seek inadmissible evidence if that evidence could serve as impeachment evidence. Javice Opp'n at 26 (citing *United States v. Goldstein*, No. 21 CR. 550 (DC), 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023)). *Goldstein* is inapposite. The subpoena in *Goldstein* was a subpoena to investigators for their **testimony**, days before the trial itself. *Goldstein*, 2023 WL 3662971, at *5. This subpoena against the investigators cannot be compared to Javice, who is months away from trial and requesting **documents** untethered to any witness's testimony.

To the extent *Goldstein* is relevant, it is only with respect to the Eastern District's analysis of the subpoenas *duces tecum* served on the New York City Department of Investigation and the Special Commission of Investigation for the New York City School District. *Id.* at *4. The *Goldstein* court found that defendants' request for "an entire case file" was too onerous, and whittled down the subpoena to certain notes and summaries. *Id.* Javice's request for "documents relating to JPMC's internal investigation of Frank and Ms. Javice" remains too

---

[8]    Much of the Global Security investigation addressed Javice's conduct unrelated to the Frank acquisition. For example, the Global Security investigation looked into the propriety of certain of Javice's expenses charged to JPMC. Nevertheless, JPMC produced the full Global Security file. To the extent Javice is seeking documents related to outside counsel's investigation, those documents are privileged and contain hearsay, and thus are inadmissible and inappropriate for a Rule 17(c) request.

vague to meet *Nixon*'s specificity requirement, **<u>especially</u>** in light of JPMC's prior production of the Global Security case file.

### 5.    Request 19 Should Be Quashed

<u>***Request No. 19***</u>***: Documents and Communications pertaining to a) the Acquisition and Frank, or b) Ms. Javice, sent, received, drafted, or revised by*** ███████████████████████████████***, including talking points, press strategy, communications strategy, and press releases.***

JPMC's moving papers explained that this Request was both insufficiently specific and sought irrelevant documents. Nothing in the opposition ties this Request to any particular press release or public appearance by JPMC. In fact, Javice emphasizes that this Request "is not concerned with any specific public statement." Javice Opp'n at 26. Instead, Javice continues to request **<u>all</u>** documents hitting on certain broad search terms from two custodians Javice merely offers are "likely" to be involved in such unspecified "internal communications." *Id.* Instead, Javice continues to request **<u>all</u>** documents hitting on certain broad search terms. In addition, the Request seeks documents both before and after the Merger, without explaining why either set of public statements, or the strategy for those statements, would be material to Javice's fraud. This Request should be quashed because it is the exact type of fishing expedition that *Nixon* is designed to curtail.

### 6.    Request Nos. 20 and 26 Should Be Quashed

<u>***Request No. 20***</u>***: Documents and Communications pertaining to Frank and the United States Department of Education sent, received, drafted, or revised by*** ██████████████████████████████████.

<u>***Request No. 26***</u>***: For the period of March 1, 2021 through November 4, 2022, Communications and Documents pertaining to Frank and the "FAFSA Simplification Act," FAFSA simplification, or the amendment, streamlining, or simplifying of the FAFSA or the FAFSA process, including Documents and***

***Communications pertaining to two-factor authentication, 2-factor authentication, multi-factor authentication, 2FA, or MFA.***

JPMC demonstrated in its moving papers that both of these Requests sought irrelevant documents and did not identify documents with sufficient specificity. Despite Javice's attempts to narrow these Requests, they still fail to satisfy the *Nixon* standard. Javice's opposition does not explain why these Requests would generate documents relevant to her defense. As previously stated, how any regulations may have changed does not affect whether Javice submitted falsified data to Acxiom in connection with the Frank acquisition. *See* Mov. Br. at 37. Furthermore, these Requests, which seek documents over almost two years and across seven different custodians, lack specificity. Mov. Br. at 43. Javice's opposition does not change the fact that these Requests fail under *Nixon.*

### 7. Request No. 21 Should Be Quashed

***Request No. 21****: Documents and Communications pertaining to the Acquisition and related to diligence, sent, received, drafted, or revised by* ███████████

In response to JPMC's showing that this Request is irrelevant, insufficiently specific, and targeted at documents Javice already has, Mov. Br. at 38-39, Javice's opposition does not clarify how this Request will identify any new documents material to her defense. Javice fails to explain whatsoever her efforts to review the documents already produced to her. And Javice fails to utilize these previously produced documents to craft a specific Request acceptable under *Nixon*.

### 8. Request No. 25 Should Be Quashed

***Request No. 25****: For the period of March 1, 2021 through July 1, 2021, Communications and Documents pertaining to a potential commercial partnership between JPMC and Frank, the potential purchase or acquisition of*

25

> ***Frank by JPMC, or any other contemplated business relationship between JPMC and Frank.***

JPMC's moving brief pointed out the numerous ways in which this Request was insufficiently specific. In her opposition, Javice does not provide this specificity by identifying any particular commercial partnership, potential purchase, or business relationship. Nor does Javice explain why communications related to any such unconsummated business relationships are relevant to the question of whether she defrauded JPMC using a fake customer list.

### 9.    Request No. 27 Should Be Quashed

> <u>***Request No. 27***</u>***: For the period of January 1, 2018 through the present, Documents and Communications relating to JPMC's course of dealings with Acxiom prior to the August 2021 Frank diligence request, including Documents and Communications pertaining to JPMC's business and financial relationship with Acxiom, JPMC's prior assignments to Acxiom related to diligence, data validation, or customer overlap analysis, and all Communications between JPMC and Acxiom subsequent to the Merger pertaining to Frank or any Frank diligence.***

As JPMC's moving brief explained, this Request for documents relating to JPMC and Acxiom's relationship fails every element of the *Nixon* test. In opposition, Javice does not explain the relevance of any broader relationship between Acxiom and JPMC. Javice also fails to remediate this Request to be specific: it still seek **<u>all</u>** documents relating to JPMC and Acxiom's course of dealings from January 1, 2018 (over **<u>three years</u>** before the conduct at issue) to the present (over **<u>two years</u>** since Acxiom performed the Frank diligence exercise). Finally, Javice has no response to JPMC's showing that JPMC already has produced over 4,000 documents involving Acxiom, including documents belonging to ███████████████████ ███████████████████. Mov. Br. at 43.

