UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

Case No.: 1:23-cr-00251-AKH

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

---

## DEFENDANT CHARLIE JAVICE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SUPERSEDING INDICTMENT (ECF 27) OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

Alex Spiro
Samuel P. Nitze
Maaren A. Shah
JP Kernisan
Sarah Heaton Concannon
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com
samuelnitze@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com
sarahconcannon@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................3

I.   THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF SPECIFICITY
     AND FAILURE TO ALLEGE ESSENTIAL ELEMENTS....................................3

     A.   Legal Standard ...............................................................................................4

     B.   Analysis .........................................................................................................6

          1.   The Indictment Fails to Allege Facts Sufficient to Put Ms. Javice
               on Notice of the Nature of the Charged Frauds....................................6

          2.   The Indictment Fails to State a Claim for Bank Fraud .........................9

          3.   The Indictment Should be Dismissed for Failure to Allege
               Materiality...........................................................................................13

II.  COUNT THREE OF THE INDICTMENT SHOULD BE DISMISSED AS
     IMPERMISSIBLY DUPLICITOUS.....................................................................15

     A.   Legal Standard .............................................................................................15

     B.   Analysis .......................................................................................................16

III. TO THE EXTENT THE COURT DENIES THE MOTION TO DISMISS AS TO
     ANY COUNT, IT SHOULD ORDER THE GOVERNMENT TO PROVIDE A
     BILL OF PARTICULARS ...................................................................................17

     A.   Legal Standard .............................................................................................17

     B.   Analysis .......................................................................................................18

          1.   Identities of unindicted co-conspirators should be disclosed
               (Request 1)..........................................................................................18

          2.   Details sufficient to identify the alleged misrepresentations should
               be disclosed (Request 2) .....................................................................20

          3.   Disclosure of targets of the alleged fraud is appropriate
               (Requests 3–4).....................................................................................23

CONCLUSION.................................................................................................................24

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Bank of China v. NBM LLC,*
    359 F.3d 171 (2d Cir. 2004) ........................................................................................... 11

*Chadbourne & Parke LLP v. Troice,*
    571 U.S. 377 (2014) ...................................................................................................... 13

*Costello v. United States,*
    350 U.S. 359 (1956) ........................................................................................................ 5

*Hamling v. United States,*
    418 U.S. 87 (1974) .................................................................................................... 4, 6

*Loughrin v. United States,*
    573 U.S. 351 (2014) ................................................................................................ 10, 11

*Neder v. United States,*
    527 U.S. 1 (1999) ........................................................................................................ 13

*Russell v. United States,*
    369 U.S. 749 (1962) ............................................................................................. 4, 7, 10

*Shaw v. United States,*
    580 U.S. 63 (2016) ...................................................................................................... 12

*U.S. v. Klein,*
    476 F.3d 111 (2d Cir. 2007) ......................................................................................... 14

*U.S. v. W.R. Grace,*
    429 F. Supp. 2d 1207 (D. Mont. 2006) ......................................................................... 14

*United Sates v. Koh,*
    199 F.3d 632 (2d Cir. 1999) ....................................................................................... 9, 10

*United States v. Abrams,*
    539 F. Supp. 378 (S.D.N.Y. 1982) .................................................................................. 7

*United States v. Alegria,*
    1991 WL 33284 (S.D.N.Y. Mar. 7, 1991) ................................................................. 21, 23

*United States v. Altimari,*
    1994 WL 116086 (S.D.N.Y. Mar. 25, 1994) .................................................................. 21

*United States v. Aracri*,
    968 F.2d 1512 (2d Cir. 1992) ................................................................. 15

*United States v. Awan*,
    459 F. Supp. 2d 167 (E.D.N.Y. 2006), *aff'd*, 384 F. App'x 9 (2d Cir. 2010) ...................... 4, 7

*United States v. Barnes*,
    158 F.3d 662 (2d Cir. 1998) ................................................................. 18

*United States v. Bin Laden*,
    92 F. Supp. 2d 225 (S.D.N.Y. 2000) ........................................................ 19

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987) ........................................................ 17, 18, 22

*United States v. Bouchard*,
    828 F.3d 116 (2d Cir. 2016) ........................................................ 10, 11, 12

*United States v. Brewster*,
    2021 WL 3423521 (S.D.N.Y. Aug. 5, 2021) ................................................... 14

*United States v. Busch*,
    2018 WL 5312759 (S.D. Ohio Oct. 25, 2018) ................................................. 13

*United States v. Cruikshank*,
    92 U.S. 542 (1875) .......................................................................... 4

*United States v. Curtis*,
    506 F.2d 985 (10th Cir. 1974) ............................................................. 8, 9

*United States v. Davidoff*,
    845 F.2d 1151 (2d Cir. 1988) ............................................................... 23

*United States v. De La Pava*,
    268 F.3d 157 (2d Cir. 2001) ................................................................. 4

*United States v. DiMarzo*,
    1993 WL 426936 (S.D.N.Y. Oct. 21, 1993) ................................................... 12

*United States v. Failla*,
    1993 WL 547419 (E.D.N.Y. Dec. 21, 1993) ................................................... 18

*United States v. Felder*,
    2016 WL 1659145 (S.D.N.Y. Apr. 22, 2016) .................................................. 15

*United States v. Gonzalez*,
    686 F.3d 122 (2d Cir. 2012) ............................................................. 4, 5, 6

*United States v. Greenberg*,
   2022 WL 827304 (S.D.N.Y. Mar. 9, 2022) ......................................................................15

*United States v. Hennessy*,
   1993 WL 137766 (S.D.N.Y. Apr. 23, 1993) ....................................................................23

*United States v. Hild*,
   644 F. Supp. 3d 7 (S.D.N.Y. 2022) ................................................................................12

*United States v. Hillie*,
   227 F. Supp. 3d 57 (D.D.C. 2017) ....................................................................................8

*United States v. Hinton*,
   127 F. Supp. 2d 548 (D.N.J. 2000) .................................................................................16

*United States v. Hitt*,
   249 F.3d 1010 (D.C. Cir. 2001) ........................................................................................5

*United States v. Ikoli*,
   2017 WL 396681 (S.D.N.Y. Jan. 26, 2017) ...................................................................21

*United States v. Kanekar*,
   2020 WL 730353 (E.D.N.Y. Feb. 12, 2020) ...................................................................18

*United States v. Keuylian*,
   23 F. Supp. 3d 1126 (C.D. Cal. 2014).............................................................................8

