O5U6JAVC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

        v.                       23 CR 251(AKH)

CHARLIE JAVICE and OLIVIER
AMAR,

             Defendants.
------------------------------x

                             New York, N.Y.
                             May 30, 2021
                             4:20 p.m.
Before:

                HON. ALVIN K. HELLERSTEIN,

                             District Judge

                    APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DINA McLEOD
RUSHMI BHASKARAN
NICOLAS CHIUCHIOLO
    Assistant United States Attorneys

QUINN EMANUEL URQUHART & SULLIVAN LLP
    Attorneys for Defendant Javice
BY:  SAMUEL P. NITZE
    NEIL PHILLIPS
    JENNY BRAUN

KOBRE & KIM LLP
    Attorneys for Defendant Amar
BY:  SEAN BUCKLEY
    ALEXANDRIA SWETTE
    GENNA SINEL
    JAKE RUSH

O5U6JAVC

1             THE COURT:  This is U.S. v. Charlie Jervice.  Counsel,

2     please state your appearances for the record.

3             MS. McLEOD:  Good afternoon, your Honor.

4             Dina McLeod, Rushmi Bhaskaran, and Nicholas

5     Chiuchiolo, for the government.

6             THE COURT:  Good afternoon.

7             MR. NITZE:  Sam Nitze, Neil Phillips, Jenny Braun,

8     here for defendant, Charlie Javice.

9             THE COURT:  Good afternoon.

10             MR. BUCKLEY:  Good afternoon.

11             Sean Buckley, Alexandra Swette, Jenna Sinel, Jake

12     Rush, for Mr. Amar, who is seated with me at counsel table.

13             THE COURT:  I'm sorry that you had to wait while we

14     recovered a bit from a trial day, but here we are.

15             So we have a motion by defendants to dismiss the

16     indictment, to ask for a bill of particulars, and to suppress

17     evidence obtained by a warrant.  Who will speak for the

18     defendants?

19             MR. NITZE:  Sam Nitze for Ms. Javice.

20             MR. BUCKLEY:  And Sean Buckley on behalf of Mr. Amar.

21             THE COURT:  Who is going first?

22             MR. NITZE:  I will, your Honor.

23             THE COURT:  Please take the podium.  Go ahead.

24             MR. NITZE:  So, your Honor, we advance a number of

25     arguments in the papers in support of dismissal of the

O5U6JAVC

1    indictment.  We think every count is deficient.  And I'm happy

2    to answer questions about some of the bases for dismissing

3    them, but I wanted to focus today on really the core theme

4    that's at the center of the motion papers, which has to do with

5    lack of specificity in the charging instrument.

6         THE COURT:  The threshold is pretty low; isn't it?

7         MR. NITZE:  It is low.  And it has Constitutional

8    underpinnings.  It has to satisfy —— it has to set forth the

9    elements of the offenses charged, but also independently to

10   give a sufficient factual basis to permit a defendant to

11   prepare to defend at trial.  And it's really that second aspect

12   that we think is badly lacking here.

13        And, of course, you know, there are phrases in cases

14   saying you need do little more than track the language of the

15   indictment.  You are, of course, familiar with that.  But

16   really behind that, and in the context of the cases that

17   grapple with this question, is a question about fair notice.

18        THE COURT:  There are two elements here.  What's

19   legally required for an indictment and the second is what's

20   fair to you.  So that you could prepare for trial and know what

21   you have to deal with.

22        The first one, I think you can see that the threshold

23   is very low, that if the government tracks —— if the indictment

24   tracks the statute, it's sufficient.

25        MR. NITZE:  I don't concede that this indictment

O5U6JAVC

1    satisfies the threshold of the crime, but --

2              THE COURT:  It seems to.  I mean, the first count is

3    an indictment.  They do allege a conspiracy in Paragraph 2.

4    They allege the illegal object of the conspiracy in

5    Paragraph 3.  And that spells out the conspiracy, similarly

6    with wire fraud and bank fraud and securities fraud.  I mean,

7    it's not a bill of particulars, which you also want.  It's an

8    indictment.  It does the job.

9              MR. NITZE:  I agree that it sets out the elements of

10   the charged offenses.  It does not provide, at the level of the

11   indictment, the charging instrument sufficient factual

12   allegations to put the defense on notice.  I mean, I can move

13   to the argument about bill of particulars.  I just --

14             THE COURT:  Well, I need to determine the adequacy of

15   the indictment.  So if you have any arguments, present them.

