UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

Case No.: 1:23-cr-00251-AKH

---

## DEFENDANTS' OPPOSITION IN RESPONSE
## TO GOVERNMENT'S MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................1

I.   THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE*
     AS TO EVIDENCE AND ARGUMENT THE GOVERNMENT CLAIMS IS
     IRRELEVANT AND UNFAIRLY PREJUDICIAL ........................................................1

     A.  Defendants' Response to the Government's Motion to Exclude Claims that the
         Presence of Attorneys Is Relevant to Defendants' Intent Absent a Formal
         Advice of Counsel Defense ...................................................................................1

         1.   Defendants Satisfy Advice of Counsel with Respect to ▮▮▮▮
              ▮▮▮▮ Review and  Approval of Language Contained on Frank's
              Website and in Early Pitch  Materials...........................................................2

         2.   Other Evidence Related to ▮▮▮▮▮▮ Involvement During the
              Marketing  and Diligence of Frank Is Directly Relevant to
              Defendants' Scienter........................................................................................4

         **3.**   Defendants Do Not Seek to Present a Presence-of-Counsel Defense
              and  Evidence Related to ▮▮▮▮▮ Involvement Has No
              Potential to Mislead or  Confuse the Jury.......................................................7

         4.   Response by Defendant Javice Only.................................................................9

         5.   Response by Defendant Amar Only .................................................................9

     B.  Response to the Government's Request that the Court Exclude Improper
         Evidence, Claims, or Insinuation About JPMC's Invocation of the
         Attorney-Client Privilege....................................................................................10

     C.  Evidence Bearing on Materiality in the Due Diligence Context is Admissible .........10

     D.  The Court Should Not Exclude Evidence of the Defendants' Personal
         Circumstances and Potential Punishment .............................................................14

         1.   Background Evidence Provides Necessary Context .......................................14

         2.   Premature Exclusion Risks Undermining Fairness.....................................15

         3.   Courts Routinely Manage the Admissibility of Personal
              Circumstances  Evidence Without Preemptive Exclusion.........................16

         4.   Ms. Javice or Mr. Amar Do Not Intend to Introduce Evidence or
              Argument  Concerning Possible Punishment and Collateral
              Consequences.................................................................................................16

II.  THE COURT SHOULD NOT ADMIT NOTES FROM DILIGENCE
     MEETINGS WITH BANK-2 AND JPMC....................................................................17

III. THE COURT SHOULD DECLINE TO ADMIT INTERNAL JPMC
     CORRESPONDENCE *EN MASSE* ...........................................................................19

i

IV.    EVIDENCE PERTAINING TO 2019 INVESTMENT NEGOTIATIONS IS NOT
       RELEVANT TO 2021 ACQUISITION, AND IS INADMISSIBLE UNDER
       RULE 404(B)................................................................................................................23

       A.  The Firm-1 evidence is irrelevant because it is neither inextricably intertwined
           or necessary to complete the story of the charged offenses...................................23

       B.  The Firm-1 evidence is offered for propensity and inadmissible under Rule
           404(b)....................................................................................................................26

V.     THE COURT SHOULD IMPOSE PRECISE GUARDRAILS ON ANY
       HYPOTHETICAL QUESTIONS THE GOVERNMENT POSES ...................................29

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Atlanta Channel, Inc. v. Solomon*,
   No. 15-1823 (RC), 2021 WL 4243383 (D.D.C. Sept. 17, 2021)............................................. 30

*Cameron v. New York City Dept. of Educ.*,
   No. 15-CV-9900 (KMW), 2018 WL 1027710, (S.D.N.Y. Feb. 21, 2018).............................. 21

*Ciminelli v. United States*,
   598 U.S. 306 (2023)........................................................................................................ 28

*Farias v. Instructional Sys., Inc.*,
   259 F.3d 91 (2d Cir. 2001)................................................................................................ 6

*Howard v. SEC*,
   376 F.3d 1136 (D.C. Cir. 2004) ........................................................................................ 6

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) ........................................................................ 10, 15

*Old Chief v. United States*,
   519 U.S. 172 (1997)........................................................................................................ 28

*Phillips v. Duane Morris, LLP*,
   No. 13-cv-01105-REB-MJW, 2015 WL 72336 (D. Colo. Jan. 5, 2015) ................................. 29

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
   38 F.3d 627 (2d Cir. 1994)............................................................................................... 18

*Pretzantzin v. Holder*,
   736 F.3d 641 (2d Cir. 2013)............................................................................................. 26

*SEC v. Lek Sec. Corp.*,
   No. 17-cv-1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ..................................... 8

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013)................................................................................. 7

*Shannon v. United States*,
   512 U.S. 573 (1994)........................................................................................................ 16

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976)............................................................................................................ 11

*United States v. Bankman-Fried,*
    2024 WL 477043 (S.D.N.Y. 2024)................................................................................ 7, 8

*United States v. Bellomo,*
    176 F.3d 580 (2d Cir. 1999).......................................................................................... 21

*United States v. Blackwell,*
    853 F.2d 86 (2d Cir. 1988)............................................................................................ 14

*United States v. Bortnovsky,*
    879 F.2d 30 (2d Cir. 1989)............................................................................................ 19

*United States v. Carboni,*
    204 F.3d 39 (2d Cir. 2000)............................................................................................ 23

*United States v. Coplan,*
    703 F.3d 46 (2d Cir. 2012)............................................................................................ 22

*United States v. Cuti,*
    720 F.3d 453 (2d Cir. 2013)............................................................................. 29, 30, 31

*United States v. Guo,*
    No. 23-cr-118 (AT), 2024 U.S. Dist. LEXIS 78893 (S.D.N.Y. Apr. 29, 2024)...... 31

*United States v. Hagen,*
    542 F. Supp. 3d 515 (N.D. Tex. 2021) .......................................................................... 6

*United States v. Jabar,*
    19 F.4th 66 (2d Cir. 2021) ............................................................................................ 11

*United States v. Kurland,*
    No. 20-cr-306 (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022)..................... 12

*United States v. Levin,*
    No. 15 CR. 101 (KBF), 2016 WL 299031 (S.D.N.Y. Jan. 25, 2016)..................... 14

*United States v. Lingat,*
    No. 21-cr-573 (MKV), 2024 U.S. Dist. LEXIS 42301 (S.D.N.Y. Mar. 11, 2024).. 20

*United States v. Litvak,*
    889 F.3d 56 (2d Cir. 2018)............................................................................................ 11

*United States v. Paredes*,
    176 F. Supp. 2d 179 (S.D.N.Y. 2001).................................................................. 10, 15

*United States v. Parks*,
    No. 18-cr-251-CVE, 2022 WL 2916080 (N.D. Okla. July 25, 2022) ........................................ 7

*United States v. Rangott*,
    No. 23-cr-004 (JHR), 2024 U.S. Dist. LEXIS 132901 (S.D.N.Y. July 24, 2024)............. 29, 31

*United States v. Ray*,
    No. 20-cr-110 (LJL), 2022 U.S. Dist. LEXIS 34583 (S.D.N.Y. Feb. 24, 2022) ................. 7, 19

*United States v. Rounds*,
    No. 10-CR-239S, 2015 U.S. Dist. LEXIS 138721 (W.D.N.Y. Oct. 9, 2015) ......................... 19

*United States v. Sardana*,
    101 F. App'x 851 (2d Cir. 2004) ....................................................................................... 6

*United States v. Scali*,
    2018 WL 604852 (S.D.N.Y. Jan. 29, 2018) ..................................................................... 18

*United States v. Scott*,
    677 F.3d 72 (2d Cir. 2012)................................................................................................ 26

*United States v. Scully*, 877 F.3d 464 (2d Cir. 2017)................................................................ 6, 7

*United States v. Thomas*,
    377 F.3d 232 (2d Cir. 2004)............................................................................................. 13

