UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CHARLIE JAVICE and OLIVIER AMAR, <br><br> Defendants. | Case No.: 1:23-cr-00251-AKH |

## MOTION TO COMPEL BY DEFENDANTS

Defendants Charlie Javice and Olivier Amar hereby move to compel JPMorgan Chase Bank, N.A., ("JPMC"), pursuant to the Rule 17 subpoena issued by Charlie Javice, ECF 74-2, and the Court's Order regarding the same, ECF 87, to (1) identify its 145 current and former employees who certified they "did not have relevant text messages or other messages because they certified that they did not use text messaging or other messaging applications for business purposes," ECF 75 at 20, and (2) provide a copy of the certification of any individual on that list who is also identified as a witness for the government.

## BACKGROUND

In a brief pertaining to Defendants' Rule 17 subpoenas, which requested that JPMC provide employee text messages relevant to the government's allegations, JPMC acknowledged collecting text messages for four employees and certifications from 145 additional employees that they did not use text messaging for business. Specifically, JPMC wrote:

> 145 other JPMC personnel certified that they did not use text messaging or other texting applications, such as WhatsApp, Slack, and iMessage, for business purposes, and therefore had not conducted Frank-related business through text messages or texting applications.

ECF 75 at 20. In the same brief, JPMC identified some, but not all, of the 145 certifiers by name. *Id.* at 25. The named certifiers include three government witnesses—(1) ▇▇▇, (2) ▇▇▇, and (3) ▇▇▇. Based on the assertions in JPMC's briefing, Defendants understand that the remaining JPMC employees on the government's witness list are also among the 145 certifiers.[1] Those individuals are (4) ▇▇▇, (5) ▇▇▇, (6) ▇▇▇, and (7) ▇▇▇. Subsequent to obtaining these certifications, JPMC produced relevant text messages involving at least five of these witnesses.[2]

## ARGUMENT

By definition, these certifications are witness statements to which Ms. Javice and Mr. Amar are entitled.[3] A certification is "[a]n attested *statement*" and to attest means "to bear witness; testify" and "[t]o affirm to be true or genuine; to authenticate by *signing as a witness*." Black's Law Dictionary (12th ed. 2024) (emphasis added). Ms. Javice and Mr. Amar are entitled to these prior witness statements pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). *United States v. Bagley*, 473 U.S. 667, 676 (1985) (noting that impeachment evidence, such as prior witness statements, "falls within the *Brady* rule"); *United States v. Giffen*, 379 F. Supp. 2d 337, 347 (S.D.N.Y. 2004) ("In the Second Circuit, *Giglio* materials, like *Brady* materials, must be disclosed 'in time for [their] effective use at trial.'") (quoting another source). Indeed, it is the government's "widely accepted practice in

---

[1] The exceptions are ▇▇▇, ▇▇▇, and ▇▇▇, who provided text messages for the government to review. ECF 75 at 25.

[2] *See, e.g.*, JPMC_01204234 (text exchange among ▇▇▇); JPMC_R17_016700 (text exchange between ▇▇▇); JPMC_01206390 (text exchange between ▇▇▇); JPMC_01240695 (text exchange between ▇▇▇).

[3] Pursuant to the Rule 17 subpoena, and this Court's order narrowing its scope, JPMC is required to produce the requested certifications. ECF No. 74-2 (Rule 17 subpoena) at Instructions ¶ 19.

this district [to] produc[e] impeachment material when it provides prior statements of a witness pursuant to 18 U.S.C. § 3500." *United States v. Underwood*, No. 04 Cr. 424 (RWS), at *4 (S.D.N.Y. Apr. 21, 2005) (granting in part motion to compel disclosure of impeachment material, including prior witness statements, known to the government); *accord* ECF No. 163 (ordering the government to produce to Ms. Javice all *Jencks* material on or before December 16, 2024). However, these certifications have not yet been produced to Ms. Javice. As witness "credibility is always an issue of consequence," and evidence "which aids in the jury's determination of a (witness's) credibility and veracity (is always relevant)," *United States v. Quinto*, 582 F.2d 224, 233 (2d Cir. 1978) (internal quotation marks omitted, alteration in original), Ms. Javice and Mr. Amar respectfully request their immediate disclosure.

Not only are the requested materials relevant, but Ms. Javice's and Mr. Amar's access to these prior witness statements is the foundation of their Sixth Amendment right to confront witnesses against them, as these statements could bear directly on government witnesses' credibility. Indeed, the Supreme Court's Sixth Amendment jurisprudence leaves no question about Ms. Javice's and Mr. Amar's right to "impeach, *i.e.*, discredit, the [government's] witness[es]." *Davis v. Alaska,* 415 U.S. 308, 316 (1974). "[O]ne of the important objects of the right of confrontation [is] to guarantee that the fact finder ha[s] an adequate opportunity to assess the credibility of witnesses." *Berger v. California,* 393 U.S. 314, 315 (1969); *see also Greene v. McElroy,* 360 U.S. 474, 496–97 (1959). As a result, constitutionally adequate confrontation must include the meaningful opportunity to challenge the government's witnesses for "prototypical form[s] of bias," *Delaware v. Van Arsdall,* 475 U.S. 673, 680 (1986), including prior inconsistent statements. Prior inconsistent statements are among these "prototypical forms of bias" because they "undoubtedly provide[ ] valuable aid to the jury in assessing [witnesses'] credibility." *Harris*

3

*v. New York,* 401 U.S. 222, 225 (1971); *see also Davis,* 415 U.S. at 316–17 ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (citing *Greene,* 360 U.S. at 496)).

