**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 20, 2025

**BY ECF AND EMAIL**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)**

Dear Judge Hellerstein:

The Government respectfully writes regarding the admissibility of certain Government Exhibits that the Government expects to offer through its first witness.

The Government expects to call a former LionTree analyst (the "LionTree Witness") as its first witness. LionTree was Frank's investment advisory firm. One of LionTree's principal roles in the transaction was to act as the intermediary between Frank and potential buyers to ensure an orderly process. For example, LionTree was responsible for creating and uploading documents to the "virtual data room"—an online file sharing platform—for potential buyers like Capital One and J.P. Morgan Chase ("JPMC") in order to share records and information from Frank. Potential buyers sent questions to LionTree; LionTree then conveyed the questions to Frank and received responses; and then LionTree conveyed those responses to the potential buyers. Apart from meetings or calls, these exchanges between Frank and potential buyers—with LionTree as the intermediary—occurred in writing. To keep track of questions from potential buyers and the answers from Frank, LionTree also created and maintained a "diligence tracker" for each potential buyer that logged the questions and answers.

The Government expects to offer through the LionTree Witness Government Exhibits showing the defendants' misrepresentations in writing. These documents include certain documents from JPMC's data room, including the data room documents concerning Frank's "users," and emails between LionTree and the defendants.

The defendants object to certain emails, in which LionTree emails either or both of the defendants, as hearsay (namely, Government Exhibits 3016, 3038, and 3042). The Government is not offering these emails sent to the defendants for the truth of any matter asserted in the email; they are being offered to show the defendant's receipt of the emails and the defendants' knowledge

of them.[1] For example, a spreadsheet claiming that over 4,265,085 students had started a financial aid application using Frank's product—which the defendants created together but which Javice solely emailed to LionTree—was later emailed back to both defendants by LionTree. The Government has no objection to a limiting instruction with respect to such emails that they are not being offered for the truth of the matter asserted therein—which is particularly apt because the Government is offering these statements for their falsity.[2] These are the communications of the defendants' written misrepresentations, showing the defendants' mutual awareness of those lies.

In addition, the defendants specifically object to emails that attach the diligence tracker for JPMC or Capital One (namely, Government Exhibits 1692, 3033, and 3044). These diligence tracker attachments—which were shared between Frank and LionTree, and then between LionTree and potential buyers—are admissible for several reasons, including the same reasons described above for the emails generally.

First, the diligence trackers contain the defendants' statements. For example, in one email from Javice to LionTree, Javice attached a copy of the JPMC diligence tracker in which she herself had entered the very lies that are the subject of this case as answers to JPMC's questions and emailed it to LionTree. This attachment, regardless of whether it is a "diligence tracker," is simply Javice's own statement.[3] Second, emails where LionTree is sharing copies of the diligence tracker

---

[1] The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note.

[2] It is well established that no hearsay issue arises when statements are offered to prove—not the truth of a matter asserted in the statements—but, rather, that the assertions "were false." *Anderson v. United States*, 417 U.S. 211, 220 (1974) (affirming the prosecution's admission of out-of-court statements that were "not admitted into evidence . . . to prove the truth of anything asserted therein."); *see, e.g.*, *United States v. al Fawwaz*, No. 98 Cr. 1023 (LAK), 2015 WL 13514090, at *3 (S.D.N.Y. Feb. 9, 2015) ("Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted.") (internal quotation omitted); *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 737 (S.D.N.Y. 2022) ("First, the SEC contends that certain statements attributed to analysts were false. These statements—independent of being by a party opponent—may separately qualify as non-hearsay insofar as, to be hearsay, a statement, must be offered for the truth of the matter asserted."); *Oteng-Amoako v. HSBC Bank USA*, No. 13 Civ. 5760 (PAC) (FM), 2014 WL 7476239, at *8 (S.D.N.Y. Dec. 30, 2014), *report and recommendation adopted*, 2015 WL 2399847 (S.D.N.Y. May 19, 2015) ("The alleged retaliatory statement by the HSBC representative is not offered for the truth; indeed, it is offered for its falsity. Accordingly, that statement is not hearsay."); *Patel v. Jani*, No. 12 Civ. 9376 (KBF), 2015 WL 5508304, at *3 (S.D.N.Y. Sept. 18, 2015) (statements "may be admissible as nonhearsay, if they are sought to be offered not for the truth of the matter, but as statements of *untruth*" (emphasis in original)).

[3] Further, to the extent the diligence tracker contained other Frank employees statements—or LionTree's statements—those are also not hearsay under Rule 801(d)(2). After all, Javice was the CEO of Frank and explicitly gave direction to Frank's employees as well as LionTree during the

with the defendants are being offered to show the defendants' knowledge of the questions from the potential buyers, and the answers given. Additionally, these statements are not hearsay because they are being offered for their falsity, not their truth—and, as noted, the Government has no objection to that standard limiting instruction. Finally, the diligence trackers are quintessential business records of LionTree (or any investment bank) under Rule 803(6) and not hearsay for that reason as well.

For these reasons, Government Exhibits 1692, 3016, 3033, 3038, 3042, 3044 should be admitted at trial.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By: /s/
Rushmi Bhaskaran
Nicholas W. Chiuchiolo
Micah F. Fergenson
Georgia Kostopoulos
Assistant United States Attorneys
212-637-2439 / -1247 / -2190 / -2212

---

diligence process. Federal Rule of Evidence 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." To admit a statement under this rule, the court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). As the Second Circuit has explained, "admissibility under this rule should be granted freely," and there is a "liberal" standard for admissibility rooted in the understanding that agents and employees are usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537.