**Eóin P. Beirne**
+1.617.348.1707
EPBeirne@mintz.com

One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

February 2, 2025

Re: *United States v. Charlie Javice, et al.*, 23-cr-00251-AKH (S.D.N.Y.)

Dear Counsel:

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), counsel for Ms. Javice provides this supplemental disclosure regarding Carla Holtze Cell's testimony as an expert witness in Ms. Javice's case-in-chief at trial. This letter supplements Ms. Javice's initial January 6, 2025 disclosure regarding the testimony of Ms. Holtze Cell.

**I. <u>BACKGROUND & QUALIFICATIONS</u>**

Ms. Holtze Cell has spent almost twenty years working with start-up companies as well as large well-established companies using "identity" techniques to capture, develop, and predict information about website users. Ms. Holtze Cell founded a company, Parrable, that performed those functions. Ms. Holtze Cell regularly advises companies in analyzing and developing website user identity systems.

**II. <u>ANTICIPATED TESTIMONY</u>**

Ms. Holtze Cell will not be called to offer opinions as to factual matters in this case. Rather, pursuant to F.R.E. 702, Ms. Holtze Cell will offer testimony explaining technical concepts regarding website user data beyond the understanding of lay jurors. As the Advisory Committee Notes to Rule 702 state:

> The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference. * * *
>
> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no

MINTZ

> more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." (citation omitted).
>
> The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education."

As provided for by Rule 702, Ms. Holtze Cell will give expert testimony to assist the jury in understanding relevant technical concepts, as disclosed in our letter of January 6, 2025. She will explain concepts specifically referenced in the Government's exhibits or anticipated Government witness testimony in order to assist the triers of fact in applying the concepts to the facts at issue. *See e.g.*: GX 212 (screenshot from Frank website indicating that Frank's website uses **cookies** to "enhance user experience and to analyze performance and traffic on our website"); GX 3.1.3 (document in data room referencing user **IP addresses**); Government witness, Steve Stolls (anticipated testimony re **student data brokerage**); Government witness, Adam Kapelner (anticipated testimony re **synthetic data** and **data augmentation**). To the extent that lay witnesses sufficiently explain those concepts in the context of the evidence, such expert testimony may not be necessary. But should those concepts remain unexplained or not well explained in the Government's case-in-chief, Ms. Javice may opt to call Ms. Holtze Cell to offer explanations to assist the jury.

The Government has included several documents from Google Analytics on its exhibit list. *See e.g.*, GX 400-414. Ms. Holtze Cell may testify about how Google Analytics tracks website user traffic and the data provided by Google Analytics about a website's users to Google Analytics customers such as Frank.

At issue in this case is the level of engagement that Frank had with its different types of website users. With a proper foundation for relevance laid through other witnesses about the methods Frank used to identify its users, Ms. Holtze Cell will explain how those methods in practice work to capture user data using techniques such as the deployment of cookies, capturing IP addresses and other relevant "identity" mechanisms.[1]

The Government has indicated that it will call witnesses to discuss and compare different datasets comprised of Frank user data or allegedly fake user data. In an email to Mr. Amar's counsel on

[1] Per the requirements of Fed. R. Crim. P. 16(b)(1)(C)(v), Ms. Holtze Cell has reviewed and approved this disclosure only as to the subject-matters of her testimony as indicated with the underlined references herein. As Ms. Holtze Cell will be called to provide non-opinion expert testimony, she has not reviewed the Government exhibits referenced herein by counsel to demonstrate the relevance and "help[fulness]" of Ms. Holtze Cell's anticipated testimony as contemplated by F.R.E. 702(a).

MINTZ

12/30/24, the Government stated that it "expects to call a witness from [Berkeley Research Group] to testify about the differences between various datasets prepared by the defendants or at their behest." Ms. Javice may offer Ms. Holtze Cell's testimony to respond to this Government witness testimony -- from a purported "summary" witness who typically testifies as an expert -- Ms. Holtze Cell will testify not about the specific data files and datasets about which the Government's witness may be cross-examined. Rather, Ms. Holtze Cell will provide testimony explaining how such datasets are created – *i.e.*, the process of extracting and storing website user data, the process of retrieving such data, and how identity resolution techniques for matching such data with additional bilocated data for those same website users.

Various Government witnesses are expected to testify about the defendants' purchases of user data in order to allegedly further and cover-up their fraud on JPMC. Ms. Javice contends that data purchases are routine and standard industry practice as part of website user "identity" acquisition and resolution process. Ms. Holtze Cell may offer testimony about the common practice in the digital marketing industry to purchase user information from data brokers to augment existing user data fields and fill in unknown information about users. *See United States v. Litvak*, 808 F.3d 160, 181 (2d Cir. 2015) (holding District Court erred in barring defendant's expert witness from testifying about common industry practices which were "directly probative of whether [defendant's] misstatements would have been material to a reasonable investor.").

The materiality element of the various fraud statutes at issue requires the jury to assess the "total mix" of information available to JPMC and apply the objective "reasonable investor" standard. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (to satisfy the general standard of materiality, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available."). To convict Ms. Javice, the jury must be convinced that given the total mix of information available to JPMC, the misrepresentations at issue were material and went to the heart of the bargain. *In re Seizure of All Funds in Accts. in Names Registry Pub. Inc.*, 68 F.3d 577, 581 (2d Cir. 1995) ("in order for sales tactics to rise to the level of [ ] fraud, misrepresentations must be material to the bargain that the customer is induced to enter into with the company."). To provide appropriate context to the jurors so that they may assess what a reasonable investor would deem material, Ms. Holtze Cell may offer testimony about the types of information that are readily available in the public domain and about which someone in the defendants' position would expect a reasonable purchaser of a website to readily/routinely consult. Furthermore, if a purchaser does not check, then a reasonable inference is that in these circumstances, that fact was not important to this purchaser, and thus would not be important to a reasonable purchaser under these circumstances.

Such testimony will also assist the jury in determining whether the defendants had criminal intent given the readily available means to verify any representations regarding website user traffic.

Ms. Javice expects that the Government will seek to elicit testimony from its witnesses that the synthetic data project undertaken by Adam Kapelner was evidence of an effort to misrepresent Frank's total number of users and that the data file, provided by Dr. Kapelner for analysis by

MINTZ

Acxiom and that Ms. Javice later provided directly to JPMC, was worthless. Assuming the Government does elicit such testimony, Ms. Holtze Cell may offer guidance to the jury about the value of synthetic data modeling, also known as attribute or lookalike modeling, as part of a legitimate digital marketing plan.

Ms. Javice reserves the right to further supplement and/or amend this disclosure, including in response to the government's ongoing supplementation of its exhibits and/or witness lists as well as evidence presented in the government's case-in-chief.

Very truly yours,

/s/ Eóin P. Beirne

Eóin P. Beirne

Reviewed and approved as to anticipated testimony by:

/s/ Carla Holtze Cell

Carla Holtze Cell