

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 27, 2025

**BY ECF AND EMAIL**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

    The Government respectfully writes in opposition to the defendants' motion for mistrial and severance. ECF Nos. 291, 292. For the reasons set forth below, there is no reason for the Court to disturb its prior ruling denying severance on the basis of a mutually antagonist defense (*see* Transcript of January 23, 2025 Conference ("Jan. 23 Tr."), at 31), and accordingly, there is no reason to grant the extraordinary remedy of declaring a mistrial.

    As discussed below, defense counsel's opening statements and cross-examinations make clear that the defenses are not mutually antagonist. Each defendant has argued that she or he is innocent and did not act with the requisite knowledge or intent to commit fraud. Accepting one defendant's defense does not, *of necessity*, require the conviction of the second defendant. Furthermore, even if they were mutually antagonistic defenses – and they are not – the defendants have not suffered any prejudice, let alone the kind that would warrant a severance and mistrial of this properly-joined trial.

    **I.**    **Applicable Law**

    The Supreme Court has set a high bar for severance for properly joined defendants, such that a severance motion should be granted only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).[1] Accordingly, "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). "[A] defendant seeking severance under Rule 14 bears an extremely difficult burden of proving . . . that the prejudice would be so great as to deprive him of his right to a fair trial." *United States v.*

---

[1] Unless otherwise indicated, all quotations omit internal quotation marks, citations, and previous alterations.

*Barret*, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011); *see also United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993) (denial of severance motion is improper only where defendant will incur "prejudice so severe that his conviction [would] constitute[] a miscarriage of justice").

The mere fact that two defendants advance defenses that are adversarial to one another "clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses." *United States v. Cardascia*, 951 F.2d 474, 484-485 (2d Cir. 1991). Moreover, "[m]ere fingerpointing does not require severance." *United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989). Rather, the term "mutually antagonistic" has been adopted to describe a narrow category of adversarial defenses where "accepting one defense requires that the jury must *of necessity* convict a second defendant." *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) (emphasis added); *see also Zafiro*, 506 U.S. at 542 (Stevens, J., concurring) (describing "mutually antagonistic" defenses as those as to which "acceptance of one . . . necessarily preclude[s] acceptance of the other and acquittal of the codefendant").

However, the Supreme Court has held that even "mutually antagonistic defenses are not prejudicial per se," and that severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown." *Zafiro*, 506 U.S. at 538-39. Rather, when defendants adopt mutually antagonistic defenses, severance is appropriate only if defendants can demonstrate "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539; *see also United States v. Scott*, 637 F. App'x 10, 13 (2d Cir. 2015) (summary order) ("It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal . . . the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice and amounted to a denial of a constitutionally fair trial."). "In those rare instances where a defendant establishes a 'high' risk of prejudice, however, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *United States v. Abakporo*, No. 12-CR-340 (SAS), 2013 WL 6188260, at *3 (S.D.N.Y. Nov. 25, 2013).

## II.     Procedural History

On January 10, 2025, Javice filed her first motion to sever, arguing that Amar would present a mutually antagonistic defense that would compromise her rights to a fair trial. ECF Nos.184, 219). The Government opposed that motion, arguing that the proffered defenses were not mutually antagonistic, and even if they were, did not warrant a severance. ECF No. 216. The Court held oral argument on the motion on January 23, 2025. During that conference, the Court held and *in camera* and *ex-parte* colloquy with Amar's counsel. Thereafter, the Court denied Javice's severance motion and held that "[t]here is really no antagonist defense, certainly nothing that could rise to an unfairness as to either defendant." Jan. 23 Tr. at 31.

Following opening statements, Javice renewed her motion for severance on February 23, 2025. The Court denied this motion on February 24, 2025. (Trial Transcript ("Trial Tr.") at 243. Then, on February 26, 2025, Javice filed another severance motion, this time based on Amar counsel's cross-examination of Houston Cowan. ECF No. 291. Amar joined Javice's motion to sever that same day. ECF No. 292.

### III.     The Defenses Are Not Mutually Antagonistic

Opening statements and the cross-examination of the Government's first witnesses has only confirmed that severance—and the extreme remedy of mistrial—is not warranted. For the following reasons, the Court should deny the defendants' motion.

