**quinn emanuel** trial lawyers | miami

2601 S. Bayshore Drive, Suite 1550, Miami, Florida 33133-5417 | TEL (305) 402-4880 FAX (305) 901-2975

WRITER'S EMAIL ADDRESS
kirstennelson@quinnemanuel.com

March 19, 2025

**VIA ECF**
Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     United States v. Charlie Javice and Olivier Amar, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

718 days after the government filed charges, and five weeks into trial, Ms. Javice still does not have access to constitutionally guaranteed exculpatory materials. The Frank website. For over twenty-three months, Ms. Javice was led to believe JP Morgan and the government had no version of the website which could be produced under the Federal Rules of Criminal Procedure 16 or 17, *Brady* or *Giglio*. That changed yesterday.

Government witness Manole Pelarinos testified that JPMC has "all the data and all the technology in place [from the Frank website] that was there when [Frank] was first acquired. . . . None of that has been touched or changed." 03/18/2025 Trial Tr. 2788:21-2789:5. This is *Brady*. 373 U.S. 83, 84 (1963).

This case is about whether Ms. Javice misrepresented metrics related to the Frank website. Yet, the website has been the equivalent of the missing key witness. An exculpatory one, at that. Throughout this case, government witnesses have represented to the jury what was allegedly on Frank's website. *See, e.g.*, 02/21/2025 Trial Tr. 221:1-221:6 (Houston Cowan); 02/26/2025 Trial Tr. 496:11-498:3 (Panthaki); 02/27/2025.02.27 Trial Tr. 693:23-694:22 (Wims Morris); 03/04/2025 Trial Tr. 1028:15-1029:5 (Wong); 03/12/2025 Trial Tr. 2034:21-2034:23 (Kapelner); 03/13/2025 Trial Tr. 2294:13-2294:16 (Mason Young); 03/13/2025 Trial Tr. 2333:9-2333:11 (Sindhu Subramaniam); 03/17/2025 Trial Tr. 2517:8-2517:10 (Ryan MacDonald). Without the

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

website Ms. Javice has had no meaningful way to cross-examine these witnesses or explore the limitations of their claims or to fully present her lack of materiality and lack of criminal intent.

A few illustrative examples. Had the website been produced, it would have shown that on its FAQ page Frank disclosed that it had helped closer to 250,000 families file FAFSA applications. Ex. A (CJ-2173).



Similarly, the Frank website's News Room tab, where the company posted articles and press, would have revealed that Ms. Javice was trumpeting that Frank had closer to 300,000 FAFSA filers in podcast appearances and written and in-person interviews. Ex. B (CJ-1897). Not 4.25 million. This supports Ms. Javice's factual defense that the 4.25 million figure was about website traffic based on Google Analytics metrics. Using internet archives, Ms. Javice was able to find the example below.



This is important for two reasons. First, numerous government witnesses testified that they visited or saw the Frank website. Yet they claimed that the only number they received of FAFSA applications was 4.25 million. The website itself tells a very different story, implicating *Brady* and *Giglio*. Second, the Frank website is directly relevant to two of Ms. Javice's legal defenses: lack of intent and materiality. The government intends to prove that Ms. Javice intended to deceive CapitalOne and JPMC through circumstantial evidence purportedly showing she hid the true number of FAFSA filers from the banks. The website is direct evidence refuting that theory. Far from hiding this information, she was proud of it. Ms. Javice displayed it in multiple places on

the Frank website. During multiple interviews featured on the Frank website, she talked about the approximately 300,000 students Frank had helped secure financial aid.

Moreover, the website is direct evidence that the number of FAFSA filers was not material to CapitalOne and JPMC. Bank representatives testified that they visited or saw the Frank website. Meaning, they had access to the same 300,000 FAFSA filer information Ms. Javice was celebrating on multiple pages of the website. Materiality is an objective standard. Such that if a reasonable potential acquirer was on notice that Frank had 300,000 FAFSA filers from its own website, and moved forward with the transaction, a later claim that the reasonable investor was tricked about the very number about which Frank was shouting from the rooftops strains credulity.

The materiality analysis does not end there, however. The Frank website would have also shown the value of Frank. And it was not simply a static, and potentially stale, list of FAFSA filers. As government witness and dealmaker Ryan MacDonald testified, the number of visitors to a website is valuable to a reasonable acquirer. 03/17/2025 Trial Tr. 2449:1-2449:5. Had Ms. Javice had the Frank website, she could have shown the jury exactly why and how Frank was a valuable asset for this reason. Frank's website had thousands of pages of content driving people to its website for reasons far beyond filing a FAFSA once a year. Indeed, static screenshots do not do the site justice. Ex. C (CJ-2170 (produced natively)).





Ms. Javice's inability to show the jury the drivers of Frank's value to reasonable potential acquirers directly prejudices her defense in violation of her Fifth and Sixth Amendment rights.

This is not a matter of finger pointing either. Regardless of whether the government or JPMC has the Frank website today, Ms. Javice is entitled to it one way or the other. If held by the government, its disclosure is required under Rule 16, *Brady*, and *Giglio*. If held by JPMC, its disclosure was required under Rule 17. ECF No. 257-2 (Ms. Javice's Rule 17 subpoena to JPMC requesting the same). However, both the government and JPMC have disclaimed possession of the very thing that Mr. Pelarinos admitted—under oath—is in JPMC's files.

It is equally unavailing that the failure to disclose was unintentional. The failure to disclose material exculpatory information, such as here, is a violation of due process regardless of the good faith of the prosecutor. *Brady*, 373 U.S. at 87; *see also United States v. Agurs*, 427 U.S. 97, 110 (1976) (the "constitutional obligation [to disclose exculpatory information] is [not] measured by the moral culpability, or the willfulness, of the prosecutor").

\*    \*    \*

The "truth-seeking process [of this trial has been] corrupted by the withholding of evidence favorable to the defense" in violation of Ms. Javice's Fifth and Sixth Amendment rights. *United States v. Agurs*, 427 U.S. 97, 120 (1976), *holding modified by United States v. Bagley*, 473 U.S. 667 (1985) (Marshall, J., dissenting). The appropriate remedy is a mistrial. Or, at a minimum, a jury instruction on missing evidence related to the Frank website.

[*Intentionally left blank.*]

Respectfully submitted,

/s/ *Kirsten R. Nelson*
Kirsten R. Nelson* (*pro hac vice*)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone: (305) 402-4880
kirstennelson@quinnemanuel.com

* Not admitted in Florida. A member in good standing in Maryland and the District of Columbia.

cc: All Counsel of Record