# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

March 24, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Charlie Javice and Olivier Amar*,
        **23 Cr. 251 (AKH)**

Dear Judge Hellerstein:

Defendant Olivier Amar respectfully moves to admit a limited set of documents establishing former Frank executive Matt Glazer's presence and involvement during diligence, consistent with the Court's pretrial ruling that Mr. Amar could rely on this evidence to advance a good faith defense and in response to the Government's direct examination of Patrick Vovor, which plainly opened the door. The exhibits discussed below are authentic, relevant, and therefore admissible in that they go to Mr. Amar's innocent state of mind and lack of conspiratorial intent during the charged conspiracy and further establish Mr. Glazer's involvement in relevant communications.

### *(1) The Court Determined at the Final Pretrial Conference that Mr. Amar Could Introduce Documents Concerning Mr. Glazer's Presence During Diligence*

The Court already has ruled (in the context of limiting Mr. Amar's advice of counsel defense, and over the Government's objections) that Mr. Amar may rely on documents showing Mr. Glazer's presence during and participation in due diligence. Feb. 4, 2024 Hr'g Tr. at 63:19-65:4 ("THE COURT: You make your own case. I don't interfere with your making a case."). Based upon the Court's prior rulings, counsel for Mr. Amar referenced Mr. Glazer in his opening statement and explained to the jury that it would hear "one person in particular who was involved [in due diligence] was a lawyer by the name of Matt Glazer." Tr. 75:6-9. After providing additional details about Mr. Glazer's background and role at Frank, counsel explained how the evidence would show that Mr. Glazer also was involved in reviewing and approving Frank's

Americas (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
APAC (Hong Kong, Seoul, Shanghai), Caribbean (BVI, Cayman Islands), EMEA (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 24, 2025
Page 2

representation on its website regarding 4.25 million users. Tr. 76:12-77:8. To now deny Mr. Amar from offering the evidence that counsel told the jury it would hear in opening would be unfair and interfere with Mr. Amar's ability to mount his defense.[1]

For this reason alone, Mr. Amar is entitled to "make [his] case" that Mr. Glazer's presence on certain documents during diligence negates fraudulent intent. The documents described in this motion are a limited subset of documents that are necessary for Mr. Amar to make his case regarding the presence of and his interactions with Mr. Glazer during relevant aspects of the Government's charged conspiracy. Precluding Mr. Amar's ability to offer these documents not only would interfere with, but hamstring, his right to fully defend against the Government's allegations.

### *(2) The Government Opened the Door to Evidence of Mr. Glazer's Presence on Direct Examination of Mr. Vovor*

In any event, the Government opened the door to evidence of Mr. Glazer's presence during its direct examination of Mr. Vovor, when it elicited testimony about the August 2 meeting where Ms. Javice and Mr. Amar supposedly asked him to create synthetic data. According to Mr. Vovor, Mr. Glazer's absence from that meeting caused him to feel concerned that Defendants were asking him to do something improper.

> THE WITNESS: So I was still not sure of this request. I think Ms. Javice was looking at me, seeing –
>
> MR. SULLIVAN: Objection.
>
> THE COURT: Overruled.
>
> THE WITNESS: -- seeing that and she responded: Don't worry. I don't want to end up in an orange jumpsuit.
>
> THE COURT: What did you say?
>
> THE WITNESS: What did I say to that?
>
> THE COURT: If anything, yes.
>
> THE WITNESS: So I told them that I will not do anything illegal. **I asked them why Matt Glazer was not in the room for that call. Mr. Amar responded this is not his expertise. Matt Glazer was the legal and HR person at Frank at the time and he was in those meetings related to investors at the time.**

Mar. 6 Tr. at 1576:4-18 (emphasis added).

Without mentioning Mr. Glazer, the Government could have elicited the exact same testimony from Mr. Vovor—that Defendants' request made him uncomfortable and that he refused to do it. Or even that Mr. Vovor questioned whether the request was legal. The Government did

---

[1] The Government similarly referenced Mr. Glazer in its opening statement, further establishing that there is no dispute that his presence and role in the events in question are relevant.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 24, 2025
Page 3

not do so. Instead, it chose to inject Mr. Glazer into its case. And not only that, the Government chose to emphasize that Mr. Glazer's absence was unusual as well as indicative of Mr. Amar's intent to defraud because Mr. Glazer is a lawyer who was usually involved in investor meetings.

