

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 27, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Streets
New York, New York 10007

      Re:    *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

The Government respectfully writes to propose certain additions to the jury charge in light of the charge conference, as well as the parties' summations.

### I. The Court Should Reject the Defendants' Proposed Revisions to the Co-Conspirator Statements' Instruction

The defendant's proposed additions to the co-conspirator statements instruction are contrary to settled law and must be rejected. No changes should be made to this charge.

First, the defendants propose this addition:

> You are reminded that a defendant's membership in the conspiracy must be established by independent evidence of that defendant's own acts or statements, and not solely by the acts or statements of others.

The authority cited by Amar at the charge conference is wholly inapposite and concerns the preliminary factual determination made by *the Court*—not the jury—under Federal Rule of Evidence 104(a) as to whether to *admit into evidence* co-conspirator statements. *See United States v. Tellier*, 83 F.3d 578, 580-81 (2d Cir. 1996); *see also United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003) ("These are preliminary facts for the district court to determine under a 'preponderance of the evidence' standard.")

With respect to that preliminary factual determination by the Court, the Court may find under the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171 (1987) that Mr. Amar was in the conspiracy based on his co-conspirator's statements (*i.e.*, Javice's statements), but there must also be "*some* independent, corroborating evidence" of Amar's participation in the conspiracy. There is ample evidence of Amar's participation in the conspiracy beyond Javice's

co-conspirator statements. For example, but not exclusively:

- Amar's own statements to Javice establish his participation in the conspiracy, specifically his WhatsApp messages to Javice;

- Amar's own misrepresentations to Capital One and J.P. Morgan (made together with Javice) establish his participation in the conspiracy;

- Amar's role in viewing and editing, with Javice, a fraudulent spreadsheet on June 24, 2021, that was provided to both banks during diligence;

- Amar's actions in the first week of August 2021, following J.P. Morgan's data validation request, to purchase a 4.5-million-person customer list from ASL Marketing, and his attempted efforts to purchase a several-million-person customer list from Exact Data also establish his participation in the conspiracy;

- Amar's role in doctoring the invoices for ASL Marketing and Exact Data; and

- Amar's role in transferring the purchased data to J.P. Morgan in January and February 2022 in response to a request for Frank's user data also establish his participation in the conspiracy.

Javice's co-conspirator statements were properly admitted against Amar during trial under Rule 104(a) and *Bourjaily*—and vice versa with respect to Amar's co-conspirator statements against Javice—which is a matter for the Court, not the jury. The additional changes proposed make the charge confusing; no change should be made.

In addition, this proposed addition by the defendants is simply wrong: "However, if the acts were done or the statements made by someone who you find was not a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, then they may not be considered by you *as evidence against a defendant*." (emphasis added). Needless to say, criminal trials involve reams of evidence consisting of acts and statements by non-conspirators that are obviously competent evidence against a defendant—here, for example, the acts and statements in the trial record of everyone involved in this trial except for Javice and Amar.

In short, no changes should be made. The proposed changes not only lack a basis in law, but they are confusing and will mislead the jury.

## II. The Jury Should Be Instructed that Disclaimers in a Contract Do Not Erase Evidence of Fraud

During Javice's summation, defense counsel repeatedly argued that the jury should consider the presence or absence of certain disclaimers or representations in the underlying merger agreement in determining whether the defendants are guilty of the charged fraudulent scheme. At the conclusion of summation, Javice's counsel even went so far as to argue that the case before the jury should, in fact, be properly considered as a civil dispute, rather than a criminal case. *See, e.g.*,

Tr. 3656:1-3 ("If this case walks like a civil case, quacks like a civil case, it's probably because that's what it was."). Such argument is improper, designed to confuse the jury, and is contrary to the law. "Contractual disclaimers . . . may in some circumstances defeat a civil claim for damages based on fraud," but "they do not bear on the defendant's criminal liability." *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017) ("fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance.") The risk of juror confusion is particularly high given the length of time that Javice's counsel spent in summation improperly arguing about the significance of the underlying agreement governing JP Morgan Chase's acquisition of Frank. The Government therefore respectfully requests that, when the Court instructs the jury on materiality, the Court also provide the following instruction to the jury, consistent with the Second Circuit's decision in *Weaver*.

