# **Exhibit 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

                  :

UNITED STATES OF AMERICA      :   **S1 23 Cr. 251 (AKH)**

                  :

     - v. -          :   Declaration in Support of Application for a

                  :   Preliminary Order of Forfeiture as to Specific

CHARLIE JAVICE           :   Property/Money Judgment

                  :

        Defendant.     :

                  :

------------------------------------------------------- x

SOUTHERN DISTRICT OF NEW YORK) ss.:

      JEREMY ROSENMAN, being first duly sworn, hereby deposes and states as follows:

      1. I am a Special Agent with the Federal Deposit Insurance Corporation, Office of Inspector General ("FDIC-OIG" or "Investigating Agency"). I have been employed as a Special Agent for the FDIC-OIG since September 2024, and I was previously a Special Agent in the United States Attorney's Office for the Southern District of New York for approximately eight years. During my time as a Special Agent, I have participated in investigations of securities, wire, and bank fraud schemes, and have, among other things, conducted or participated in debriefings of witnesses, reviews of financial records, the execution of search warrants, and the execution of seizure warrants. I have personally participated in the instant investigation.

      2. The information contained in this affidavit is based upon my personal knowledge and involvement in the investigation of this matter, as well as information obtained from other sources, including conversations with other law enforcement officers and others, as well as my review of documents gathered during the course of this investigation. Because this affidavit is being submitted for a limited purpose, it does not include every fact that I have learned during the course of the investigation. Where the contents of documents and actions, statements and conversations

of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. I make this Declaration in support of the Government's application for a preliminary order of forfeiture, finding the defendant, CHARLIE JAVICE ("JAVICE" or "defendant"), liable for a personal money judgment in the amount of $29,706,747.49, and forfeiting all of her right, title and interest in the property (the "Specific Property") listed in the proposed Preliminary Order of Forfeiture as to Specific Property/Money Judgment and attached hereto as **Exhibit A** (the "POF").

4. As set forth in more detail below and in my declaration dated April 14, 2023, that was previously submitted to obtain seizure warrants, which is attached hereto as **Exhibit B** through and incorporated by reference herein (the "Seizure Warrant Declaration"), the Specific Property is subject to forfeiture pursuant to Title 18, United States Code, 982(a)(2)(A) as property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the defendant's commission of the offenses in Superseding Indictment S1 23 Cr. 251 (AKH).

### The April 14, 2023 Seizure Warrant Declaration and Seized Accounts

5. As set forth in the Seizure Warrant Declaration:

a. JAVICE had several accounts at JPMC (the "Javice JPMC Accounts") [1] that received a total of approximately $22,360,977.48, representing JAVICE's share of the proceeds

---

[1] As used herein, the Javice JPMC Accounts include the accounts identified in the Seizure Warrant Declaration as well as three additional accounts: JPMC bank account 3375997565 held in the name "Charlie Javice 2021 Irrevocable Trust 1" (the "7565 Account"); JPMC bank account E35674002 held in the name "Charlie Javice 2021 Irrevocable Trust 1" (the "4002 Account"); and JPMC bank account number E73735004 held in the name "Charlie Javice 2021 Irrevocable Trust 2" (the "5004 Account").

from the Frank acquisition and/or her compensation from JPMC (the "JPMC Fraud Proceeds").
(Ex. B ¶ 14(a)-(d)).

    b.  JAVICE transferred the JPMC Fraud Proceeds to accounts held at Signature Bank.
(*Id.* ¶ 14(e)-(i)).

    c.  From Signature Bank, Javice transferred JPMC Fraud Proceeds to Wells Fargo
account 5697414513 is held in the name of BX5 LLC (the "BX5 4513 Account").

    d.  From the BX5 4513 Account, approximately $8,590,244.60 was sent to Fidelity
Brokerage Services LLC, account Z23 548090, held in the name of Charlie Javice (which was
identified as Target Account-2 in the Seizure Warrant Affidavit and is identified as the "Fidelity
Account" in the POF).

    e.  Also from the BX5 4513 Account, a total of approximately $3,658,814.44 (through
five separate transactions) was transferred to savings account 1573700687 at Wells Fargo, also in
the name of BX5 LLC (which was identified as Target Account-3 in the Seizure Warrant Affidavit
and whose funds are identified as the "WF Seized Funds" in the POF).

6. The Government served seizure warrants on Fidelity and Wells Fargo for the Fidelity
Account and the WF Seized Funds, respectively.  Instead of liquidating the assets in the Fidelity
account, Fidelity has maintained custody of the seized assets.  Wells Frago transferred the cash
remaining in the seized account.[2]

## The City National Seized Funds

7. As set forth in the Seizure Warrant Affidavit, approximately $2 million of JPMC Fraud
Proceeds was sent from the Fidelity Account to Quinn Emanuel Urquhart Sullivan LLP ("Quinn

---

[2] While over $3.6 million in JPMC Fraud Proceeds had been transferred to the Wells Fargo
account, only $2,056,356.39 remained upon execution of the seizure warrant.

