

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 30, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Charlie Javice*, S1 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

    The Government respectfully writes in response to defendant Olivier Amar's October 23, 2025 letter (Dkt. 447) in support of co-defendant's Charlie Javice's motion for reconsideration of her restitution order. For the reasons set forth below and in the Government's October 20, 2025 letter (Dkt. 445), the Court should not reconsider its legally and factually correct determination that the defense legal fees, which the defendants' victim was forced to pay due to the defendants' misrepresentations and misconduct, are compensable under the Mandatory Victims Restitution Act (the "MVRA"). As the Court has already determined—and as the Second Circuit has strongly suggested—these costs are compensable under the MVRA because the "defendant[s] obtained [their] position[s] with the victim company, and thus coverage under its indemnification provisions, due to the offense conduct." *United States v. Sullivan*, 118 F.4th 170, 233 n.42 (2d Cir. 2024).

    As set forth in the Government's October 20, 2025 letter, under the MVRA, where the defendant's offense conduct caused property loss to the victim, the Court must order the defendant to "pay an amount equal to . . . the value of the property."[1] 18 U.S.C. § 3663A(b)(1). The victim's loss must be directly and proximately caused by the defendant's offenses. 18 U.S.C. § 3663A(a)(2). As set forth in the Government's October 20, 2025 letter, as well as JPMC's June 27, 2025 letter, the defense legal fees that JPMC was forced to pay are compensable as lost property caused by the defendants' offense conduct.

---

[1] Amar's letter claims that the only statutory authority that the Government relies on is 18 U.S.C. § 3663A(a)(2). (Dkt. 447 at 3). That is incorrect. The Government's October 20, 2025 letter specifically quotes and cites to 18 U.S.C. § 3663A(b)(1), which states that the Court "*must*" order restitution to a victim in a case, like this one, where a defendant causes loss to a victim. (Dkt. 445 at 1).

Amar claims that he and Javice were not even the but-for causes of JPMC's loss by pointing to indemnification provisions in Frank's bylaws and Amar and Javice's employment contracts with Frank, which "were executed *years before* JP Morgan acquired [Frank]." (Dkt. 447 at 2). This argument is simply misdirection and baseless. It may be that *Frank* had an obligation to indemnify the defendants that existed well before the acquisition—but the obligation of *JPMC* (the victim who actually paid the legal fees) to do so arose only because the defendants fraudulently induced JPMC to acquire Frank and employ Amar and Javice. That the defendants obtained indemnification rights from Frank "years before JP Morgan acquired [Frank]" is thus irrelevant. It was only through the fraudulently induced acquisition and hiring of the defendants that JPMC took on indemnification obligations as to the defendants. As a result, the harm to the victim—arising from the contractual obligation to indemnify—was caused by, and is a product of, the defendants' fraud scheme. *See Sullivan*, 118 F.4th at 233 n.42 (defense legal fees may be compensable under the MVRA "where a defendant obtained his position with the victim company, and thus coverage under its indemnification provisions, due to the offense conduct.").

Amar cites *United States v. Calderon*, 944 F.3d 72 (2d Cir. 2019), noting that the Second Circuit rejected restitution orders, in part, where the fraud occurred *after* the victim banks' decision to loan money that the Government sought to recoup. *Calderon* supports the Government's argument here, not Amar's. Had Javice and Amar's fraud occurred *after* JPMC acquired Frank, the causal link between the fraud and JPMC's indemnification obligation would be more tenuous. But that is not what happened here. The acquisition occurred *because of* the defendants' fraud scheme. For that reason, JPMC's losses—which arose from obligations that the bank took on when it agreed to acquire Frank and hire Javice and Amar—were caused by the defendants' fraud scheme.

Amar also argues that he was not the proximate cause of JPMC's losses. As this Court has previously noted, proximate causation is a "flexible concept . . . that asks whether the harm to victims was foreseeable to Defendants in the course of committing the offense of conviction." *United States v. Hwang*, 22 Cr. 240 (AKH), 2025 WL 1823995, at *1 (S.D.N.Y. July 2, 2025). JPMC's losses—Amar's own legal fees in defending allegations of fraud—were plainly foreseeable to Amar at the time he was committing the fraud. It strains credulity to suggest that Amar—who knowingly and actively engaged in a scheme to defraud JPMC into acquiring Frank for $175 million—did not foresee potential adverse legal action in the future. Indeed, even Patrick Vovor, a Frank engineer who did not have full visibility into the scheme, questioned the legality of Amar's request to create fake student data. (Tr. 1564, 1575).

Amar next argues that the Government's restitution theory has no bounds and "would render meaningless the MVRA's other provisions limiting the scope of victim recovery, including § 3663A(b)(4), which narrowly defines 'other expenses,' including legal fees." (Dkt. 447 at 3). That is incorrect. Only those losses directly and proximately caused by a defendant's fraudulent conduct are compensable under the MVRA. And § 3663A(b)(4) is not "rendered meaningless." That provision relates to victim losses of a different kind—the victims' *own* legal fees in assisting the Government's prosecution.[2] The $114 million in legal fees at issue here are the defendants'

---

[2] While JPMC is entitled to recover the legal fees that JPMC incurred in assisting the Government's investigation, JPMC has not sought them here.

legal fees, and the obligation of the victim to advance those fees only arose from the defendants' fraudulent inducement. They are thus compensable under 18 U.S.C. § 3663A(b)(1).[3] Amar contends that he "was not a party to the Merger Agreement, nor was he involved in negotiating its terms." (Dkt. 447 at 3 n.4). But, as Amar acknowledges, his indemnification rights existed "years before JP Morgan acquired the company" and thus he surely was aware of his rights at the time of the fraud scheme.

Finally, Amar argues that the Court should apportion Javice and Amar's legal fees. The Court should decline to do so here. As set forth in extensive detail in the Government's sentencing submission, Amar's contributions to the fraud scheme were significant and extensive, and the fraud would not have been possible without his involvement. Moreover, the specific item of loss at issue, Javice and Amar's legal fees, were largely incurred defending against the same indictment, the same charges, and the same trial. Indeed, up until the eve of trial, Javice and Amar "operated for nearly two years under a long-standing joint defense agreement." (Dkt. 185 at 1). However, if the Court were to apportion restitution, it should do so based on each defendant's respective fees. Based on JPMC's June 6, 2025 letter, Amar's legal fees were $54,108,207.

Conclusion

For the foregoing reasons, the Court correctly concluded that the defense legal fees paid for by the victim are compensable under the MVRA.

Respectfully submitted,

AMANDA HOULE
Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515

By:     /s/_____
Nicholas W. Chiuchiolo
Micah F. Fergenson
Georgia V. Kostopoulos
Assistant United States Attorneys
Telephone: (212) 637-1247 / -2190 / -2212

---

[3] As the Government noted in its October 20, 2025 letter, "[n]either the Government nor JPMC has argued that the defense legal fees are compensable under [§ 3663A(b)(4)]." For that reason, Amar's (and Javice's) arguments concerning that provision should be disregarded.