UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :       **ORDER AND OPINION**
        -against-                                                :       **DENYING MOTIONS FOR**
                                                                 :       **NEW TRIAL**
CHARLIE JAVICE and OLIVIER AMAR,                                 :
                                                                 :
                                     Defendants.                 :       23 Cr. 251 (AKH)
                                                                 :
                                                                 :
---------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

After a six-week trial, a jury found Defendant Charlie Javice, the founder and

CEO of Frank, and Defendant Olivier Amar, its Chief Growth Officer, guilty of making material

misrepresentations in the sale of Frank to JPMorgan Chase ("JPMC"). Defendants were

convicted on all four counts charged: conspiracy to commit wire fraud or bank fraud, wire fraud,

bank fraud, and securities fraud. The verdict was returned on March 28, 2025. Javice's

sentencing was held on September 29, 2025, and Judgment was entered on October 30, 2025.

*See* ECF No. 449. Amar's sentencing was held on November 5, 2025, Judgment was entered on

November 25, 2025, and he is scheduled to surrender on May 5, 2026. *See* ECF No. 466. Javice

filed an appeal. Amar has not filed an appeal.

Javice and Amar move for a new trial pursuant to Rule 33 of the Federal Rules of

Criminal Procedure. *See* ECF Nos. 463; 465. Javice's motion to hold her appeal in abeyance

pending the resolution of this motion was granted on December 30, 2025. Pursuant to Fed. R.

Crim. P. 37(a) I may rule on the motion notwithstanding Javice's pending appeal.

## FACTUAL BACKGROUND

On July 12, 2023, a superseding indictment was issued against Defendants Javice

and Amar. *See* ECF No. 27. JPMC, originally represented by Hogan Lovells, was a non-party to

1

the prosecution and a victim. It was also in possession of considerable documents relevant to the case which were produced to the parties. *See* Fed. R. Crim. P. 16. JPMC also withheld numerous documents claiming privilege.

On October 13, 2023, Defendants moved to compel the Government to require production of the withheld documents from JPMC, arguing that JPMC was allegedly part of the prosecution team. *See* ECF Nos. 57, 58. I substantially denied the motion to compel on November 2, 2023. *See* ECF No. 61. I also directed that the Government should require JPMC to search for records related to two additional document custodians. *See id.*

On November 9, 2023, the defendants served Rule 17(c) subpoenas on JPMC, and on December 1, 2023, JPMC, through its then counsel, Hogan Lovells, moved to quash the subpoenas. *See* ECF No. 72-75. On January 17 and 18, 2024, I denied in part and granted in part JPMC's motion to quash, ordering JPMC to produce certain categories of documents and to prepare a privilege log. *See* ECF No. 87. Davis Polk began representing JPMC in the matter in February 2024. *See* ECF Nos. 88-91, 94.

On August 6, 2024, I held a hearing in which I made rulings on documents based on JPMC's privilege log and ordered JPMC to produce additional documents. *See* ECF No. 146; *see also* ECF No. 143.

A new team of law clerks began in September 2024. *See* ECF No. 463-1. The law clerks had worked as summer associates at Davis Polk in 2023. The clerks received offers of employment at the end of their summer programs and then deferred their employment in light of their clerkships. *See* ECF No. 463-4.

On September 6, 2024, Defendants moved to compel JPMC to produce certain records over which it had previously asserted privilege and to produce a revised privilege log.

2

*See* ECF No. 152. On September 24, 2024, I granted in part and denied in part Defendants'

motion to compel, ordering JPMC to re-review the approximately 5,000 documents on the

privilege log that were responsive to Defendants' Rule 17 subpoenas, and produce all relevant,

non-privileged documents, with exceptions. *See* ECF No. 163.

On February 4, 2025, I resolved additional document production disputes

involving JPMC at the final pretrial conference. *See* ECF Nos. 231, 237, 260. I issued a

summary order of my rulings that same day. *See* ECF No. 260. I granted Javice and Amar's

joint motion to compel production from JPMC as to certifications from eight employees who

were potential Government witnesses that they did not use text messages for business purposes.