### 10.    Request No. 30 Should Be Quashed

***Request No. 30:*** *Documents sufficient to show the members of the listserv Corpdev_ma@jpmchase.com from the period of June 26, 2021 through September 14, 2021.*

JPMC will produce non-privileged documents responsive to this Request. Mov. Br. at 47.

### 11.    Request No. 34 Should Be Quashed



***Request No. 34:*** *For the period of June 1, 2021 through July 31, 2021, Documents and Communications sent, received, drafted, or revised by ▮▮▮▮ ▮▮▮▮ or JPMC personnel, including ▮▮▮▮▮▮▮▮ office staff, pertaining to the July 7, 2021 meeting between Frank representatives and ▮▮▮▮▮▮*

While Javice has purportedly narrowed the time frame for this Request, she has not

remedied the core issues with this Request:  specificity and relevance.  Mov. Br. at 48-49.  Javice

has not articulated why she believes that any other documents relating to the July 7, 2021

meeting may exist, nor why ▮▮▮▮▮▮ in particular would have those documents.  This Request

is simply a fishing expedition into JPMC's ▮▮▮▮ documents and communications that is not

permitted under Rule 17.

### 12.    Request Nos. 4, 7, 8 Should Be Quashed

***Request No. 4:*** *For the period of June 26, 2021 through September 14, 2021, internal email, Text Messages, WhatsApp messages, or other messaging or chat-based communications among JPMC personnel pertaining to Data held or potentially held by Frank.*

***Request No. 7:*** *Text Messages by and among JPMC personnel involved in the Acquisition, Merger, Integration, or Internal Investigation pertaining to the Acquisition, Merger, Integration, or Internal Investigation.*

***Request No. 8:*** *Text Messages, WhatsApp messages, instant messenger communications, or chats, pertaining to or referencing Frank or Ms. Javice sent or received by ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ JPMC marketing executive, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮*

██████████████████████████████████████
*Executive-1,* ██████████ *or* ██████████.

JPMC demonstrated in its moving brief that Javice's Requests for messages lack specificity.  As a preliminary matter, Javice mischaracterizes JPMC's production of messages to date.  Javice Opp'n. at 29-30.  Contrary to Javice's allegations, JPMC's review of text messages and instant messages extended beyond nine custodians identified by JPMC.  Mov. Br. at 20-21. JPMC's search of instant messages included 9 custodians identified as being key to the merger, 14 JPMC personnel identified for their involvement in the Frank due diligence process, and several other individuals who JPMC learned had relevant messages.  *Id*  Additionally, communications related to Integration, as explained above, are not relevant to whether Javice submitted fraudulent data.  *See* Sec. IV(A)(2), *supra*, at 20-21.

To justify these Requests for text messages under the *Nixon* standard, Javice must meet her burden of identifying specific messages.  Nothing in Javice's opposition provides anything other than speculation that the 23 individuals she identified **<u>might have</u>** messages about Frank. For the reasons set above, this Request fails to satisfy the *Nixon* standard.

### B.    Requests for Clarification

***Request No. 5:  Documents and Communications pertaining to or reflected in the allegations in the Complaint sent, received, drafted, or revised by individuals referenced in the Complaint, including*** ████████████████
████████████████████████████████████
████████████████████████████████████
████████████

As explained in JPMC's moving papers, this Court already has addressed the substance of Request No. 5 and ordered the SDNY to request from JPMC certain additional documents mentioned in the Complaint.  To JPMC's knowledge, Defendants have not sought any purportedly "missing" documents from SDNY, and now demand more from JPMC is at odds

with the purposes and interaction of Rules 16 and 17.  To the extent that this Request seeks

internal JPMC materials that are protected by attorney-client or work product privileges, the

Request should be quashed, for seeking inadmissible materials.  *See* Section II(C), *supra*, at

9-10; Mov. Br. at 23.

> ### *Request No. 10*:  *Documents sufficient to show the date and scope of any hold notices issued by JPMC in connection with the Action, Civil Action, Acquisition, or Internal Investigation.*

JPMC  will produce non-privileged documents responsive to this Request.

> ### *Request No. 11*:  *Documents sufficient to show all policies pertaining to the use of personal devices and/or messaging applications in connection with business activities in effect from July 1, 2021 to October 13, 2022 applicable to any individual involved in the Acquisition, Merger, or Integration.*

Javice has not articulated why this request for document retention policies apply to her

defense.  Thus, this Request should be quashed for failing the *Nixon* requirement for relevance.

> ### *Request No. 13*:  *Documents sufficient to show the date on which JPMC deleted or otherwise ceased to have access to data for the following individuals:* █████████████████████████████████████████████████████████████████████

With respect to Request No. 13, JPMC has provided to SDNY the information specified

in the Court's November 20, 2023 Order Regulating Proceedings, JPMC has provided to SDNY

information responsive to Request No. 13.  With respect to portions of Request 13 that relate to

other custodians not specified in the November 20, 2023 Order Regulating Proceedings, Javice

has not explained how JPMC's document retention policies for other custodians is relevant to her

defense, thereby failing the *Nixon* element of relevance.

> ### *Request No. 23*:  *Documents and Communications sufficient to show JPMC's internal approval process for the Acquisition.*

JPMC will produce non-privileged documents responsive to this request.

***Request No. 24**: **Documents and Communications sufficient to show any Third-Party approval process for the Merger or Acquisition, including any governmental or regulatory approval.***

As stated previously, JPMC has not located any documents reflecting any regulatory approvals received.  Mov. Br. at 41.  As discussed in JPMC's moving brief and above, this Request should be quashed to the extent that it requests documents protected by attorney-client and/or work product privileges.  *See* Section II(C), *supra*, at 9-10; Mov. Br. at 41.