*United States v. Laljie*,
   184 F.3d 180 (2d Cir. 1999) ...............................................................................9, 11, 12

*United States v. Lino*,
   2001 WL 8356 (S.D.N.Y. Jan. 2, 2001)..........................................................................18

*United States v. Litvak*,
   889 F.3d 56 (2d Cir. 2018)...............................................................................................13

*United States v. Mercado*,
   2003 WL 21756084 (S.D.N.Y. Jul. 30, 2003) ................................................................11

*United States v. Miller*,
   26 F. Supp. 2d 415 (N.D.N.Y. 1998) ..............................................................................15

*United States v. Nachamie*,
   91 F. Supp. 2d 565 (S.D.N.Y. 2000) ...............................................................................19

*United States v. Nance*,
   533 F.2d 699 (D.C. Cir. 1976).........................................................................................8

*United States v. Omer*,
   395 F.3d 1087 (9th Cir. 2005) ....................................................................... 13

*United States v. Orena*,
   32 F.3d 704 (2d Cir. 1994) ............................................................................. 23

*United States v. Pinto-Thomaz*,
   352 F. Supp. 3d 287 (S.D.N.Y. 2018) ............................................................ 19

*United States v. Pirro*,
   212 F.3d 86 (2d Cir. 2000) ........................................................... 4, 5, 7, 14, 20

*United States v. Rajaratnam*,
   2010 WL 2788168 (S.D.N.Y. July 13, 2010) ................................................ 21

*United States v. Resendiz-Ponce*,
   549 U.S. 102 (2007) ......................................................................................... 7

*United States v. Rodriguez*,
   140 F.3d 163 (2d Cir. 1998) ........................................................................... 13

*United States v. Rosenthal*,
   1991 WL 267767 (S.D.N.Y. Dec. 3, 1991) ................................................... 19

*United States v. Savin*,
   2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ................................................... 19

*United States v. Stavroulakis*,
   952 F.2d 686 (2d Cir. 1992) ............................................................... 4, 10, 12

*United States v. Stringer*,
   730 F.3d 120 (2d Cir. 2013) ..................................................................... 4, 7, 9

*United States v. Sturdivant*,
   244 F.3d 71 (2d Cir. 2001) ...................................................................... 15, 17

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998) .......................................................... 21, 22, 23

*United States v. Vilar*,
   729 F.3d 62 (2d Cir. 2013) ............................................................................ 13

*United States v. Walsh*,
   194 F.3d 37 (2d Cir. 1999) .......................................................................... 4, 5

*United States v. Weigand*,
   482 F. Supp. 3d 224 (S.D.N.Y. 2020) ...................................................... 10, 14

*United States v. Whab*,
   355 F.3d 155 (2d Cir. 2004) ...................................................................... 13

*United States v. Willis*,
   475 F. Supp. 2d 269 (W.D.N.Y. 2007) ...................................................... 16

*United States v. Zandstra*,
   2000 WL 1368050 (S.D.N.Y. Sept. 20, 2000) ........................................... 23

*United States v. Zarrab*,
   2016 WL 6820737 (S.D.N.Y. Oct. 17, 2016) ............................................. 10

*Wooden v. United States*,
   595 U.S. 360 (2022) (Gorsuch, J., concurring) ........................................ 12

*Yates v. United States*,
   574 U.S. 528 (2015) ................................................................................... 12

## Statutes and Rules

15 U.S.C. § 78j ............................................................................................. 2

15 U.S.C. § 78ff ........................................................................................... 2

18 U.S.C. § 1343 .......................................................................................... 2

18 U.S.C. § 1344 ....................................................................... 2, 9, 10, 11, 12, 13

18 U.S.C. § 1349 .......................................................................................... 2

Fed. R. Crim. P. 7 ..................................................................................... 4, 6

Fed. R. Crim. P. 8 ........................................................................................ 15

Fed. R. Crim. P. 12 ..................................................................................... 15

Local Criminal Rule 16.1 ............................................................................ 17

## Constitutional Provisions

U.S. Const. amend V ........................................................................... 1, 3, 5, 15

U.S. Const. amend VI ............................................................................ 1, 3, 5

## Other Authorities

Dep't of Justice Manual § 971 .................................................................. 5, 20

Defendant Charlie Javice respectfully submits this Memorandum of Law in support of her Motion to Dismiss the Superseding Indictment (ECF 27, the "Indictment") or in the Alternative for a Bill of Particulars.[1]

## PRELIMINARY STATEMENT

Ms. Javice respectfully moves to dismiss the Indictment because it fails to put her on notice of the essential facts supporting the charges against her and fails to allege essential elements of the charged offenses, in violation of the Fifth and Sixth Amendments to the Constitution and the Federal Rules of Criminal Procedure. Ms. Javice separately moves to dismiss the bank fraud charges because they fail to allege conduct that falls within the reach of the applicable statute, and, even if they did, the substantive bank fraud charge is duplicitous.

Although a criminal indictment generally need do little more than track the language of the statute charged, it must at least allege facts sufficient to fairly inform a defendant of the specific charges against which she must defend. The Indictment here comes nowhere close to satisfying that standard. Ms. Javice is accused of engaging in an 18-month, multi-object criminal conspiracy and with committing various frauds against multiple alleged victims, but the Indictment is silent as to virtually every relevant particular. The Indictment alleges that Ms. Javice and her co-defendant Olivier Amar conspired with "others known and unknown" to commit wire fraud and bank fraud but does not say who those "others" are or when or how they joined the alleged conspiracy. With respect to the fraud charges, the Indictment alleges that Ms. Javice made multiple fraudulent statements but does not specify what she said or indicate when or how or to whom she said it. Nor does the Indictment allege—or in any way indicate—that the purported

---

[1]  Ms. Javice respectfully requests that the Court hold oral argument on this motion at a date and time convenient for the Court.

misrepresentations were material.  Even the alleged "victims" of the charged offenses are left undefined, described merely as a group of "acquiring companies" that apparently includes, but is not limited to, two banks, only one of which is identified.  Because the Indictment fails to provide Ms. Javice with adequate notice of the charges against her, it must be dismissed.

The bank fraud charges also should be dismissed for failure to state an offense. Alternatively, the substantive bank fraud count should be dismissed because it is prejudicially duplicitous.

To the extent the Court denies the motion to dismiss in any respect, Ms. Javice moves in the alternative for a bill of particulars as to each surviving count.