16             MR. NITZE:  That is the argument, that if you look at

17   the requirement, although the bar is low, especially in a fraud

18   case.

19             THE COURT:  Well, what's missing from the conspiracy

20   count?

21             MR. NITZE:  Which misrepresentations.  The nature of

22   the omissions or misrepresentations.

23             THE COURT:  They don't have to do that.

24             MR. NITZE:  Which victims.  Who, in particular, was

25   intended to be defrauded.

O5U6JAVC

1          THE COURT:  Indictments don't have to do that.

2          MR. NITZE:  They have to allege some factual basis.

3          THE COURT:  You allege enough so that you know what's

4     charged and that -- it sets up a double jeopardy guarantee.  If

5     you're guilty, you know what you're guilty of, and no one can

6     sue you again.  If you're not guilty, you know what you're

7     acquitted of.  Look, the indictment does what it has to do, not

8     more.  But it does what it has to do.  I don't see any point of

9     illegality in it.

10          MR. NITZE:  I'm sorry.  I didn't hear you.  You don't

11     see any point?

12          THE COURT:  I don't see any deficiency in it.  I could

13     see your need for a bill of particulars, perhaps.  We'll go

14     into it.  But for an indictment, I think it's okay.

15          What do you say, Mr. Buckley?

16          MR. BUCKLEY:  Thank you, Judge.

17          I just wanted to jump in on the point that your Honor

18     is making.  We believe that the indictment is legally

19     insufficient for the reasons that Mr. Nitze pointed out.  But

20     in addition, recognizing your Honor's ruling here, we don't

21     think it adequately alleges bank fraud as a matter of law.

22          THE COURT:  I'm sorry.  You don't think it adequately

23     alleges?

24          MR. BUCKLEY:  Bank fraud as a matter of law.  And the

25     reason being the conduct that is set forth both in the

O5U6JAVC

1    indictment and in the government's complaint is conduct that it

2    is ascribing to JP Morgan in operating in a capacity that is

3    beyond what the bank fraud statute was designed to protect.  It

4    was not operating as an FDIC insured entity when it invests and

5    acquires a company.

6          So bank fraud, under those circumstances, for the

7    reasons that we noted, and I don't want to repeat our briefing

8    to the Court as I'm sure the Court has reviewed --

9          THE COURT:  I don't mind repetition.

10         MR. BUCKLEY:  At Page 25 to 27 of our opening brief,

11   we set forth the authorities that make clear, including FINRA's

12   reporting requirements and preservation requirements -- if the

13   Court recalls, one of the issues that has come up in the course

14   of the discovery disputes that we've had is the destruction of

15   e-mails or files maintained by custodians that we believe are

16   relevant to this case.  If the bank were operating in an FDIC

17   insured capacity, it would not have been permitted to destroy

18   those files under FINRA's regulations.

19         So we think that further supports the point here.

20   That at the end of the day, yes, JP Morgan Chase operates as an

21   FDIC insured entity.  The conduct in which it engaged, as

22   alleged in the indictment, is separate and apart from that role

23   as an FDIC insured entity, and therefore the applicability of

24   the bank fraud statute is not appropriate under these

25   circumstances.  There are other federal fraud statutes that do

O5U6JAVC

1    not rely upon the FDIC insured status or responsibilities of a

2    bank.

3             It's effectively operating as a commercial party

4    trying to market its products.  That does not deserve the

5    heightened protections that the bank fraud statute, 18 U.S.C.

6    1344 provides.  And we think for that reason, the indictment is

7    defective on its face.

8             And there's an additional reason with respect to

9    securities fraud as applied to Mr. Amar that I'm happy to

10   address with the Court.  But that, I think, is a core and

11   fundamental flaw with the legal authority presented by the

12   indictment in this case that warrants dismissal.

13            THE COURT:  Ms. McLeod.  On bank fraud.

14            MS. McLEOD:  Your Honor, if it's all right with the

15   Court --

16            THE COURT:  Take the podium, please.

17            MS. McLEOD:  -- AUSA Bhaskaran will address this.

18            THE COURT:  Surely.  Mr. Nitze, if you will surrender

19   the podium, please?