*United States v. Weigand*,
    No. 20-cr-188 (JSR), 2021 U.S. Dist. LEXIS 28417 (S.D.N.Y. Feb. 14, 2021) ..................... 20

## ARGUMENT

**I.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* AS TO EVIDENCE AND ARGUMENT THE GOVERNMENT CLAIMS IS IRRELEVANT AND UNFAIRLY PREJUDICIAL**

**A.    Defendants' Response to the Government's Motion to Exclude Claims that the Presence of Attorneys Is Relevant to Defendants' Intent Absent a Formal Advice of Counsel Defense**

The government intends to call Frank's former ███████████████████████ ████████████ in its case-in-chief.   Through its motion, the government suggests that Defendants should not be permitted to explore—with the government's own witness—his discussions and meetings with Defendants on topics within the scope the government's case.   That cannot be the law.   The government cannot present ████████ to talk about facts that it contends are inculpatory, while at the same time preventing the defense from exploring with him the context surrounding those facts and his understanding of the same.   Any evidence that bears upon Defendants' knowledge and intent is both material and relevant, whether couched as "advice of counsel" or not, and the fact that ████████ is an attorney is only one of multiple reasons why his testimony is important.

The government asks this Court to constrain Defendants' ability to examine ████████ about facts that are not only material and relevant to the alleged misrepresentations at the core of the government's theory of fraud, but that would also exculpate Defendants.   And in an effort to hamper the defense further, the government claims that Defendants have failed to satisfy the elements of an "advice of counsel" defense with respect to ████████, asserting that Defendants are required to show, for example, that ████████ was informed of each and every relevant fact supporting the government's fraud claims with respect to his legal advice as Frank's ████████ ████.   But Defendants expect to satisfy that showing with respect to the alleged misrepresentation central to the government's case.   In any event, that argument provides no basis

to preclude evidence of Defendants' good-faith and testimony about other critical materials and events in which ██████ was intimately involved in his dual role as Frank's C████████ ████. Those facts are material and relevant because they bear on Defendants' knowledge and intent generally, and not because, as the government wrongly claims, Defendants intend to rely on the "mere presence" of an attorney.

### 1. Defendants Satisfy Advice of Counsel with Respect to ████████ Review and Approval of Language Contained on Frank's Website and in Early Pitch Materials

As the government is fully aware, in light of Defendants' prior disclosures, Defendants may rely on an "advice of counsel" defense with respect to ████████ approval of the very language that the government contends was a misrepresentation initiating the scheme to defraud (such as the "4.25 million" number). The government asserts that Defendants have failed to make a sufficient evidentiary showing for such a defense, ECF No. 199 ("Mot.") at 8–10, but ignores the documentary evidence specifically identified by Defendants (and the government's own interview notes with ████████, whom it has already asked about parts of Defendants' disclosures) concerning ████████ approval of representations—on the Frank website and in pitch materials prepared for the sale of Frank—provided in his capacity as Frank's ████████.

The government alleges that Defendants made material misrepresentations about Frank's users in connection with the sale of the Company. Specifically, the government contends that Defendants "represented repeatedly . . . that Frank had 4.25 million customers or 'users.'" Mot. at 2. The government's theory of the fraud is that the sale of Frank "began in earnest in January 2021," when Defendants and others began to prepare "a 'pitch deck' . . . [that] contained false and misleading statements about the number of Frank customer accounts or 'users.'" ECF No. 140 at 3. According to the government, Defendants "propagated those same false and misleading statements elsewhere—for example, on Frank's website—so that all of Frank's marketing and

promotional materials would align with the false and misleading statements in the pitch deck." *Id.* at 3–4. Indeed, the government includes documents concerning the website change on its exhibit list. *See, e.g.*, GX 802–24 at 4.[1] Defendants must be permitted to confront these allegation and, depending on how the evidence is developed at trial, potentially request an "advice of counsel" instruction.

Defendants expect to introduce evidence that ███████ vetted and approved, at Defendants' behest, some of these materials, including language posted on Frank's website and put in early pitch materials containing the alleged 4.25 million misrepresentation. The evidence will demonstrate that, when ███████ approved this language, he fully understood that Frank had 4.25 million "users" as that term is defined by the Google Analytics—a tool that Frank regularly used and that ███████ and JPMC understood that Frank used.

For example, one of the documents that is on Mr. Amar's exhibit list (and that Defendants disclosed to the government in a letter on September 6, 2024) shows that ███████ ████████████████████████████████████████████ DX OA 27 at 2, ███████████████ █████████████ GX 802–24 at 4. That as Frank's ███████████ reviewed and approved the very language that the government now alleges to be false or misleading (*i.e.*, Frank helped 4.25 million "students" or "users") in key presentation materials, and that ███████ did so with full knowledge of the facts (*i.e.*, knowing what the 4.25 million number represented) not only is relevant, but is highly probative of Defendants' defense that they lacked criminal intent.

---

[1] Exhibits (trial exhibits and witness statements) will be provided to the Court, the government, and counsel, but will not be filed on the docket due to protective order.

### 2.    *Other Evidence Related to* ▆▆▆▆▆ *Involvement During the Marketing and Diligence of Frank Is Directly Relevant to Defendants' Scienter*

The government's other arguments miss the mark. The government attempts to recast plain evidence tending to show Defendants' good faith and lack of scienter as advice of counsel. It is not. In doing so, the government seeks impermissibly to deprive Defendants of their constitutional right to offer admissible, relevant, and most importantly, exculpatory evidence negating the government's allegations of fraudulent intent—an element the government must prove beyond a reasonable doubt at trial. Such evidence (of ▆▆▆▆ active involvement in dozens of meetings, other marketing materials, data room documents, diligence trackers, and the like) goes far beyond showing the "mere presence" of an attorney at meetings or with respect to uncharged conduct. Defendants expect that evidence of ▆▆▆▆ advisory role and deep involvement—and most importantly, how that role and involvement impacted Defendants' knowledge and intent—will bear directly upon the jury's consideration of Defendants' lack of intent to defraud.

Indeed, the government has put on its own exhibit list documents showing that— ▆▆ ▆▆ was intimately involved in the sale of Frank in 2021. *See, e.g.*, GX 802–11 at 3 ▆▆



▆▆ ; GXG 543 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆ . Testimony about ▆▆▆▆▆ role at Frank, including with regard to representations made during the process of the sale of Frank to (a) Frank's Board of Directors, (b) Frank's investment advisor, ▆▆▆▆ , and (c) potential purchasers that Frank had 4.25 million users (again, the alleged falsity at the heart of the government's case) therefore directly is relevant to the facts that will be at issue in this trial.

Defendants expect that ███████ will testify that—during the same time period and with respect to the same materials and meetings—Defendants coordinated closely with ███████ to market and sell the Company.  In other words, Defendants seek nothing more than to rely on the same type of circumstantial evidence and through the very same witness to establish their good faith as the government seeks to introduce to refute it.  This includes evidence that ███████ drafted, received, reviewed, revised, approved, and circulated diligence-related materials containing representations about the "4.25 million" number in virtually every context in which Defendants used it.  This also includes evidence that ███████ was routinely a participant in conversations and meetings wherein similar information was allegedly conveyed both internally to Frank's Board and externally to Frank's investment advisor and potential buyers.  ECF No. 153.