Production of the certifications to Defendants is consistent with Rule 17. While at first blush, the first sentence of Rule 17(h) appears to preclude Rule 17(c) subpoenas for non-party witness statements, the subsection's structure and history confirm otherwise. Indeed, both sentences in subsection Rule 17(h) must be read together. *State Street Bank and Trust Co. v. Salovaara,* 326 F.3d 130, 139 (2d Cir. 2003) (confirming that is "well-settled" that courts attempt to give effect to every word of the statute, so as to avoid interpretations that would render any language superfluous) (collecting cases). The second sentence of subsection 17(h) provides "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule," as "Rule 26.2 governs the production of [that] statement." Fed. R. Crim. P. 17(h). However, Rule 26.2 disclosures are expressly limited to witness statements in the government's or defense's possession. Fed. R. Crim. P. 26.2(a). Meaning, Rule 26.2's disclosure requirement does not apply to non-parties, like JPMC. Thus, Rule 17(h) confirms that the restriction against subpoenaing witness statements pursuant to Rule 17(c) is limited only to statements in the government's possession governed by Rule 26.2. *Id.* Indeed, if Rule 17(h) were interpreted to preclude disclosure of non-party witness statements, "defendants in criminal cases would have no ability to obtain prior statements from witnesses that are not in the possession of the Government, as Rule 26.2 discovery is available only from parties, and not non-party witnesses." *United States v. Goldstein,* 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023) (granting subpoena for non-party witness statements pursuant to Rule 17(c) subpoena). The alternative interpretation would render

4

the second sentence of Subsection (h) superfluous and effectively preclude a criminal defendant's access to potential *Giglio* and *Brady* materials simply because of the custodian's non-party status.

Further, the history of Rule 17(h) affirms that its restriction is limited to witness statements in the government's possession. An earlier version of Rule 17(h) explicitly provided that "[s]tatements made by witnesses or prospective witnesses may not be subpoenaed *from the government or the defendant* under this rule." *Order of the Supreme Court*, 207 F.R.D. 89, 442 (2002) (emphasis added). When Rule 17 was "amended as part of the general restyling of the Criminal Rules" to its current form, the italicized language was removed from Subsection (h). But the advisory committee's note clarifies that this change was "intended to be stylistic only." *Id*. at 443. This stylistic change should not and does not alter Defendants' right to obtain relevant information from non-party witnesses pursuant to a Rule 17(c) subpoena. *See, e.g., Goldstein*, 2023 WL 3662971, at *5 (finding Rule 17(h) permits subpoenaing witness statements in the possession of a non-party); *United States v. Chavez*, 2020 WL 109703, at *3 (N.D. Cal. Jan. 9, 2020) (noting that "[n]o appellate court appears to have considered whether Rule 17(h)'s prohibition against subpoenaing witness statements applies to statements that are not . . . in the United States' possession" and concluding that Rule 17(h) "should not be interpreted to prevent a party from subpoenaing witness statements in the possession of a non-party"); *United States v. Hussain*, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018) (same); *United States v. Young*, 2004 WL 784840, at *2 (W.D. Tenn. Mar. 4, 2004) (same).

Accordingly, the Sixth Amendment, as well as due process, require that JPMC produce the statements of certification to Ms. Javice and Mr. Amar. *See United States v. Percoco*, 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018) (confirming Rule 17(c) authorizes the use of "pre-trial subpoenas" to obtain admissible evidence, as well as "service of subpoenas that are returnable at

5

trial ('trial subpoenas') to obtain impeachment material") (citation omitted); *United States v. Cole*, 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021) (noting numerous courts in the Second Circuit "have concluded that trial subpoenas seeking evidence for impeachment are permissible under Rule 17(c)") (collecting cases); *cf. U.S. v. Canter*, 338 F. Supp. 2d 460, 462 (S.D.N.Y. 2004) (agreeing impeachment materials, including prior witness statements, must be produced to the defendant pretrial noting that that is the "practice of this Court and of other courts in this district").

## CONCLUSION

To ensure compliance with this Court's order and to ultimately protect Ms. Javice's and Mr. Amar's constitutional rights, Defendants respectfully request the Court grant their motion to compel. Counsel for the Defendants conferred with Counsel for JPMC, who oppose this motion.

[*Remainder of page intentionally blank.*]

DATED: January 28, 2025

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Erica Perdomo*

Erica Perdomo (*pro hac vice*)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone: (305) 402-4880
ericaperdomo@quinnemanuel.com

Sara Clark (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, TX 77002
Telephone: (713) 221-7100
saraclark@quinnemanuel.com

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**

David Siegal
Ellen Shapiro
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
dmsiegal@mintz.com
eshapiro@mintz.com

Eóin P. Beirne (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
epbeirne@mintz.com

**BAEZ LAW FIRM**

Jose Baez (*pro hac vice*)
Rosemarie E.W. Peoples (*pro hac vice*)
1200 Brickell Avenue
Miami, FL 33131
Telephone: (305)-999-5100
jose@baezlawfirm.com
rosemarie@baezlawfirm.com

**RONALD SULLIVAN PLLC**

Ronald Sullivan (*pro hac vice*)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 313-8313
rsullivan@ronaldsullivanlaw.com

*Counsel for Defendant Charlie Javice*

**KOBRE & KIM LLP**

Jonathan D. Cogan
Steven G. Kobre
Sean S. Buckley
Alexandria E. Swette
800 Third Avenue
New York, New York 10022
Jonathan.Cogan@kobrekim.com
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com
Alexandria.Swette@kobrekim.com

*Counsel for Defendant Olivier Amar*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I caused a copy of the foregoing document to be served via ECF on counsel of record.

                                            By: */s/ Erica Perdomo*