*First*, the defenses are not mutually antagonistic. Both defendants have claimed that they are innocent. Javice claims that she did not make any false or misleading statements. *See, e.g.*, Tr. 55-56. Amar likewise claims that he did not make any false or misleading statements, and he further argues that he was less involved in the sale of Frank and was not aware of certain representations that Javice made to potential buyers. *See, e.g.*, Tr. 73, 74, 79, 80. A jury can credit Amar's argument that he was not aware of Javice's statements regarding Frank's users, and also credit Javice's arguments that her statements were not misleading, or not intentionally so. In addition, Amar's efforts to distance himself from Javice, if accepted by the jury, would tend to show that there was no meeting of the minds to support a conspiracy conviction. Accepting Amar's defense, therefore, does not require the jury "of necessity" to convict Javice. *Yousef*, 327 F.3d 56, 151. The severance motion should be denied on this basis alone.

In addition, Javice's argument that Amar's counsel is an "echo chamber" for the prosecution is wrong. ECF No. 291 (*quoting United States v. Shkreli*, 260 F. Supp. 3d 247, 256 (E.D.N.Y. 2017). The Government strongly disputes Amar's characterization of his conduct. The evidence will plainly show that, contrary to Amar's opening statement, he himself made false and misleading statements directly to both Capital One and J.P. Morgan Chase. In addition, the evidence will further show that Amar was a knowing participant in the scheme to use fake data and to pass of purchased users and Frank's users. For example, the Government's evidence will include WhatsApp chat messages between Javice and Amar, taken from Amar's own cellphone that was seized pursuant to a search warrant. Put simply, the Government and Amar are far from aligned. Indeed, the Government's redirect examination of Houston Cowan sought to rebut several arguments that Amar's counsel made through cross-examination, by, for example, eliciting Amar's misrepresentations to Capital One regarding Frank's users. Javice cannot credibly argue, therefore, that Amar's defense counsel is an echo chamber for the Government's evidence that Javice *and* Amar *together* participated in a scheme to defraud.

*Second*, Amar argues that he has been prejudiced because the Court prevented him from eliciting evidence, including emails, where "Javice deliberately [cut] Mr. Amar out of important diligence communications." ECF No. 292, at 2. To the extent that Amar's defense is that he is not guilty because he was not copied on certain communications containing Javice's misrepresentations, that is not a defense—let alone a mutually antagonistic one. A "defendant may not seek to establish his innocence . . .through proof of the absence of criminal acts on specific occasions." *United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021). That is because such "'good act' evidence is only relevant if we assume that a defendant acted in conformity with those prior good acts—*i.e.*, if we make the exact propensity inference Rule 404(b)(1) is designed to prohibit." *Id*. In accordance with these principles, Amar cannot argue that, because he was not copied on a communication containing a misrepresentation, he is not guilty of participating in a scheme to defraud with Javice. Amar is on trial because of the lies *he* told, and the actions *he* took

Page 4

to effectuate and cover up the fraud—all while acting in concert with Javice. That lies were also told by Javice outside of Amar's presence at times is irrelevant to Amar's guilt.[2]

*Third*, Amar argues that his defense has been prejudiced because the Court prevented Amar from introducing DX OA 234 and GX 1547.[3] ECF No. 292, at 2-3. But these documents constitute plainly inadmissible hearsay—and would constitute equally inadmissible hearsay in an Amar-only trial. Amar, therefore, cannot credibly argue that his defense has been curtailed by the Court's decision to exclude documents on hearsay or other evidentiary grounds that have nothing to do with his joint trial with Javice.

*Finally*, the Court's suggestion that Javice's counsel object to Amar's counsel cross-examination does not, as Amar argue, prejudice Amar's right to a fair trial. ECF No. 292, at 3. The Court never suggested that it would curtail Amar's defense. Instead, the Court told Javice's counsel to raise objections so that the Court could make appropriate rulings as questions arose. Tr. 419. Indeed, "[i]n those rare instances where a defendant establishes a 'high' risk of prejudice, however, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Abakporo*, No. 12-CR-340 2013 WL 6188260, at *3. The Court's recommendation that Javice object to Amar's cross-examinations, therefore, is precisely the type of remedy that the law favors to address any prejudice that may arise from antagonistic defenses.

For these reasons, the Court should again deny the defendants' motions for a mistrial and severance.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:   /s/_____
Rushmi Bhaskaran
Nicholas W. Chiuchiolo
Micah F. Fergenson
Georgia V. Kostopoulos
Assistant United States Attorneys
212-637-2439 / -1247 / -2190 / -2212

---

[2] As the Court is no doubt aware, relative culpability is not a defense to fraud or conspiracy.

[3] The Court did allow Amar's counsel to use DX OA 234 to refresh the witness's memory. Tr. 344-45.