The Government should not be permitted, on the one hand, to elicit testimony implying Mr. Glazer's absence from a single meeting concerned Mr. Vovor while, on the other hand, block Mr. Amar from demonstrating how Mr. Glazer's involvement in due diligence negates fraudulent intent. *See Ryan v. Hudson*, No. 08-cv-292, 2009 WL 1911826, at *11 (N.D. Ohio June 29, 2009) ("A defendant 'opens the door' to cross-examination on a particular subject when he raises it on direct examination as part of his theory of defense."); *United States v. Taylor*, 820 F. Supp. 124, 128 n.3 (S.D.N.Y. 1993) ("Should the government, notwithstanding this opinion and order, advert at trial to Taylor's marital state, then defendant can argue that the government opened the door to battered women's syndrome proof."); *United States v. Hatfield*, No. 06-cr-0550 (JS), 2010 WL 1948236, at *2 (E.D.N.Y. May 12, 2010) (noting government witness's testimony "did open the door to similar factual testimony from defense witnesses" (emphasis omitted)); *United States v. Villegas*, No. 07-cr-260, 2009 WL 1657072, at *5 (N.D. Ill. June 11, 2009) (explaining that line of questioning during cross-examination "opened the door" to re-direct examination where cross-examination "mislead the jury and left them with only part of the full picture").[2]

The Court's current rulings prohibiting Mr. Amar from eliciting testimony from any witnesses regarding Mr. Glazer's presence create a substantial risk that the jury has been left with the misleading impression that Mr. Glazer was unavailable or otherwise not present to address Mr. Vovor's concerns. That simply is not true, and the exhibits described below make clear that Mr. Glazer remained involved with Frank until it formally merged with JP Morgan in the middle of September 2021. The jury must be permitted to understand that Mr. Glazer was available to Mr. Vovor during this time period in order to understand that Mr. Vovor made the decision not to consult with Mr. Glazer and was not in some fashion deprived of the ability to do so.

### (3) Certain Documents Are Necessary to Show Mr. Glazer Was Present and Available to Mr. Glazer and Other Frank Employees in August 2021

Several of the documents Mr. Amar seeks to admit demonstrate that Mr. Glazer not only was present, but that he was in direct communication with Mr. Vovor, in the days and weeks following the August 2 conversation that Mr. Vovor claims he had with Ms. Javice and Mr. Amar. Mr. Amar should be able to present these documents to the jury for at least two reasons. First, they establish that Mr. Vovor could have spoken with Mr. Glazer at any time after those conversations in early August that he claimed so unsettled him, but that he chose not to do so even

---

[2] A ruling by the Court during Mr. Vovor's testimony further highlights the relevance of Mr. Glazer's presence (or lack thereof). During the Government's direct examination of Mr. Vovor, the Court based its ruling to permit Mr. Vovor's testimony partly on the fact that Mr. Glazer's absence contributed to Mr. Vovor's "feeling of illegality." Mar. 6 Tr. at 1537:7-13 ("THE COURT: The comment that Mr. Vovor refused to do what he was asked to do explains his conduct and makes it meaningful and raises the issue whether the two defendants were aware that at least their engineer was refusing to do something because of a feeling of illegality. That issue is raised in two ways, first by the absence of Mr. Glazer and the explanation that is given for that; and second, for the declination to act.").

Hon. Alvin K. Hellerstein, U.S.D.J.
March 24, 2025
Page 4

though he was communicating directly with Mr. Glazer on a variety of other matters. Second, their admission is necessary to cure the misleading impression created by the Government through its questioning of Mr. Vovor that suggested that Mr. Vovor did not raise the conversation with Mr. Glazer because Mr. Glazer had left Frank in August 2021. Mar. 11 Tr. at 1854:1-6 ("MS. BHASKARAN: "And you were asked questions about whether you told Mr. Glazer?" THE WITNESS: "Yes." MS. BHASKARAN: "What happened to Mr. Glazer in August of 2021, with respect to his role at Frank?" THE WITNESS: "He left Frank.").[3] That impression is not just misleading, but as these documents establish, it is untrue and that misimpression must be corrected to ensure that Mr. Amar receives a fair trial.

Specifically, DX OA 247 (an August 5, 2021 email chain involving Ms. Javice, Mr. Vovor, and Mr. Amar, and annexed as Exhibit A), makes clear not only that Mr. Glazer was still working at Frank on August 5, 2021, but that Mr. Vovor was in direct contact with Mr. Glazer within days of the August 1 and August 2 conversations that Mr. Vovor claims caused him great concern. Mr. Amar must be permitted to offer this email to show that Mr. Vovor not only knew he could contact Mr. Glazer but also to demonstrate that he had direct communications with Mr. Glazer during this time period. Similarly, DX OA 249 (an August 20, 2021 email chain between and among Ms. Javice, Mr. Vovor, and Mr. Glazer, and annexed as Exhibit B), DX OA 250 (an August 11, 2021 email chain between and among Mr. Vovor, Ms. Javice, and Mr. Glazer, and annexed as Exhibit C), and DX OA 253 (an August 27, 2021 email chain between and among Mr. Glazer, Ms. Zeitler, Ms. Wong, and Mr. Amar, and annexed hereto as Exhibit D) are relevant and admissible because they establish definitively that Mr. Glazer both remained employed by Frank in August 2021, and that he was directly accessible to Frank employees including Mr. Vovor himself.