> You have heard testimony and questions regarding the terms of a contract. Misrepresentations are not limited to what may, or may not be, contained in a contract. If there is intentional deception, the manner in which it is accomplished does not matter. Contractual disclaimers about certain misrepresentations do not make those misrepresentations immaterial under the criminal mail and wire fraud statutes. A defendant who lies to induce a victim to make a worthless investment can still be criminally liable whether or not the contract contains disclaimers or warranties.[1]

### III. The Court Should Remove References to "Willfully" in the Wire Fraud Charge

The Government objects to the Court's proposed charge on Count Two, which, as drafted, incorrectly includes a willfulness requirement. As the Government noted during the charge conference, the Court's proposed charge is inconsistent with the plain text of the statute, and Courts in this Circuit have routinely held that the mail and wire fraud statutes do not require the Government to prove that a defendant acted willfully. *United States v. Novis*, No. 20-CR-335 (JMA), 2023 WL 4746541, at *22 (E.D.N.Y. July 24, 2023) ("willfulness is simply not an element of mail and wire fraud"); *United States v. Gole*, 21 F. Supp. 2d 161, 167 (E.D.N.Y. 1997)

---

[1] Adapted in part from the charges of the Honorable Katherine Polk Failla in *United States v. Atuana et al*, No. 16 Cr. 272 (Jan. 29, 2018). *See also Neder v. United States*, 527 U.S. 1, 16 (1999) ("In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." (internal quotation marks, brackets, and citations omitted)); id. 24-25 (the "common-law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes"); *United States v. Males*, 459 F.3d 154, 158-59 (2d Cir. 2006) ("[W]here a defendant fraudulent obtains the use of another's money or property for a period of time, using it for his own personal profit, and depriving the owner of the ability to do so," that constitutes a scheme to defraud, and "it makes no difference" whether the defendant obtains the use of the property "temporarily . . . or permanently."); *see also United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) ("Fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance.").

("'willfully' appears nowhere in the mail fraud statute, and the Second Circuit has expressly held that the only scienter requirement for a violation of Section 1341 is that the acts proscribed be carried out knowingly").

### IV. The Court Should Not Alter a Standard Fraudulent Intent Instruction

The Court's original proposed charge included the following instruction on fraudulent intent as to Count Four: "It does not matter whether the alleged unlawful conduct was successful or not, or that the defendant profited or received any benefits as a result of the alleged scheme. Success is not an element of the crime charged. **However, if you find that the defendant did profit from the alleged scheme, you may consider that in relation to the element of intent, which I will discuss in a moment**."

At the charge conference, counsel for Amar objected – without explanation – to the text in bold, and the Court – without explanation – agreed to strike it. The Court's original proposed instruction is a correct statement of the law and is a standard instruction for fraudulent intent for securities fraud. *United States v. Bill Hwang et al.*, No 22 Cr. 240 (AKH) (S.D.N.Y. Jul. 7, 2023); 2B Fed. Jury Prac. & Instr. § 62:03 (6th ed.). The Court should not alter this standard charge.

### V. The Court Should Provide a Presence of Counsel Instruction

The Government respectfully requests that the Court provide a presence of counsel instruction in light of improper argument by both defendants, during summation, regarding the presence or absence of lawyers in various aspects of due diligence. *See, e.g.*, Tr. 3676:16-19 ("[T]his language was approved by the chief legal officer of the company."). The Court had previewed, during the charge conference, that it would consider providing such an instruction if any arguments about presence of counsel were made before the jury. Tr. 3496:23-25 (THE COURT: "I will consider such a [presence of counsel] charge if there is argument that . . . suggests to the jury they might so find.") Both defendants nevertheless argued presence of counsel in summation. In response to objections from the Government during summations, the Court issued a curative instruction regarding presence of counsel. The full instruction is now appropriate and warranted.