Emanuel"). (Ex. B. at 13 n.5). Based on my discussion with other law enforcement officers, I know that as a result of the seizure warrant, Quinn Emanuel transferred the unspent balance of the $2 million, approximately $959,643.98, to the Seized Asset Deposit Fund ("SADF") from City National Bank account 210032347 (identified in the POF as the "City National Seized Funds").

### The Flagstar (formerly Signature) Accounts

8. As set forth in the Seizure Warrant Affidavit, JAVICE transferred JPMC Fraud Proceeds to at least three accounts at Signature Bank (Ex. B ¶ 14(e)), which are identified in the POF as Flagstar Account-1, Flagstar Account-2 and Flagstar Account-3 (collectively, the "Flagstar Accounts").

9. Based on my review of records from Signature Bank, I have learned, in substance and in part, that the Flagstar Accounts have been frozen and held approximately the following amounts of JPMC Fraud Proceeds:

    a. $18,334.03 in Flagstar Account-1;

    b. $2,962.60 in Flagstar Account-2; and

    c. $15,723.51 in Flagstar Account-3.

### The Motive Capital Investment

10. From my review of records from JPMC I have learned the following, in substance and in part:

    a. On or about February 16, 2022, JAVICE transferred approximately $563,567.39 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to Motive Capital Fund II A LP ("the Motive Capital Investment").

    b. On or about June 24, 2022, JAVICE transferred approximately $132,873.87 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Motive Capital Investment.

c.  On or about March 9, 2023, JAVICE transferred approximately $23,804.49 of the JPMC Fraud Proceeds from the Signature Javice Accounts to the Motive Capital Investment.

11. From my involvement in this case, I know that on or about January 4, 2024, the Court entered a Stipulation and Order between the Government and Motive Capital Fund II-A, GP, LP ("Motive Capital") authorizing Motive Capital to liquidate JAVICE's interest in Motive Capital Fund II-A, LP and Motive Capital Fund-B, LP (together, the "Motive Fund") and deposit the net proceeds of such a sale in the SADF pending a final order of forfeiture.

12. Pursuant to the Stipulation and Order, Motive Fund transferred $250,175 in United States currency representing the net proceeds of the sale of JAVICE's interest in the Motive Fund.

## The Apollo Investments

13. From my review of records from JPMC I have learned the following, in substance and in part:

a.  On or about February 2, 2022, JAVICE transferred approximately $2,500,000 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Apollo Total Return Fund Onshore LP.

b.  On or about February 3, 2022, JAVICE transferred approximately $717,497.22 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Apollo Hybrid Value II, L.P ("the Apollo Hybrid Investment").

c.  On or about May 10, 2022, Javice transferred approximately $241,830.04 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Apollo Hybrid Investment.

d.  On or about August 3, 2022, Javice transferred approximately $341,701.55 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Apollo Hybrid Investment.

e.    On or about September 14, 2022, Javice transferred approximately $635,641.25 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Apollo Hybrid Investment.

14. From my review of records from Signature Bank I have learned the following, in substance and in part:

a.    On or about March 27, 2023, JAVICE transferred approximately $580,280.29 of the JPMC Fraud Proceeds from the Signature Javice Accounts to the Apollo Hybrid Investment.

## The Tiger Investment

2. From my review of records from JPMC I have learned the following, in substance and in part:

a.    On or about November 24, 2021, JAVICE transferred approximately $250,000 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to Tiger Global PIP XV Private Investors LLC ("the Tiger Investment").

b.    On or about December 6, 2021, JAVICE transferred approximately $82,500 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Tiger Investment.

c.    On or about January 14, 2022, JAVICE transferred approximately $42,819.55 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Tiger Investment.

d.    On or about March 16, 2022, JAVICE transferred approximately $37,500 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to the Tiger Investment.

## The Talos Trading Investment

3. From my review of records from JPMC I have learned the following, in substance and in part:

a.   On or about April 11, 2022, JAVICE transferred approximately $325,014.41 of the JPMC Fraud Proceeds from the JPMC Javice Accounts to Fenwick and West LLP for Talos Trading Series B.

4. Based on my review of publicly available information, I have learned, in substance and in part, that Talos Trading is a privately held company that raised a Series B funding round in or about May 2022, and was valued at that time at approximately $1.25 billion.

**The Corporate Leasing Associates Inc. Transfers**

5. From my review of records from Wells Fargo, I have learned the following, in substance and in part:

a.   On or about March 20, 2023, JAVICE transferred approximately $726,647.68 of the JPMC Fraud Proceeds from the BX5 4513 Account to Corporate Leasing Associates Inc.

6. From my review of records from Fidelity, I have learned the following, in substance and in part:

a.   On or about March 20, 2023, JAVICE transferred approximately $779,000 of the JPMC Fraud Proceeds from the Fidelity Account to Corporate Leasing Associates Inc.