*See id.* I denied, consistent with an earlier ruling on a similar motion to compel, Defendants'

motions for the Government to produce materials from JPMC not within its possession. *See id*;

*see also* ECF No. 61. I also granted JPMC's motion to quash two subpoenas that were

overbroad and fell outside the scope of Fed. R. Crim. P. 17(c). I later revisited my ruling on the

motion to quash requests for personnel records and ordered JPMC to produce them for *in camera*

inspection. *See* ECF No. 268; Trial Transcript at 1004, United States v. Javice et al, No. 23 Cr.

251 (S.D.N.Y. March 3, 2025). I concluded there were no cross-examination materials in the

files. *See* Trial Transcript at 1004, United States v. Javice et al, No. 23 Cr. 251 (S.D.N.Y. March

3, 2025).

Trial was held over the course of six weeks in February and March 2025. On

March 4, 2025, during the testimony of Jen Wong, a former Frank employee who was not

actively represented by Davis Polk, she was asked about her involvement in due diligence. I cut

off the Government's line of questioning as the witness had already answered those questions.

Thereafter, Ms. Wong was asked about the role she played in the creation of a "synthetic" data

file. I noted that the Government had asked those questions before. The Government disagreed and asked for a moment. I briefly conferred with my law clerk during this break in the questioning and then said, "My law clerk agrees with you. You can ask the question." *See* ECF Nos. 463; 480. Defendants do not question the correctness of the rulings.

One of the relevant law clerks left my employment in August 2025. *See* ECF No. 463-1. The other relevant law clerk left my employment in October 2025. On October 16, 2025, Davis Polk sent screening letters to me and Defendants' counsel for the law clerks. *See* ECF No. 463-1.

On September 29, 2025, I held a sentencing hearing for Javice and on November 5, 2025, I held a sentencing hearing for Amar.

On November 19, 2025, Javice filed her Rule 33 Motion for a new trial and, in the alternative, requested discovery if the Court concluded the existing record were insufficient. *See* ECF No. 463. Amar filed an accompanying motion for a new trial on November 21, 2025. *See* ECF No. 465. Javice had already filed a notice of appeal and later moved for, and was granted, leave to hold her appeal in abeyance pending resolution of the instant motion. *See also* Fed. R. Crim. P. 37(a).

Defendants' request for discovery is denied. The record is complete, and no further factual development is warranted.

### LEGAL STANDARD

The court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). For such motions to be granted there "must be a real concern that an innocent person may have been convicted." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). The remedy should be granted "sparingly and in the most extraordinary

4

circumstances." *United States v. Archer*, 977 F.3d 181, 187 (2d Cir. 2020) (cleaned up; citation omitted).

28 U.S.C. § 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See* 28 U.S.C. § 455(a). The "substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). There is a "substantial burden" on parties moving for recusal to overcome the presumption of judicial impartiality. *See McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1522 (D. Conn. 1991) (citing cases).

Vacatur of judgment does not automatically follow a violation of Section 455(a). Instead, courts consider three factors to determine how to address such a violation: "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *United States v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (*citing Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)).

## DISCUSSION

**I. Law Clerks' Future Employment Did Not Create an Appearance of Partiality Requiring a New Trial**

Davis Polk, a global law firm of over 1,000 attorneys,[1] represented JPMC. JPMC was not a party. The law clerks' past and future employment with counsel to a non-party did not create an appearance of partiality requiring a new trial. They will not work on this case at Davis

---

[1] *See* About Us: Overview, Davis Polk & Wardwell LLP, https://www.davispolk.com/about/overview (last visited Mar. 12, 2026).

5

Polk. *See* ECF No. 463-1. Defendants cite no comparable case holding that a law clerk's future employment with counsel to a non-party creates an imputable conflict requiring judicial recusal.

The cases Defendants' cite do not support their position. For example, in *Hamid v. Price Waterhouse*, the Ninth Circuit concluded a district court did not abuse its discretion in denying a motion for recusal where a law clerk performed extensive work on the case for a district judge, in part because "the law firm did not appear on behalf of anyone in the case..." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1311-12 (10th Cir. 2015) (*citing Hamid v. Price Waterhouse*, 51 F.3d 1411, 1417 (9th Cir. 1995)). "The court noted that an appearance of partiality does not exist merely by drawing 'a line ... connecting a person within chambers to a person or firm related, no matter how remotely, to a party in the case.'" *Id.* (*quoting Hamid*, 51 F.3d at 1417). Davis Polk's letters further demonstrate that the clerks will be screened from the case and will not benefit financially in any way from the proceedings. *See* ECF No. 463-1.