## V.    Amar's Requests Still Fail to Satisfy Rule 17(c)'s Requirements.

### 1.    Request Nos. 1 and 2 Should Be Quashed.

***Request No. 1: Documents and Communications related to internal discussions involving*** ▮▮▮▮▮▮▮▮▮ ***(identified as "Executive-1" in the Criminal Complaint and "Head of Corporate Development" in the Civil Complaint) and other JPMC employees in or about March 2021 regarding her views, and the views of other JPMC employees, as to whether Frank was an appealing acquisition target for JPMC due to the marketing potential of Frank's large customer base, as referenced in ¶ 19(a) of the Criminal Complaint and ¶ 38 of the Civil Complaint.***

***Request No. 2: Documents and Communications related to internal discussions involving*** ▮▮▮▮▮▮▮▮▮ ***and other JPMC employees in or about March 2021 regarding alleged representations regarding the marketing potential of Frank's large customer base, as referenced in ¶ 19(a) of the Criminal Complaint.***

JPMC had previously searched for and produced over 10,000 responsive and non-privileged documents for ▮▮▮▮▮▮▮▮▮ in response to the Grand Jury Subpoenas.  On December 8, JPMC supplemented its prior document productions with documents responsive to this Court's November 7 Order.

In response to JPMC's objection that Request Nos. 1 and 2 fail *Nixon*'s specificity requirement, Amar now identifies nine JPMC employees for a three-month period outside the time period of paragraph 19(a) of the Criminal Complaint.  Amar does not assert that any specific, relevant documents exist during this time period.  Rather, Amar argues that

"communications likely exist" based on produced documents referencing discussions and meetings among some, but not all, of the nine JPMC employees during the requested time period. Amar Opp'n at 24-25. Even if true, Amar has done no more than speculate that documents exist that have not already been produced. Indeed, he does not cite a single specific document that he seeks to have produced in response to these Requests. Amar is seeking discovery, not specific, admissible documents as required under Rule 17(c). Accordingly, Request Nos. 1 and 2 fail the specificity requirement of Rule 17(c) and should be quashed.

**2.    Request Nos. 3, 8, 9, and 10 Should Be Quashed.**

*Request No. 3: Documents and Communications related to internal discussions of the content and subject matter of the alleged July 2, 2021 email from Ms. Javice to* ███████████ *as referenced in ¶ 19(b) of the Criminal Complaint, including related to the alleged representation by Ms. Javice to* ███████████ *that Frank had "5.6M active households in the US and . . . will end the year with close to 10M families," and how that representation impacted the decision to proceed with the Acquisition and/or the price that JPMC paid to acquire Frank.*

*Request No. 3: Documents and Communications related to internal discussions of the content and subject matter of the alleged July 2, 2021 email from Ms. Javice to* ███████████ *as referenced in ¶ 19(b) of the Criminal Complaint, including related to the alleged representation by Ms. Javice to* ███████████ *that Frank had "5.6M active households in the US and . . . will end the year with close to 10M families," and how that representation impacted the decision to proceed with the Acquisition and/or the price that JPMC paid to acquire Frank.*

*Request No. 8: Documents and Communications related to internal discussions of the content and subject matter of the alleged July 9, 2021 email from* ███████ ███████ *(identified in the Criminal Complaint as "a JPMC employee"), to the investment advisors representing Ms. Javice regarding next steps and due diligence meetings, as referenced in ¶ 19(f) of the Criminal Complaint.*

*Request No. 9: Documents and Communications related to internal discussions of the content and subject matter of the alleged August 4, 2021 email from Ms. Javice to Alex Sweeney (identified in the Criminal Complaint as "Executive-2")*

31

*regarding Frank's user breakdown according to "the Spreadsheet," as referenced in ¶ 19(h) of the Criminal Complaint.*

*Request No. 10: Documents and Communications related to internal discussions of the content and subject matter of the alleged August 1, 2021 email from ▮▮▮▮▮▮▮▮ describing the information about Frank user data sought by JPMC, as referenced in § 21(d) of the Criminal Complaint and 5 and 64 of the Civil Complaint.*

<u>Request 3</u>.  JPMC has previously searched for and produced all responsive and non-privileged emails containing the July 2, 2021 email from Javice to Executive-1 referenced in paragraph 19(b) of the Criminal Complaint (the "July 2, 2021 Email").  In response to JPMC's objection that Request 3 failed *Nixon's* specificity requirement, Amar now seeks information from eleven JPMC employees over a six-month time period in 2021 and 2022 for the "subject matter" of the July 2, 2021 Email.  Amar's Request does not, as Amar claims, "target[] discussions pertaining to [the July 2, 2021 Email] regarding Frank households and users." (Amar Opp'n at 29).  Indeed, Amar offers no basis to believe that later in 2021 and in 2022, there are any discussions of the July 2, 2021 Email.  Rather, Amar seeks to use the existence of a specific document on a general subject matter of "Frank households and users" referenced in the Criminal Complaint as a pretext for seeking broad discovery from eleven individuals over a six-month time period on that subject matter.  Amar has done no more than speculate that additional documents exist and does not cite a single specific document that he seeks to have produced in response to this Request.[9]  Amar is seeking discovery; he is not seeking specific, relevant, admissible documents as required under Rule 17(c).  Indeed, when a request was made to this

---

[9]      Amar wrongly states that JPMC has not produced any documents for ▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ or ▮▮▮▮▮ (Amar Opp'n at 30).  Indeed, Amar's statement is belied by the document citations immediately following it, which cite to documents involving ▮▮▮▮ and ▮▮▮▮▮ JPMC has produced 38 documents from ▮▮▮▮ custodial file and 263 documents from ▮▮▮▮ custodial file as part of its production to the government. Additionally, JPMC produced over 6,500 documents where ▮▮▮▮▮ is a sender or recipient, 100 documents where ▮▮▮▮ is a sender or recipient, *id.*, and 1,700 where ▮▮▮▮▮ is a sender or recipient.

Court to run search terms against the emails of ████████ in connection with in paragraph 19(b) of the Criminal Complaint, this Court rejected the request and recognized that "[y]ou're looking for discovery." Wuertz Decl., Ex. A (11/2/23 Tr.) at 30.  Accordingly, Request No. 3 fails the specificity requirement of Rule 17(c) and should be quashed.