## BACKGROUND

Ms. Javice was arrested on April 3, 2023, on a criminal complaint that was unsealed the following day.  *See* ECF 1.  On May 18, 2023, a grand jury returned a four-count indictment charging Ms. Javice with (1) conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1349 (Count One), ¶¶ 1–3; (2) wire fraud, in violation of 18 U.S.C. § 1343 (Count Two), ¶ 4; (3) bank fraud, in violation of 18 U.S.C. § 1344 (Count Three), ¶ 5; and (4) securities fraud, in violation of, among other provisions, 15 U.S.C. §§ 78j(b) and 78ff (Count Four), ¶ 6. ECF 18.  On July 14, 2023, the grand jury returned a superseding indictment that added Olivier Amar as a co-defendant in each count but was otherwise unchanged.  ECF 27.

The Indictment alleges that over the course of eighteen months, Ms. Javice, Mr. Amar (together, the "Defendants"), and "others known and unknown" conspired to commit wire fraud and bank fraud and, in furtherance of that conspiracy and as stand-alone offenses, in fact committed fraud.  Indictment ¶ 1.  The Indictment alleges that, in furtherance of the charged conspiracy, the Defendants submitted false information about TAPD, Inc., d/b/a Frank, "and its user data, among other things, to potential acquiring companies" to defraud "those companies"

2

out of money and property and "transmitted and caused to be transmitted electronic communications and monetary transfers to and from Southern District of New York." *Id*. ¶¶ 3–4.  The Indictment includes the same vague allegation—execution of "a scheme to defraud by submitting false and fraudulent statements and representations about Frank and its user data, among other things, to potential acquiring companies"—in support of the substantive wire fraud, bank fraud, and securities fraud offenses charged in Counts Two, Three, and Four, respectively. *Id*. ¶¶ 4–6.  Each of the three substantive fraud counts also includes cursory allegations tailored to particular requirements of the applicable statute.  *See id*. ¶ 4 (Count Two) (alleging use of wires in support of wire fraud offense); ¶ 5 (Count Three) (alleging execution of a scheme to "defraud a financial institution" in support of bank fraud offense); ¶ 6 (Count Four) (alleging conduct in connection with the purchase and sale of security in support of securities fraud offense).  Each count of the Indictment thus follows the same model, reciting statutory language without providing any details about when and how and with whom the alleged schemes were carried out, or which pretenses, representations, or promises are claimed to have been false.

## ARGUMENT

## I.  THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF SPECIFICITY AND FAILURE TO ALLEGE ESSENTIAL ELEMENTS

The Indictment fails to satisfy fundamental constitutional requirements under the Fifth and Sixth Amendments and violates the Federal Rules of Criminal Procedure because it offers no facts from which Ms. Javice could fairly determine the charges against her.  The allegations supporting the four charges span just six paragraphs that recite (some of) the applicable statutory elements but provide virtually no detail regarding the nature of the charged schemes or the Defendants' allegedly false pretenses, representations, or promises.  *See* Indictment ¶¶ 1–6.  The Indictment thus fails to provide the requisite specificity and should be dismissed.  The Indictment also fails to

allege essential elements of the charged offenses, and each such offense should be dismissed on that basis as well.

### A.      Legal Standard

A criminal defendant is entitled to an indictment that (1) states the elements of the offenses charged and fairly informs the defendant of the charges against which she must defend, and (2) enables a defendant to plead an acquittal or conviction as a bar to double jeopardy.  *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c)(1) (requiring a "statement of the essential facts constituting the offense charged"); *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001) ("An indictment must sufficiently inform the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events."); *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (same).  It is not sufficient that an indictment parrots the generic terms set forth in the applicable statute; rather, "it must descend to particulars."  *United States v. Cruikshank*, 92 U.S. 542, 558 (1875); *accord United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000); *United States v. Awan*, 459 F. Supp. 2d 167, 175 (E.D.N.Y. 2006), *aff'd*, 384 F. App'x 9 (2d Cir. 2010).

Indeed, "it has long been the rule in this Circuit that a deficiency in an indictment's factual allegations of the elements of an offense is not cured by the fact that the relevant count cited the statute that the defendant is alleged to have violated."  *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (cleaned up).  To avoid dismissal, the indictment must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."  *Pirro*, 212 F.3d at 92 (citation omitted); *see also, e.g.*, *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (same).  This is especially so in a context where, as with complex fraud allegations, the charges "depend[] so crucially upon . . . a specific identification of fact[s]"—here, among other facts, the particular misrepresentations

alleged to have furthered the fraudulent schemes. *Russell v. United States*, 369 U.S. 749, 764 (1962); *see also United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992) (recognizing Supreme Court has held an indictment requires specific allegations). Accordingly, as the Department of Justice itself acknowledges, an indictment charging fraud "should contain a reasonably detailed description of the particular scheme the defendant is charged with devising to ensure that the defendant has sufficient notice of the nature of the offense." Justice Manual, § 971, Sufficiency of Indictment – Generally, https://tinyurl.com/DOJ-Manual (collecting cases and favorably citing dismissal of fraud indictments for failure to specify misrepresentations or false pretenses).

"An indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments." *Pirro*, 212 F.3d at 92; *see* U.S. Const. amend V (right to a grand jury and forbidding double jeopardy); U.S. Const. amend. VI (right "to be informed of the nature and cause of the accusation"). Moreover, the indictment must be "valid on its face"—that is, the Court is to look solely to the four corners of the indictment, and not beyond. *Costello v. United States*, 350 U.S. 359, 363 (1956). Any analysis of the sufficiency of an indictment demands "adherence to the language" of its terms "because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). Thus, "[b]ecause the requirement of a sufficient indictment serves these important purposes, the indictment must be considered as it was actually drawn, not as it might have been drawn." *Pirro*, 212 F.3d at 92. Deficient indictments cannot be cured by a bill of particulars. *See Gonzalez*, 686 F.3d at 128 ("[I]t is a settled rule that a bill of particulars cannot save an invalid indictment[.]"). Rather, an indictment that fails to allege the essential elements of the crime charged is constitutionally deficient and must be dismissed.

*See Pirro*, 212 F.3d at 92, 95 (dismissing indictment that failed to state an offense); *cf. United States v. Walsh*, 194 F.3d at 45 (stating that, unlike here, where an indictment is "minimally sufficient" on its face, in challenge to indictment after trial "a court may look to the record as a whole in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense").