20            MR. NITZE:  Sure.

21            MS. BHASKARAN:  Thank you, your Honor.

22            The bank fraud statute does not limit itself to only

23   those situations when a bank is acting in its core banking

24   capacity.  There are two ways to violate Section 1344, the bank

25   fraud statute.  The first is through a scheme to defraud a bank

O5U6JAVC

1    of something of value.  That prong of the statute does not say

2    that the scheme to defraud has to involve something such as a

3    loan agreement or anything like that.

4              And the second way that a defendant can violate the

5    bank fraud statute is through a scheme to obtain money or

6    property under the custody of a bank.  And so that prong, too,

7    does not require a bank to be acting in an official banking

8    capacity.  And, in fact, that prong doesn't require a bank to

9    be defrauded at all.  It just requires a scheme to obtain

10   property under the bank's custody.

11             So what the defendants are asking the Court to do here

12   is to read in a statutory requirement that a bank be acting in

13   a certain way when it is defrauded.  But the statute does not

14   do that.  The indictment here tracks the language of

15   Section 1344.  And so for that reason, it is sufficient.  There

16   is no requirement that the banking -- that the fraud that is

17   alleged has to relate to core banking functions.

18             THE COURT:  Thank you, Ms. Bhaskaran.

19             I hold that the motion with respect to bank fraud

20   should be denied.  In order to allege a bank fraud offense, the

21   indictment need only describe a scheme to deprive the bank of

22   something of value or to obtain any of the moneys or other

23   property owned by or under the custody or control of a

24   financial institution.  That's the holding of the *United States*

25   *v. Weigand,* 482 F.Supp. 3d 224 at Page 235 (S.D.N.Y. 2020).

O5U6JAVC

The indictment tracks this language and the allegations are sufficient.

The case relied on by the defendant, *United States v. Bouchard,* 828 F.3d 116 at Page 126 (2d Cir. 2016) involved a completely distinguishable situation. There, the defendant was convicted of bank fraud for defrauding an uninsured mortgage broker that was a subsidiary of Lehman Brothers, a financial institution. The Second Circuit held that Lehman's interest was insufficient to establish a Section 1344 liability because the mortgage company, not Lehman as the financial institution, was a target of the scheme. We don't have that here. We have an allegation of a fraud that deprived the bank of its property. So that part of the motion is denied.

With respect to the other parts to the motion, the motion is also denied.

With regard to the motion to dismiss, the elements of a conspiracy are alleged, and there is sufficient notice in these allegations, to allow the defendant to defend. There is an argument that materiality is not alleged specifically, but it's alleged sufficiently in the allegation of fraud. And under *United States v. Klein*, 467 F.3d 111 (2d Cir. 2007), an allegation of materiality can be inferred from the use of "fraud," of the word "fraud" in the indictment. That was also the holding of *Neder v. United States*, 527 U.S. 1 at Page 1, decided in 1999. The wire fraud, the bank fraud, the

O5U6JAVC

1    securities fraud are all sufficiently alleged.  So the motion

2    to dismiss is denied.

3            We'll come on to the bill of particulars.

4            Now, there's been extensive discovery in this case.

5    There's a complaint that goes over the details of the crimes

6    alleged in sufficient detail so that the defendants know what's

7    going on and have plenty of notice to defend themselves.  I

8    wonder why that's not enough, Mr. Nitze.

9            MR. NITZE:  Your Honor, the case centers on a

10   conspiracy and a set of schemes in the substantive counts that

11   leave us without any -- we don't have a good understanding of

12   its scope.  We don't know -- the most important thing is we

13   don't know who we are alleged to have conspired with.

14           We have two defendants before the Court alleged to

15   have engaged in a conspiracy with others known and unknown.

16   And the charging instruments provide -- even if you look to the

17   complaint and the discovery -- really no meaningful guidance as

18   to who those others might be.

19           And, in fact, in conferring with the government before

20   filing the request for the application for particulars, the

21   government directed us to a document dated May 10 of 2021

22   before the alleged start of the conspiracy with some

23   76 entities and various officials and officers listed there.

24   It made the problem substantially worse, not better.  We don't

25   know if we are to expect a trial at which we defend against an

O5U6JAVC

1    allegation that our client defrauded "Noodle" or any of the

2    other companies listed on that sheet.