For example, in addition to the website change, documents on Mr. Amar's exhibit list show ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ DX OA 25 at 3, ████████████████████████████████████ DX OA 33 at 3. Such documents plainly show Defendants encouraging, accepting and relying on ███████ review of and feedback on key diligence materials at critical moments, and are relevant to both Defendants' lack of intent to deceive concerning an important metric at the very heart of the government's assertions of fraud.  To the extent that ███████ was involved or participated where Mr. Amar was not, the disclosed evidence that the government challenges is relevant not just to Mr. Amar's lack of knowledge, but to his lack of involvement.[2]

---

[2] In a similar vein, Ms. Javice expects that several government witnesses will testify that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████

Evidence of counsel's advice—even if not a full-throated or formal "advice of counsel" defense—is one of many good faith defenses and is an uncontroversial and well-established basis upon which to negate scienter. *United States v. Scully*, 877 F.3d 464, 473–76 (2d Cir. 2017) (defendant charged with fraud is entitled to prove he relied on counsel's advice, which "can raise a reasonable doubt in the minds of the jurors about whether . . . the defendant had an 'unlawful intent,'" holding that district courts cannot exclude such testimony on Rule 403 grounds, and finding the district court abused its discretion when it "excluded testimony and evidence relating to the legal advice"). To preclude Defendants from contesting that they had the requisite scienter, as the government seeks to do here, would rob Defendants of their constitutional right to defend against the allegations of fraudulent intent. Indeed, "reliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004); *see also United States v. Hagen*, 542 F. Supp. 3d 515, 517, 518–519 (N.D. Tex. 2021) ("[A] good-faith defense is based on a lack of knowledge of wrongdoing and an absence of intent to participate in the offense; it does not require advice of counsel.") (internal quotation marks omitted).

The government's motion relies on cases in which testimony and/or evidence concerning advice of counsel was precluded because good faith was irrelevant to any *mens rea* requirement of the charges. *See, e.g.*, *United States v. Sardana*, 101 F. App'x 851, 854–55 (2d Cir. 2004) (reasoning that a defendant's "personal belief that his conduct was lawful . . . was irrelevant to culpability"); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 100 (2d Cir. 2001) ("In this case, advice of counsel affords no defense."). Not so here, making the government's reliance on these cases misplaced. Defendants are also allowed to testify and present evidence about their reliance on counsel *even if* they cannot meet the requisites for a "reliance on advice of counsel" jury

instruction. *Scully*, 877 F.3d at 476–79. As noted, the government is aware that Defendants are not currently seeking such an instruction.[3]

### 3. *Defendants Do Not Seek to Present a Presence-of-Counsel Defense and Evidence Related to ███████ Involvement Has No Potential to Mislead or Confuse the Jury*

As a last-ditch effort, the government claims that if the Defendants were to present evidence related to ███████ involvement without lodging an "advice of counsel" defense, they are necessarily presenting a "presence of counsel" defense that would mislead or confuse the jury and cause unfair prejudice. *See* Mot. at 10. But, as shown by the cases on which the government itself relies, Defendants' evidence related to ███████ is far different from a mere "presence of counsel" defense that would not be "probative of anything." *Id*. Defendants intend to present evidence of ███████ intimate involvement with, and provision of advice and consultation regarding, the alleged misrepresentations at the heart of the government's case and his role in the marketing and diligence of Frank, which is highly probative of knowledge, willfulness, and intent.

The government's reliance on *SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), and *United States v. Bankman-Fried*, 2024 WL 477043 (S.D.N.Y. 2024) is therefore misplaced. The defendants in *Bankman-Fried* and *Tourre* were permitted to introduce certain evidence for

___

[3] For the same reason, the government's assertions that it lacked adequate notice of such a defense is a red herring. In any event, the disclosures provided by the defense on September 6 and December 6, 2024 detailed the anticipated use of the documentary proof described above and was in full compliance with the Court's orders. *See* ECF No. 149. Defendants maintain that no rule of law requires advanced disclosure of either an advice of counsel or good faith defense (and the government has still never pointed to one). *See, e.g.*, *United States v. Parks*, No. 18-cr-251-CVE, 2022 WL 2916080, at *2 (N.D. Okla. July 25, 2022) ("There is no statute, rule, or Tenth Circuit authority requiring that a defendant provide any written notice of an advice of counsel defense or description of consultations with counsel."); *United States v. Ray*, No. 20-cr-110 (LJL), 2021 WL 5493839, at *4 (S.D.N.Y. Nov. 22, 2021) (collecting cases showing that "there is no consensus among federal courts regarding the existence and extent of any authority for a court to require pretrial disclosure by the defense of information regarding its advice-of-counsel defense"); ECF No. 93 at 3 (Joint Letter of Advice of Counsel).

purposes applicable here. For example, in *Tourre* the defense was permitted "to present evidence tending to show that [the defendant] was not the person primarily responsible for the transaction and that the transaction occurred in the context of a sophisticated financial institution," and did "not require an unnatural avoidance of identifying addressees or participants reflected in such evidence," including lawyers. 950 F. Supp. 2d at 684–85.

In *Bankman-Fried*, the court likewise permitted the defendant to testify to the involvement of lawyers in preparing certain company documents that, if believed, would permit the jury to infer the company's lawyers "sanctioned" those things. 2024 WL 477043, at *3. Here too, Defendants seek to introduce evidence related to their coordination with ███████ during the marketing and sale of the Company that might lead a jury to infer the Defendants acted in good faith when doing so. And, as shown by Defendants' prior disclosures and when the evidence is elicited at trial, similar (if not more) sufficient factual bases exist to justify the admission of the intent-negating evidence related to ███████. Moreover, contrary to other facts in *Bankman-Fried*, Defendants are not attempting to introduce any irrelevant, tangential conduct involving ███████, but instead expect to offer his involvement in reviewing, advising on, and approving the very alleged misrepresentations that are at the center of the government's theory of the fraud (and are, therefore, central to Defendants' lack of fraudulent intent). 2024 WL 477043, at *3 (reasoning, in stark contrast to this case, that certain proffered evidence involving lawyers was "only collaterally related to the charged conduct" and on that basis was "minimally probative" of fraudulent intent and likely to mislead).[4]

---

[4] The government's reliance on *SEC v. Lek Sec. Corp.*, No. 17-cv-1789 (DLC), 2019 WL 5703944, at *3 (S.D.N.Y. Nov. 5, 2019), is not only misplaced but proves Defendants' point. Mot. at 12. There, defendants "were given an opportunity during discovery to assert whether they intended to rely on an advice-of-counsel defense or any similar defense" but declined to do so. *Id.*

### 4.    **Response by Defendant Javice Only**

As articulated in Ms. Javice's Motion in Limine (ECF No. 196 at 13), the government should be precluded from calling ▮▮▮▮ as a government witness against the Defendants. JPMC's and the government's misuse of the attorney-client privilege, once held by the Defendants with ▮▮▮▮, as a sword and shield, is constitutionally prohibited and fundamentally unfair. For the reasons articulated in Ms. Javice's Motion in Limine, ▮▮▮▮ should not be called by the government against the Defendants. If the Court sees fit to permit ▮▮▮▮ to testify as a government witness against his former clients, Ms. Javice joins in the arguments above.

### 5.    **Response by Defendant Amar Only**

In the event the government is not permitted to call ▮▮▮▮, Mr. Amar reserves the right to do so and would expect to elicit a range of relevant and probative evidence from him, as set forth in a separate filing by Mr. Amar.