### *(4) The Other Documents Mr. Amar Seeks to Admit Are All Relevant and Admissible*

Each of the documents Mr. Amar seeks to admit (listed below) is relevant and admissible for the reasons that follow. GX 802-72 (an August 3, 2021 slack message exchange between Ms. Javice and Mr. Glazer, and annexed as Exhibit E) is relevant and admissible because it makes it more likely that Mr. Amar understood Adam Kapelner, the data scientist, to be completing "aggregate data analysis stuff" for Ms. Javice, as Ms. Javice told Mr. Glazer in this chat, rather than creating synthetic data for JP Morgan's validation exercise. It is not hearsay because Mr. Amar is offering Ms. Javice's statement not for its truth, but to show what Mr. Amar believed about Dr. Kapelner's work.

DX OA 24 and DX OA 24-A (a March 9 and 10, 2021 slack message exchange between Ms. Javice and Mr. Amar as well as its attachment, which are annexed as Exhibit F) are relevant and admissible because they show Mr. Glazer specifically editing the phrase "4.25 million registered students" in Frank pitch materials to remove the word "registered" (meaning signed up for an account), but otherwise taking no issue with the 4.25 million number or how it is defined. Mr. Amar helped prepare Frank's pitch materials and received them in both draft and final form. It is not hearsay because Mr. Amar is offering it to show Mr. Glazer did *not* say/edit the

---

[3] The Government elicited this testimony from Mr. Vovor on redirect. Mr. Amar did not get an opportunity to recross Mr. Vovor to introduce these documents and correct the record. So, as it stands, the record is inaccurate and misleading.

Hon. Alvin K. Hellerstein, U.S.D.J.
March 24, 2025
Page 5

representation that subsequently was included in pitch materials (*i.e.*, that he was comfortable referring to 4.25 million website visitors as "4.25 million students" as long as they were not called "registered students").

DX OA 27 (a January 21, 2021 slack message exchange between and among Mr. Glazer, Ms. Javice, and Mr. Amar, and annexed as Exhibit G) and GX 802-24 (a January 19, 2021 slack message exchange between and among Mr. Glazer, Ms. Javice, and Mr. Amar, and annexed as Exhibit H) are relevant and admissible because they disprove fraudulent intent, and for completeness. Specifically, the Government introduced GX 802-63 showing Mr. Amar instructing Jen Wong to put "4.25 million students trust Frank" on the Frank website. GX 802-24 shows that this request originated from Ms. Javice, that Mr. Glazer objected to the language Ms. Javice originally proposed to describe the 4.25 million number, and that Mr. Amar did not update the website after he saw Mr. Glazer object. DX OA 27 shows that Mr. Amar subsequently asked Mr. Glazer to "put to bed the 4.25 millions users wording," and did not act without Mr. Glazer's say-so. These documents are highly probative of Mr. Amar's good faith state of mind. They also make it more likely that, when Mr. Amar subsequently heard and saw the 4.25 million number during diligence, he understood it to mean the same thing as Mr. Glazer approved for the website—*i.e.*, web visitors not account sign-ups. They are not hearsay because Mr. Amar is offering them to disprove mens rea and to establish Mr. Glazer's role at Frank for due diligence. Additionally, Mr. Glazer's statements in GX 802-24 are not hearsay because Mr. Amar is offering them to show their effect on the listener (*i.e.*, Mr. Amar did not act when Mr. Glazer said to wait).

GX 1160 (a June 30, 2021 email between and among various LionTree employees, Ms. Javice, and Mr. Glazer, and annexed hereto as Exhibit I) along with its attachments are relevant and admissible because it shows that Mr. Glazer missed alleged misrepresentations in emails and attachments on which he was copied during diligence, making it more likely that Mr. Amar missed the same in correspondence copying him. They also undermine the existence of a conspiracy because they show Mr. Javice making alleged misrepresentations in the presence of Mr. Glazer (and not Mr. Amar). Similar docs are already in evidence (GX 3023, GX 3026/A, and GX 3027/A).

Accordingly, we respectfully request that the Court receive the following exhibits into evidence: DX OA 247, DX OA 249, DX OA 250, DX OA 253, GX 802-72, DX OA 24, DX OA 24-A, DX OA 27, GX 802-24, and GX 1160.

    Respectfully yours,

    /s/ *Sean S. Buckley*
    Sean S. Buckley
    Jonathan D. Cogan
    Matthew I. Menchel
    Alexandria E. Swette
    KOBRE & KIM LLP

Hon. Alvin K. Hellerstein, U.S.D.J.
March 24, 2025
Page 6

    800 Third Ave.
    New York, NY 10022
    Tel: (212) 488-1200

    Jake Rush (admitted *pro hac vice*)
    KOBRE & KIM LLP
    1919 M Street, NW
    Washington, DC 20036
    Tel: (202) 664-1900

    *Counsel for Defendant Olivier Amar*