> You have heard evidence that Frank and the defendants had lawyers. A lawyer's involvement with an individual or entity does not itself constitute a defense to any charge in this case. The defendants have not claimed, and cannot claim, that the defendants' conduct was lawful because they acted in good faith on the advice of a lawyer.[2]

### VI. The Court Should Instruct the Jury that the Government Is Not on Trial

---

[2] Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (S.D.N.Y. Nov. 2, 2023); the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (S.D.N.Y. Oct. 14, 2022); and the Honorable Analisa Torres in *United States v. Shea*, No. 20 Cr. 412 (S.D.N.Y. May 23, 2022).

The Government also respectfully requests that the Court instruct the jury that the Government is not on trial. During both defendants' summations, the Court sustained several objections by the Government to statements by defense counsel that improperly characterized the prosecution's motives, including arguments that the Government had coached witnesses, had hidden or withheld evidence from the jury, or that the Government had an improper motive in charging the defendants, including:

- "They called a kid that had just been graduated from college for six months to testify." Tr. 3599.

- "We're here, they took an oath just like us, and they're obligated to tell the truth. Obligated. And in many instances the government knew certain things and steered you away." Tr. 3621.

- "I want you to notice the way this question was asked on direct examination by Mr. Fergenson. It is an astonishingly-phrased question." Tr. 3681.

- "I want to pause here for a moment. This is frightening. It really is. This man is on trial for his liberty, and if I hadn't gotten up on cross-examination, you would have been led to believe, on Mr. Cowan's testimony on direct with Mr. Fergenson, that he said those things. He never did. This is about a serious a case as you can possibly have and they were so loose with their language in the beginning it is, frankly, frightening." Tr. 3669.

- "[The witness] knew that the prosecutor wanted him to give more information . . . That wasn't the answer Mr. Fergenson was hoping to get." Tr. 3670.

- "Once again, that's terrifying. This is about as serious a case as you can have. And again, I'm not suggesting he was lying. You go over a story five times, 10 times, 15 times, and your memory get shaped in a different way from what it was. That happened a lot here." Tr. 3727.

- "So I'm going to end on this. The founders of our country were actually pretty smart, because they recognized that sometimes our government gets things wrong. . . . But they're human beings like the rest of us, and sometimes when you put blinders on, you come into a case with a view, you disregard everything that doesn't fit, because you have a mindset. And the founders of this nation realized that sometimes our government can get it wrong, sometimes they can overreach, and that's why we have you." Tr. 3731.

There is no evidence of government misconduct in this case or that the government "coached" witnesses, and the defense has pointed to none. *See United States v. Young*, 470 U.S. 1, 9 (1985) ("Defense counsel, like his adversary, must not be permitted to make unfounded and inflammatory attacks on the opposing advocate."); *see also United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) ("While it was the court's role, not the prosecution's, to instruct the jury that this question was not before them, the government hardly deprived Sabir of a fair trial by

briefly alluding to the[] improper arguments [about the defendant being the victim of selective prosecution] in reminding them of the judge's instruction."). Where the defendant attempts to suggest otherwise, an instruction that the Government is not on trial is appropriate and warranted. *See United States v. Knox*, 687 F. App'x 51, 54 (2d Cir. 2017) (upholding instruction that "the government is not on trial" as "appropriate"). As a result, the Government respectfully requests the following charge:

> The Government is not on trial, and there is no evidence that the Government is operating under any kind of improper motive in this case. You must base your decisions only on the evidence that has been presented at trial in determining whether the Government has met its burden of proving each defendant's guilt beyond a reasonable doubt.[3]

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:   /s/
Rushmi Bhaskaran
Nicholas W. Chiuchiolo
Micah F. Fergenson
Georgia V. Kostopoulos
Assistant United States Attorneys
212-637-2439 / -1247 / -2190 / -2212

---

[3] Adapted from the charges of the Honorable Rachel P. Kovner in *United States v. Gentile*, No. 21 Cr. 54 (E.D.N.Y. July 31, 2024).