Dated:  New York, New York
September 26, 2025

_____
JEREMY ROSENMAN
Special Agent
FDIC-OIG

# Rosenman Declaration

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

            - v. -

CHARLIE JAVICE,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:    PRELIMINARY ORDER OF
:    FORFEITURE AS TO SPECIFIC
    PROPERTY/
:    MONEY JUDGMENT
:
:    S1 23 Cr. 251 (AKH)
:

WHEREAS, on or about July 12, 2023, CHARLIE JAVICE (the "Defendant") and another, was charged in a four-count Superseding Indictment, S1 23 Cr. 251 (AKH) (the "Indictment"), with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349(Count One); wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 (Count Two); bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 (Count Three); and securities fraud, in violations of Title 15, United States Code, Sections 78j(b)&78ff; Title 17, Code of federal Regulations Section 240.10b-5; and Title 18, United States Code, Section 2 (Count Four);

WHEREAS, the Indictment included a forfeiture allegation as to Counts One through Three of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the Defendant obtained directly or indirectly, as a result of the commission of the offenses charged in Counts One through Three of the Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offenses charged in Counts One through Three of the Indictment and the following specific property:

    a.    All monies, assets, and funds contained in Fidelity Brokerage Services LLC, account Z23 548090 held in the name of Charlie Javice and seized by the Government on or about April 14, 2023 (the "Fidelity Account");

    b.    $959,643.98 of the monies, assets, and funds formerly on deposit at City National Bank, account 210032347 (City National Seized Funds");

    c.    $2,056,256.39 of the monies, assets, and funds formerly on deposit at Wells Fargo Bank, NA, account 1573700687 held in the name of BX5 LLC, seized by the Government on or about April 14, 2023 (the "WF Seized Funds");

WHEREAS, the Indictment included a second forfeiture allegation as to Count Four  of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense charged in Count Four of the Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offense charged in Count Four of the Indictment, and the Fidelity Account and WF Seized Funds;

WHEREAS, on or about January 4, 2024, the Court entered Stipulation and Order (the "Stipulation and Order") between the Government and Motive Capital Fund II-A, GP, LP ("Motive Capital") authorizing Motive Capital to liquidate the Defendant's interest in Motive Capital Fund II-A, LP and Motive Capital Fund-B, LP (together, the "Motive Fund") and deposit the net proceeds of such a sale in the Seized Asset Deposit Fund ("SADF") pending a final order of forfeiture;

WHEREAS, on or about March 28, 2025, the Defendant was found guilty, following a jury trial, of Counts One through Four of the Indictment;

WHEREAS, the Government asserts that, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A) and Title 28, United States Code, Section 2461(c), $29,706,747.49 in United States currency represents the amount of proceeds traceable to the offenses charged in Counts One through Four of the Indictment, that the Defendant personally obtained;

WHEREAS, the Government seeks a money judgment in the amount of $29,706,747.49 in United States currency, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A) and Title 28 United States Code, Section 2461(c), representing the proceeds traceable to the commission of the offenses charged in Counts One through Four of the Indictment, that the Defendant personally obtained;

WHEREAS, the Government asserts that the following property constitutes the proceeds traceable to the offenses charged in Counts One through Four of the Indictment, that the Defendant personally obtained:

    a. The Fidelity Account;

    b. The City National Seized Funds

    c. The WF Seized Funds;

    d. Any and all funds up to approximately $18,334.03 in United States currency currently on deposit in account 1504682613 held in the name of Chariot Holdings I LLC at Flagstar Bank (formerly Signature Bank) ("Flagstar Account-1");

    e. Any and all funds up to approximately $2,962.60 in United States currency currently on deposit in account 1504682621 held in the name of Chariot Holdings II LLC, at Flagstar Bank (formerly Signature Bank) ("Flagstar Account-2");

    f. Any and all funds up to approximately $15,723.51 in United States currency currently on deposit in account 1504680408 held in the name of Chariot

Holdings X LLC, at Flagstar Bank (formerly Signature Bank) ("Flagstar Account-3");

g.  $250,175 in United States currency representing the net proceeds of the sale of the Motive Fund that occurred on or about January 4, 2024;

h.  Any and all interest of the Defendant in the Apollo Total Return Fund Onshore LP, up to $2,500,000 plus any appreciation accrued from February 2, 2022;

i.  Any and all interest of the Defendant in the Apollo Hybrid Value II, L.P., up to $2,500,000 in United States currency plus any appreciation accrued from February 2, 2022;

j.  Any and all interest of the Defendant in the Apollo Value Hybrid Fund, up to $2,516,950.35 in United States currency plus any appreciation accrued from February 3, 2022;

k.  Any and all interest of the Defendant in the Tiger Global PIP XV Private Investors LLC up to $412,819.55 in United States currency plus any appreciation accrued from November 24, 2021;

l.  Any and all interest of the Defendant in Talos Trading Series B up to $325,014.41 in United States currency plus any appreciation accrued from April 11, 2022; and

m.  Any and all interest of the Defendant in Corporate Leasing Associates Inc., up to $1,505,647.68 in United States currency plus any appreciation accrued from March 20, 2023