## II.   Defendants Do Not Demonstrate Overreliance on Law Clerks

Defendants' recitation of a single exchange over the course of a six-week trial does not demonstrate any unusual reliance on law clerks. The opposite is true. I oversaw pretrial motions and hearings beginning in 2023, six weeks of trial, and post-trial motions and sentencings in the regular course. *See Marcus v. W2007 Grace Acquisition I, Inc.*, No. 15-CV-6242 (KBF), 2017 WL 6398619, at *1 (S.D.N.Y. Sept. 13, 2017), *aff'd sub nom. Marcus as Tr. of Grace Preferred Litig. Tr. v. Smith*, 755 F. App'x 47 (2d Cir. 2018) (noting the dockets reflecting "significant personal involvement by the district court judge, including several hearings and extensive oral argument" in rejecting relief from judgment for the purported violation of 28 U.S.C. § 455(a)). The proceedings began before the relevant law clerks arrived and continued after they had left.

6

As both "bench and bar recognize ... judges, not law clerks, make the decisions. The [disqualification] statute itself speaks of "justice[s], judge[s], or magistrate[s]," not clerks. And judges are fully capable (and believed by reasonable members of the public to be fully capable) of taking account of whatever 'bias'" clerks may have. *In re Allied-Signal Inc.*, 891 F.2d 967, 971 (1st Cir. 1989) (*citing* 28 U.S.C. § 455(a)).

No reasonable person who had seen the entirety of proceedings and "knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987).

## III. Strength of Underlying Evidence

The evidence in this case was strong, and there is no concern here "that an innocent person may have been convicted." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). As I noted in my order denying Javice and Amar's motions for acquittal and new trial, the "jury heard substantial testimony and evidence about Javice's misrepresentations to JPMC and Capital One about the number of Frank customer account sign-ups, her scheme to purchase data to cover up those misrepresentations, her coordination of that scheme with Amar, the material value to the banks of the number of customer accounts Frank had, and the ultimate success of that scheme in defrauding JPMC out of the $175 million purchase price, plus an additional $20 million in bonus compensation to Javice and $3 million to Amar. There is no question that there was sufficient evidence" for a jury to find Javice and Amar guilty. ECF No. 415 at 8-9.

## IV. Assuming a Violation of Section 455(a), Vacatur is Not Warranted

Even assuming that Section 455(a) were implicated, vacatur would not be warranted here. Three factors are used to determine the proper remedy for Section 455(a) violations: "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial

7

of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *United States v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (*citing Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)).

First, the risk of injustice to the parties is low. As noted, there was strong evidence implicating the Defendants in their scheme. Over the course of a six-week trial, the parties presented their case to the jury which found the Defendants guilty beyond a reasonable doubt. There is no concern here "that an innocent person may have been convicted." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). Nor is there any basis to conclude I overly relied upon my clerks throughout proceedings, which began prior to their arrival and ended after their departure. For these reasons, and the reasons stated above, the risk of injustice to the parties from denying vacatur is low.

Second, there is no basis to conclude that denial of relief will produce injustice in other cases. Law clerks' future employment with counsel representing a non-party does not represent a major risk of conflict that would cause injustice to future parties and, accordingly, the risk that denying relief here will produce injustice is low.

Third, there is minimal risk of undermining public confidence in the judicial process. As noted, no reasonable person who had seen the entirety of proceedings and "knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987).

Therefore, applying the *Liljeberg* factors, vacatur is not warranted.

8

## CONCLUSION

For the foregoing reasons, Defendant Charlie Javice and Defendant Olivier

Amar's respective motions for a new trial are denied.

The Clerk shall terminate ECF Nos. 463, 465, 481, and 491.

SO ORDERED.

Dated:        March __, 2026
             New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

9