In addition, JPMC objects to the relevancy of the requested time period.  Request 3 seeks information about Javice's representations in a July 2, 2021 email and how those representations affected JPMC's decision to acquire Frank.  Internal JPMC discussions three months later are overbroad and internal JPMC discussions in 2022 – well after JPMC's decision to acquire Frank – are irrelevant.  Similarly, JPMC employees who had no involvement in considering Javice's representations and in JPMC's decision to acquire Frank also lack relevant information.

Requests 8, 9 and 10.  JPMC has previously searched for and produced responsive and non-privileged emails containing the July 9, 2021 Email, the August 4, 2021 Email, and the August 1, 2021 Email referenced in paragraphs 19(f), 19(h), and 21(d) of the Criminal Complaint respectively.  In response to JPMC's objection that the Request Nos. 8 and 9 failed *Nixon's* specificity requirement, Amar now seeks to run broad search terms across the emails of all 193 JPMC custodians[10]  for the "content and subject matter" of the July 9, 2021 Email over a two-week period and August 4, 2021 Email over a two-month period.[11] Amar Opp'n Ex. A at 3-4.  In response to JPMC's explanation in its moving papers that Request No. 10 lacks specificity, Amar now seeks to run broad search terms across seven JPMC employees for the "content and subject matter" of the August 1, 2021 Email over a one-month period. Amar Opp'n Ex. A at 4.

---

[10] JPMC assumes that "JPMC Custodians" in Amar's requests refers to the 193 custodians identified by JPMC.

[11]    Request 8 requests information specifically for 4 additional custodians, including JPMC CEO ████████ in addition to all "JPMC Custodians."

Amar makes no showing that there are any specific documents that discuss the July 9, 2021

Email, August 4, 2021 Email, or August 1, 2021 Email that have not already been produced.

Amar's requests seek broad discovery – not limited to the July 9, 2021 Email, August 4, 2021

Email or August 1, 2021 Email – of many JPMC custodians across time periods beyond the

document dates on broad subject matters of JPMC's due diligence and Frank user data.  Nor can

Amar show that he is seeking relevant information, as running the proposed searches for broad

terms like "Frank," "Charlie" and "FAFSA" across many JPMC custodians is sure to yield

irrelevant and potentially inadmissible information.  Amar's Requests 8, 9 and 10 do not seek

specific, relevant, admissible documents as required under Rule 17(c), and should be quashed.

### 3.    Request Nos. 4, 6, and 7 Should be Quashed.

*Request No. 4: Documents and Communications related to internal discussions regarding the 18-page pdf of a PowerPoint presentation regarding Frank (defined in the Criminal Complaint as the "July 2 Pitch Deck"), as referenced in ¶ 19(b) of the Criminal Complaint, its purported representation that Frank had 4.25 million users, and its alleged impact on the decision to proceed with the Acquisition and/or the price that JPMC paid to acquire Frank.*

*Request No. 6: Documents and Communications related to internal discussions regarding the 60-page PowerPoint presentation regarding Frank (defined in the Criminal Complaint as the "July 7 Pitch Deck"), as referenced in   19(d) of the Criminal Complaint, its purported representation that Frank had 4.25 million users, and its alleged impact on the decision to proceed with Acquisition and/or the price that JPMC paid to acquire Frank.*

*Request No. 7: Documents and Communications related to internal discussions regarding the spreadsheet allegedly uploaded to the "data room" by Ms. Javice on or about July 8, 2021 (defined in the Criminal Complaint as the "Spreadsheet"), as referenced in ¶ 19(e) of the Criminal Complaint and ¶ 54 of the Civil Complaint, and its alleged impact on the decision to proceed with Acquisition and/or the price that JPMC paid to acquire Frank.*

JPMC has previously searched for and produced responsive and non-privileged emails

containing the July 2 Pitch Deck and July 7 Pitch Deck (the "July Pitch Decks"), as well as the

spreadsheet referenced in paragraphs 19(b), 19(d), and 19(e) of the Criminal Complaint

respectively.  In response to JPMC's objections that the Requests 4, 6 and 7 failed *Nixon's* specificity requirement, Amar has not requested specific documents that he knows to exist.  To the contrary, Amar now seeks to run broad search terms across the emails of "JPMC Custodians" over a nearly three-month time period.[12]  Amar Opp'n Ex. A at 2.  Amar's requested searches, custodians and time period are overbroad and go well beyond the July Pitch Decks and Spreadsheet and any impact the representations therein had on JPMC's decision to acquire Frank.[13]  Once again, Amar is seeking extensive discovery that one would seek in a civil case but that defendants are not entitled to in a criminal case.  Under Rule 17(c), Amar has to make a preponderance showing that he is seeking specific documents that he knows to exist.  He has not done so.  Nor can Amar show that he is seeking relevant information, as running the proposed searches for broad terms like "Frank," "Charlie" and "FAFSA" across all JPMC custodians is sure to yield irrelevant and potentially inadmissible information.[14]  Accordingly, Request Nos. 4, 6, and 7 fail the specificity and relevancy requirements of Rule 17(c) and should be quashed.

### 4.    Request Nos. 11 and 12 Should Be Quashed.

***Request No. 11: Documents and Communications related to internal discussions of the content and subject matter of the alleged August 3-5, 2021 emails from Alex Sweeney to Ms. Javice regarding the appropriate use of "unique identifiers" for personal identifying information, the data validation***

---

[12] Request 4 also seeks to run searches for ▮▮▮▮▮▮▮▮  As stated above in response to Request No. 3, this Court already rejected a defense request to run search terms against the emails of ▮▮▮▮▮▮▮ in connection within paragraph 19(b) of the Criminal Complaint on the grounds that "[y]ou're looking for discovery." Wuetz Decl., Ex. A (11/2/23 Tr.) at  30.

Request 7 also seeks to run searches for Neeraj Jain. Amar makes no showing that Jain – who merely assembled slide decks at the direction of the Corporate Development team (whose documents have been collected, reviewed, and produced) – has any nonduplicative documents of relevance to Amar's defense.