**B.    Analysis**

**1.    The Indictment Fails to Allege Facts Sufficient to Put Ms. Javice on Notice of the Nature of the Charged Frauds**

The word "scheme" appears over a dozen times in the Indictment, but the Defendants are left to guess at what, exactly, they are alleged to have done to carry out—and conspire to carry out—the charged schemes.  The Indictment alleges that the Defendants acted with "others known and unknown," but says nothing about who those "others" might be, how or when they are alleged to have joined the Defendants in a criminal conspiracy, or what steps, if any, they took in furtherance of that conspiracy.  The Indictment repeatedly alleges that the Defendants engaged in a scheme "to defraud by submitting false and fraudulent statements and representations about TAPD, Inc., d/b/a Frank ('Frank') and its user data, among other things, to potential acquiring companies."  Indictment ¶ 2; *see also id*. ¶¶ 4–6.  But the Indictment is silent as to which statements or representations were false or fraudulent and when, how, and to whom they were made.  The Indictment alleges in support of Counts One and Two that, "in furtherance of such scheme," the Defendants "transmitted and caused to be transmitted electronic communications and monetary transfers to and from the Southern District of New York," but does not cite a single example of any such communication or transfer.  *Id*. ¶¶ 2, 4.  The Indictment alleges that the Defendants sought to defraud an undefined group of "potential acquiring companies" but, other than J.P. Morgan Chase ("JPMC"), it fails to identify any of the purported victims of the charged offenses.  The

Indictment thus does not satisfy the basic notice requirements set by the Constitution and Rule 7. *See, e.g., Hamling*, 418 U.S. at 117; *Gonzalez*, 686 F.3d at 128 (Rule 7 imposes "two requirements: the statement of the essential facts and the citation of the statute. *They are separate requirements and not a restatement of one another*.") (original emphasis, cleaned up).

The lack of specificity is particularly problematic in a context where, as here, the government has charged a complex fraud spanning many months—a period during which Ms. Javice made hundreds, perhaps thousands, of statements in connection with the marketing and sale of her company. Where "specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment," the government must do more. *Stringer*, 730 F.3d at 126.[2]  Indeed, as the *Stringer* court explained, courts have found that cases involving alleged misrepresentations require "specification of what statements are alleged to be false, and in what respect they are false, in charges of criminal falsity." *Id*. (collecting cases); *see also Pirro*, 212 F.3d at 94 (generic allegation that "ownership interest" was unreported insufficient to state a violation of tax statutes because "[o]wnership interest is a generic term that does not descend to particulars"); *Awan*, 459 F. Supp. 2d at 175 (dismissing count where "the indictment uses the generic expression 'material support[]' . . . without specifying which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered"); *United States v. Abrams*, 539 F. Supp. 378, 384–85 (S.D.N.Y. 1982)

---

[2]  *See also, e.g., Russell*, 369 U.S. at 764 ("Where guilt depends so crucially upon such a specific identification of fact[s], our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."); *United States v. Resendiz-Ponce*, 549 U.S. 102, 109–10 (2007) ("While an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity," namely those that "depend crucially upon a specific identification of fact.") (cleaned up).

(dismissing obstruction of justice counts that "track the language of the statute . . . and allege that the offenses occurred over nine and twenty-four month periods, respectively, 'in the Southern District of New York and elsewhere'" but "provide no other factual specifics"); *United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974) (indictment insufficient because it "plead[ed] little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it"); *United States v. Keuylian*, 23 F. Supp. 3d 1126, 1128 (C.D. Cal. 2014) (granting motion to dismiss wire fraud charge where "Indictment fail[ed] to describe any act of deception committed by" defendant and "allege[d] no misrepresentation, no false pretense, no false promise, and no concealment").[3]

In *Curtis*, for example, the defendants were charged with a scheme involving "false and fictitious representations" about a sham dating service and the mailing of "false and fictitious Compatibility Questionnaires" and letters containing misrepresentations regarding customer complaints.  506 F.2d at 988–99.  Although the *Curtis* indictment was far more detailed than the Indictment here, the Tenth Circuit held that the charging instrument was so vague that "the grand jury may have had a concept of the scheme essentially different from that relied upon by the government before the trial jury."  *Id*. at 989.  The court noted that, as here, "[w]hat the 'scheme and artifice to defraud', or the 'false and fraudulent pretenses, representations and promises'

---

[3]  *See also, e.g.*, *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (dismissing indictment because it alleged defendant made "false representations" to obtain something of value, yet failed to describe the representations, and thus was "not framed to apprise the defendant with reasonable certainty[ ] of the nature of the accusation against him") (internal quotation omitted); *United States v. Hillie*, 227 F. Supp. 3d 57, 72 (D.D.C. 2017) (dismissing count for failing to satisfy "basic constitutionally mandated principles" because it provided "only a verbatim recitation of the language of the criminal statute, devoid of any facts regarding the circumstances of [defendant's] behavior and adorned only with the broadest possible references to time and place").

referred to in the indictment were, [was] left to speculation." *Id.* The court observed that "under the general and confusing allegations of the indictment the trial jury could have conceived the scheme as something essentially different from that upon which the government" relied, a risk presented by the challenged Indictment here. *Id.*

Because the Indictment does not allege the basic factual circumstances of the charged schemes, including the particular misrepresentations on which the government intends to rely—the details of which are "of such importance" to this proceeding, *Stringer*, 730 F.3d at 126—the Indictment should be dismissed.

### 2.      The Indictment Fails to State a Claim for Bank Fraud

The Indictment's lack of specificity is particularly acute in Counts One and Three, alleging conspiratorial and substantive bank fraud, respectively, because those counts fail to allege essential aspects of the charged offenses—namely, that Ms. Javice intended to defraud a qualifying financial institution. Ms. Javice thus cannot reasonably infer from those charges what conduct the government alleges violated the applicable bank fraud statute, 18 U.S.C. § 1344, which has no application to schemes that only tangentially involve banks. Accordingly, those counts should be dismissed.[4]

The purpose of the bank fraud statute "is to protect the federal government's interest as an insurer of financial institutions." *United States v. Laljie*, 184 F.3d 180, 189 (2d Cir. 1999); *see also, e.g.*, *United Sates v. Koh*, 199 F.3d 632, 638 (2d Cir. 1999) ("Congress clearly intended to protect the 'financial integrity' of institutions in which it had a strong federal interest, including those that are 'federally created, controlled or insured.'") (citation omitted). Although the bank

---

[4]   On this argument, Ms. Javice seeks dismissal of the conspiracy count to the extent it alleges bank fraud as an object of the conspiracy.