3            And I would just note that here, unlike in the context

4    your Honor just addressed with respect to legal sufficiency of

5    the charging instrument, you have broad discretion to fashion a

6    remedy in the interest of fairness.  And the various factors

7    that courts look to that are -- there are several of them set

8    out in the *Nachamie* case, but there are others -- cut heavily

9    in favor of further particulars being provided here.

10           There's no government investigation at jeopardy.  This

11   is not a violent crime case where there might be interests in

12   shielding the names of conspirators in the interest of witness

13   safety.  Nor is it the type of alleged conduct at issue in many

14   of those cases where the Court could reason that the defendants

15   know who they are alleged to have conspired with because of the

16   nature of the conduct.  Your Honor has --

17           THE COURT:  I take your point, Mr. Nitze.

18           It's important to know who the conspirators are

19   because their statements will be binding once they are shown to

20   be members of the conspiracy.  In order to defend, they need to

21   know who will be the conspirators.  That doesn't mean that you

22   be precluded from everybody else.  But there's got to be some

23   more information disclosed.

24           MS. McLEOD:  Your Honor, would you like me to take the

25   podium or --

O5U6JAVC

1        THE COURT:  Yeah, take the podium.

2        MS. McLEOD:  So, your Honor, I think we addressed this

3   in our briefing.  I think the main concern that the government

4   has is that a bill of particulars binds the government's proof

5   to the bill of particulars.  And as Judge Liman pointed out in

6   *United States* --

7        THE COURT:  I don't need you to be bound.  I

8   understand what you are worried about.  You're worried that if

9   you list seven, you will be barred from using the eighth.  What

10  I'd like to have is a good-faith listing of the names that you

11  know of, and you can add language that reserves your right to

12  deal with others as they come up.  But I do want Mr. Nitze and

13  Mr. Buckley to have knowledge of who the conspirators are.

14       MS. McLEOD:  That's understood, your Honor.

15       THE COURT:  How are you going to do that?

16       MS. McLEOD:  In a letter.

17       THE COURT:  Okay.  Mr. Buckley, are you satisfied with

18  that?

19       MR. BUCKLEY:  With respect to the identities of

20  coconspirators, yes.  That works for us on behalf of Mr. Amar.

21       THE COURT:  Mr. Nitze?

22       MR. NITZE:  With respect to that category of

23  particulars, yes, your Honor.

24       THE COURT:  Okay.  So you'll deliver that letter.

25       The second aspect of what they want to know by their

O5U6JAVC

1    motion...

2            MR. NITZE:  If I may, your Honor.

3            THE COURT:  No, I've got it.

4            A comprehensive list of the alleged

5    misrepresentations.  Again, I am not looking to lay a trap for

6    you, Ms. McLeod, but that letter should include the list -- the

7    misrepresentations --

8            MS. McLEOD:  Just to make sure we are appropriately

9    following the Court's direction, I assume that doesn't mean

10   every time the mis- -- what they are seeking in the motion is

11   every misrepresentation; the date, the time, who --

12           THE COURT:  I'm not requiring that.

13           MS. McLEOD:  Okay.

14           THE COURT:  Because many of them were repeated a

15   number of times, and I don't need you to give that level of

16   particularization.  But I want it -- I want you to tell

17   Mr. Buckley and Mr. Nitze what were the misrepresentations.

18           MS. McLEOD:  Understood, your Honor.  Again, this is

19   as with the unindicted coconspirators.  This would not be in

20   the form of a bill of particulars that binds the government,

21   but is in order to provide them with additional information.

22           THE COURT:  It's a disclosure order.

23           MS. McLEOD:  Yes, your Honor.

24           THE COURT:  And I think you can say what were the

25   misrepresentations, who uttered them, and to whom they were

O5U6JAVC

1    uttered, and if you have a date, you can provide the date.  If

2    there are several dates, you can list a range of dates.  But

3    there should be some level of disclosures.

4          MS. McLEOD:  We can do that, your Honor.  Just so your

5    Honor knows, in terms of the nature of the fraud scheme, the

6    nature was the defendants were pitching their company to many

7    other potential acquiring companies.  And in their pitches and

8    in their statements to their own investment advisory firm, they

9    repeated the same misrepresentations --

10          THE COURT:  Yeah.  But you're focusing on Chase,

11   JP Morgan Chase.  That's your focus.  What they may have said

12   to others may be 404 evidence.  But they are not

13   misrepresentations of a material nature.  What was material is

14   what induced JP Morgan to do the deal.