### B.    **Response to the Government's Request that the Court Exclude Improper Evidence, Claims, or Insinuation About JPMC's Invocation of the Attorney-Client Privilege**

The government moves to bar Defendants from referencing JPMC's assertion of attorney-client privilege over documents involving ▮▮▮▮. Mot. at 13–14. The government's motion

---

at *3. By sharp contrast here, Defendants have extensively disclosed materials two separate times to the government and have repeatedly indicated they intend to rely on communications involving ▮▮▮▮ in the lead up to diligence to show they acted in good faith—if not necessarily to mount a full-fledged advice of counsel defense. *United States v. Petit*, No. 19-cr-850 (JSR) (S.D.N.Y.), is also off the mark. In that case, by the government's own admission, Mot. at 12 (referencing but not citing trial transcripts), the court simply reminded the defense not to raise presence of counsel on summation when it had not elicited evidence of the same—an entirely different issue than this one, where the government has moved in advance of trial to exclude an advice of counsel defense that Defendants do not intend to raise. And the government's reliance on *United States v. Shea*, No. 20-cr-412 (AT) (S.D.N.Y.), is misleading at best. The government appears to cite its own rebuttal, not any court ruling, and in any event, there was no evidence the lawyer relevant to the defense in *Shea* had ever spoken to the defendant. Dkt. 245, May 31, 2022 Tr. at 724:10-11, 16-20; Mot. at 13.

is speculative and premature.  The government does not make clear how—or through whom—Defendants would elicit testimony on JPMC's counsel's decision to invoke attorney-client privilege.  The government also leaves unsaid (because it does not know) specific evidence it is seeking to exclude that would contain reference to JPMC's privilege assertions.  Accordingly, the Court should not grant the government's motion at this time.  *See, e.g.*, *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (courts may reserve ruling on motions *in limine* when the evidence is not sufficiently identified in its proper factual context); *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) ("Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.").

## C.   Evidence Bearing on Materiality in the Due Diligence Context is Admissible

The government seeks to preclude Ms. Javice and Mr. Amar from "arguing or adducing evidence" that any of Frank's potential buyers was "negligent, gullible, or insufficiently vigilant." Mot. at 14–15.  In seeking this ruling, the government assumes that the Defendants will present a "gullible victim defense" by arguing that the alleged victims are to "blame for a lack of diligence" and therefore did not possess an intent to defraud.  *Id.* at 15.  But Ms. Javice and Mr. Amar do not intend to present such a defense—nor have they indicated that they will do so.  The motion should therefore be denied as moot.  To the extent that the government seeks to wholly preclude evidence or argument about the due diligence process of the Company's potential buyers in general, the government's motion finds no support in the case law and would constitute constitutional error.

The focus of the government's motion relies on case law for the unremarkable proposition that "reliance is not an element of criminal fraud."  Mot. at 15 (internal quotation marks omitted) (collecting cases).  That is beside the point: the Defendants do not intend to argue that they "did not intend to defraud" because the potential buyers were "negligent or careless."  *Id.*  Evidence of what JPMC and Bank-2 focused on during due diligence is squarely relevant to the question of

10

whether an alleged misrepresentation is material and made for the purpose to defraud—and *those* are elements of each of the offenses charged here.  Defendants will present, as they are entitled to do, evidence related to their alleged fraudulent intent and to the materiality of any alleged misrepresentations made to the Company's potential buyers, including Bank-2 and JPMC.  Much of that evidence and related argument will necessarily encompass the due diligence phase of the acquisition, but that does not transform it into a "gullible victim" argument.

To prove whether or not a misrepresentation is material requires establishing what information was available during the negotiation and decision-making processes. *See, e.g.*, *United States v. Jabar,* 19 F.4th 66, 82 n.60 (2d Cir. 2021), *cert. denied sub nom. Bowers v. United States,* 142 S. Ct. 1396 (2022) (liability under the wire fraud statute "turns on the materiality of the misrepresentations" and "whether the alleged deception affect[ed] the very nature of the bargain") (internal quotation marks omitted).  A finding of materiality, in turn, requires "a substantial likelihood that the disclosure of the . . . fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976) (describing materiality standard under federal securities fraud statute).  The "reasonable investor" standard is objective, focusing on a "hypothetical, reasonable investor in the market at issue," and the "total mix" includes all information in the public domain or reasonably available to that investor. *United States v. Litvak*, 889 F.3d 56, 64, 68 (2d Cir. 2018).

The best evidence of what a reasonable purchaser *would do* is necessarily proven by what purchasers have done based on the information available, and whether a purchaser *did not* rely on a misrepresentation is probative of whether an objectively reasonable purchaser also would not have done so based on the information available.  Indeed, for this reason, Courts in this Circuit

allow evidence and argument to prove that alleged misrepresentations would not have been material to a reasonable person under the circumstances, and the general course of dealings show that all material facts were disclosed or that an alleged victim had the authority to make a decision. *See, e.g.*, *United States v. Kurland*, No. 20-cr-306 (NGG), 2022 WL 2669897, at *12 (E.D.N.Y. July 11, 2022) (allowing evidence about alleged victims' decision-making processes, factors they considered important, or amounts of money that are material to them, the course of dealings between the alleged victims and the defendant, and information about the alleged victims' backgrounds). To that end, Bank-2 and JPMC's diligence practices—the questions they asked and avenues they chose to pursue, as well as those they did not—have clear relevance to the jury's understanding of what information is available to a *reasonable* purchaser in this type of acquisition and, likewise, what information matters. The government would effectively ask this Court to limit the jury's evaluation as to materiality based on a *partial* mix of information available by excluding evidence of information available to the purported victims.

Additionally, evidence of the due diligence performed is relevant and admissible to negate fraudulent intent. Bank-2 and JPMC's diligence practices—the questions they asked and avenues they chose to pursue, as well as those they did not—are relevant to whether the Defendants had fraudulent intent and the bargained-for exchange in purchasing Frank. *See Kurland*, 2022 WL 2669897, at *12 ("[Defendant's] proposed questions about the alleged victims' decision-making processes, factors they considered important, or amounts of money that are material to them bear on the question of materiality to the extent that they illuminate whether [defendant] possessed a fraudulent intent.") (internal quotation marks omitted). Circumstantial evidence of fraudulent intent includes evidence of whether a reasonable victim would be able to detect fraud. In *United States v. Thomas*, the Second Circuit held that the "ordinary prudence standard . . . focuses on the

12

violator, not the victim . . . [and] is a tool the jury may utilize to gauge the defendant's intent and is helpful in situations in which the defendant's intent to deceive may be unclear." 377 F.3d 232, 242–43 (2d Cir. 2004) ("[t]he role of the ordinary prudence and comprehension standard is to assure that the defendant's conduct was calculated to deceive"). Where, as here, the alleged misrepresentation would lend itself to easy verification or nullification by the purported victims, what the purported victims actually could have known, and in fact did know, may be essential for the jury to evaluate Defendants' intent. Stated otherwise, if the defendant knows that an alleged victim could easily recognize a misrepresentation, it undermines allegations of criminal intent.

The government's specific contention that Ms. Javice and Mr. Amar "should be precluded from cross-examining witnesses about whether they adequately investigated Frank's representations," Mot. at 15, is therefore a red herring: cross-examination focused on a witness's decisions about areas of focus during due diligence is wholly relevant to materiality and fraudulent intent and allowable for that reason.[5] Defendants do not intend to argue or offer evidence that alleged misrepresentations were immaterial because a *particular* purchaser was careless or gullible. Questioning or introducing evidence concerning the alleged victim's due diligence of Frank's representation is probative as to whether a reasonable and prudent purchaser would have done anything differently in the absence of those alleged misrepresentations. In short, those diligence practices have clear relevance to the question of materiality and Defendants' fraudulent intent, entirely separate and apart from any question of the *adequacy* of the diligence practices themselves. The government's motion should therefore be denied.

---

[5] The evidence that the government seeks to preclude is also relevant to witness credibility, and would not allow for constitutionally adequate confrontation. For example, granting such motion would preclude cross-examination into whether a JPMC employee had a motive to misremember the truth about whether all material facts were disclosed during the transaction.

### D.    The Court Should Not Exclude Evidence of the Defendants' Personal Circumstances and Potential Punishment

The government's motion to preclude evidence regarding the Defendants' personal circumstances and potential punishment is both premature and improper. It assumes irrelevance without considering the evolving factual context of the trial, and it risks unduly prejudicing the Ms. Javice and Mr. Amar by excluding evidence that may later prove critical to providing necessary context or rebutting the government's case.