(a. through m., collectively, the "Specific Property");

WHEREAS, the Government further seeks the forfeiture of the Defendant of all his right, title and interest in the Specific Property, as property constituting proceeds traceable to the offenses charged in Counts One through Four of the Indictment, that the Defendant personally obtained;

WHEREAS, the Court finds that as a result of acts and/or omissions of the Defendant, the proceeds traceable to the offenses charged in Counts One through Four of the

Indictment that the Defendant personally obtained, cannot be located upon the exercise of due diligence with the exception of the Specific Property; and

WHEREAS, pursuant to Title 21, United States Code, Section 853(g), and Rules 32.2(b)(3), and 32.2(b)(6) of the Federal Rules of Criminal Procedure, the Government is now entitled, pending any assertion of third-party claims, to reduce the Specific Property to its possession and to notify any and all persons who reasonably appear to be a potential claimant of their interest herein;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      As a result of the offenses charged in Counts One through Four of the Indictment, to which the Defendant was found guilty, following a jury trial, a money judgment in the amount of $29,706,747.49 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offenses charged in Counts One through Four of the Indictment that the Defendant personally obtained, shall be entered against the Defendant.

2.      As a result of the offenses charged in Counts One through Four of the Indictment, to which the Defendant was found guilty, all of the Defendant's right, title and interest in the Specific Property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853.

3.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Preliminary Order of Forfeiture as to Specific Property/Money Judgment is final as to the Defendant, CHARLIE JAVICE, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

4.      All payments on the outstanding money judgment shall be made by postal money order, bank or certified check, made payable, in this instance, to the United States Marshals

Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Illicit Finance and Money Laundering Unit, 26 Federal Plaza, 38th Floor, New York, New York 10278 and shall indicate the Defendant's name and case number.

5.      The United States Marshals Service is authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

6.      Upon entry of this Preliminary Order of Forfeiture as to Specific Property/Money Judgment, the United States Marshals Service (or its designee) is hereby authorized to take possession of the Specific Property and to hold such property in its secure custody and control.

7.      Pursuant to Title 21, United States Code, Section 853(n)(1), Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, and Rules G(4)(a)(iv)(C) and G(5)(a)(ii) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, the United States is permitted to publish forfeiture notices on the government internet site, www.forfeiture.gov.  This site incorporates the forfeiture notices that have been traditionally published in newspapers. The United States forthwith shall publish the internet ad for at least thirty (30) consecutive days.  Any person, other than the defendant, claiming interest in the Specific Property must file a Petition within sixty (60) days from the first day of publication of the Notice on this official government internet web site, or no later than thirty-five (35) days from the mailing of actual notice, whichever is earlier.

8.      The published notice of forfeiture shall state that the petition (i) shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Specific Property, (ii) shall be signed by the petitioner under penalty of perjury, and (iii) shall set forth the nature and

extent of the petitioner's right, title or interest in the Specific Property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the Specific Property, any additional facts supporting the petitioner's claim, and the relief sought, pursuant to Title 21, United States Code, Section 853(n).

9.    Pursuant to 32.2 (b)(6)(A) of the Federal Rules of Criminal Procedure, the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

10.    Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to the Specific Property pursuant to Title 21, United States Code, Section 853(n), in which all interests will be addressed. All Specific Property forfeited to the United States under a Final Order of Forfeiture shall be applied towards the satisfaction of the Money Judgment.

11.    Pursuant to Title 21, United States Code, Section 853(p), the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment.

12.    Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas.

13.    The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture as to Specific Property/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

Dated: New York, New York
       September____, 2025

                                     SO ORDERED:


                                     _____
                                     HONORABLE ALVIN K. HELLERSTEIN
                                     UNITED STATES DISTRICT JUDGE

# Rosenman Declaration

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

23MAG        3022

UNITED STATES OF AMERICA

-v.-

All monies, assets, and funds contained in
Interactive Brokers LLC, account U6819438,
held in the name of Olivier Amar ("Target
Account-1"), and all assets and funds traceable
thereto, including accrued interest;

$8,590,244.60 of the monies, assets, and funds
contained in Fidelity Brokerage Services LLC,
account Z23 548090, held in the name of
Charlie Javice ("Target Account-2") and all
assets and funds traceable thereto, including
accrued interest; and

$3,658,814.44 of the monies, assets, and funds
contained in Wells Fargo Bank, NA, account
1573700687, held in the name of BX5 LLC
("Target Account-3") and all assets and funds
traceable thereto, including accrued interest,

Defendants-in-rem.