[13] For Request 7, Amar claims that he "seeks internal discussions about 'the Spreadsheet' containing user data allegedly uploaded to the data room by Ms. Javice and discussed internally by JPMC employees ***on July 8, 2021***, not merely the spreadsheet." (Amar Opp'n at 28) (emphasis added).  Amar's requests for documents over a nearly three-month time period plainly belie that claim.  Amar Opp'n Ex. A at 2.

[14] Given the overbreadth of Amar's requests and Amar's failure to identify specific documents, it is difficult to assess the admissibility of any potential documents.

> ***report JPMC sought from Frank, the template for the data validation report that JPMC sought from Frank (defined in the Criminal Complaint as the "Template Report"), and confirming completion of JPMC's data validation request, as referenced in §§ 21 and 25 of the Criminal Complaint and § 67 of the Civil Complaint.***
>
> ***Request No. 12: Documents and Communications related to discussions between Alex Sweeney and Acxiom (identified in the Criminal Complaint as "Vendor-1") in or around August 2021 regarding JPMC's validation request for Frank data, as referenced in § 26(b) of the Criminal Complaint.***

JPMC has previously searched for and produced responsive and non-privileged emails containing the August 3-5, 2021 Emails referenced in paragraphs 21 and 25 of the Criminal Complaint, as well as over 1,000 documents for Alex Sweeney, and over 4,000 documents referencing Acxiom.  In response to JPMC's objection that the Requests 11 and 12 failed *Nixon's* specificity requirement, Amar now seeks to run numerous search terms across nine JPMC employees' emails for the "content and subject matter" of the August 3-5, 2021 Emails (e.g. JPMC's data validation request) over a two-month period. Amar Opp'n Ex. A at 4.  Amar makes no showing that there are any specific documents that discuss the August 3-5, 2021 Emails or Acxiom that have not already been produced.  Rather, Amar speculates that documents may exist based on documents from JPMC's document production that reference discussions among the nine JPMC employees regarding data validation. Amar Opp'n at 32-34.  Indeed, he does not cite a single specific document that he seeks to have produced in response to these requests.  Amar's requests seek broad discovery – not limited to the August 3-5, 2021 Emails or any other specific documents – of several JPMC custodians across time periods beyond the document dates on the broad subject matter of JPMC data validation.  Nor can Amar show that he is seeking relevant information, as running the proposed searches for terms like "Acxiom" across several JPMC custodians is likely to yield irrelevant and potentially inadmissible information.  Amar's Request

Nos.. 11 and 12 do not seek specific, relevant, admissible documents as required under Rule 17(c), and should be quashed.

### 5.    Request Nos. 13 and 14 Should Be Quashed.

*Request No. 13: Documents and Communications related to internal discussions of the content and subject matter of the alleged January 6-10, 2022 emails from* ▮▮▮▮▮▮▮▮ *(identified in the Criminal Complaint as the "Marketing Executive") regarding the transfer of certain data files, as referenced in § 32(a) of the Criminal Complaint and § 164 of the Civil Complaint.*

*Request No. 14: Documents and Communications related to internal discussions of the content and subject matter of the alleged other purported user data files sent by Ms. Javice to JPMC, as referenced in § 32(b) of the Criminal Complaint.*

Pursuant to this Court's November 7 Order, JPMC had previously searched for and produced responsive and non-privileged documents referenced in paragraph 32(a) of the Criminal Complaint, as well as all responsive and non-privileged documents for ▮▮▮▮▮▮▮▮ Those documents were produced on December 8.  In response to JPMC's objection that the Request Nos. 13 and 14 failed *Nixon's* specificity requirement, Amar now seeks to run numerous broad search terms across eight JPMC employees' emails, including ▮▮▮▮▮▮▮ for the "content and subject matter" of user data provided to JPMC for a three-month period of January 1, 2022 to March 31, 2022 that is outside the 4-day time period of paragraph 32(a) of the Criminal Complaint.  Amar Opp'n at  34-36; *id.* at Ex. A at 5.  Amar does not make a preponderance showing that any documents for these eight JPMC employees on the subject matter of user data provided to JPMC for this three-month time period exist beyond what JPMC has already produced.[15]  Rather, Amar speculates that documents exist based on these individuals

---

[15]    Requests 13 and 14 seeks to run searches for Ben Vinzant. This Court already rejected a defense request to run search terms against the emails of Ben Vinzant. Wuertz Decl., Ex. A (11/2/23 Tr.) 15:23-17:6.

being engaged in the email exchanges referenced in paragraph 32(a) of the Criminal Complaint.

Amar Opp'n at 36. Indeed, he does not cite a single specific document that he seeks to have

produced in response to these requests. Amar is seeking broad discovery – not limited to the

January 6-10, 2022 Emails or any other specific documents – of several JPMC custodians across

time periods beyond the document dates on the broad subject matter of user data provided to

JPMC. Nor can Amar show that he is seeking relevant information, as running the proposed

searches for terms like "Frank" or "Charlie" or "data transfer" across multiple JPMC custodians

is certain to yield irrelevant and likely inadmissible information. Amar's Requests 13 and 14 do

not seek specific, relevant, admissible documents as required under Rule 17(c), and should be

quashed.

### 6.  Request No. 15 Should Be Quashed.

> **Request No. 15: Documents and Communications related to JPMC's decision**
> **to offer $175 million to acquire Frank and how JPMC arrived at that valuation.**

Amar seeks information from nine JPMC employees over a nearly six-month time period

related to JPMC's decision to offer $175 million to acquire Frank and how JPMC arrived at that

valuation. But JPMC has previously searched for and produced responsive and non-privileged

emails for six of those nine JPMC employees over the requested time period on this subject

matter. Amar does not make a preponderance showing that any documents for those six JPMC

employees that specific documents exist beyond what JPMC has already produced. Rather,

Amar's speculation that other documents may exist for those custodians and request to run

specific search terms for those individuals amounts to a discovery request which is improper

under Rule 17(c). Amar claims that the other three custodians – ██████████  ██████████

██████████ and ██████████████ – were "key decisionmakers *whose custodial files have not been*

*searched or produced* regarding the decision to acquire Frank at a purchase price of $175

million." Amar Opp'n at 37. But, Amar offers no support for his claim with respect to ███████

███████ or ███████ Moreover, even in civil discovery, adding custodians who have only

duplicative information is inappropriate. That is exactly what Amar seeks, at best, to do here.