fraud statute was modelled on the wire and mail fraud statutes, the Second Circuit has cautioned that it "should not be read to federaliz[e] frauds that are only tangentially related to the banking system," the statute's "core concern." *United States v. Bouchard*, 828 F.3d 116, 126 (2d Cir. 2016) (quotation omitted). Accordingly, while a "scheme to defraud" can cover a broad range of conduct, *see Stavroulakis*, 952 F.2d at 694, bank fraud is not meant to cover fraud against non-banks. Indeed, Section 1344(1)'s "whole sum and substance" is an "intent to defraud a financial institution." *Loughrin v. United States*, 573 U.S. 351, 357 (2014); *see Bouchard*, 828 F.3d at 125 (reversing bank fraud conviction because intended victim was not a qualifying financial institution and "§ 1344(1) requires the Government to show that a defendant intended to defraud the financial institution itself"). Similarly, Section 1344(2) requires the government to prove that the defendant "intended to obtain bank property." *Bouchard*, 828 F.3d at 126 (quoting *Loughrin*, 573 U.S. at 356). An indictment therefore must state that the defendant sought to defraud not just any entity or "company," but, specifically, a qualifying financial institution. *See, e.g., Koh*, 199 F.3d at 638 ("[T]he defendant must have intended to victimize a federally insured financial institution by exposing it to actual or potential loss[.]").[5]

The Indictment does not adequately allege that Ms. Javice intended to defraud a financial institution or obtain bank property and therefore does not satisfy the fundamental requirements of the bank fraud statute. Its silence as to whether banks qua banks were the intended targets of the

---

[5]   Moreover, the "scheme to defraud" must involve more than one isolated action, *i.e.*, the government must prove "a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing it to actual or potential loss." *United States v. Zarrab*, 2016 WL 6820737, at *11 (S.D.N.Y. Oct. 17, 2016); *see also United States v. Weigand*, 482 F. Supp. 3d 224, 237 (S.D.N.Y. 2020) as corrected (Sept. 2, 2020) (there must be a "convergence" under bank fraud statute between the parties intended to be deceived and those whose property is sought in the scheme).

scheme (and if so which ones) or whether Ms. Javice intended to obtain bank property (as opposed to some other property) is fatal to the bank fraud charges in Counts One and Three.  *See, e.g.*, *Russell*, 369 U.S. at 765 (explaining the constitutional requirements of a sufficient indictment).  At best, the Indictment alleges that Ms. Javice "engaged in a scheme to defraud by submitting false and fraudulent statements . . . to potential acquiring companies," which happened to include JPMC and "Bank-1."  Indictment ¶ 5.  Thus, for all the Indictment says, the acquisition could have happened via blind auction in which a financial institution just happened to participate.  That is not enough.  *See, e.g.*, *Bouchard*, 828 F.3d at 126 ("[A] 'financial institution' is not a loose or colloquial term, but a term of precise definition that can lead to grave criminal consequences."); *Laljie*, 184 F.3d at 189–90 ("Because § 1344 focuses on the bank, rather than on other potential victims, a conviction under § 1344 is not supportable by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such an institution was an intended victim.").

The inclusion of JPMC, "the eventual acquiring company" (Indictment ¶ 2), among the alleged victims does not cure the Indictment's failure to state a bank fraud claim.  The Indictment never alleges JPMC was acting in its capacity as a "financial institution" when it agreed to purchase Frank or that Ms. Javice intended to obtain bank property in the process.  JPMC's acquisition of a private company in the context alleged here has no bearing on the integrity of the banking system or on JPMC's function or status as a bank.  *See, e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171, 177 (2d Cir. 2004) (observing that "the bank fraud statute was designed to protect the integrity of the federally insured banking system").  Just as the bank fraud statute is not intended "to cover every pedestrian swindle happening to involve payment by check, but in no other way affecting financial institution," it is not intended to cover every commercial transaction where, although one

11

of the parties happens to be a bank, that party's status as a bank is entirely irrelevant to the defendant's alleged conduct and intentions. *Loughrin*, 573 U.S. at 362; *cf. United States v. Mercado*, 2003 WL 21756084, at *2 (S.D.N.Y. Jul. 30, 2003) (bank fraud claim stated where defendants were charged "with depositing a stolen, altered check into a federally-insured bank"); *United States v. DiMarzo*, 1993 WL 426936, at *2 (S.D.N.Y. Oct. 21, 1993) (bank fraud claim stated where defendant "deposited or attempted to deposit altered or forged stolen checks").

It is hard to fathom that in seeking to protect "the federal government's interest as an insurer of financial institutions," *Laljie*, 184 F.3d at 189, Congress intended bank fraud to be charged in circumstances like these—where neither the alleged "scheme" nor the transaction at issue involved "the core functions of our federal banking system," *Bouchard*, 828 F.3d at 126. Despite JPMC's appearance in the Indictment, the nature of the alleged scheme only confirms that this is not the typical bank fraud case, such as a scheme involving a bank's depository or lending functions. *Cf. Shaw v. United States*, 580 U.S. 63, 65 (2016) (scheme to fraudulently obtain bank customer's federally insured deposits by illicit transfer to another federally insured account can constitute bank fraud); *Stavroulakis*, 952 F.2d at 695 (scheme to sell stolen checks that would only have value once passed through "drawee bank" that would be exposed to real loss for paying forged checks can constitute bank fraud); *United States v. Hild*, 644 F. Supp. 3d 7, 16 (S.D.N.Y. 2022) (scheme to fraudulently inflate value of bonds used as collateral to secure cash loans from bank can constitute bank fraud).

Because the Indictment fails to state an offense under the bank fraud statute under Counts One and Three, those counts should be dismissed.[6]

---

[6]   To the extent that there is any doubt about whether the charged conduct states an offense under 18 U.S.C. § 1344, this Court should construe the statutory terms in Ms. Javice's favor. *See Yates v. United States*, 574 U.S. 528, 549 (2015) (considering Congressional intent and applying rule of

### 3.    The Indictment Should be Dismissed for Failure to Allege Materiality

The Indictment should be dismissed because it fails to allege a material misrepresentation in connection with any of the charged fraud offenses and thus fails to allege an essential element of each offense.  *See, e.g.*, *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) (fraudulent misrepresentation or deceit cannot be made "in connection with" the "purchase or sale of a . . . security" "unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a . . . 'security'"); *Neder v. United States*, 527 U.S. 1, 25 (1999) ("materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes"); *United States v. Litvak*, 889 F.3d 56, 64 (2d Cir. 2018) (securities fraud requires proof that defendant "made a material misrepresentation . . . or used a fraudulent device" in connection with the purchase or sale of a security); *United States v. Rodriguez*, 140 F.3d 163, 167 (2d Cir. 1998) ("Where the government alleges that a defendant, through misrepresentations, engaged in a deceptive course of conduct, the misrepresentations must be material in order to give rise to liability under the [bank fraud] statute.").[7]