15          MS. McLEOD:  Understood, your Honor.

16          THE COURT:  The third, fourth are the targets of the

17   alleged fraud.  Well, the targets of the alleged fraud is

18   JP Morgan Chase.

19          Yes, Mr. Buckley.

20          MR. BUCKLEY:  Thank you, Judge.

21          The indictment goes beyond JP Morgan Chase and

22   identifies Bank 1 as well.  So to the extent they are

23   required -- they being the government -- is required to

24   identify the misstatements, by whom uttered, to who uttered,

25   and approximate dates, we would ask the same be done with

O5U6JAVC

1    respect to Bank 1.  And this is particularly important for

2    Mr. Amar, as I know the Court is aware from just reviewing the

3    complaint.  There is an utter paucity --

4           THE COURT:  I take your point --

5           MR. BUCKLEY:  -- of statements.

6           THE COURT:  The indictment says, in order to defraud

7    those companies, meaning JP Morgan Chase and Bank 1 and maybe

8    others -- so I think we want to limit who we have.  I think

9    you're going to identify Bank 1.  And if there are others, in

10   other words, those companies, add them.  But I guess we need to

11   limit here who are the targets.

12          MS. McLEOD:  Yes, your Honor.  We have identified

13   Bank 1 to the defendants.  They know.

14          THE COURT:  Get back to the letter.  It will not be

15   burdensome.

16          MR. BUCKLEY:  Judge, just to be clear, Bank 1, which

17   as Ms. McLeod stated, has been identified for us.  But also the

18   other entities that they are going to contend were the subject

19   of the conspiracies or the schemes --

20          THE COURT:  What about that, Ms. McLeod?

21          MS. McLEOD:  So we think the letter that we -- the

22   disclosure letter where we will put in the misrepresentations

23   to the potential acquiring companies, which will include Bank 1

24   and JP Morgan Chase, approximate dates or date ranges, and the

25   speakers, if we're aware.

O5U6JAVC

1          THE COURT:  Right.  And I also want you to list the

2     targets of the conspiracy on the fraud.

3          MS. McLEOD:  Yes.  So by --

4          THE COURT:  Who was being defrauded?

5          MS. McLEOD:  Yes.  So by that, the potential acquiring

6     companies would encompass your Honor's concern there.

7          THE COURT:  How is it a securities fraud or any kind

8     of fraud if only JP Morgan did the deal?  Why is there a fraud

9     for someone who didn't do the deal?  That could be an attempted

10    fraud.

11         MS. McLEOD:  So the fraud is complete when the

12    scheme -- so the scheme is -- so, yes, there are certainly

13    attempts on all of these companies.  They completed all of the

14    elements of a fraud.  For example, Bank 1, they told them lies

15    about the company in order to gain money or property from that

16    bank.  The bank ultimately did not decide to give them that

17    money or property but they were still victims of the fraud

18    nonetheless.

19         THE COURT:  I don't see how they are victims.

20    18 U.S.C. Section 2 is cited, and that takes in aiders,

21    abettors.  Withdrawn.

22         If I utter a falsehood intending to cause you to part

23    with something of value but you don't, have I committed a

24    fraud?

25         MS. McLEOD:  Yes.  The fraud does not have to be

O5U6JAVC

1     successful.

2              THE COURT:  I didn't know that.  Okay.  So you list

3     the targets of the fraud.  I think that takes care of the bill

4     of particulars.

5              MR. BUCKLEY:  Listing the targets of the fraud will

6     certainly help, your Honor.  I do want to say the broad

7     construction that Ms. McLeod just gave, the mere utterance of

8     something misleading, giving rise to liability under the

9     federal fraud statutes, this may run directly into the issue

10    that we flagged in our motions regarding the Supreme Court's

11    case in *Ciminelli*, the Buffalo Billions case.  That was decided

12    in I believe May of 2023, which said the mere deprivation of

13    information that could impact an economic decision is not

14    sufficient to give rise to criminal liability under federal

15    fraud statutes.  It may give rise under other statutes, but not

16    criminal liability.

17              I just want to flag that so the Court is aware because

18    depending on the list of purported victims that are identified

19    as the acquiring companies, this may be an issue that we need

20    to reraise with the Court.

21              THE COURT:  We don't have to do it now, though.  There

22    will be time to do that with charges.  It's enough now that

23    Chase was deprived of the property.  So the fraud is complete

24    with Chase.  And if the government has notions that others were

25    targeted, they'll list it.