#### 1.    *Background Evidence Provides Necessary Context*

Evidence regarding personal circumstances can play a crucial role in providing the jury with the context necessary to fairly and accurately assess the facts. Courts have long recognized that such background evidence is admissible when it helps explain the motivations, actions, or state of mind of a defendant or witness. *See*, *e.g.*, *United States v. Levin*, No. 15 CR. 101 (KBF), 2016 WL 299031, at *13 (S.D.N.Y. Jan. 25, 2016) (permitting defendant and his wife to testify that defendant was distracted by medical issues to rebut specific intent element). As the Second Circuit stated in *United States v. Blackwell*, district courts have "wide discretion concerning the admissibility of background evidence." 853 F.2d 86, 88 (2d Cir. 1988).

Personal circumstances can serve a legitimate and probative purpose, such as explaining why a defendant acted in a certain manner or made particular decisions, thereby rebutting the government's theory of the case. This type of evidence is admissible under Federal Rules of Evidence 401 and 402, which establish that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. All relevant evidence is admissible at trial unless barred by some exclusionary rule. Fed. R. Evid. 402.

Moreover, relevance determinations are highly fact-specific and context-dependent. Excluding an entire category of evidence preemptively assumes irrelevance, contrary to the

principle that such determinations should be made in the context of specific evidentiary disputes as they arise. Blanket exclusion at this stage would deprive the Court of the opportunity to evaluate the relevance and probative value of such evidence in the context of a fully developed trial record.

### 2.    *Premature Exclusion Risks Undermining Fairness*

Granting the government's motion at this stage would unfairly prejudice Ms. Javice and Mr. Amar. It would strip Defendants of the ability to present potentially critical evidence that could provide context, explain motivations, or rebut the government's allegations. For example, evidence about a defendant's family obligations or health conditions might be relevant to demonstrate the absence of criminal intent or to contextualize decisions and actions that the government may seek to portray as nefarious.

Evidence regarding personal circumstances has been deemed admissible where it provides necessary context for assessing a defendant's state of mind, intentions, or credibility. The government's preemptive motion ignores this well-established principle and seeks to improperly narrow the scope of admissible evidence without regard to its potential relevance. *See, e.g., Jean-Laurent*, 840 F. Supp. 2d at 536 (reasoning courts may properly reserve ruling on motions *in limine* when the evidence is not sufficiently identified in its proper factual context); *accord Paredes*, 176 F. Supp. 2d at 181 ("Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.").

Additionally, excluding personal circumstances risks creating an uneven playing field. While the government is permitted to construct a narrative of guilt, Ms. Javice and Mr. Amar would be unduly restricted from presenting a complete picture of the circumstances surrounding their actions. Such an approach undermines the fairness of the trial and Ms. Javice and Mr. Amar's constitutional right to present a full defense.

15

### 3.    Courts Routinely Manage the Admissibility of Personal Circumstances Evidence Without Preemptive Exclusion

The government's motion appears to stem from speculative concerns about the misuse of personal circumstances evidence. However, courts are well-equipped to address such concerns through targeted evidentiary rulings during trial. If Ms. Javice or Mr. Amar seek to introduce specific background information, the Court can assess its admissibility at that time, consistent with established rules of evidence. For example, if the government believes that certain evidence is unduly prejudicial under Rule 403, it can raise specific objections, and the Court can evaluate the evidence based on the facts and context presented. Fed. R. Evid. 403.

A blanket preclusion at this stage is unnecessary and unwarranted. Determinations about probative value and potential prejudice are fact-specific and cannot be made in a vacuum. Preemptively excluding evidence of personal circumstances risks foreclosing the introduction of relevant, admissible evidence that may emerge as the trial progresses.

### 4.    Ms. Javice or Mr. Amar Do Not Intend to Introduce Evidence or Argument Concerning Possible Punishment and Collateral Consequences

The government also seeks to preclude any evidence or argument regarding the potential punishments or consequences Ms. Javice and Mr. Amar face if convicted. Defendants have no intention of introducing such evidence, as established law clearly prohibits jurors from considering punishment when determining guilt.[6] *See Shannon v. United States*, 512 U.S. 573, 579 (1994) (holding that the jury cannot consider potential punishment when reaching its verdict). While Ms. Javice and Mr. Amar agree that evidence of potential punishment is generally inadmissible, this

---

[6] However, the government has signaled that it intends to introduce punishment through its own exhibits. *See* ECF No. 196 at 4–5. To the extent the Court permits the government to introduce argument or evidence about punishment, Ms. Javice and Mr. Amar should be permitted to explore the same.

aspect of the government's motion is unnecessary. Defendants' compliance with this well-settled principle should eliminate any concerns about improper argument or evidence on this topic.

*     *     *

The government's motion to exclude evidence of Ms. Javice and Mr. Amar's personal circumstances and potential punishments is premature, overly broad, and risks undermining the fairness of the trial. The Court should deny the motion and allow the admissibility of such evidence to be assessed in the proper factual and evidentiary context as the trial unfolds. This approach ensures fairness, preserves Defendants' right to a full defense, and aligns with established legal principles governing the admission of relevant evidence.

## II. THE COURT SHOULD NOT ADMIT NOTES FROM DILIGENCE MEETINGS WITH BANK-2 AND JPMC

The government intends "to offer the Bank-2 Notes and the JPMC Notes ["the Notes"] as business record to show the attendance of the defendants at the meetings and to reflect certain statements made by the defendants at these meetings." Mot. at 21. The Notes are inadmissible for these purposes because they do not affirmatively state who was in attendance at any of these meetings, whether in full or in part, nor do they actually attribute any statements made at these meetings to Ms. Javice or Mr. Amar. The Notes do not quote or even paraphrase statements made by Ms. Javice or Mr. Amar. At best, the Notes provide dozens of pages summarizing general concepts discussed in shorthand. *See, e.g.*, GX 1495 at 21 ███████████████ ████████████████████████████████████████████████████ Instead, the Notes reflect a compilation of JPMC and Bank-2 employees' interpretations, mental impressions, questions, and analyses of what was discussed at these meetings.

Despite the government's assertions, the JPMC and Bank-2 composite meeting notes do not qualify as business records under Rule 803(6). Fed. R. Evid. 803(6). Where, as here, the

17

method or circumstances of preparation demonstrate a lack of trustworthiness, the documents at issue do not meet the requirements of Rule 803(6). *See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632–33 (2d Cir. 1994) (documents admitted under the business records exception to hearsay must have "sufficient indicia of trustworthiness to be considered reliable . . . [and] [t]he determination of whether, in all the circumstances, the records are sufficiently reliable . . . is left to the sound discretion of the trial court"). For example, the JPMC Notes—which were prepared asynchronously by multiple, unidentified meeting participants over a span of several days—lack sufficient indicia of trustworthiness to be a permissible exception to the bar on hearsay under Rule 803. *See id.*; *see* DX CJ 778 ███████████████

████████████████████████████████████████████████████████

███████████████████. Both the JPMC and the Bank-2 Notes omit critical details about the meetings themselves, such as date, time, place, attendees, and speakers, further undermining their reliability.

However, even if the JPMC and Bank-2 Notes qualify as business records under Rule 803(6), the government has not provided an exception to admit the hearsay they contain. *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 604852, at *3 (S.D.N.Y. Jan. 29, 2018) ("Assuming, *arguendo*, that the notes are in fact business records under Rule 803(6), the [government] has not provided an exception, nor [can] the Court [find] one, to admitting the hearsay contained within the notes."). Nor can it. The Notes contain multiple layers of hearsay without exception. *See* ECF No. 196 at 12. Because of their editorial nature and the fact that the Notes do not attribute any particularized statements to either Ms. Javice or Mr. Amar, the Notes cannot be used as party admissions under Rule 801(d)(2)(D) or statements of a co-conspirator under Rule 801(d)(2)(E). Fed. R. Evid. 801. *See United States v. Bortnovsky*, 879 F.2d 30, 34 (2d

Cir. 1989) (noting that the proponent "must establish not only that the report falls within an exception to the hearsay rule, but also that [the third party's] statement is covered by such an exception"). These Notes have no path to admissibility, and should be excluded.