**TO BE FILED UNDER SEAL**

**Affidavit in Support of Seizure
Warrant**

**Pursuant to 18 U.S.C. §§ 981 and 984**

SOUTHERN DISTRICT OF NEW YORK) ss.:

JEREMY ROSENMAN, being first duly sworn, hereby deposes and states as follows:

1.      I am a Special Agent in the United States Attorney's Office for the Southern District

of New York (the "USAO" or "Investigating Agency"). I have been employed by the USAO

since 2016. As such, I am a "federal law enforcement officer" within the meaning of Federal

Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the

criminal laws and duly authorized by the Attorney General to request a Rule 41 warrant. During

my time with the USAO, I have participated in investigations of securities, wire, and bank fraud

1

schemes, and have, among other things, conducted or participated in debriefings of witnesses, reviews of financial records, the execution of search warrants, and the execution of seizure warrants.

2.      This affidavit is submitted in support of the United States of America's Application for the issuance of seizure warrants, pursuant to 18 U.S.C. §§ 981 and 984, for:

a.      All monies, assets, and funds contained in Interactive Brokers LLC, account U6819438, held in the name of Olivier Amar ("Target Account-1") and all assets and funds traceable thereto, including accrued interest; and

b.      $8,590,244.60 of the monies, assets, and funds contained in Fidelity Brokerage Services LLC, account Z23 548090, held in the name of Charlie Javice ("Target Account-2") and all assets and funds traceable thereto, including accrued interest; and

c.      $3,658,814.44 of the monies, assets, and funds contained in Wells Fargo Bank, NA ("Wells Fargo"), account 1573700687, held in the name of BX5 LLC ("Target Account-3") and all assets and funds traceable thereto, including accrued interest (a. through c. collectively, the "Target Property.")

3.      This affidavit is based upon my personal knowledge, my training and experience, my review of documents and other evidence, and my conversations with other law enforcement personnel and other individuals.   Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.   Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4.      The Target Accounts contain property (*i.e.*, the Target Property) constituting or

derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (wire fraud), 1344 (bank fraud), and 1349 (conspiracy to commit wire fraud and bank fraud) (the "Subject Offenses"), which is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(b), as described below.

## STATUTORY BASIS FOR FORFEITURE

5.      The statutory provisions pursuant to which the Target Property is subject to civil seizure and forfeiture are as follows:

6.      For purposes of Title 18, United States Code, Section 1956, "specified unlawful activity," defined in 18 U.S.C. § 1956(c)(7), includes, among other things, violations of 18 U.S.C. §§ 1343 and 1344.   *See* 18 U.S.C. §§ 1956(c)(7) and 1961(1).

7.      Title 18, United States Code, Section 981(a)(1)(C), subjects to civil forfeiture any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

8.      The Court is empowered by 18 U.S.C. § 981(b) to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).   Section 981(b)(2) provides that such a seizure may be made "pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure."   In addition, Section 981(b)(3) provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b).   Under Section 1355(b)(1)(A), a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.

3

As set forth in the Complaint, the offenses underlying the requested seizure warrant included acts or omissions occurring in the Southern District of New York.

9. With respect to fungible property, including cash and funds deposited in a financial institution, 18 U.S.C. § 984 provides, in relevant part, that:

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution . . . , or precious metals:

> (A)    it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

> (B)    it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

>   (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

## PROBABLE CAUSE AS TO THE SUBJECT OFFENSES

10. On or about March 31, 2023, the Honorable Robert W. Lehrburger authorized a criminal complaint (the "Complaint") charging CHARLIE JAVICE, the former CEO of Frank, with 18 U.S.C. §§ 1349 (conspiracy to commit bank and wire fraud); 1343 (wire fraud); 1344 (bank fraud); and 2 (aiding and abetting); and 15 U.S.C. §§ 78j(b) & 78ff, and 17 C.F.R. § 240.10b-5 (securities fraud), and issued a warrant for JAVICE's arrest. The Complaint is attached hereto as Exhibit 1 and incorporated as if set forth fully herein. As set forth in the Complaint, and as I have learned from my review of records from JP Morgan & Chase ("JPMC"), records from other

4

third parties involved in the acquisition of Frank by JPMC, and from interviews of witnesses:

      a.      JAVICE founded the company Frank in or about 2017 as a for-profit company that would assist college students with federal financial aid. JAVICE was the CEO of Frank, and OLIVIER AMAR—who is identified as "CC-1" in the Complaint—was the Chief Growth Officer of Frank. *See* Ex. 1 ¶¶ 9, 13, 15-16.

      b.      In or about 2021, JAVICE and AMAR began to pursue the sale of Frank to a larger financial institution. Two major banks, one of which was JPMC, expressed interest and began acquisition processes with Frank. JAVICE represented repeatedly to those banks that Frank had 4.25 million customers or "users." JAVICE explicitly defined "users"—to both banks—as individuals who had signed up for an account with Frank and for whom Frank therefore had at least four identified categories of data (*i.e.*, first name, last name, email address, and phone number). In fact, Frank had less than 300,000 users. *See* Ex. 1 ¶¶ 10, 18-19, 22-23.