Ultimately, Amar's request amounts to nothing more than a fishing expedition for discovery of

documents he hopes may exist and should be denied.

### 7. Request No. 16 Should Be Quashed.

***Request No. 16: Documents and Communications regarding all transactions prior to July 2021 in which JPMC purchased student data from ASL Marketing, Acxiom LLC, or other data vendors.***

This Request seeks documents concerning *all* of the transactions in which JPMC

purchased student data from a limitless number of data vendors for over a year fails the

specificity requirement. Amar Opp'n Ex. A at 6. Indeed, Amar seeks this evidence based on his

speculation and assumptions: he speculates that JPMC was in the business of buying and selling

data on the assumption that other start-ups and companies purchase data in the ordinary course of

business. Amar Opp'n at 38-39. But Amar does not offer any basis to suggest that JPMC did in

fact purchase data from "ASL Marketing, Acxiom, or other data vendors," nor does he explain

why such practices prior to the Merger would be relevant. This request is overbroad and a

fishing expedition that does not satisfy the specificity requirement of Rule 17(c).

Even assuming *arguendo* that JPMC did purchase student data in connection with activity

unrelated to Frank — any such documents would be irrelevant to the charges relating to Amar's

purchase of student data in this case. Amar argues that documents regarding JPMC's purchase

of student data will demonstrate its familiarity with the fair market value of customer data and

show that the Defendants' representations about Frank's user base were not material to JPMC's

decision to purchase Frank for $175 million. Amar Opp'n at 39. However, Amar's argument

conflates reliance and materiality in a way that the Supreme Court and Second Circuit have

rejected. *See Neder v. United States,* 527 U.S. 1, 24-25 (1999) (holding that "materiality is

evaluated under an objective test, in which the Court must examine the intrinsic capabilities of

the false statement itself, rather than the possibility of the actual attainment of its end.") (internal

quotation marks omitted); *United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017) (quoting

*Neder* and holding that "common-law requirements of 'justifiable reliance' and 'damages'. . .

plainly have no place in the federal fraud statutes"); *United States v. Weaver*, 860 F.3d 90, 96 (2d

Cir. 2017) (holding that it is well-settled that reliance is not an element of fraud). Amar's

request for transactions of JPMC's purchase of student data should be denied as overbroad and

irrelevant.

### 8.    Request No. 17 Should Be Quashed.

***Request No. 17****: Documents and Communications sufficient to identify who from JPMC attended the following meetings or calls:*

  a) ***July 1, 2021 call between Ms. Javice and Executive-1, ▮▮▮▮▮▮▮ and potentially other JPMC representatives;***

  b) ***July 7, 2021 meeting in which Ms. Javice allegedly delivered a management presentation to JPMC's representatives, accompanied by a***

  c) ***60-page PowerPoint deck, as referenced in § 19(d) of the Criminal Complaint;***

  d) ***July 12, 2021 diligence meeting with Ms. Javice, as referenced in § 19(g) of the Criminal Complaint and § 43 of the Civil Complaint;***

  e) ***July 13, 2021 diligence meeting with Ms. Javice, as referenced in § 19(g) of the Criminal Complaint and § 44 of the Civil Complaint;***

  f) ***July 19, 2021 diligence meeting with Ms. Javice, as referenced in § 48 of the Civil Complaint;***

  g) ***July 20, 2021 diligence meeting with Ms. Javice, as referenced in § 48 of the Civil Complaint; and***

  h) ***August 2, 2021 Zoom call between Executive-2, Ms. Javice, and potentially other JPMC representatives, as referenced in § 21(e) of the Criminal Complaint.***

This request seeks documents and communications "sufficient to identify" who from JPMC attended specified meetings and calls. JPMC has produced documents sufficient to identify the attendees of all requested meetings. In addition, JPMC conducted another targeted search for additional non-privileged documents which yielded no additional responsive documents. Accordingly, Amar's request to search the emails of six additional custodians is unreasonable and should be quashed. Amar Opp'n at 40-43; *id.* at Ex. A at 6.

### 9.    JPMC Agrees to Search for and Produce any Responsive and Non-privileged documents in Response to Request Nos. 18, 19 and 20.

**Request No. 18**: *Written or electronic notes of oral Communications from the meetings referenced in Request 17, including drafts of such notes or memoranda.*

**Request No. 19**: *Documents and Communications related to internal discussions of the content and subject matter of the meetings referenced in Request 17*

Although JPMC has previously produced documents in response to Requests 18 and 19, JPMC agrees to conduct Amar's proposed searches[16] for the inboxes of Amar's proposed custodians and produce any responsive and non-privileged documents. Amar Opp'n Ex. A at 7.

**Request No. 20**: *Documents and Communications regarding JPMC's review of reports from Frank's auditors and accountants that JPMC considered in its decision to acquire Frank, including any reports from Frank's auditors and accountants.*

JPMC agrees to conduct a targeted search for audit reports issued by Wells Group, Deloitte or PWX Israel that were issued in connection with the fiscal year ended 2021 and any non-privileged and responsive documents and communications pertaining to such reports.

---

[16]    The date provided for the proposed search in Request 19 is "July 12, 2023." Amar Opp'n Ex. A at 7. JPMC assumes this is a typo and the correct date is July 12, 2021. JPMC agrees to run Amar's proposed search for July 12, 2021.

### 10.    Request No. 21 Should Be Quashed.

***Request No. 21****: Written or electronic notes of oral Communications from meetings between Mr. Amar and* ███████████ *in or around July-August 2022, including drafts of such notes or memoranda.*

In support of this Request, Amar asserts that he "believes that ██████ took notes" at

meetings he had with ██████ but Amar offers no basis for his belief.  Amar Opp'n at 44.