"Failure to allege materiality is a fatal flaw requiring dismissal."  *United States v. Busch*, 2018 WL 5312759, at *1 (S.D. Ohio Oct. 25, 2018) (dismissing fraud counts "[b]ecause they lack

---

lenity to resist reading Sarbanes-Oxley provision "expansively to create a coverall spoliation of evidence statute" that would criminalize a fisherman's disposal of fish); *Wooden v. United States*, 595 U.S. 360, 388–96 (2022) (Gorsuch, J., concurring) (explaining that "any reasonable doubt about the application of a penal law must be resolved in favor of liberty" and rule of lenity applies not only in situations of  "grievous" statutory ambiguity because it is rooted in principles of due process and American tradition).

[7]   For both bank fraud and wire fraud, "[a] false statement is material if it has a 'natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed.'"  *United States v. Whab*, 355 F.3d 155, 163 (2d Cir. 2004) (quoting *Neder*, 527 U.S. at 16).  For securities fraud, a "misrepresentation or omission is material when there is a substantial likelihood that a reasonable investor would find [the omission or misrepresentation] important in making an investment decision."  *United States v. Vilar*, 729 F.3d 62, 92 (2d Cir. 2013) (internal quotation omitted).

allegations as to the materiality of the alleged falsehoods or concealments"); *see also, e.g.*, *United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005) (holding that "materiality of the scheme is an essential element of bank fraud in violation of 18 U.S.C. § 1344(1)" and, "[a]s such, materiality must be alleged in the indictment"); *U.S. v. W.R. Grace*, 429 F. Supp. 2d 1207, 1246 (D. Mont. 2006) (dismissing two counts for failure to allege materiality, noting that "failure to allege a required element of the charged offense is a fatal flaw requiring dismissal").

The Indictment not only fails to identify any specific fraudulent statements, it does not even attempt to describe how or why those statements were "material."  Ms. Javice is not required to guess.  For example, in *United States v. Weigand*, the defendants were charged with bank fraud for using "fictitious businesses to fool the banks into approving marijuana credit card and debit card sales by disguising those transactions as sales of dog food and the like." 482 F. Supp. 3d at 232.  The court declined to dismiss the indictment for failure to allege materiality because the "indictment explicitly alleges that many issuing banks would not have approved these transactions if they had known marijuana was involved."  *Id*. at 237.  Here, however, the Indictment says nothing of the sort.  It merely states that certain unidentified fraudulent statements were made and recites the statutory elements.

While an inference of materiality may sometimes be appropriate in fraud cases, no such inference is proper here.  *See, e.g.*, *U.S. v. Klein*, 476 F.3d 111, 113 (2d Cir. 2007); *United States v. Brewster,* 2021 WL 3423521, at *5–6 (S.D.N.Y. Aug. 5, 2021).  Allegations that statements were made "about Frank and its user data," *e.g.*, Indictment ¶ 3, says nothing about the materiality (or not) of those statements (whatever they might be) to the recipient (whoever that might be).  There furthermore is no allegation that JPMC, "Bank-1," or any of the "potential acquirors" would not have proceeded with the transaction had they knew the truth behind the alleged misstatements.

Each Count therefore should be dismissed for failure to allege materiality.  *See Pirro*, 212 F.3d at 92 (dismissing for failure to allege "the essential elements").

## II.  COUNT THREE OF THE INDICTMENT SHOULD BE DISMISSED AS IMPERMISSIBLY DUPLICITOUS

Even assuming Count Three states an offense of bank fraud, it is nonetheless impermissibly duplicitous.

### A.  Legal Standard

Under Federal Rule of Criminal Procedure 8(a), an indictment "with 2 or more offenses" should state the offenses in "separate counts."  Duplicity is the joining of two or more offenses in a single count.  *United States v. Felder*, 2016 WL 1659145, at *2 (S.D.N.Y. Apr. 22, 2016) ("Duplicity in criminal law parlance is the joinder of two or more distinct crimes in a single count.") (citing *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992)).  A duplicitous indictment creates a host of problems, including failing to provide the defendant with adequate notice of the actual offense charged, exposing the accused to double jeopardy in violation of the Fifth Amendment, and making it difficult to determine if a jury's general verdict rests on only one of the offenses or both.  *See United States v. Sturdivant*, 244 F.3d 71, 75–76 (2d Cir. 2001) (analyzing "relevant policy considerations" for determining whether defendant was prejudiced by duplicitous indictment).

To establish that an indictment is "impermissibly duplicitous," a defendant must show (1) that the indictment "combines two or more distinct crimes into one count," and (2) "the defendant is prejudiced thereby."  *Id.* at 75 & n.3.  "In a pretrial motion to dismiss a count as duplicitous, the Court considers only the indictment 'on its face.'"  *United States v. Greenberg*, 2022 WL 827304, at *11 (S.D.N.Y. Mar. 9, 2022) (quoting *United States v. Miller*, 26 F. Supp. 2d 415, 422–23 (N.D.N.Y. 1998)); *see* Fed. R. Cr. P. 12(b)(3)(B)(i) (authorizing pretrial motions raising duplicity

as defect in indictment).  If a count is duplicitous, "the court may dismiss that count, or it may require the government to elect to proceed upon only one of the distinct crimes charged in the count." *United States v. Willis*, 475 F. Supp. 2d 269, 272 (W.D.N.Y. 2007).

**B.      Analysis**

Dismissal of Count Three as duplicitous is proper here.   The government charged Ms. Javice with bank fraud, naming two banks—JPMC and "Bank-1"—which it then lumped together with other "potential acquiring companies," none of which is even identified as a bank. Distinct actions to defraud multiple "potential acquiring companies," banks, and non-banks alike, cannot form the basis for a single scheme to commit bank fraud.

*United States v. Hinton*, 127 F. Supp. 2d 548 (D.N.J. 2000), is instructive.  There, the defendant was charged under the federal bank fraud statute with an alleged scheme to defraud "six financial institutions."  *Id.* at 556.  The court granted the defendant's motion to dismiss on the ground that the indictment was duplicitous, noting: "Although it is understandable that the government would want to conserve its resources and simplify the prosecution of this defendant who is alleged to have managed the fraudulent transactions with each bank, for one unified scheme, ***it cannot do so in a one count indictment where six financial institutions are involved***, even if distinct similarities in the means and methods of the schemes directed against each bank exist in the proofs."  *Id.* (emphasis added).