O5U6JAVC

1          That that deals with the particular.  Now we get to

2     the motion to suppress.

3          Mr. Buckley.

4          MR. BUCKLEY:  Thank you, Judge.

5          So the motion to suppress obviously was filed on

6     behalf of Mr. Amar.  And with the Court's permission, I'm going

7     to start from a bit of an unorthodox angle here, which is to

8     address the last argument that the government presented in

9     support of its opposition first.  And the reason I do that is I

10    think it really encapsulates the core harm, the need for a

11    prophylactic suppression here of this sort of warrant.

12         So the government is not entitled, as so many cases

13    have found, to rely on good faith.  And why is that?

14         In the first sentence, the warrant itself is riddled

15    with inaccuracies.  The cover page of the affidavit called for

16    a warrant to authorize them to execute it at any time of day or

17    night.  The warrant itself found that it was appropriate to

18    order delayed notice of a warrant that needs to be required --

19    needs to be served on the person at the time of execution.

20    Those flaws in the warrant in and of themselves were sufficient

21    to give a reasonable officer executing the warrant cause to

22    pause and consider, okay, are there other issues here.

23         Now, putting aside those technical flaws that the

24    government -- the only defense they present to them, despite

25    presenting it to a magistrate judge and averring that those

O5U6JAVC

1    requests were supported by information contained in the

2    affidavit itself, which they were not.

3        Putting that aside, the manner in which this warrant

4    was obtained and ultimately executed undercuts any claim of

5    good faith by the government.  These agents obtained an

6    overbroad warrant.  They obtained a warrant that called for the

7    seizure of every electronic device, either on Mr. Amar's person

8    or contained in Mr. Amar's home.  Every electronic device.

9        As the Court in *Garcia* makes clear, and as numerous

10   courts, including the circuit in *Boles* made clear, the

11   application for a warrant needs to be specific as to the

12   particular property to be searched.  That specificity cannot be

13   satisfied by a demand for and authorization to seize all

14   electronic devices.  What the agents and the government were

15   required to do in applying for the warrant was to establish

16   particularized probable cause as to why a specific piece of

17   property, here Mr. Amar's cell phone, was likely to contain

18   evidence for its instrumentalities of the suspected crimes set

19   forth in the warrant.

20       A broad warrant that calls for execution in a

21   household to seize all electronic devices at any time of day or

22   night does not satisfy the particularity requirement.

23       Now, the reason that's central to this motion to

24   suppress is how the agents then used that overbreadth to their

25   advantage and to coerce, and in doing so, to violate the whole

O5U6JAVC

1   reason for the Fourth Amendment's prohibition on general

2   warrants.

3         When Mr. Amar was approached by the agents, he was

4   given an option.  He was told either give us the phone, enter

5   your password, or we're going to execute the warrant to its

6   fullest effect.  That is the problem with the overbreadth here.

7   It permitted them to use it coercively.  And the way in which

8   they used it undercuts any claim that they were relying upon

9   the ruling of a magistrate to satisfy their good faith.

10        I'm happy to turn to the flaws with the probable cause

11   if the Court would like to hear that next or answer any

12   questions.

13        THE COURT:  I'm familiar with the law.  But as I'm

14   reviewing the affidavit, the affidavit shows good cause.  This

15   is a crime that was plotted on the telephone.  Javice and Amar

16   used the phone to produce of -- the allegations, phony names

17   that would go into the inducement of Chase to do the deal.

18        As it is said on Page 8, 9, and 10 of the affidavit,

19   there's sufficient information to show the use of phones listed

20   to Javice and to Amar, based on their use of the phone to make

21   many, many calls, and the interest to take all cell phones

22   because so many people use multiple cell phones in carrying out

23   their work.  I believe this warrant was justified that way.

24        As to the giving of late notice, the warrant has to be

25   successfully executed before notice could be given, otherwise

O5U6JAVC

1    evidence will disappear.  So there's nothing wrong with that

2    late notice.  I deny the motion to suppress.

3         MR. BUCKLEY:  Your Honor, if I could just address one

4    additional point with respect to the probable cause, not the

5    notice issue?  I understand the Court's ruling on that.