## III.    THE COURT SHOULD DECLINE TO ADMIT INTERNAL JPMC CORRESPONDENCE *EN MASSE*

The government seeks to have the Court declare "a limited set of internal JPMC emails" as *per se* admissible on the basis that they are not hearsay because they will not be offered for the truth of any out-of-court statement. As an initial matter, this motion is premature: although the government's request is for the Court to find a "set" of emails admissible, the Motion identifies only two categories of emails with one exemplar email of each. Mot. at 22, 24 (describing two example emails that "the Government will seek to admit"). Beyond that, the government gives no additional detail and fails even to describe the contours of the "set" of emails it plans to seek to admit, let alone identify the individual emails it intends to put forth. On that basis alone, the Court should deny the government's Motion, because it is impossible to assess the admissibility of a document at this pre-trial stage without knowing what the document is or the context in which the government will seek to introduce it or for what purpose. *See, e.g.*, *United States v. Ray*, No. 20-cr-110 (LJL), 2022 U.S. Dist. LEXIS 34583, at *13–14 (S.D.N.Y. Feb. 24, 2022) (denying as premature the government's motion *in limine* to admit certain out-of-court statements that the government represented would not be offered for their truth, and holding that "[t]he defense is entitled to object if it has a good faith basis and the Court will not admit all of the evidence *en masse* unless there is consent by the defense that it is admissible *en masse*."); *United States v. Rounds*, No. 10-CR-239S, 2015 U.S. Dist. LEXIS 138721, at *4 (W.D.N.Y. Oct. 9, 2015) (denying government's motion in limine as premature because, "[w]ithout hearing the evidence in context, this Court cannot enter a blanket pretrial ruling"). Indeed, granting the Motion at this stage would

embolden the government to attempt to introduce otherwise potentially inadmissible documents by simply categorizing them as "non-hearsay internal emails," regardless of whether that is actually the case.  At minimum, the Court should decline to make a blanket ruling at this stage and instead assess the admissibility of individual documents as they are presented at trial.[7]

Even the two documents that the government specifically addresses in its Motion cannot be characterized as admissible non-hearsay at this stage.  *See, e.g.*, *United States v. Lingat*, No. 21-cr-573 (MKV), 2024 U.S. Dist. LEXIS 42301, at *17–18 (S.D.N.Y. Mar. 11, 2024) ("[T]he Court cannot make blanket or 'categorical' rulings in advance of hearing the proffered evidence and any potential objection, or *knowing the context in which the statement is offered*.") (emphasis added).  As to the first, the government states that it will seek to admit a July 31, 2021 internal JPMC email in which the CFO writes:

> "I am trying to make sure that what we buy actually exists and has been due diligenced . . . . What we are buying is a team, a brand, an algorithm, which together and without millions of customer relationships would be worth a small fraction of the purchase price.  What do you propose to do to assess that we have done due diligence on the customer relationships, which is a key source of value?"

Mot. at 22.  The government contends that it will introduce the email not for the truth of the CFO's words but to show "the key question asked by JPMC's CFO" and "to provide context for later actions taken by JPMC."  Mot. at 23.  It also asserts that the email contains a command, and that commands or directives are never hearsay.  *See id.*

---

[7] For the same reason, to the extent the government ultimately attempts to introduce internal JPMC correspondence for the truth of any matter asserted therein, it should not be allowed to do so under the guise of any sort of blanket hearsay exception.  *See, e.g.*, *United States v. Weigand*, No. 20-cr-188 (JSR), 2021 U.S. Dist. LEXIS 28417, at *6–7 (S.D.N.Y. Feb. 14, 2021) (declining to apply FRE 803(6)'s business records exception to internal emails *en masse* and holding that "[w]ithout knowing more about the emails' contents, the Court cannot determine whether they are self-authenticating").

First,  the "key question" is only a small part of the provided excerpt; the remainder contains statements from the CFO that relate directly to one of the key thrusts of the government's argument—the source of Frank's value.  Indeed, in these very motion papers the government argues that "Frank was an attractive opportunity to JPMC . . . because, as represented, Frank had relationships with millions of college-aged students . . . .," Mot. at 2, which mirrors the CFO's statement that "[w]hat we are buying . . . without millions of customer relationships would be worth a small fraction of the purchase price."  *Id*. at 22.  Next, it is easy to imagine a world in which the government *does* offer that very statement for its alleged truth—that JPMC considered itself to be buying customer relationships.  If that is the case, then the statement would be hearsay. There is no blanket non-hearsay rule for commands or directives that are being offered for their truth.  *See Cameron v. New York City Dept. of Educ.*, No. 15-CV-9900 (KMW), 2018 WL 1027710, at *5 (S.D.N.Y. Feb. 21, 2018) ("In general, commands are not hearsay *unless they are used to prove the truth of an implicit assertion*.") (emphasis added).  Despite the government's representations to the contrary, there is simply no way to know for certain that will not be the case until such time as the government actually seeks to introduce the document.  Without the benefit of the context of testimony and questioning, the Court cannot assess the purpose for which the government will put the document forward, and it should decline to rule on its admissibility (or whether it constitutes hearsay) until that time.

Furthermore, the purported author of the statement in the proffered email is not on any party's witness list.  The cases the government cites, *see* Mot. at 23, about commands being non-hearsay contemplate a situation where the "witness was the percipient hearer of the command." *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999); *see also United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) (finding hearsay ruling was erroneous as to witnesses who

21

testified about "overhearing . . . an imperative"); *United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) (holding questions posed to the defendants in their depositions were not hearsay). Permitting the jury to see such the email the government has identified, even with a caution that it is not offered for the truth, runs the risk of confusing the jury as to the significance of the statement by a non-witness, who would not be examined about the meaning of the statement or her intent in writing what she did.

Likewise, the second email the government identifies cannot be definitively assessed as hearsay (or not) until the Court can see how the government intends to put it into evidence. The government contends that email, in which a JPMC employee sends a spreadsheet "prepared by the defendants" along with some statements about the spreadsheet by the JPMC employee, will be offered "because they were false," and is therefore not hearsay. Mot. at 24. But the government oversimplifies its characterization of this document. Regardless, the government will presumably try to introduce not only the email but its attachment as well, and the government in its Motion has neither laid a foundation nor offered any basis for the admissibility of the latter. Absent that, and (again) without the benefit of seeing the context of the testimony through which the government tries to admit the document at trial, the Court does not have sufficient information to assess admissibility at this stage, for these specific documents, let alone entire swaths of documents, and it should decline to do so.

## IV.    EVIDENCE PERTAINING TO 2019 INVESTMENT NEGOTIATIONS IS NOT RELEVANT TO 2021 ACQUISITION, AND IS INADMISSIBLE UNDER RULE 404(B)

The government's argument that evidence related to a potential, and ultimately not-realized, 2019 investment in Frank by Firm-1 is admissible as evidence of wire, bank, and securities fraud collapses under the weight of the government's own characterizations. The circumstances surrounding documents that Frank shared with Firm-1 are neither direct evidence

of an ongoing conspiracy, nor evidence of a prior bad act by Ms. Javice, Mr. Amar, or anyone at Frank. *See* Fed. R. Evid. 404(b). Far from being inextricably intertwined or necessary to complete the story of the charged offenses, evidence of Firm-1's unrealized investment in Frank would inject an entirely new and disparate storyline in an already complex and lengthy evidentiary record. Introducing and defending against this evidence at trial would result in an irrelevant, time-consuming mini-trial and demand significant additional disclosures from the government. Fed. R. Evid. 403; ECF No. 196 at 16 (detailing Ms. Javice's Rule 403 argument).