      c.      When JPMC sought to verify the number of Frank's users and the amount of data collected about those users—information that was critical to JPMC's decision to move forward with the acquisition process—JAVICE fabricated a data set, which was provided to a third-party validator that verified certain information for JPMC. *See* Ex. 1 ¶¶ 11, 21, 24-26.

      d.      In reliance on JAVICE's fraudulent representations about Frank's users, JPMC agreed to purchase Frank for $175 million. JAVICE and AMAR made millions of dollars from the acquisition. *See* Ex. 1 ¶¶ 12, 31.

      e.      Unbeknownst to JPMC, at or about the same time that JAVICE was creating the fabricated data set, JAVICE and AMAR sought to purchase, on the open market, *real* data for over 4.25 million college students to cover up their lies. JAVICE and AMAR succeeded in

purchasing a data set of 4.5 million students for $105,000, but it did not contain all the data fields that JAVICE had represented to JPMC were maintained by Frank.    JAVICE then purchased an additional set of data on the open market, in order to augment the data set of 4.5 million users. After JPMC acquired Frank, JPMC employees asked JAVICE and AMAR to provide the data set of Frank users so that JPMC could begin a marketing campaign to those users.    In response, JAVICE provided what was supposedly Frank's user data.    In fact, JAVICE provided the data she and AMAR had purchased on the open market, at a small fraction of the price that JPMC paid to acquire Frank and its purported users.    *See* Ex. 1 ¶¶ 13, 28-30.

## PROBABLE CAUSE AS TO THE TARGET PROPERTY

11.    As set forth below, the Target Property is traceable to the proceeds of the fraud against JPMC perpetrated by JAVICE and AMAR.

### AMAR Transfers Fraud Proceeds to Interactive Brokers LLC

12.    From my review of records provided by JPMC and Interactive Brokers LLC, I have learned, in substance and in part, that AMAR transferred a significant portion of his share of the fraudulent proceeds from the Frank-JPMC acquisition to Target Account-1.    In particular:

a.    Approximately one day after the JPMC-Frank acquisition closed, on or about September 22, 2021, AMAR received approximately $2,496,307.94—representing his payout from JPMC, and thus proceeds of the fraud—into JPMC account 287819707 (the "9707 Account"), held in the name of AMAR and his spouse, Noa Scala.

b.    Approximately two days later, on or about September 24, 2021, AMAR transferred approximately $2,250,000.00 from the 9707 Account to Target Account-1, which is a brokerage account at Interactive Brokers LLC, account number U6819438, held solely in the name

6

of AMAR.

        c.      At the time of the September 24, 2021 transfer into Target Account-1, Target Account-1 held no property.

        d.      Since the September 24, 2021 transfer into Target Account-1, there have been withdrawals from Target Account-1, but no deposit other than the initial approximately $2,250,000.00.[1]

        e.      On or about April 4, 2023, a Special Agent with the Federal Deposit Insurance Corporation's Office of Inspector General ("FDIC-OIG") sent a letter to Interactive Brokers LLC, directing it to "freeze" Target Account-1, that is, to prevent further withdrawals.

        13.      As of April 13, 2023, Target Account-1 had a net liquidating value of $1,257,369.13. Thus the entirety of Target Account-1 holdings constitute proceeds traceable to the fraud on JPMC.

### JAVICE Transfers Her Fraud Proceeds from JPMC to Signature Bank

        14.      From my review of records from JPMC and Signature Bank, I have learned the following, in substance and in part:

        a.      Beginning at around the time of the Frank acquisition, JAVICE opened multiple accounts at JPMC, including the following:

- JPMC bank account number 742186684 held in the name "Charlie Hannah Javice" (the "6684 Account");

- JPMC bank account number 3375997813 held in the name "Charlie Hannah

---

[1] Because Target Account-1 is an investment account, the account did receive monthly credits for dividends in relatively small amounts (*e.g.*, approximately $1500 in the month of February 2023). These dividends constitute property traceable to the fraudulent proceeds deposited in Target Account-1.

Javice" (the "7813 Account");

- JPMC bank account 742185678 held in the name "Charlie Javice 2021 Irrevocable Trust 1" (the "5678 Account");

- JPMC bank account number 3375997714 held in the name "Charlie Javice 2021 Irrevocable Trust 2" (the "7714 Account");

- JPMC bank account number 742186072 held in the name "Charlie Javice 2021 Irrevocable Trust 2" (the "6072 Account"); and

- JPMC bank account number 5469248004 held in the name "Charlie Hannah Javice" (the "8004 Account") (collectively, the "Javice JPMC Accounts").

b.    JAVICE was the sole signatory on the Javice JPMC Accounts.