Amar's mere "belief" that such documents may exist is not sufficiently specific to meet the

requirement of Rule 17(c).  In addition, even if such notes did exist, they would be irrelevant as

they relate to the post-merger integration process.  Documents concerning the process by which

JPMC absorbed and integrated Frank, which in substance includes issues such as personnel

decisions and maintenance of books and records moving forward—has no bearing on whether

Javice or Amar defrauded JPMC.  Although Amar cites to allegations in the Criminal Complaint

after the Frank acquisition and the time period charged as continuing through November 2022,

Amar Opp'n at 44,  Amar is not charged with making any misrepresentations to ██████  Any

communications between Amar and ██████ about Frank's operation post-merger are irrelevant

to the allegations against Amar and should be quashed.

### 11.    Request Nos. 22 and 24 Should Be Quashed.

***Request No. 22****: Documents and Communications related to JPMC's assessment of the scalability of Frank's FAFSA submitter.*

***Request No. 24****: Documents and Communications regarding any changes in laws, policies, and procedures that had an impact on Frank's business model, including Frank's FAFSA submitter.*

Amar seeks information from five JPMC employees over a four-month time period

related to JPMC's assessment of, and any changes that had an impact on, Frank's FAFSA

submitter.  JPMC has produced over 10,000 responsive and non-privileged documents associated

with those five JPMC employees during the requested time period.  Amar does not make a

preponderance showing that any specific documents for those five JPMC employees during the requested time period exist beyond what JPMC has already produced. Rather, Amar's speculation that other documents may exist for those custodians and request to run broad search terms for those individuals amounts to a discovery request which is improper under Rule 17(c). Amar's requests amount to nothing more than a fishing expedition for discovery of documents he hopes may exist and should be denied.

### 12.    Request No. 23 Should Be Quashed.

***Request No. 23**: Documents and Communications related to Chase's decision in July-August 2022 to "Rebuild" (as opposed to "Rebrand") Frank on Chase.com and the motivations, reasons, and business case for that decision, including internal Communications of* ███████████████████████████████
███████.

Amar seeks information from four JPMC employees using broad search terms over a two-month time period related to JPMC's business decision to "Rebuild" Frank. Amar Opp'n Ex. A 8. Amar argues that by identifying specific custodians over a "narrow" two-month time period, Amar's request is sufficiently specific. Amar Opp'n at 47. But that is precisely the approach that Javice's counsel proposed – searching custodial mailboxes of JPMC employees with targeted search terms in a time period – and this Court properly rejected it. *See* Wuertz Decl., Ex. A (11/2/23 Tr.) at 16-17 ("The broad outline of what you want is not an item that can be said to be material to preparing the defense, rather it's a broad discovery issue suitable for a civil case and not a criminal case."). Indeed, Amar does not make a preponderance showing that any specific documents for those four JPMC employees during the requested time period exist beyond what JPMC has already produced. Rather, Amar's speculation that other documents may exist and request to run specific search terms for four individuals amounts to a discovery request, which is improper under Rule 17(c). Amar's request is a fishing expedition for discovery and should be denied.

Contrary to Amar's claim, JPMC provided legal support for the well-established proposition that privileged documents are not admissible and Rule 17(c) requests therefore cannot be used to obtain privileged material. *See* Mov. Br. at 10; *see* Section II(C), *supra* at 9-10. In addition, Request No. 23 also fails to seek relevant information. Documents concerning the process by which JPMC absorbed and integrated Frank has no bearing on whether Javice or Amar defrauded JPMC. Although Amar cites to allegations in the Criminal Complaint after the Frank acquisition and the time period charged as continuing through November 2022, (Amar Opp'n at 44), those allegations are wholly unrelated to JPMC's post-merger decision to rebrand Frank. Any documents pertaining to the motivations, reasons, and business case for JPMC's decision to rebrand Frank post-merger are irrelevant to the allegations against Amar and should be quashed.

### 13.    Request No. 25 Should Be Quashed.

> **_Request No. 25_: _Documents and Communications related to JPMC's assessment of the July 2022 marketing campaign to Frank customers, as referenced in § 13 of the Criminal Complaint and § 178 of the Civil Complaint._**

Amar seeks information from five JPMC employees over a three-month time period related to JPMC's assessment of the July 2022 marketing campaign to Frank customers. Amar Opp'n Ex. A at 8. JPMC has produced over 5,300 responsive and non-privileged documents associated with those five JPMC employees during the requested time period. Amar does not make a preponderance showing that any specific documents for those five JPMC employees during the requested time period exist beyond what JPMC has already produced. Rather, Amar's speculation that other documents may exist for those custodians and request to run broad search terms for those individuals amounts to a discovery request which is improper under Rule 17(c). Amar's requests amount to nothing more than a fishing expedition for discovery of documents he hopes may exist and should be denied.

### 14.    Request No. 28 Should Be Quashed.

***Request No. 28****: Documents and Communications related to internal discussions of the content and subject matter of JPMC's Internal Investigation into Frank that precipitated the termination of Ms. Javice and Mr. Amar for cause on or about November 4, 2022 and October 26, 2022, respectively, as referenced in part in § 33 of the Criminal Complaint and 28 and 30 of the Civil Complaint.*

JPMC has previously produced JPMC's global security investigation file.  Amar argues JPMC must produce materials from the files of ███████ and ███████ and specifically requests ███████s statements.  Amar Opp'n at 50.  However, Amar does not make a preponderance showing that any specific documents exist in ███ or ███████ custodial files that were not previously produced in the global security investigation file.  Indeed, Amar offers no basis for his belief that the global security investigation file is incomplete.  Amar does not meet the specificity requirement of Rule 17(c).  Moreover, even if such documents did exist, ███████ and ███████ materials and statements are likely to capture inadmissible hearsay and thereby are not subject to production pursuant to a Rule 17(c) subpoena.  *See Brown*, 1995 WL 387698, at *10 (stating that interview "memoranda would, of course, be hearsay, and inadmissible as evidence at trial").  Finally, Amar's argument that JPMC's outside counsel's investigation is admissible is wrong.  *See* Section IV(A)(4), *supra* at 23 n.8.  Accordingly, because this request does not seek specific and admissible documents, it should be quashed.