Here, as in *Hinton*, the Indictment refers to multiple entities within a single bank fraud count, and therefore fails to state a single offense.  If Ms. Javice is alleged to have defrauded more than one bank—that is, if more than one of the "potential acquiring companies" is a financial institution within the definition of the bank fraud statute—then Ms. Javice was entitled under the Constitution to have the grand jury separately and clearly indict on each distinct count.  Proceeding on Count Three as alleged furthermore would prejudice Ms. Javice for all the reasons stated above,

requiring her to guess at which of the potentially numerous "potential acquirors" is involved, and which of the no-doubt innumerable statements made to those unknown entities forms the basis of the purported fraud.  Moreover, the Indictment creates a significant risk that any verdict will be based on a lack of unanimity and confusion among the jurors.  If Ms. Javice were to be convicted of bank fraud, it would be all but impossible to determine whether the verdict rested on a scheme to defraud JPMC, Bank-1, or some other yet-unknown potential acquiror, leaving her impermissibly exposed to double jeopardy.  *See Sturdivant*, 244 F.3d at 75–76.

Count Three accordingly is duplicitous and should be dismissed.

## III.   TO THE EXTENT THE COURT DENIES THE MOTION TO DISMISS AS TO ANY COUNT, IT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS

Should the Court decline to dismiss the Indictment or any of its counts, Ms. Javice respectfully requests that the Court order the government to produce a bill of particulars as to each surviving count.[8]

### A.   Legal Standard

A defendant may "seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  While a bill of particulars generally should not be used "as a means of learning the government's evidence and theories," it will, "if necessary to give the defendant enough information about the charge to

---

[8]   As described in the declaration of Samuel Nitze filed with this motion, pursuant to Local Criminal Rule 16.1, counsel for Ms. Javice conferred with government counsel in a good faith effort to resolve the issues raised by this aspect of the motion without Court intervention, but the parties were unable to reach agreement.

prepare his defense, . . . be required even if the effect is disclosure of evidence or of theories." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (citation omitted). Ultimately, "[t]he decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Bortnovsky*, 820 F.2d at 574.

### B.    Analysis

A bill of particulars is warranted here containing, at a minimum, the following information:

1.  The identities of the unindicted co-conspirators (Indictment ¶¶ 1–3);

2.  Details regarding each of the false or fraudulent "pretenses, representations, and promises" about Frank, its "user data," and "other things" alleged in the Indictment, including the content of each statement and information regarding when, how, and to whom each statement was transmitted and how each statement was material  (Indictment ¶¶ 2–6);

3.  The identities of "potential acquiring companies" to whom the Indictment alleges Ms. Javice transmitted false and fraudulent statements (Indictment ¶¶ 2–6); and

4.  The identities of any other banks to whom the Indictment alleges Ms. Javice transmitted false and fraudulent statements (Indictment ¶ 2).[9]

As set forth more fully below, disclosure of the foregoing items is necessary to "enabl[e] [Ms. Javice] to prepare for trial" and "to prevent surprise." *Bortnovsky*, 820 F.2d at 574.

### 1.    Identities of unindicted co-conspirators should be disclosed (Request 1)

"Requests for names of unindicted co-conspirators are fairly common and often are granted by district courts." *United States v. Lino*, 2001 WL 8356, at *12 (S.D.N.Y. Jan. 2, 2001); *accord United States v. Kanekar*, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) (same); *United States v. Failla*, 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993) (same).

---

[9]   During a recent conferral, the government confirmed the identity of Bank-1.

When determining whether to require such a disclosure, the court may consider a wide array of factors, including: "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation." *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000). Judges in this District repeatedly grant such requests. *See, e.g.*, *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018) (granting "motion for a bill of particulars as to the identities of unindicted co-conspirators"); *United States v. Savin*, 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (finding defendant was "entitled to a list of known unindicted co-conspirators"); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) (ordering government to provide "the identities, including all aliases and code names, of all unindicted co-conspirators to whom it will refer at trial"); *United States v. Rosenthal*, 1991 WL 267767, at *7 (S.D.N.Y. Dec. 3, 1991) ("To the extent that the government knows of other persons who took part in the charged offenses with the intent of furthering the illegal goals alleged, the government is ordered to disclose their identities and a general description of each of their alleged roles.").

Here, each factor weighs in favor of disclosure. *First*, the number of unindicted co-conspirators is entirely unknown—the government has not said whether it alleges that two or one hundred "others" joined the Defendants in the charged conspiracy. *Second*, the alleged conspiracy spans a period of eighteen months, during which time Ms. Javice transitioned from the founder of a start-up to an employee of one of the largest banks in the world, crossing paths with countless people. *Third*, as noted above, other than identifying JPMC and, during a conferral regarding this motion the identity of "Bank-1," the government has provided virtually no information about the

19

charges it is pursuing beyond a bare (and repetitive) recitation of the statutory elements.  *Fourth*, the volume of pre-trial disclosures in this case is massive—totalling more than 700,000 documents from at least three dozen different entities—such that Ms. Javice cannot reasonably be expected to infer from the hundreds of thousands of pages which individuals might be included within the group of "others known and unknown" with whom the government alleges she conspired.[10]

The fifth and sixth elements—potential danger to co-conspirators and harm to the government's investigation—provide no basis for withholding particulars in this case.  Ms. Javice has complied fully with the terms of her supervised release for nearly a year, and her knowledge of her supposed co-conspirators' identities obviously would pose no threat to any potential witness or government cooperator.  Moreover, the case has been reported on extensively in the press, such that there is no realistic potential that the government's investigation—which has been ongoing for well over a year—could be in any way affected by disclosure of the information sought.

Because all six of the *Nachamie* factors weigh in favor of disclosure, the Court should grant Ms. Javice's Request 1.