6         While the affidavit at Pages 8 through 10 does set

7    forth what it purports to be an analysis of phone calls between

8    Ms. Jervice and Mr. Amar, maybe that would be sufficient if

9    this were an application for a wiretap under Title III to show

10   that we're entitled to hear these phone calls because we now

11   have demonstrated the connectivity between them.

12        The flaw in the reasoning there, as set forth in our

13   papers, is those phone calls don't relate back to the specific

14   device that they seized.  And the device contains far more than

15   simply toll records.  So to allow them to get such a broad

16   warrant to search the device for all sorts of electronic

17   communications for photos, for everything that's listed on

18   Appendix B of the warrant, based upon a toll analysis that

19   pertains to phones that were not even necessarily the phone

20   that ultimately was seized, I think, again, underscores how

21   overbroad and improper this warrant was.  The probable cause is

22   lacking.

23        THE COURT:  Certainly your argument is that it deals

24   with a continuing crime.  Therefore, you cannot get wiretaps to

25   get information.  But this was a crime that already occurred,

O5U6JAVC

1    and you're looking for evidence of it, and the evidence was

2    carried out in the very instruments that are the basis of the

3    search.  So I deny the motion.

4         Where do we go from here, folks?  Ms. McLeod?

5         MR. NITZE:  Two scheduling matters.

6         First, with respect to the disclosure letter, your

7    Honor has directed -- I don't know if Ms. McLeod has a sense of

8    timing, but it is useful for us to know when we might expect

9    it.

10        THE COURT:  Good thought.

11        MS. McLEOD:  Three weeks, your Honor, if that's okay.

12        THE COURT:  Is that satisfactory?

13        MR. NITZE:  Two would be better.

14        THE COURT:  One would be even better.

15        MS. McLEOD:  I think three weeks would enable us to be

16    able to make the letter as accurate as possible, your Honor,

17    and not make us rush to get it done.

18        THE COURT:  By June 20, noon.

19        MR. BUCKLEY:  The only issue, Judge, and maybe this --

20    we can present this to you after conferring with the government

21    because I never want to be hashing out scheduling issues in

22    front of the Court, but there are disclosure deadlines that the

23    defense have that predate that June 21 --

24        THE COURT:  What do you suggest?

25        MR. BUCKLEY:  And it may be informed by this

O5U6JAVC

 1    disclosure.

 2              THE COURT:  You want me to adjust those?

 3              MR. BUCKLEY:  With the Court's permission, we'll

 4    confer with the AUSAs and ideally propose a revised schedule.

 5              THE COURT:  Work out something appropriate and give me

 6    a stipulation.

 7              MR. BUCKLEY:  Thank you, Judge.

 8              THE COURT:  I think you already now know that Chase

 9    has asked for a large amount of time to deal with the privilege

10    log, and we propose to grant that, and to have the hearing date

11    occur on July 11.

12              A time, Alexandra.

13              MR. BUCKLEY:  Your Honor, we have spoken --

14              THE COURT:  What time?

15              Sorry, Mr. Buckley.

16              MR. BUCKLEY:  I'm sorry, Judge.  Not to interrupt.  We

17    had spoken with your Honor's courtroom deputy, and I think

18    would request that it be on July 12, which is --

19              THE COURT:  I can't do Friday.

20              MR. BUCKLEY:  Can't do Friday.  Okay.

21              THE COURT:  11:15 on July 11.

22              MR. NITZE:  Your Honor, our understanding is that the

23    June 28 date we proposed doesn't work because you're in the

24    midst of a trial.  In the event that for some reason that trial

25    wraps itself up before June 28, I think the parties would be

O5U6JAVC

1    not just open to, but hoping, to change the privilege hearing,

2    move it up, I guess to fill that 28th date originally proposed.

3    So I just flag that for your consideration.

4            THE COURT:  Well, if the trial ends, we'll get in

5    touch with you and see if we can get an earlier date.

6            MR. NITZE:  Thank you.

7            THE COURT:  Anything else, folks?

8            MS. McLEOD:  Not from the government, your Honor.

9            THE COURT:  Thank you.

10           MR. NITZE:  Thank you, Judge.

11           MR. BUCKLEY:  Thank you.

12           THE COURT:  We don't need to exclude time, do we?

13           MS. McLEOD:  I believe it's excluded until the trial

14    date.

15           THE COURT:  Yeah.  Okay.

16           (Adjourned)

17

18

19

20

21

22

23

24

25