A.    **The Firm-1 evidence is irrelevant because it is neither inextricably intertwined or necessary to complete the story of the charged offenses.**

The government asserts that this evidence is "inextricably intertwined" or "necessary to complete the story" of the charged offenses. Mot. at 27 (relying, in part, on *United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000)). A closer examination reveals that the government is comparing apples to oranges in order to manufacture prior bad conduct without sufficient evidence. At most, the government has provided evidence of an unrelated mistake that Frank quickly corrected.

As alleged by the government, in 2019 someone at Frank shared an incorrectly generated report regarding Frank's customer acquisition costs ("CAC") with Firm-1. While the government characterizes this as a "misrepresentation," the remaining portion of the government's recounting paints a different picture. Simply put, after Firm-1 raised a question regarding a figure that appeared to be inaccurate, Frank realized that they had made a mistake in the report and quickly followed up with the corrected information by sending "Spreadsheet-1" to Firm-1. According to the government's notes of witness interviews, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████[8]  This scenario is a world apart from the facts surrounding Ms. Javice and Mr. Amar pitching Frank's acquisition to Bank-2 and JPMC in 2021. A mistake in 2019 that was quickly corrected is not inextricably intertwined or necessary to complete the story of the government's allegations that Ms. Javice and Mr. Amar made material, intentional misrepresentations about Frank's user base which resulted in JPMC's $175M acquisition of the company two years later. The government tries to draw a causal link between the events in 2019 to the allegations from 2021 that are actually at issue in this action by arguing that Frank's inability to "raise a Series B funding round, Frank had approximately 18 months before it ran out of money." Mot. at 29. But this is disingenuous at best, including because the government acknowledges that "Frank secured debt financing as well as a funding extension from its Series A investors in early 2020," *subsequent* to Frank's decision not to move forward with Firm-1. *Id.* at 25.

The government's attempt to impute nefarious intent to Ms. Javice and Mr. Amar in connection with this 2019 episode is similarly undermined by the evidentiary record in this case, including its own witness interviews with ██████████████████ and ████████████ ████████████ The government's voluminous discovery productions to Ms. Javice and Mr. Amar include limited evidence from 2019. Indeed, to bolster this alleged prior malfeasance, the government has offered one single document: GX 1464A—the corrected document shared with

---

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

Firm-1.[9]  The government has not identified the correspondence where the mistaken document was transmitted to Firm-1 or any evidence demonstrating that the mistake was the result of an intentional misrepresentation orchestrated by either Ms. Javice or Mr. Amar.  In fact, the government's description of the events and the evidence supports the opposite inference—that this was an accidental error that Frank quickly corrected.

Nevertheless, the side-by-side comparison the government offers between Spreadsheet-1 (from 2019) and a "Spreadsheet Given to JPMC and Bank-2" ("2021 Spreadsheet") further emphasizes the dissimilarities between the Firm-1 evidence and the alleged conduct at issue in this case. Mot. at 29.  For example, the column titles and numbers reported on these spreadsheets are different.  Indeed, this is so because they document different information.  Spreadsheet-1 is about CAC in 2019 and only shows the number of FAFSA user signups, not all Frank users.  The 2021 Spreadsheet is about users and FAFSA applications in progress.  The government asserts that this apples-to-oranges comparison between the spreadsheets "shows that, in their efforts to be acquired in 2021, the defendants knowingly and dramatically inflated their user base and how many students had started a FAFSA using Frank." Mot. at 26.  Not true.  These spreadsheets are about different components of Frank's business prepared for different audiences to answer different questions at different times in Frank's history.  The government's fatal misinterpretation or mischaracterization of these documents demonstrates precisely why this evidence should be excluded.  It risks jury confusion and a minitrial on an unrelated investment from two years before the conspiracy period. Fed. R. Evid. 403.

---

[9]   For completion, *see* GX 1464 (█████████████████████ attaching GX 1464A: █████████████████████).

**B.    The Firm-1 evidence is offered for propensity and inadmissible under Rule 404(b)**

The government's Rule 404(b) argument similarly misses the mark.  First, to fall within the ambit of the Rule, the evidence must be "conduct *of the defendant* which may bear adversely on the jury's judgment of [her] character."  Fed. R. Evid. 404(b); *United States v. Scott*, 677 F.3d 72, n.4 (2d Cir. 2012) (internal quotation marks omitted, emphasis added).  The government alleges that Ms. Javice "misreported" the number of student customers to Firm-1.  *See* Mot. at 25.  However, the government has not identified any particular misstatements attributable to Ms. Javice.  Nor has the government produced any evidence in discovery or pursuant to 18 U.S.C. § 3500 that allow the defense to identify any purported misstatement by Ms. Javice.  Assertions of counsel do not forge the necessary link between the alleged prior act and the criminal defendant such that the evidence is permissible under Rule 404(b).  *Pretzantzin v. Holder*, 736 F.3d 641, 651 (2d Cir. 2013) ("arguments of counsel are not evidence"); Fed. R. Evid. 403(b).

The government's proffered explanations for admissibility are equally unavailing.  Contrary to the government's assertion, Spreadsheet-1 does not establish Ms. Javice's knowledge of the "true size of [Frank's] customer base."  Mot. at 29–30.  As discussed above, Spreadsheet-1 does not and cannot establish this knowledge.  By the government's own characterizations, Ms. Javice and Mr. Amar did not author Spreadsheet-1.  *See* Mot. at 25 n.7 (explaining the evidence will show Ms. Javice was "aware" of Spreadsheet-1).  However, even if Spreadsheet-1 could be construed to impute knowledge to Ms. Javice of the "true size of [Frank's] customer base," that would have been true as of 2019—two years before the alleged misrepresentations at issue in this case—which has no bearing on the accuracy or adequacy of data provided in 2021.  Further, the government posits that evidence of this alleged misstatement "is clearly probative of the defendants' intent and lack of mistake when they falsely reported customer numbers to potential

acquirers in 2021." Mot. at 30.  At most, Spreadsheet-1 is evidence of an inadvertent mistake made by *someone* at Frank in 2019 when pulling a report on CAC metrics, which was subsequently corrected.  The events in 2019 and the allegations in 2021 are, simply put, not part of the same story.

A closer look at the Firm-1 evidence reveals that it is impermissible propensity evidence. The government is requesting the Court allow a jury to hear evidence of a declined investment (not an attempted sale) two-years prior to the alleged conspiracy period, by an unrelated company not listed in the Superseding Indictment or the Bill of Particulars, due to unknown reasons.  This evidence invites the conclusion that because Ms. Javice was allegedly dishonest to Firm-1 in 2019 (which is not even supported by the evidence the government marshals), then she was also dishonest with JPMC two years later.  For these reasons, Firm-1's 2019 declined investment in Frank cannot be introduced under the guise of Rule 404(b).

**D.    The Firm-1 Evidence Is Inadmissible Under Rule 403**

Evidence regarding Frank's investment negotiations with Firm-1 should also be excluded under Rule 403. Fed. R. Evid. 403 (precluding relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury). The government's impression about Spreadsheet-1 demonstrates the precise impact it would have on the jury if admitted at trial.  In one word, confusion.  Evidence that Firm-1 noticed a mistake in the CAC metrics that were shared with it, which someone at Frank quickly corrected, would result in an irrelevant, time-consuming mini-trial meant to suggest that because someone at Frank made a mistake in 2019, Ms. Javice and Mr. Amar made misrepresentations in 2021 under an entirely different set of circumstances. The government has not provided any evidence that this detour would be a productive use of the jury's time, or the Court's resources, in an already lengthy

trial.  And the risk of unfair prejudice resulting from the inevitable jury confusion mandates exclusion.