c.    I have reviewed the monthly statements for the Javice JPMC Accounts for the time period from in or about September 2021, *i.e.*, the month that the JPMC-Frank acquisition closed, to in or about January 2023.   Based on my review of those statements, as well as closing documents related to the acquisition, I know that the 6684 Account and the 7813 Account received JAVICE's share of the proceeds from the Frank acquisition, as well as her salary and other compensation from JPMC owing to her employment at JPMC as a result of the Frank acquisition. The 7714 Account received JAVICE's compensation from JPMC. In other words, the JPMC Fraud Proceeds were initially deposited into these accounts.   In particular:

i.    On or about September 17, 2021, the 6684 Account received approximately $2,143,707.81 in funds representing a portion of JAVICE's share of the proceeds from the Frank acquisition.

ii.    On or about September 20, 2021, the 6684 Account received approximately $6,979,824.99 in funds representing another portion of JAVICE's share of the proceeds from the Frank acquisition.

8

iii.    Between in or about January 2022 and in or about November 2022, the 6684 Account received four deposits totaling approximately $512,796.48 identified as "payroll" deposits.

iv.    In or January and March 2022, the 7813 Account received two deposits representing another portion of JAVICE's share of the proceeds from the Frank acquisition that totaled approximately $205,188.50.

v.    On or about September 22, 2021, the 7714 Account received three deposits totaling approximately $12,277,844.80, and representing another portion of JAVICE's share of the proceeds from the Frank acquisition and/or her compensation from JPMC.    On or about September 30, 2021, the 7714 Account received an additional deposit of approximately $7,752.32 identified as a "payroll" deposit.

vi.    During the time relevant to JAVICE's employment with JPMC, that is, between in or about September 2021 and November 2023, the 6684 Account received regularly bi-weekly payroll deposits totaling approximately $233,862.48.

vii.    Accordingly, between in or about September 2021 to in or about January 2023, Javice JPMC Accounts 6684, 7813, and 7714 received a total of approximately $22,360,977.48, representing JAVICE's share of the proceeds from the Frank acquisition and/or her compensation from JPMC (the "JPMC Fraud Proceeds").

d.    As noted above, I have reviewed the monthly statements for the Javice JPMC Accounts for the time period of in or about September 2021 to in or about January 2023. In that time period, there are many transfers among the Javice JPMC Accounts.    However, the only other sources of incoming funds to the Javice JPMC Accounts (excluding transfers between

9

the Javice JPMC Accounts) are (1) checks from an accounting firm, (2) a November 2021 wire from an individual, (3) several checks, and (4) wire transfers appearing to be payments relating to investments—all of which together total less than approximately $400,000.

  e. On or about September 23, 2022, JAVICE transferred approximately $10 million of the JPMC Fraud Proceeds from the JPMC Javice Accounts to three accounts at Signature Bank. Specifically:

    i. Approximately $4,500,000 was transferred to Signature Bank account number 1504680408 (the "0408 Account") held in the name of Chariot Holdings X LLC;

    ii. Approximately $1,340,591 was transferred to Signature Bank account number 1504682613 (the "2613 Account") held in the name of Chariot Holdings I LLC;

    iii. Approximately $4,889,450 was transferred to Signature Bank account number 1504682621 (the "2621 Account") held in the name of Chariot Holdings II LLC;

  f. JAVICE controlled an additional seven accounts at Signature Bank, for a total of approximately ten accounts (the "Signature Javice Accounts").[2] The Signature Javice

---

[2] Specifically, the additional Signature Javice Accounts (*i.e.*, the accounts in addition to the 0408 Account, the 2613 Account, and the 2621 Account), are as follows:

- account 1504682788, held in the name of JAVICE,
- account 1504682796, held in the name of JAVICE,
- account 1504683083, held in the name of Chariot Holdings I LLC,
- account 1504683067, held in the name of Chariot Holdings II LLC,
- account 4500275826, held in the name of Chariot Holdings II LLC,
- account 1504683075, held in the name of Chariot Holdings X LLC, and
- account 4500275818, held in the name of Chariot Holdings X LLC.

Accounts were held in the name of JAVICE individually or LLCs that she controlled, namely: Chariot Holdings I LLC, Chariot Holdings II LLC, and Chariot Holdings X LLC.

g.    I have also reviewed records indicating that Javice transferred a tax refund from the IRS, which appears to relate to her receipt of the JPMC Fraud Proceeds, to one of the Signature Javice Accounts.  Specifically, a few months after the bulk of JAVICE's acquisition payout, on or about December 14, 2021, a transfer was made from the JPMC 8004 Account in the amount of approximately $4,831,311.95 to another JPMC account not in JAVICE's name.  Based on information from representatives of JPMC, I have learned that the December 14, 2021 transfer related to taxes owed to the Internal Revenue Service ("IRS") in relation to JAVICE's acquisition payout.  Approximately a year later, on or about December 1, 2022, JAVICE deposited a check in the amount of approximately $4,403,723.48, representing a tax refund from the IRS (and, in effect, a return of JPMC Fraud Proceeds), into the 6684 Account.   On or about December 5, 2022, JAVICE transferred approximately $4,410,000 of these JPMC Fraud Proceeds from the 6684 Account to one of the Signature Javice Accounts, namely, account 1504683075 held in the name of Chariot Holdings X LLC.