### 15.    Request Nos. 29 and 30 Should Be Quashed.

***Request No. 29****: Documents and Communications exchanged between JPMC and the Government concerning interviews of JPMC employees regarding the Government's investigation into Ms. Javice, Mr. Amar, Frank, and the Acquisition.*

***Request No. 30****: Documents and Communications exchanged between JPMC and the Government regarding JPMC's response to the Subpoenas and any*

*narrowing of the Subpoenas seek much of the same information as Javice Request No. 6. The reasons provided above to*

Amar argues that the Court did not issue a ruling with respect to the above Requests. Amar is wrong.  At the status conference, Mr. Buckley raised the issue of seeking communications between the Government and JPMC to narrow the Subpoenas.  Wuertz Decl., Ex. A (11/2/23 Tr.) at 31-32.  After a colloquy with the Government, the Court concluded: "I don't believe the government is required to produce that, Mr. Buckley."  *Id.* at 32:22.  In the Court's written order, the Court stated that his rulings were "reflected in the transcript of argument." Wuertz Reply Decl., Ex. F(11/7/23 Order) at 1.  The Court has ruled that the Government is not required to produce its communications with JPMC that Amar seeks in Request 30.  The same should apply for JPMC.

Amar also argues that "the record available to Defendants to date contains sufficient evidence that the Government outsourced its investigation to JPMC . . . ."  Amar Opp'n at 51. Not surprisingly, Amar does not cite a single piece of this supposed "evidence" because there is none.  Instead, Amar makes this baseless claim as an excuse to engage in yet another fishing expedition – this time a hearing to examine the Government's and JPMC's relationship.  Amar's accusations are frivolous and should be flatly rejected.

### 16.    Request No. 31 Should Be Quashed.

***Request No. 31****: Documents and Communications listed on the privilege logs provided by JPMC to the Government in response to the Government Subpoenas, including:*

a) *To which Mr. Amar or Ms. Javice was the author, recipient, or copied;*

b) *To which ███████ ██████ was the author, recipient, or copied in his capacity as the Chief Operating Officer of Frank or concerning other*

c) *business-related discussions that did not involve the provision of legal advice;*

> **d)  Involving legal advice provided by Sidley Austin to Ms. Javice or the Frank Board of Directors regarding the potential sale of Frank to Capital One, JPMC, Bank of America, or any other potential buyer;**
>
> **e)  Memorializing discussions involving the Frank Board of Directors regarding the potential sale of Frank to Capital One, JPMC, Bank of America, or any other potential buyer;**
>
> **f)  Regarding any diligence questions, reports, timelines, templates, or trackers concerning the potential sale of Frank to Capital One, JPMC, Bank of America, or any other potential buyer;**
>
> **g)  Concerning "Project Finland Executive Update" on or around July 13, 2021;**
>
> **h)  Attaching or discussing Frank's financials, including balance sheets, revenue by product, and historical profits and losses;**
>
> **i)  Regarding JPMC's assessment of Frank's ADA compliance during Integration;**
>
> **j)  Regarding any changes in laws, policies, and procedures that had an impact Frank's business model, including Frank's FAFSA submitter;**
>
> **k)  Regarding any disruption to or shutdown of Frank's FAFSA submitter;**
>
> **l)  Regarding any disruption to or shutdown of Frank's microsite; and**
>
> **m)  Concerning Acxiom's data validation work during JPMC's diligence of Frank**

Once again, Amar misrepresents the record with respect to JPMC's willingness to engage with the Defendants' objections to JPMC's privilege decisions. On September 19, 2023, the Defendants objected to certain categories of privilege decisions. Specifically, the Defendants raised objections to: (i) ▮▮▮▮▮ communications; (ii) Board minutes; and (iii) the lack of family relationship among documents reflected in the privilege log. Despite the fact that the Defendants lacked standing to challenge JPMC's privilege calls by seeking to enforce SDNY's grand jury subpoenas, JPMC nevertheless diligently re-reviewed the entries about which the Defendants had raised concerns and the underlying documents reflected in its privilege log. On October 25, 2023, JPMC produced to the Government: (i) a subset of ▮▮▮▮▮

47

communications that, upon further review, were either unredacted or redacted less after further review, and (ii) all Board minutes and materials unredacted.  On October 26, 2023, JPMC re-produced all prior privilege logs to include the family relationship among documents.

Amar raises four categories of objections to JPMC's privilege log: (i) Amar's communications; (ii) Communications with ███████ (iii) Board minutes and materials; and (iv) Frank financials and diligence documents. Amar Opp'n at  55-56.  JPMC produced the Board minutes and materials in unredacted form to the Government and additional ████ communications.  As to Amar's communications and Frank financial and diligence documents, JPMC is willing to consider any entries to which Amar raises an objection and review the underlying materials.  However, should JPMC determine that the material is privileged, JPMC strenuously objects to producing it under any circumstances to the Defendants. *See* Section II(C), *supra* at 9-10.

## **CONCLUSION**

For the foregoing reasons and those stated in JPMC's moving brief, this Court should

quash Defendants' Rule 17(c) Subpoenas.


Dated:      December 22, 2023
            New York, New York

                                        **HOGAN LOVELLS US LLP**

                                        By: *Allison M. Wuertz*

                                        Kristy J. Greenberg
                                        Allison M. Wuertz
                                        HOGAN LOVELLS US LLP
                                        390 Madison Avenue
                                        New York, NY 10017
                                        (212) 918-3000

                                        *Attorneys for Non-Party JPMorgan Chase
                                        Bank, N.A.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2023, I electronically transmitted the foregoing Document using the ECF System for filing and transmitting of REPLY MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY JPMORGAN CHASE BANK, N.A.'S MOTION TO QUASH DEFENDANTS' RULE 17(C) SUBPOENAS to all ECF registrants who have appeared in this case.

_____

Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000