### 2. Details sufficient to identify the alleged misrepresentations should be disclosed (Request 2)

An indictment must "contain some amount of factual particularity," *Pirro*, 212 F.3d at 92, and, as the Department of Justice acknowledges, an indictment charging fraud specifically "should contain a reasonably detailed description of the particular scheme the defendant is charged with devising."  Justice Manual, § 971, Sufficiency of Indictment – Generally, https://tinyurl.com/DOJ-Manual.  Defendants accordingly should have, at a minimum, "some notice . . . of particular illegal

---

[10]    As the defense has noted previously, and in contrast to the average case, because of the acquisition of Frank by JPMC, Ms. Javice has virtually none of her own documents.  She instead has been reliant on the discovery—if and as the government has decided to provide it—in both trying to understand the government's case and in developing her own defense.

acts the government will seek to prove, if not identified in the indictment . . . .  Where a conspiracy is charged, those 'specific acts' include particular illegal actions on the part of a defendant within the alleged object of the conspiracy . . . ."  *United States v. Altimari*, 1994 WL 116086, at *3 (S.D.N.Y. Mar. 25, 1994).  Thus, where a fraud indictment is lacking in details, courts will require the government to provide them.  *See, e.g.*, *United States v. Ikoli,* 2017 WL 396681, at *5 (S.D.N.Y. Jan. 26, 2017) (bank fraud indictment "arguably insufficient to satisfy the Government's obligations" where it "broadly identifie[d] the timeframe of the charges," "provide[d] limited location information," failed to "identify any particular institution" allegedly defrauded, and did not identify specific transactions at issue); *United States v. Rajaratnam*, 2010 WL 2788168, at *3 (S.D.N.Y. July 13, 2010) ("[C]ourts have sometimes ordered the government to provide more particulars about overt acts alleged in terms too general to enable the defendant to defend against them."); *United States v. Alegria*, 1991 WL 33284, at *3 (S.D.N.Y. Mar. 7, 1991) (holding that information "regarding the dates, times, and places of the alleged offenses" constitutes "information essential for the defendants to prepare a defense against the charges").

The Indictment provides almost no information about the alleged misrepresentations beyond the fact that they occurred at some point in an eighteen month period, and that some communications and monetary transfers occurred "to and from the Southern District of New York."  *See* Indictment ¶¶ 2, 4.  Regarding the alleged "false and fraudulent statements" the indictment is virtually silent as to the who, what, where, or when of the scheme.  There is no information as to what these allegedly criminal statements were, how they were transmitted, when they were transmitted, where from, where to, nor even who received them.  Ms. Javice cannot be expected to prepare a defense to every single representation she made, to anyone, anywhere, that might have made it to this District, over the course of 18 months.  *See United States v. Trie*,

21

21 F. Supp. 2d 7, 21 (D.D.C. 1998) ("A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information.").

In *Bortnovsky*, for example, the Second Circuit concluded that it was an abuse of discretion for the district court to allow the defendants to proceed to trial on the basis of an indictment that—like here—provided almost no information about the misrepresentations that the government planned to prosecute. 820 F.2d at 573. The indictment charged a scheme to defraud a United States insurance agency but did not identify which of the defendants' fifteen past insurance claims were false; it alleged only that the defendants "would and did submit false claims." *Id.* at 573–74. The district court nevertheless denied a bill of particulars. *Id.* at 574. The Second Circuit held that, in so doing, the burden of proof had impermissibly shifted to defendants because "the relevance of key events was shrouded in mystery" and defendants were "forced to explain" numerous insurance claims and representations that were ultimately "unrelated to the charges." *Id.* at 574–75. Likewise, Ms. Javice is left to theorize as to what representations the government contends are false and attempt to mount a defense to any number of statements she might have made throughout the alleged conspiracy. Further, as *Bortnovksy* indicated, this deficiency cannot be remedied in discovery. *See id.* at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified[.]"); *Trie*, 21 F. Supp. 2d at 21 (rejecting government argument that defendant should be able to identify false statements by analyzing the evidence in discovery because "not only does the government's position presume that the defendant knows what the government alleges that he did and with whom he dealt and therefore has all the

information he needs, a premise inconsistent with the presumption of innocence, but it smacks of gamesmanship").

The government accordingly should be required to provide additional information regarding the nature and substance of the alleged false and fraudulent statements. At a minimum, a defendant charged with making false statements should be provided with "information as to exactly what the false statements are, what about them is false, who made them, and how [the defendant] caused them to be made." *Trie*, 21 F. Supp. 2d at 21–22 (granting motion for bill of particulars). So, too, here.

### 3.      Disclosure of targets of the alleged fraud is appropriate (Requests 3–4)

"An indictment should name . . . the persons defrauded when they are known by the government." *United States v. Orena*, 32 F.3d 704, 714–15 (2d Cir. 1994) (citation omitted); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (trial judge "exceeded his discretion . . . by denying a bill of particulars identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove"); *United States v. Zandstra*, 2000 WL 1368050, at *6 (S.D.N.Y. Sept. 20, 2000) ("[T]he Government is directed to provide [the defendant] with a bill of particulars identifying the approximate dates of the allegedly fraudulent mailings, and the names of the alleged victims, if known."); *United States v. Hennessy*, 1993 WL 137766, at *3 (S.D.N.Y. Apr. 23, 1993) ("[T]he Government in this case must disclose which union members will be alleged to have turned over their ballots in response to the defendants' extortionate demands."); *Alegria*, 1991 WL 33284, at *3 ("[T]he Government must provide any known identity of the owners of the stolen vehicles as to which the Government intends to adduce proof.").

Here, the Indictment purports to be premised on an eighteen-month-long scheme to defraud not only JPMC and "Bank-1," but also other innumerable, anonymous "potential acquiring companies." *See* Indictment ¶¶ 2–6. Yet the government has provided no clues as to whom Ms.

Javice supposedly intended to defraud beyond the two banks referenced in the Indictment.[11] Accordingly, the government should be required to disclose the identities of the "potential acquiring companies" it alleges to be the targets of the scheme.

## CONCLUSION

For the reasons set forth above, Ms. Javice respectfully requests that the Court dismiss the Indictment or, should the Court decline to do so, order the government to provide a bill of particulars.

Respectfully submitted,

Dated:   April 5, 2024

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

Alex Spiro
Samuel P. Nitze
Maaren A. Shah
JP Kernisan
Sarah Heaton Concannon
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com
samuelnitze@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com
sarahconcannon@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*

---

[11]   Conferral with the government has only made matters worse.  The government has confirmed the identity of Bank-1 but in response to Ms. Javice's request for the identities of other alleged victims, the government referred Ms. Javice to a document listing **76 entities** and noted that even this list was not exhaustive. That the government apparently reads the Indictment to allege that Ms. Javice defrauded **dozens** of entities makes obvious the need for particulars but more importantly highlights the foundational deficiencies in the charging instrument addressed *supra*.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 5, 2024, I caused a copy of the foregoing document to be served via ECF on counsel of record.

_____
Alex Spiro