Separately, this evidence risks introducing insurmountable unfair prejudice to Ms. Javice. According to the government's theory, the Firm-1 evidence is relevant because it demonstrates that Ms. Javice misled Firm-1 about the number of Frank customers.  Mot. at 25.  Meaning, it purportedly shows Ms. Javice deprived Firm-1 of "potentially valuable economic information necessary to make discretionary economic decisions."  *Ciminelli v. United States*, 598 U.S. 306, 310–11 (2023).  Deprivation of potentially valuable economic information, or the "right-to-control" theory, however, cannot "form the basis for a conviction under the federal wire fraud statutes."  *Id.*  Thus, to permit the government to introduce a theory-of-prosecution foreclosed by Supreme Court precedent will cause substantial unfair prejudice by misleading and confusing the jury on improper theories of fraud, and risk of an improper conviction based on an invalid right-to-control theory.  *Old Chief v. United States,* 519 U.S. 172, 180 (1997) (defining "unfair prejudice" as "an undue tendency to suggest decision on an improper basis"); Fed. R. Evid. 403; ECF No. 204.  The unfair prejudice and risk of an improper conviction cannot be cured by a limiting instruction.  The only solution is exclusion.  To avoid this constitutional problem and the distracting sideshow such evidence would cause, the Court should preclude introduction of Firm-1's 2019 declined investment in Frank.

## V.    THE COURT SHOULD IMPOSE PRECISE GUARDRAILS ON ANY HYPOTHETICAL QUESTIONS THE GOVERNMENT POSES

The government argues that it should be permitted to ask "hypothetical questions of fact witnesses" in order "to prove the materiality of false and misleading representations and omissions."  Mot. at 30.  The government's argument rests entirely on the Second Circuit's reasoning in *United States v. Cuti* and its progeny, which sanction the use of hypothetical questions

in certain specified, limited circumstances. *See id.* (citing *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013)). To the extent the Court is inclined to grant the government's Motion, Ms. Javice and Mr. Amar respectfully request that it do so with the express limitations and guardrails laid out in *Cuti*, including, among other things, that the hypothetical questions are posed only once the facts that underlie the questions are sufficiently established in the record. That is consistent with how other courts have handled such hypothetical questions, and there is no reason for the Court do otherwise. *See, e.g.*, *United States v. Rangott*, No. 23-cr-004 (JHR), 2024 U.S. Dist. LEXIS 132901, at *5–6 (S.D.N.Y. July 24, 2024) ("[T]he use of hypothetical questioning during [the witness's] examination shall be circumscribed by the 'limitations' articulated in *Cuti*.").

Indeed, despite the high-level view the government takes as to what is allowed, *Cuti* is clear as to the specific guardrails that the Court should impose: that (1) each witness to whom hypothetical questions were posed was "personally familiar with the accounting of the transactions at issue" and "certified and experienced" about the subject matter, making them "fact witnesses of a unique sort" with specialized knowledge; (2) "[t]he hypothetical questions utilized facts that had been independently established in the record"; and (3) "the reasoning process that the witnesses employed in answering the hypotheticals was straightforward and transparent to the jurors, who could readily discern whether the responses given were reliable." 720 F.3d at 458; *see also Rangott*, 2024 U.S. Dist. LEXIS 132901, at *5–6 (reciting the *Cuti* limitations and noting that "[s]uch 'limitations will leave little room for [the witness] to engage in speculation and ensure that [her] testimony falls near the fact end of the fact-opinion spectrum," and that "[p]rovided that those limitations are carefully adhered to, the Court will permit hypotheticals of the kind contemplated by the Government") (cleaned up); *Phillips v. Duane Morris, LLP*, No. 13-cv-01105-REB-MJW, 2015 WL 72336, at *2 (D. Colo. Jan. 5, 2015) (prohibiting hypothetical question testimony where

29

the witness "was not a party to the decision," did not have the specialized knowledge that the witnesses in *Cuti* had, and was not relying on "established . . . rules" like the witnesses in *Cuti*); *Atlanta Channel, Inc. v. Solomon*, No. 15-1823 (RC), 2021 WL 4243383, at \*5 (D.D.C. Sept. 17, 2021) (finding testimony fell outside of *Cuti* where the witness did "not seem to have the 'particularized knowledge' that comes only from working with something day in and day out").

Points 1 and 2 are particularly salient here: first, the Court should allow only witnesses personally familiar with a given element of the acquisition to answer hypothetical questions related to any decisions they might or might not have made. Relatedly, the Court should ensure that any such witness possesses sufficient specialized knowledge and relevant experience—akin to the certified accountants in *Cuti*—to reliably address the questions posed. And second, any hypothetical question must be based on independently established facts. The broad-strokes "factual foundation" that the government paints in its papers, Mot. at 32, is insufficient. This Court should require that each fact on which the government bases any hypothetical question is "independently established in the record," as the Second Circuit required in *Cuti* and other courts in this District have likewise demanded. Anything less than that risks jury confusion about what facts have actually been proven.

To that end, the government's argument that it should be allowed to pose hypothetical questions of early witnesses "subject to connection with the [later-introduced] evidence establishing that the defendants misrepresented the number of customers it had," as is allowed in the context of co-conspirator statements admitted subject to connection, Mot. at 32 n.9, is unavailing. The *Cuti* court makes clear that the facts must be *in the record* when the hypothetical question is asked. Likewise, the courts in this District that have applied the *Cuti* limitations are unequivocal that any hypothetical questions must be based on specific facts in the record. *See,*

*e.g.*, *United States v. Guo*, No. 23-cr-118 (AT), 2024 U.S. Dist. LEXIS 78893, at *18-19 (S.D.N.Y. Apr. 29, 2024) ("The Second Circuit has expressly held that, when 'hypothetical questions utilize[] *facts that ha[ve] been independently established in the record*,' '[a] witness may testify to the fact of what he did not know and how, if he had known *that independently established fact*, it would have affected his conduct or behavior.' The defense is free to 'challeng[e] the factual accuracy of the disputed testimony' at trial [and] [t]he Government may ask witnesses hypothetical questions that fall within the *Cuti* framework if the proper foundation is established.") (emphasis added and internal citations omitted). The government has cited no case where courts have allowed hypothetical questions based on later-established facts, and in fact the courts that have even hinted at that possibility require the defendants' agreement to allow for hypotheticals subject to connection. *See Rangott*, 2024 U.S. Dist. LEXIS 132901, at *5–6 ("[A]ny and all questioning and testimony must be strictly 'limited' by the following: first, 'the factual foundation laid *in earlier admitted testimony and exhibits* or, *in accordance with the parties' agreement*, in a later-laid factual foundation . . . .") (emphasis added) (cleaned up). Needless to say, Ms. Javice and Mr. Amar do not agree to hypotheticals based on later-laid foundation, and absent such agreement, there is no basis for the Court to depart from *Cuti* in allowing them.

[*Intentionally left blank.*]

Respectfully submitted,

Dated: January 27, 2025

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

By: */s/ Sara C. Clark*

Sara Clark (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7100
saraclark@quinnemanuel.com

Erica Perdomo (*pro hac vice*)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone: (305) 402-4880
ericaperdomo@quinnemanuel.com

**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY & POPEO, P.C.**

David Siegal
Ellen Shapiro
919 Third Avenue
Telephone: (212) 935-3000
dmsiegal@mintz.com
eshapiro@mintz.com

Eóin P. Beirne (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
epbeirne@mintz.com

**BAEZ LAW FIRM**

Jose Baez (*pro hac vice*)
Rosemarie E.W. Peoples (*pro hac vice*)
1200 Brickell Avenue
Miami, FL 33131
Telephone: (305)-999-5100
jose@baezlawfirm.com
rosemarie@baezlawfirm.com

**RONALD SULLIVAN PLLC**

Ronald Sullivan (*pro hac vice*)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 313-8313
rsullivan@ronaldsullivanlaw.com

*Counsel for Defendant Charlie Javice*

32

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2025, I caused a copy of the foregoing document to be served via ECF on counsel of record.

By: */s/ Sara C. Clark*
Sara. C. Clark