h.    Between September 2022 and March 13, 2023, there were transfers of funds amongst the Signature Javice Accounts.  However, the source of nearly the entirety of the incoming funds to the Signature Javice Accounts consisted of the funds formerly held in the JPMC Javice Accounts—*i.e.*, the JPMC Fraud Proceeds.  In particular, the only other incoming funds to the Signature Javice Accounts were payments from an accounting firm in a total amount of

approximately \$5,576.67.[3]

        i.     Accordingly, the funds held in the Signature Javice Accounts through at least March 13, 2023, consisted almost entirely of the approximately \$14 million in JPMC Fraud Proceeds transferred from the JPMC Javice Accounts.

**JAVICE Transfers Her Fraud Proceeds from Signature Bank to Wells Fargo and Fidelity**

        15.     From my review of records from Wells Fargo and Signature Bank, I have learned the following, in substance and in part:

        a.     Wells Fargo account 5697414513 is held in the name of BX5 LLC (the "BX5 4513 Account"). The sole signatory on BX5 4513 Account is JAVICE's boyfriend, Elliot Bertram.[4] As of March 12, 2023, the BX5 4513 Account had a balance of approximately \$20,580.82.

        b.     On or about March 13, 2023, the BX5 4513 Account received three wire transfers, for a total incoming amount of approximately \$12,249,149.04. Each of the wire transfers came from one of the Signature Javice Accounts. Specifically:

        i.     Approximately \$3,043,334.44 came from account 1504683067 held in the name of Chariot Holdings II LLC.

        ii.     Approximately \$8,590,244.60 came from account 1504683075 held

---

[3] There were also credits in the Signature Javice Accounts that appear to be interest payments accrued from the funds held in the Signature Javice Accounts. Thus these interest payments constitute property traceable to the fraudulent proceeds deposited in the Signature Javice Accounts.

[4] I know Bertram is JAVICE's boyfriend based on, among other things, my participation in JAVICE's arrest at Newark Liberty International Airport while JAVICE was traveling with Bertram.

in the name of Chariot Holdings X LLC.

        iii.     Approximately $615,570 came from account 1504683083 held in the name of Chariot Holdings I LLC.

        iv.     As described above in paragraphs 14(h)-(i), the Signature Javice Accounts that sent the $12,249,149.04 to BX5 LLC were funded almost entirely with proceeds traceable to the JPMC fraud.

        c.     One day later, on or about March 14, 2023, a series of transfers and withdrawals occurred in the BX5 4513 Account, leaving the account with a balance of approximately $20,670.82, which is approximately $90 more than the balance of the BX5 4513 Account prior to JAVICE's incoming transfers. In other words, the March 14, 2023 outgoing transfers consisted of JPMC Fraud Proceeds. The specific outgoing transfers from the BX5 4513 Account were as follows:

        i.     Approximately $8,590,244.60 was sent to Target Account-2.[5]

        ii.     A total of approximately $3,658,814.44 (through five separate transactions) was transferred to Target Account-3, which is savings account 1573700687 at Wells Fargo, also in the name of BX5 LLC. Prior to these transfers, the beginning balance of Target

---

[5] Target Account-2 is an account at Fidelity Brokerage Services LLC and these funds appear to have been used to purchase investments held in the same account. The funds and assets in Target Account-2 have also been withdrawn in part. For example, on or about April 5, 2023—the day after JAVICE's presentment in federal court—an approximately $2 million wire from Target Account-2 was sent to the law firm Quinn Emanuel Urquhart Sullivan LLP, who is representing JAVICE in her criminal case. On or about April 11, 2023, a Special Agent with FDIC-OIG sent a letter to Fidelity Brokerage Services LLC, directing it to "freeze" Target Account-2, that is, to prevent further withdrawals.

Account-3 on March 14, 2023, was zero dollars.[6]

## CONCLUSION

16.     Based on the foregoing, I submit that there is probable cause to believe that moneys, assets, and funds held in the accounts constituting the Target Property are subject to forfeiture as property constituting the proceeds of and traceable to violations of 18 U.S.C. §§ 1343, 1344, and 1349.

17.     Accordingly, pursuant to 18 U.S.C. § 981(b), I respectfully request that the Court issue a warrant authorizing the seizure of the Target Property.


_____

JEREMY ROSENMAN
Special Agent
United States Attorney's Office
Southern District of New York


Sworn to before me through telephonic
or other reliable electronic means pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3)
on April 14, 2023

_____
HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE


---

[6] On or about April 12, 2023, a Special Agent with FDIC-OIG sent a letter to Wells Fargo, directing it to "freeze" Target Account-3, that is, to prevent further withdrawals.

14